```
             IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND
                       NORTHERN DIVISION

IN THE MATTER OF              )
The Petition of Grace         )
Ocean Private Limited, et al) 
For Exoneration from or       )  CASE NUMBER: JKB-24-cv-0941
Limitation of Liability       )
_____)


   TRANSCRIPT OF PROCEEDINGS - MOTIONS HEARING/STATUS CONFERENCE
            BEFORE THE HONORABLE JAMES K. BREDAR
                  UNITED STATES DISTRICT JUDGE
                     Thursday, June 20, 2024
                       Baltimore, Maryland


                    A P P E A R A N C E S

ON BEHALF OF THE PETITIONERS:

     BY: ROBERT HOPKINS, ESQUIRE
         LAURIE GOON FURSHMAN, ESQUIRE
         DUANE MORRIS LLP
         100 International Drive, Suite 700
         Baltimore, Maryland  21202

     BY: KIERSTAN CARLSON, ESQUIRE [Present via telephone]
         BLANK ROME LLP
         1825 Eye Street Northwest
         Washington DC  20006

     BY: WILLIAM BENNETT, III, ESQUIRE [Present via telephone)
         BLANK ROME LLP
         1271 Avenue of Americas
         New York, New York  10020




_____
         ***Proceedings Recorded by Mechanical Stenography***
          Transcript Produced by Computer-Aided Transcription
```

```
 1              A P P E A R A N C E S  (Continued)

 2      ON BEHALF OF THE CLAIMANTS:

 3      For Mayor and City Council of Baltimore:
             BY: ADAM LEVITT, ESQUIRE
 4               DiCELLO LEVITT GUTZLER LLC
                 Ten North Dearborn Street
 5               Suite Sixth Floor
                 Chicago, Illinois   60602
 6
             BY: DIANDRA DEBROSSE, ESQUIRE
 7               DiCELLO LEVITT GUTZLER LLC
                 420 20th Street
 8               Suite 2525
                 Birmingham, Alabama   35203
 9
             BY: E. DOUGLAS DiSANDRO, ESQUIRE
10               SALTZ MONGELUZZI BENDESKY PC
                 1650 Market Street, 52nd Floor
11               Philadelphia, Pennsylvania   19103

12      For Damon A. Davis:
             BY: WILLIAM H. MURPHY, JR., ESQUIRE
13               MURPHY FALCON and MURPHY
                 One South Street, 23rd Floor
14               Baltimore, Maryland   21202

15           BY: JASON P. FOSTER, ESQUIRE
                 PENCE LAW FIRM PLLC
16               10 Hale Street
                 4th Floor
17               Charleston, West Virginia 25301

18      For American Publishing, LLC:
             BY: ROY MASON, ESQUIRE
19               SMOUSE & MASON, LLC
                 223 Duke of Gloucester Street
20               Annapolis, Maryland   21401

21      For the United States of America:
             BY: MATTHEW PHELPS, ESQUIRE
22           BY: MATTHEW SHEA, ESQUIRE
             BY: KIM PHILLIPS, ESQUIRE
23               36 S. Charles Street
                 4th Floor
24               Baltimore, MD    21202

25
```

```
 1              A P P E A R A N C E S (Continued)

 2         BY: MICHELLE T. DELEMARRE, ESQUIRE
               GUYER BOGEN, ESQUIRE
 3             Department of Justice Aviation, Space and
               Admiralty
 4             1100 L Street, Northwest
               8142
 5             Washington, DC  20530

 6         BY: CASSANDRA BARNUM, ESQUIRE
               Senior Trial Attorney
 7             U.S. Department of Justice
               Environment of Natural Resources Division
 8             950 Pennsylvania Avenue, Northwest
               Washington, DC 20530-0001
 9


10
   Also Present: THOMAS McMURRY, ESQUIRE
11                NTSB general counsel

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S
 2     (10:12 a.m.)
 3              THE CLERK: The matter now pending before this Court
 4     is Civil Docket Number JKB 24-0941, In the Matter of the
 5     Petition of Grace Ocean Private Limited, et al for Exoneration
 6     from or Limitation of Liability. This matter now comes before
 7     the Court for the purpose of a Motions Hearing.
 8        For the Petitioners, please identify yourselves for the
 9     record.
10              MR. HOPKINS: Good morning, Your Honor. Robert
11     Hopkins of Duane Morris in Baltimore with Laurie Furshman.
12     I've also got my co-counsel, Bill Bennett and Kierstan Carlson
13     from Blank Rome on the line. They are in Singapore where I
14     think it's about 10:00 at night right now.
15              THE COURT: Thank you.
16              THE CLERK: And for the Claimant, please.
17              MR. MURPHY: William H. Murphy, Jr., and Jason
18     Foster.
19              MR. LEVITT: Good morning, Your Honor. Adam Levitt
20     representing the Mayor and City Council of Baltimore, of
21     DiCello Levitt in Chicago, Illinois. My partners can
22     introduce themselves.
23              MS. DeBROSSE: Diandra Debrosse with DiCello Levitt
24     representing the City. Good morning, Your Honor.
25              THE COURT: Good morning, Ma'am.
```

**MR. DiSANDRO:** Good morning, Your Honor. Doug DiSandro from Saltz Mongeluzzi in Philadelphia on behalf of the City of Baltimore, as well.

**THE COURT:** Thank you.

Government.

**MR. PHELPS:** Good morning, Your Honor. Assistant U.S. Attorney Matt Phelps on behalf of the United States.

**MS. DELEMARRE:** Michelle Delemarre, Department of Justice, Aviation, Space and Admiralty on behalf of the United States.

**MR. BOGEN:** Good morning, Your Honor. Guyer Bogen, same as Michelle, Department of -- Division of Aviation, Space and Admiralty, Department of Justice.

**MR. SHEA:** Good morning, Your Honor. Matthew Shea, Assistant United States Attorney in the civil division. With me is Tom McMurry who is NTSB general counsel.

**MS. PHILLIPS:** Good morning, Your Honor. Assistant United States Attorney Kim Phillips.

**MS. BARNUM:** Good morning, Senior Trial Attorney Cassandra Barnum from the Environment of Natural Resources Division.

**THE COURT:** Thank you.

Okay, we had one agenda when this hearing was scheduled and now we have in substantial part a different one, just because of the way things have proceeded here in the last 15

1    or 16 hours.
2         But let's back up to two days ago. Initially the Court
3    received motions, papers number 43 and 44 styled as emergency
4    requests for conferences and for relief in relation to the
5    status of some eight members of the crew of the M/V Dali, the
6    vessel that is, of course, at the center of this entire
7    litigation. The concern was, as expressed in these papers,
8    that these crew members who were standing by on board and who
9    petitioners had represented in April would be available for
10   whatever steps were necessary to preserve their testimony,
11   presumably depositions and so forth, were perhaps going to
12   become at least unavailable in this jurisdiction and that they
13   might leave as soon as today.  And some various explanations
14   were given for why the sudden change in course.
15        Counsel for two of the claimants raised concerns and the
16   Court appreciated the significance of their motions and set
17   this matter in for a hearing today at 10 a.m. And it being
18   styled as an emergency request and on its face appearing to
19   credibly be a request for emergency relief, the Court
20   rearranged its docket, moved other proceedings, inconvenienced
21   other litigants and counsel that were otherwise scheduled to
22   be before the Court this morning.
23        I appreciate the fact that Counsel evidently then entered
24   into negotiations yesterday and perhaps that took the majority
25   of the day, I'm not sure.  But if it did, I understand.  And

1  late yesterday afternoon coming into evening, the Court
2  received notice that, in fact, the underlying dispute about
3  access to the crew members and some other and related
4  discovery issues had actually all been sorted out.  And I
5  greeted that as a notice that was in the best tradition of how
6  the bar at least in this community tends to operate,
7  especially the Maritime Bar. It's not that there aren't
8  problems and issues particularly in a big and complex case
9  like this, but the lawyers at least in the Baltimore Admiralty
10 Bar have a long tradition of working well with each other in a
11 manner consistent with the expectation of the rules and the
12 Court, and tend to sort out issues and problems like this.
13       And so I wasn't entirely surprised to receive notice that
14 after substantial discussions, an agreement had been reached
15 and then the agreement was appended to the notice. The Court
16 reviewed it and as I indicated in one of the orders I entered
17 last night, the agreement itself appears quite reasonable.
18 There was just one problem:  Two claimants filed a request for
19 emergency relief; only one indicated that they were a party to
20 the agreement resolving the dispute.
21       I then tasked my court staff into the evening last night
22 to try to pursue the Davis interest and to sort out where that
23 party stood with respect to the agreement. And my
24 understanding late last night was that, in fact, Claimant
25 Davis might be joining that agreement, but wasn't prepared to

1   withdraw their request for the emergency hearing and wanted
2   the opportunity to come to court today perhaps to make some
3   sort of a record, I'm not sure. So that's where things were
4   left when we all went to sleep last night.
5       Just before 9:30 this morning, Claimant Davis' counsel
6   filed a withdrawal of their request for the emergency hearing
7   and that then would seem to complete the circle and all of the
8   interests that were initially involved and implicated seemed
9   to have come to terms.
10      Now because of some of what was represented in the papers
11  that were first filed with the Court about actions that the
12  Government had taken or declined to take or was about to take
13  and so forth, and being impressed with the emergent nature of
14  the situation as explained by claimant's counsel, I ordered
15  the Government to appear here this morning ready to represent
16  various agencies and their respective areas of jurisdiction
17  and so forth. And while the cold record won't make this
18  crystal clear, I'm going to do my best to help it and that is
19  that by my count, I think there's seven Government lawyers,
20  all here at the taxpayers' expense in response to the Order
21  that I entered.
22      The question I have is why we were unable to get all of
23  this resolved last night given that there seems to be a
24  sensible agreement about how we're going to deal with the
25  underlying discovery issue.

```
 1            Mr. Hopkins, you represent the petitioners so you get the
 2   opportunity to go first and I'll hear from claimants in a
 3   moment.
 4            MR. HOPKINS:  Thank you, Your Honor. I think Mr.
 5   Bennett will take the initial -- will take this initially.
 6            THE COURT:  Mr. Bennett, can you hear me?
 7            MR. BENNETT: Yes, Judge, I can.  And thank you for
 8   accommodating us.
 9       I can tell you that following a notice that we received
10   from the Coast Guard and CVP that eight of the crew members
11   would be released, we put the claimants on notice. Immediately
12   I began negotiations with David Reisman of Lisko.  He is a
13   maritime lawyer. I'm a maritime lawyer. We did as the Court
14   has indicated that we maritime lawyers do, we began
15   discussions. He set forth four requests of me to make sure
16   that those crew members would be able to be deposed. I agreed
17   to those four conditions. He said he needed to speak to his
18   civil claimants. I believe that was on the 18th. I'm sorry
19   about timing because I'm 12 hours ahead of you. That was on
20   the 18th, Tuesday. We began negotiations. He said that he
21   would call me back after having conversations with his group.
22   I told him, "Please call me at any time of the night" which he
23   did. So I've been up for about 36 to 48 hours now.
24       We negotiated I believe it was -- I'm trying to get my
25   dates right -- starting the 18th and we finished up I believe
```

1    on late the 18th, early the 19th. And I told him I'd guarantee
2    that we get these people available for them to be deposed.
3         And as part of that agreement, the City of Baltimore and
4    Mr. Dixon were to file withdrawal motions. Mr. Levitt filed
5    his motion within 10 or 15 minutes of being notified that we
6    had an agreement; the Dixon claimants did not. I reached out
7    to them several times over the course of the last 12 hours
8    asking them to file so that we didn't have to be here today.
9         So we have an agreement in place and I don't know what
10   else I can tell you, Your Honor.
11              **THE COURT:**  Thank you, Mr. Bennett.
12        Mr. Levitt, you got anything?
13              **MR. LEVITT:**  I have nothing, Your Honor, other than
14   one correction and that is the deal was struck late on the
15   19th, not on the 18th. That's all it was.  So it was
16   yesterday, it wasn't about --
17              **THE COURT:**  Yeah, yesterday was the 19th.  Today is
18   the 20th.
19              **MR. LEVITT:**  I just wanted to make the record clear,
20   Your Honor. Other than that --
21              **THE COURT:**  That's consistent with when the Court
22   got notification. It was about dinnertime yesterday.
23              **MR. LEVITT:**  Yes, exactly. I just wanted to clarify,
24   but we have an agreement on this.  So thank you, Your Honor.
25              **THE COURT:**  Got it.

1          Mr. Murphy.
2              **MR. MURPHY:**  Yes, Your Honor.
3              **THE COURT:**  Well, I think we're here as near as I
4     can sort it out because you had questions.  First of all, I
5     take it based on the submission at 9:28 this morning that you
6     are a party to the agreement.
7              **MR. MURPHY:**  Yes, Your Honor.
8              **THE COURT:** My question is why couldn't the Court
9     have been notified of that last evening when all the other
10    parties were weighing in so that it wouldn't have been
11    necessary to convene this hearing, require all of these
12    Government lawyers, in particular, to be present to address
13    the questions of whether or not appropriate parole had been
14    granted to the eight crew members and other questions that the
15    Court would have had. That's what I meant when I said at the
16    outset of the hearing that we began with one agenda, but we
17    really have another. And the other is how are we going to
18    conduct this very complex and potentially lengthy proceeding
19    in the coming months and years?  My aspiration is that we're
20    going to do so efficiently and with every lawyer bringing
21    their 'A' game and being conscious of the fact that actions
22    that they take or don't take have consequences and reactions
23    for many other parties. And that substantial expense is likely
24    to be incurred as a consequence of the moves that any and all
25    of us make.

1   Now sometimes that can't be helped. As the Court
2   indicated, when the initial motions came in, I understood the
3   issue. In the Court's judgment it did have an emergent quality
4   to it and we needed to clear the decks over here and postpone
5   two criminal proceedings this morning and so forth so that we
6   could get the lawyers and the Government in here and get this
7   sorted out. It's not that the Court isn't available to resolve
8   the problems and the issues that this case inevitably is going
9   to generate. It's just that my expectation is that counsel are
10  going to bring to the matter a focus and a concern about the
11  same things that the Court is worried about.
12      If this issue was entirely resolved as of dinnertime
13  yesterday, then the Court should have been notified of the
14  same. That's what I'm concerned about.
15          **MR. MURPHY:** Yes, Your Honor.  Mr. Duncan [*sic*] can
16  tell the Court what happened.
17          **MR. FOSTER:** Your Honor, Jason Foster, pro hac vice
18  recently granted with the defense firm in Charleston, West
19  Virginia.  I can inform the Court that there were lengthy
20  discussions. We had about an hour-and-a-half Zoom meeting
21  yesterday at 12:30 with the concerned parties on claimants'
22  side. We hammered out what we would request of the petitioners
23  and that was forwarding; those conversations were ongoing. I
24  personally left for my office, got on the road. I saw email
25  traffic going back and forth and Mr. Murphy's office was

1   closed all day yesterday.

2       I was informed that an agreement had been reached with
3   the petitioners as to the items that we had hashed out as
4   claimants' counsel during our call.  And then at that point
5   it's my understanding that there was a call with the judge's
6   clerk later in the evening. I'm not exactly sure what happened
7   during that call. I can tell you that from my perspective we
8   were always on board with the agreement.  And to the extent
9   that there was any miscommunication about whether the hearing
10  was to move forward, I had several emails earlier today with
11  Mr. Bennett as to clarification as to what actually was being
12  withdrawn.  And I informed him that we were certainly parties
13  to the agreement and the relief that we were seeking we are no
14  longer seeking. But as far as the status of the hearing and
15  whether it would go forward or not, that was the only point of
16  confusion that I understood.

17      **THE COURT:**  Yeah, but you're a party in this case
18  and you may be in discussions with Mr. Bennett and have
19  reached an agreement with him and I hoped that you have and
20  now confirmed that you have and that's as it should be. That's
21  how disputes like this should be sorted out.  And I commend
22  all counsel for their efforts yesterday to get this
23  straightened out. But you've got to finish every logistical
24  detail and when you don't in the context of a large
25  multi-party case like this where we've got implications for

1   the Government, for the Court and others, you've got to dot
2   all the i's and cross all the t's. This was the problem that
3   we faced in my chambers at 6 and 7 p.m. last night. We had an
4   indication from the Petitioners. We had an indication from the
5   City interests that there was an agreement and that it was
6   global in nature and that the dispute had been resolved. But I
7   can't act on a representation from other counsel that impacts
8   potentially the interests of your client. I've got to hear
9   from you. I've got to hear from lawyers for your client. And
10  as far as I understand, that's you and the Murphy firm.  And
11  we did not, despite efforts by my clerk to try to nail this
12  down, get a definitive statement that the Davis interest had
13  joined the agreement, withdrew their request for emergency
14  relief, and were in agreement with all of the other parties
15  that there was no longer any need to conduct a hearing. The
16  hearing had been scheduled. I'm not going to vacate it until
17  we've got a resolution that everybody is a part of.
18        Now we're at that point now and we have been there since
19  9:28 this morning when your motion -- when your client's
20  motion to withdraw the request for emergency relief was
21  docketed in the Court. My question is why didn't that happen
22  simultaneous with the other papers and notifications given to
23  the Court late yesterday that made it clear that this dispute
24  was resolved and was going away.
25        And to finish this, the point no longer is the

1     circumstances of the eight crew members and when their
2     statements or depositions are going to be taken and so forth.
3     As I said, the good lawyers in this case have handled that
4     problem in a manner consistent with how these kinds of issues
5     generally get handled. The lawyers sort it out. They negotiate
6     and they form an agreement. My point is about how we're going
7     to conduct this litigation going forward and to make it
8     crystal clear what my expectations are which is that lawyers
9     need to all bring their 'A' game to this matter or we're going
10    to bog down and default in our responsibility to ultimately
11    deliver a just, and efficient, and timely outcome of the many
12    disputes. This is what the public expects of us and that's the
13    way that I'm going to run the railroad.
14         Is there anything else from the petitioners?
15             **MR. HOPKINS:**  No, Your Honor.
16             **MR. BENNETT:**  No, Your Honor.  I just want to thank
17    you and your chambers again for accommodating me and my
18    colleague, Kierstan Carlson.
19             **THE COURT:**  Yes.
20         Mr. Levitt, anything else on behalf of the City?
21             **MR. LEVITT:**  No, Your Honor.
22             **THE COURT:**  And counsel for Mr. Davis, anything else
23    on behalf of your client?
24             **MR. MURPHY:**  No, Your Honor.
25             **THE COURT:**  All right, the Court will enter a brief

```
1    order disposing of those motions that remain open.  Otherwise,
2    we're adjourned.
3              (Whereupon the proceeding was concluded at 10:32
4    a.m.)
5                    CERTIFICATE OF OFFICIAL REPORTER
```

I, Nadine M. Bachmann, Certified Realtime Reporter and Registered Merit Reporter, in and for the United States District Court for the District of Maryland, do hereby certify, pursuant to 28 U.S.C. § 753, that the foregoing is a true and correct transcript of the stenographically-reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this <u>30th</u> day of <u>June, 2024</u>.

-S-

_____

**NADINE M. BACHMANN, CRR, RMR
FEDERAL OFFICIAL COURT REPORTER**