UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| In the Matter of the Petition<br><br>of<br><br>GRACE OCEAN PRIVATE LIMITED, as Owner of the M/V DALI,<br><br>and<br><br>SYNERGY MARINE PTE LTD, as Manager of the M/V DALI,<br><br>for Exoneration from or Limitation of Liability | Docket No. JKB 24-cv-941<br><br>IN ADMIRALTY |

**CLAIM BY UNDERWOOD ENERGY INC. PURSUANT TO SUPPLEMENTAL
FEDERAL RULE F (5)
<u>IN RELATION TO THE KEY BRIDGE ALLISION</u>**

Specifically reserving all rights and defenses asserted in Claimant's accompanying Answer to the Petitioners' "Petition for Exoneration from or Limitation of Liability," Claimant, UNDERWOOD ENERGY INC. ("Underwood"), hereby demands a jury trial and makes this claim pursuant to Rule F(5) of the Supplemental Rules for Admiralty or Maritime Claims against Petitioners, GRACE OCEAN PRIVATE LIMITED and SYNERGY MARINE PTE LTD, as alleged owner and manager of the vessel M/V DALI (the "DALI" or "ship") and in support thereof avers as follows:

### INTRODUCTION

1. At 12:45am, E.S.T, on March 26, 2024, the container ship Dali left its dock in the Port of Baltimore and began sailing toward the Chesapeake Bay.

2. Weather conditions were suitable for sailing, with no high winds or visual obstructions in sight that would tend to show a disaster was imminent.

3. The Dali was supposed to sail down the Patapsco River, pass under the 1.6 mile area of the Francis Scott Key Bridge (the "Key Bridge"), and sail out to the Chesapeake Bay.

4. This route was one that thousands of large container ships similar to the Dali had sailed without incident.

5. Prior to March 26, 2024, no allision incidents with the Key Bridge had occurred in over 40 years.

6. Up until the Dali's allision with the Key Bridge on March 26, 2024 ("Key Bridge Allision"), the port of Baltimore was one of the busiest ports on the East Coast and the United States, generating significant revenues for businesses, the economy, and region each year.

7. Approximately twelve (12) minutes after the Dali's departure from its dock, the Dali began to make a large arc, turning towards the Key Bridge.

8. At approximately 1:24am E.S.T., the Dali's onboard data recorder recorded audio from the Dali indicating numerous auditory alarms. The data recorder stopped recording briefly and then resumed recording again using the Dali's redundant power source.

9. At approximately 1:25am E.S.T., the Dali lost power only minutes after leaving the port while travelling towards the Key Bridge at approximately seven (7) knots per hour, with insufficient power to steer the ship and its cargo.

10. At approximately 1:28am, E.S.T., the Dali crashed into the Key Bridge, immediately causing its collapse, killing at least six individuals, destroying Baltimore property, and devastating the region's primary economic source.

11. Reports have indicated that alarms indicating an inconsistent power supply on the Dali sounded well before the Dali left its dock.

12. The Dali and its operators were aware of the ongoing power supply issues and negligently left the port and its dock despite the ship's unseaworthy condition.

13. Petitioners, Grace Ocean Private Limited and Synergy Marine Pte Ltd allowed an unseaworthy vessel to sail into open waters with no foresight or consideration for its actions.

14. Petitioners were grossly negligent, and their actions have wide-spread consequences that trickle out to the small businesses that rely on the Key Bridge for it's day-to-day operations.

15. Petitioner's liability should not be limited. An example should be made by Petitioners actions to deter other unseaworthy vessels to conduct due diligence, maintain seaworthiness and more importantly avoid future unfortunate national disasters that have taken six innocent lives.

## PARTIES

16. Claimant, Underwood Energy Inc., files this claim on behalf of itself as a small business owner who's business will be crippled by this national disaster.

17. Upon information and belief, Petitioner Grace Ocean Private Limited ("Grace") is a corporation organized and existing under the laws of Singapore with its registered office in Singapore and was the registered owner of the M/V Dali at all times relevant hereto.

18. Upon information and belief, Synergy Marine Pte Ltd ("Synergy") is a corporation organized and existing under the laws of Singapore with its registered office in Singapore and was the manager of the Vessel.

19. Upon information and belief, Synergy was responsible for, among other things, manning the ship and its reserves and procuring and providing maintenance and repairs to the ship.

## JURISDICTION AND VENUE

20. The Key Bridge Allision occurred within the navigable waters of the United States and within the territorial waters of the State of Maryland. The incident had an actual and potential impact on maritime commerce, involves a traditional maritime activity, and is subject to admiralty tort jurisdiction, pursuant to Fed. R. Civ. P. 9(h).

21. This action is within the Court's admiralty and maritime jurisdiction, pursuant to U.S. Constitution Article 3, Sec. 2, and 28 U.S.C. §1333, and is brought pursuant to the Supplemental Rules for Admiralty and Maritime Claims.

22. In addition, this claim is within the Court's diversity jurisdiction pursuant to 28 U.S.C. §1332(a) and (b), because the parties are in complete diversity, and the amount in controversy exceeds $75,000.

23. Venue is appropriate in this district pursuant to 28 U.S.C. §1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this district, and a substantial part of the property that is the subject of the action, include the vessel itself (the Dali), is situated in this district.

## FACTUAL ALLEGATIONS

A.  **The Francis Scott Key Bridge was Built to Connect Baltimore City to Baltimore County**

24. Built between 1972 and 1977, the Key Bridge was designed to alleviate significant traffic flow in and out of Baltimore City and to facilitate the transport of "hazardous materials," the transportation of which was prohibited in the existing tunnel crossings prior to the bridge's construction.

25. Since its erection, the Key Bridge has been used by local businesses, each of which maintains a vested interest in the bridge and recognize its critical role in the local economy.

26. Around 30,000 daily commuters and local enterprises traversed the Key Bridge's 1.6-mile span to enter or exit Baltimore City—including Underwood Energy, which is owned by Sean Underwood, who operates a nearby propane terminal.

B.     **The Vessel Destroys the Key Bridge**

27. At around 12:45 AM on March 26, 2024, the Dali cast off from the Port of Baltimore, bound for Sri Lanka and expected to arrive on April 22, 2024.

28. In the hours leading up to the Dali's departure, alarms on the Dali's refrigerated containers were reported, indicating erratic and unstable power supply issues.

29. These power supply concerns were either overlooked, ignored, or insufficiently addressed.

30. About twelve minutes after the Dali's cast off, the Dali initiated a turn towards the Key Bridge. Subsequent reports note that around 1:24 AM, the ship's onboard data recorder captured multiple urgent alarms before it momentarily ceased recording, then resumed using an auxiliary power source. This backup power was insufficient and inadequate for the crew to regain control of the Dali.

31. At around 1:24 AM, the Dali experienced a sudden loss of power. Without power, the vessel was adrift and gliding at about seven knots per hour, with inadequate steering capabilities, headed towards the Key Bridge.

32. It is also believed that the vessel's emergency diesel generator either failed to activate or did not provide sufficient emergency power to prevent the vessel from alluding with the bridge.

33. At about 1:28 AM, the Dali collided with the Key Bridge, leading to the immediate structural failure and collapse into the harbor below.

34. The catastrophic allision resulted in the deaths of six individuals and has caused nearly all commercial maritime traffic to and from the Port of Baltimore to cease.

**C.    The Key Bridge Allision Was a Direct and Proximate Cause of Petitioner's Negligence**

35. Up until March 26, 2024, the Key Bridge had not been struck by any vessel since 1980.

36. Petitioners' negligence is clear, and no blame could conceivably be placed on Claimant for the allision.

37. Instead, the allision with the Key Bridge was foreseeable, avoidable, and a direct and proximate result of Petitioners' carelessness, negligence, gross negligence, and recklessness, coupled with the unseaworthiness of the Dali.

38. Among their other acts and omissions, and on information and belief, Petitioners:

   a. Employed a crew that lacked attentiveness to their responsibilities;

   b. Allowed a crew that did not adhere to local navigational norms and customs;

   c. Engaged a crew that navigated the vessel improperly;

   d. Employed a crew deficient in the necessary skills;

   e. Employed a crew deficient in the necessary training;

   f. Failed to adequately staff the vessel;

   g. Mismanaged the vessel and its crew;

   h. Neglected to equip the vessel with suitable policies and procedures;

   i. Neglected to implement adequate policies, procedures, and training for safe vessel operation;

    j.  Failed to oversee their fleet adequately to ensure safe operations;

    k.  Utilized a vessel equipped with unfit systems and equipment;

    l.  Neglected proper maintenance of the vessel;

    m.  Failed to maintain or utilize the vessel's systems and equipment properly;

    n.  Failed to maintain or utilize the vessel's engine adequately;

    o.  Failed to maintain or utilize the vessel's propulsion system adequately;

    p.  Failed to maintain or utilize the vessel's steering system adequately;

    q.  Failed to equip the vessel adequately;

    r.  Failed to provide a functioning engine;

    s.  Failed to provide an engine suitable for the vessel's intended use;

    t.  Failed to address known or foreseeable hazards promptly;

    u.  Failed to rectify known or foreseeable deficiencies promptly;

    v.  Failed to conduct necessary inspections of the vessel;

    w.  Failed to adhere to industry standards, customs, and practices.

39. The allision was a consequence of these and other failures, acts, or omissions by the Petitioners and the vessel, which may be further demonstrated at trial.

**D.**    **Economic Impact of the Destruction of the Key on Underwood Energy Inc.'s Business**

40. Since the catastrophic allision, commercial activities in and around Baltimore are strained. It may take years before the area may fully recover.

41. Among the impacted businesses, is that of Claimant. Underwood Energy Inc., based in Baltimore, offers comprehensive energy solutions, including but not limited to the transportation of propane and other hazardous materials for residential and commercial use.

42. Pursuant to Tunnel Restrictions, Md. Code Regs. §11.07.01.04, which prohibits certain classes of hazardous materials from being transported through any tunnel ("Tunnel Restriction"), Underwood Energy is prohibited from transporting propane and other hazardous materials through any tunnels.

43. Prior to the collapse of the Key Bridge, and pursuant to the Tunnel Restriction, Underwood Energy would transport and distribute propane and other hazardous materials to its customers by crossing over the Key Bridge.

44. An estimated 1.3 million trucks cross the Key Bridge per year—about 3,600 trucks per day (*CBS News*).

45. As a result of the casualty caused by the Dali, trucks that transport hazardous materials, such as those owned and operated by Underwood Energy, now must make a 30-mile detour to cross the Patapsco River, since use of the Baltimore Harbor Tunnel and Fort McHenry Tunnel are prohibited by trucking companies that transport hazardous materials.

46. Underwood Energy has suffered and will continue to suffer damages in the form of lost profits and lost business as a result of the Key Bridge collapse attributable to the allision caused by Petitioners.

47. The losses incurred by Claimant were a foreseeable consequence of the Petitioners' negligence, given their failure to ensure the seaworthiness of the vessel that ultimately led to the destruction of the Key Bridge.

48. Petitioners' negligence not only led to the physical destruction of the Key Bridge, but also triggered a broad-scale economic shutdown in Baltimore that will severely impact local business like Claimants, whose business survival and success relied on the infrastructure and

legal system built by our nation to ensure safe passage of essential hazardous materials that many civilians rely upon.

49. It is imperative that the Petitioners be held accountable for their actions, which continue to have devastating and lasting impacts on the surrounding community and businesses like Claimant's.

## REQUEST FOR RELIEF

**WHEREFORE,** Claimant, Underwood Energy Inc., prays for judgment against Petitioners, GRACE OCEAN PRIVATE LIMITED and SYNERGY MARINE PTE LTD, as follows:

a. The full amount of Claimant's damages as may be proven at trial;

b. Cost of suit;

c. Attorneys' Fees

d. Pre-judgment and post-judgment interest as allowed by law;

e. Injunctive relief;

f. Punitive damages; and

g. All other relief that this Court deems just and proper.

Dated: August 27, 2024

Respectfully submitted,

*Bryan Short*
_____
Bryan Short (MD Bar 2008050008)
Effectus, PLLC
800 Connecticut Ave., NW Suite 300
Washington, DC 20006
(202) 888-2107

bryanshort@effectus.legal
*Counsel for Underwood Energy Inc.*

## CERTIFICATE OF SERVICE

In compliance with Supplemental Federal Rule F(5), I HEREBY CERTIFY that on this 27th day of August, 2024, I electronically filed the foregoing pleading with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel who are CM/ECF participants.

Respectfully submitted,

*Bryan Short*
Bryan Short (MD Bar 2008050008)
Effectus, PLLC
800 Connecticut Ave., NW Suite 300
Washington, DC 20006
(202) 888-2107
bryanshort@effectus.legal
*Counsel for Underwood Energy Inc.*