UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| In the Matter of the Petition<br><br>of<br><br>GRACE OCEAN PRIVATE LIMITED, as Owner of the M/V DALI,<br><br>and<br><br>SYNERGY MARINE PTE, LTD, as Manager of the M/V DALI,<br><br>for Exoneration from or Limitation of Liability | Docket No. JKB 1:24-cv-941<br><br>*IN ADMIRALTY* |

**BRAWNER BUILDERS, INC.'S CLAIM PURSUANT TO SUPPLEMENTAL FEDERAL RULE F(5) IN RELATION TO THE KEY BRIDGE ALLISION**

Specifically reserving all rights and defenses asserted in Claimant's accompanying Answer to the Petitioners' "Petition for Exoneration from or Limitation of Liability," Claimant, Brawner Builders, Inc. ("Brawner"), hereby demands a jury trial and makes this claim pursuant to Rule F(5) of the Supplemental Rules for Admiralty or Maritime Claims against Petitioners, Grace Ocean Private Limited And Synergy Marine PTE LTD., as alleged owner and manager of the vessel M/V Dali (the "Dali") and in support thereof avers as follows:

**INTRODUCTION**

1. There was no inclement weather, visual obstructions, or any indication of an impending disaster when, at 12:45 AM EDT, on March 26, 2024, the container ship Dali left the Port of Baltimore and began traveling toward the Chesapeake Bay.

2. The path the Dali had planned – down the Patapsco River, under the Francis Scott Key Bridge (the "Key Bridge") and into the Chesapeake Bay - was one that container ships similar to the Dali had taken without incident.

3. Initial reports from the National Transportation Safety Board ("NTSB") indicate that approximately 1:24 AM EDT, the Dali's onboard data recorder (the "black box") captured "numerous aural alarms."

4. Video captured the moments leading up to the Dali's allision with the Key Bridge.

5. At approximately 1:28 AM EDT, the Dali allided with the Key Bridge causing its immediate collapse, killing at least six individuals and injuring one individual, all of whom were employees of Brawner, who had been performing maintenance work on the surface of the bridge and damaging property of Brawner.

6. This tragedy was preventable. Grace Ocean Private Limited and Synergy Marine PTE, Ltd.'s actions and decision to put an unseaworthy vessel into the water led to the collapse of the Key Bridge and deaths of the Brawner employees, and damaging the property of Brawner.

7. These actions were negligent, careless, and potentially grossly negligent and reckless.

**PARTIES**

8. Brawner makes a claim for certain forms of damages as set forth below.

9. Brawner is a corporation organized and existing under the laws of Maryland with its principal office located at 11011 McCormick Road, Suite 300, Hunt Valley, Baltimore County, Maryland.

10. Upon information and belief, Petitioner, Grace Ocean Private Limited ("Grace"), is a corporation organized and existing under the laws of Singapore with its registered office in Singapore, and was the registered owner of the M/V DALI (the "Dali" or the "Vessel") at all times relevant hereto.

11.     Upon information and belief, Petitioner, Synergy Marine PTE, Ltd. ("Synergy"), is a corporation organized and existing under the laws of Singapore with its registered office in Singapore, and was the manager of the Vessel. Upon information and belief, Synergy was responsible for, among other things, manning and provisioning the Vessel; procuring and providing deck, engine, and cabin stores; maintenance and repairs for the Vessel; and communicating with Owner and the Vessel's time charterers at all times relevant hereto.

## JURISDICTION AND VENUE

12.     The incident that gave rise to this claim occurred upon the navigable waters of the United States within the territorial waters of the State of Maryland, had an actual and potential impact on maritime commerce, involved a traditional maritime activity, and is subject to admiralty tort jurisdiction pursuant to Fed. R. Civ. P. 9(h).

13.     This action is within the Court's admiralty and maritime jurisdiction, pursuant to U.S. Constitution Article 3, Section 2, and 28 U.S.C. § 1333, and is brought pursuant to the Supplemental Rules for Admiralty and Maritime Claims.

14.     In addition, this action is within this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332, because the parties are in complete diversity, and the amount in controversy is in excess of $75,000.

15.     Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this district, and a substantial part of property that is the subject of the action is situated in this district.

## FACTUAL ALLEGATIONS

16.     In order to perform required maintenance and repairs, the Maryland Department of Transportation, engaged Brawner to perform work.

17. In the early morning hours of March 26, 2024, seven Brawner employees and an inspector employed by Eborn Enterprises, Inc., were on the Key Bridge performing road maintenance work.

18. Upon information and belief, at approximately 12:45 AM EDT on March 26, 2024, the Dali was undocked at the Port of Baltimore beginning its voyage to Sri Lanka where it was scheduled to arrive on April 22, 2024.

19. At approximately 1:28 AM EDT, the Dali struck the bridge, causing the bridge to immediately collapse into the harbor. Six individuals, all employees of Brawner, were killed and all traffic into and out of the Port of Baltimore ceased.

20. Additionally, all equipment owned, rented, and/or leased by Brawner for the repairs and/or maintenance being completed on the bridge at the time of its collapse was destroyed when it fell into the Patapsco River.

21. Petitioners' negligence is readily apparent, and no blame could conceivably be placed on any other party for the allision. Instead, the allision was a direct and proximate result of Petitioners' carelessness, negligence, gross negligence, and/or recklessness, and as a result of the unseaworthiness of the Vessel.

22. Among other acts and omissions, and on information and belief, Petitioners' carelessness, negligence, gross negligence and/or recklessness consisted of the following:

    a. Providing the Vessel with an incompetent crew that was inattentive to its duties;

    b. Providing the Vessel with a crew that failed to comply with local navigation customs and/or usage;

    c. Proving the Vessel with a crew that improperly navigated the Vessel prior to alliding with the Key Bridge;

4

    d.       Providing the Vessel with a crew that lacked proper skill;

    e.       Providing the Vessel with a crew that lacked proper training;

    f.       Otherwise failing to properly man the Vessel;

    g.       Failing to properly manage the Vessel and/or her crew;

    h.       Failing to provide the Vessel with adequate policies and procedures;

    i.       Failing to implement policies, procedures, and training to ensure the safe operation of the Vessel;

    j.       Failing to properly oversee their fleet to ensure that the Vessel was being operated in accordance with company policies and procedures, principles of good seamanship, and in accordance with all applicable laws and regulations;

    k.       Providing a vessel with unseaworthy equipment, systems, and appurtenances;

    l.       Failing to properly maintain the Vessel in a reasonable manner, specifically including, but necessarily limited to, its electrical system;

    m.       Failing to properly maintain and/or use the Vessel's systems and appurtenances;

    n.       Failing to properly maintain and/or use the Vessel's engine;

    o.       Failing to properly maintain and/or use the Vessel's propulsion system;

    p.       Failed to properly maintain and/or use the Vessel's steering system;

    q.       Failing to properly maintain and/or use the Vessel's electrical system;

    r.       Failing to properly equip the Vessel;

    s.       Failing to equip the Vessel with a properly functioning engine;

    t.       Failing to equip the Vessel with an engine that was suitable and reasonably fit for its intended use;

    u.       Failing to equip the Vessel with a properly functioning electrical system;

   v.  Failing to timely eliminate known or knowable risks;

   w.  Failing to timely rectify known or knowable deficiencies;

   x.  Failing to inspect the Vessel; and/or

   y.  Failing to comply with industry standards, customs and practices.

23. The allision was the result of these, and other failures, acts, or omissions of Petitioners and of the Vessel which may be shown at trial.

24. As a result of the collapse, the invaluable lives of six innocent men were lost, and one was injured.

25. In addition to losing the invaluable lives of its employees, Brawner lost equipment and vehicles which was being used for the repairs and maintenance being performed on the Key Bridge at the time of its collapse.

26. Through this Claim, Brawner is seeking to recover for the financial consequences of the allision, including the financial impacts from the loss of six beloved employees and the injuries to one beloved employee, the loss of multiple vehicles, the loss of various equipment additions to the vehicles, and the loss of other equipment and tools that fell from the Key Bridge due to the allision.

27. Brawner is seeking ongoing costs for storage of the vehicles and equipment.

28. Brawner is seeking recovery of lost profits and the effects of business disruptions caused by loss of the aforementioned employees, trucks, and equipment.

29. The aforementioned damages and/or losses are a direct result of Petitioners' carelessness, negligence, gross negligence, and/or recklessness.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Claimant, Brawner Builders, Inc., prays for judgment against Petitioners, Grace Ocean Private Limited and Synergy Marine PTE, Ltd as follows:

    a.    That the full amount of Claimant's damages to be proven at trial;

    b.    Costs of suit;

    c.    Attorney's fees;

    d.    Pre-judgment and post-judgment interest as allowed by law;

    e.    All other relief that this Court deems just and proper.

**POST & SCHELL, P.C.**

**Dated:** 9/18/24

*/s/ Andrew J. Connolly*
_____
Andrew J. Connolly, Esquire (20882)
Colin E. Burgess, Esquire (20665)
Post & Schell, P.C.
Three Logan Square
1717 Arch Street, 24th Floor
Philadelphia, PA 19103
Tel.: 215-587-1000
Fax: 215-587-1444
aconnolly@postschell.com
cburgess@postschell.com

**CERTIFICATE OF SERVICE**

In compliance with Rule 5 of the Federal Rules of Civil Procedure, I HEREBY CERTIFY that on the 18th day of September, 2024, I electronically filed the foregoing pleading with the Clerk of Court by using the CMF/ECF system which will send a notice of electronic filing to all counsel who are CM/ECF participants.

*Andrew J Connolly*

_____
Andrew J. Connolly, Esquire (20882)