<pre>
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF MARYLAND
                         NORTHERN DIVISION
</pre>

| | |
|---|---|
| In the Matter of the Petition<br><br>of<br><br>**GRACE OCEAN PRIVATE LIMITED, as Owner of the M/V DALI,**<br><br>and<br><br>**SYNERGY MARINE PTE LTD, as Manager of the M/V DALI,**<br><br>for Exoneration from or Limitation of Liability | Docket No. JKB 24-cv-941<br><br>IN ADMIRALTY |

### CLAIM AND ANSWER BY FORNAZOR INTERNATIONAL, INC. TO THE PETITION FOR EXONERATION FROM OR LIMITATION OF LIABILITY

Claimant, FORNAZOR INTERNATIONAL INC. ("FORNAZOR"), through undersigned counsel, contests the right of GRACE OCEAN PRIVATE LIMITED (the "Owner") and SYNERGY MARINE PTE LTD (the "Manager"), as owner and manager of the vessel M/V DALI, to exonerate or limit their liability. Claimant FORNAZOR files this Answer and Claim in accordance with the provisions of Rule F(5) of the Supplemental Rules for Admiralty or Maritime Claims, Local Admiralty Rule (f) of the United States District Court for the District of Maryland, and this Court's Notice to Claimants (ECF No. 9). Claimant denies that the Owner and Manager are entitled to the requested relief, and, in support thereof, FORNAZOR avers as follows:

## ANSWER TO THE PETITION

1. Claimant FORNAZOR admits the allegations of paragraphs 1 and 2.

2. Claimant FORNAZOR is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraphs 3, 4, and 5 and therefore denies same.

3. With respect to the allegations set forth in Paragraph 6, Claimant FORNAZOR admits that the Francis Scott Key Bridge ("Key Bridge") was a 1.6 mile span over the Patapsco River at the outer crossing of the Baltimore Harbor, and that the Key Bridge was completed in 1977 and made up part of Interstate 695, also known as the Baltimore Beltway. Claimant denies and disputes the remaining allegations set forth in Paragraph 6.

4. Claimant FORNAZOR lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraphs 7, 8, and 9 and therefore denies same.

5. Claimant FORNAZOR admits the allegations of Paragraphs 10, 11, and 12.

6. Claimant FORNAZOR denies the allegations of Paragraphs 13 and 14.

7. Claimant FORNAZOR is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraphs 15, 16, 17, 18, and 19 and therefore denies same.

8. With respect to the allegations set forth in Paragraph 20, Claimant admits that Petitioners have offered an Interim Stipulation of Value in the amount of $43,670,000 and that this Interim Stipulation is substantially less than the amount that will be claimed for losses and damages arising out of the M/V DALI's allision with the Key Bridge. Claimant currently lacks sufficient information to form a belief about the remaining allegations in Paragraph 20 and, on that basis, denies those allegations.

9. Claimant FORNAZOR lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 21 and therefore denies same.

10. Claimant FORNAZOR admits the allegations of Paragraph 22.

11. Claimant FORNAZOR denies the allegations of Paragraphs 23 and 24.

## FIRST DEFENSE

M/V DALI was unseaworthy upon leaving the dock in Baltimore, Maryland, on this fateful voyage in that it had unresolved electrical problems affecting the switches supplying electricity to the engine, without which it cannot run.

## SECOND DEFENSE

Petitioners are not entitled to limit their liability in the instant case because Petitioners and the owners, managing owners, owners *pro hac vice,* charterers, and/or operators of the M/V DALI did not use due diligence to make the vessel seaworthy at the outset of the voyage on which the subject casualty occurred.

## THIRD DEFENSE

Claimant reserves the right to challenge Petitioners' alleged value of the M/V DALI, her engines, apparel, appurtenances, pending freight, and any other assets described or whose existence is implied in the Petition, and the adequacy of the security posted.

## FOURTH DEFENSE

The limitation fund is inadequate and the Petition for Exoneration from Limitation of Liability should be dismissed because Petitioners have failed to deposit adequate security for the Vessel.

## FIFTH DEFENSE

Petitioners are not entitled to limit their liability in the instant case because, at all times relevant to this litigation, the M/V DALI was operated in a willful, wanton, and reckless

manner or, in the alternative, the conduct and actions which led to Claimant's damages and losses took place with the privity and knowledge of Petitioners and the owners, managing owners, owners *pro hac vice,* and/or operators of the M/V DALI.

**WHEREFORE,** Claimant FORNAZOR International Inc. requests that this Court deny Petitioners' petition for exoneration from or limitation of liability, in its entirety and find Petitioners jointly and severally liable for all damages arising from the allision of the M/V DALI into the Key Bridge on March 26, 2024, including all claims of Claimant FORNAZOR.

## CLAIM OF FORNAZOR INTERNATIONAL LTD

COMES NOW Claimant FORNAZOR INTERNATIONAL INC. ("FORNAZOR") and for its claim alleges the following:

1. At 12:45 a.m. EST, on March 26, 2024, the container ship M/V DALI left its dock in the Port of Baltimore and began sailing toward the Chesapeake Bay.

2. Weather conditions were suitable for sailing, with no high winds or visual obstructions in sight that would tend to show a disaster was imminent.

3. The M/V DALI was supposed to sail down the Patapsco River, pass under the 1.6 mile area of the Francis Scott Key Bridge ("Key Bridge"), and sail out to the Chesapeake Bay.

4. This route was one that thousands of large container ships similar to the M/V DALI had sailed without incident.

5. Prior to March 26, 2024, no allision incidents with Key Bridge had occurred in over 40 years.

6. Approximately twelve (12) minutes after the M/V DALI departed from its berth, it began to make a large arc, turning towards Key Bridge.

7. At approximately 1:24 a.m. EST, M/V DALI's onboard data recorder recorded audio indicating numerous auditory alarms. The data recorder stopped recording briefly and then resumed recording again using M/V DALI's redundant power source.

8. At approximately 1:25 a.m. EST, M/V DALI lost power minutes after leaving its berth while travelling towards Key Bridge at approximately seven (7) knots per hour, leaving it with insufficient power to steer the ship.

9. At approximately 1:28 a.m. EST, the M/V DALI crashed into the Key Bridge (the "Key Bridge Allison"), immediately causing its collapse, killing at least six individuals, and destroying cargo onboard the ship.

10. Alarms indicating an inconsistent power supply on the M/V DALI sounded well before M/V DALI left its dock.

11. M/V DALI and its operators were aware of the ongoing power supply issues and negligently left its dock despite the ship's unseaworthy condition.

12. Petitioners Grace Ocean Private Limited ("GRACE") and Synergy Marine Pte Ltd ("SYNERGY") (collectively, "Petitioners") allowed an unseaworthy vessel to sail into open waters with no foresight or consideration for its actions.

13. Petitioners failed to exercise due diligence in rooting out the cause of previous electrical issues experienced while sitting at the dock and were negligent in allowing the vessel to leave its berth.

**PARTIES**

14. FORNAZOR is a domestic for profit corporation formed and existing under the laws of the State of New Jersey and is an exporter of soy products and had twenty four containers of soy product on the M/V DALI when it struck Key Bridge.

15. GRACE claims to be a corporation organized and existing under the laws of Singapore with its registered office in Singapore and was the registered owner of the M/V DALI at all times relevant hereto.

16. SYNERGY claims to be a corporation organized and existing under the laws of Singapore with its registered office in Singapore and was the manager of the Vessel.

17. Upon information and belief, SYNERGY was responsible for, among other things, manning the ship and its reserves and procuring and providing maintenance and repairs to the ship.

**JURISDICTION AND VENUE**

18. The Key Bridge Allision occurred within the navigable waters of the United States and within the territorial waters of the State of Maryland. The incident had an actual and potential impact on maritime commerce, involves a traditional maritime activity, and is subject to admiralty tort jurisdiction, pursuant to Fed. R. Civ. P. 9(h).

19. This action is within the Court's admiralty and maritime jurisdiction, pursuant to U.S. Constitution Article 3, Sec. 2, and 28 U.S.C. §1333, and is brought pursuant to the Supplemental Rules for Admiralty and Maritime Claims.

20. In addition, this claim is within the Court's diversity jurisdiction pursuant to 28 U.S.C. §1332(a) and (b), because the parties are in complete diversity, and the amount in controversy exceeds $75,000.

21. Venue is appropriate in this district pursuant to 28 U.S.C. §1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this district, and a substantial part of the property that is the subject of the action, include the vessel itself (the M/V DALI), is situated in this district.

# FACTUAL ALLEGATIONS

22. Properly permitted and built between 1972 and 1977, the Key Bridge was designed to alleviate significant traffic flow in and out of Baltimore City and to facilitate the transport of "hazardous materials," the transportation of which was prohibited in the existing tunnel crossings prior to the bridge's construction.

23. Since its erection, the Key Bridge has stood for forty-seven years.

24. At around 12:45 a.m. EST on March 26, 2024, the M/V DALI cast off from the Port of Baltimore, bound for Sri Lanka and expected to arrive on April 22, 2024.

25. In the hours leading up to the M/V DALI's departure, alarms on the M/V DALI'S refrigerated containers were reported, indicating erratic and unstable power supply issues.

26. These power supply concerns were either overlooked, ignored, or insufficiently addressed.

27. About twelve minutes after the M/V DALI's cast off, the M/V DALI initiated a turn towards Key Bridge. Subsequent reports note that around 1:24 a.m. EST, the ship's onboard data recorder captured multiple urgent alarms before it momentarily ceased recording, then resumed using an auxiliary power source. This backup power was insufficient and inadequate for the crew to regain control of the M/V DALI.

28. At around 1:24 a.m. EST, the M/V DALI experienced a sudden loss of power. Without power, the vessel was adrift and gliding at about seven knots per hour, with inadequate steering capabilities, headed towards the Key Bridge.

29. It is also believed that the vessel's emergency diesel generator either failed to activate or did not provide sufficient emergency power to prevent the vessel from alliding with the bridge.

30. At about 1:28 a.m. EST, the M/V DALI collided with the Key Bridge, leading to the immediate structural failure and collapse into the harbor below.

31. The catastrophic allision resulted in the deaths of six individuals and damaged the cargo on the ship.

32. Petitioners' negligence is clear, and no blame could conceivably be placed on Claimant for the allision.

33. Instead, the allision with the Key Bridge was foreseeable, avoidable, and a direct and proximate result of Petitioners' carelessness, negligence, gross negligence, and recklessness, coupled with the unseaworthiness of the M/V DALI.

34. Among their other acts and omissions, and on information and belief, Petitioners:

    a. Mismanaged the vessel and its crew;

    b. Neglected to equip the vessel with suitable policies and procedures;

    c. Neglected to implement adequate policies, procedures, and training for safe vessel operation;

    d. Failed to exercise due diligence in maintaining the seaworthiness of the vessel upon departure from its berth.

    e. Failed to oversee their fleet adequately to ensure safe operations;

    f. Utilized a vessel equipped with unfit systems and equipment;

    g. Neglected proper maintenance of the vessel;

    h. Failed to address known or foreseeable hazards promptly;

    i. Failed to rectify known or foreseeable deficiencies promptly;

    j. Failed to conduct necessary inspections of the vessel;

    k. Failed to adhere to industry standards, customs, and practices.

35. The allision was a consequence of these and other failures, acts, or omissions by the Petitioners and the vessel, which may be further demonstrated at trial.

36. As a result of the casualty caused by the M/V DALI, nine of FORNAZOR's containers of soy product carried on that ship were destroyed. A total of 224.04 Metric Tons of soy product was destroyed at a cost of $539 per Metric Ton for a total of $120,757.56.

37. The loss incurred by FORNAZOR was a foreseeable consequence of the Petitioners' negligence, given their failure to ensure the seaworthiness of the vessel that ultimately led to the destruction of the Key Bridge and the ship's cargo.

## REQUEST FOR RELIEF

**WHEREFORE**, Claimant FORNAZOR INTERNATIONAL INC. prays for judgment against Petitioners, GRACE OCEAN PRIVATE LIMITED and SYNERGY MARINE PTE LTD in the amount of $120,757.56, plus costs attorneys' fees, and pre-judgment and post-judgment interest as allowed by law and all other relief that this Court deems just and proper.

Dated: September 23, 2024  Respectfully submitted,

**FORNAZOR INTERNATIONAL INC.**

By: */s/ Randy C. Sparks, Jr.*
    Of Counsel

Randy C. Sparks, Jr. (MD Fed. Bar No. 06648)
KAUFMAN & CANOLES, P.C.
Two James Center
1021 East Cary Street, Suite 1400
Richmond, VA 23219
Telephone: (804) 771-5709
Facsimile: (888) 360-9092
Email: rcsparks@kaufcan.com

and

John M. Bredehoft (MD Fed. Bar No. 04043)
KAUFMAN & CANOLES, P.C.
150 W. Main Street
Suite 2100
Norfolk, VA 23510
Telephone: (757) 624-3225
Facsimile:  (888) 360-9092
Email:  jmbredehoft@kaufcan.com

*Counsel for Fornazor International Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of September 2024, I filed the above Answer and Claim to the Limitation Action with the U.S. District Court for the District of Maryland, which will give notice to all other parties who have filed in this matter. Also this is to certify that I have served a copy of this claim and answer on Counsel for Petitioner's by sending a copy by U.S. mail postage prepaid to:

DUANE MORRIS, LLP
Robert B. Hopkins
Email: rbhopkins@duanemorris.com
Laurie G. Furshman
Email: Lgfurshman@duanemorris.com
100 International Drive, Suite 700
Baltimore, MD 21202
Telephone: (410) 949-2900

And

BLANK ROME, LLP
William R. Bennett, III
Email: William.Bennett@blankrome.com
Thomas H. Belknap
Email: Thomas.Belknap@blankrome.com
Kierstan L. Carlson
Email: Kierstan.Carlson@blankrome.com
1825 Eye St. NW
Washington, D.C. 20006
Telephone: (202) 420-2200

      /s/ Randy C. Sparks, Jr.
Randy C. Sparks, Jr. (MD Fed. Bar No. 06648)
KAUFMAN & CANOLES, P.C.
Two James Center
1021 East Cary Street, Suite 1400
Richmond, VA 23129
Telephone: (804) 771-5700
Facsimile: (888) 360-9092
Email: rcsparks@kaufcan.com
*Counsel for Fornazor International Inc.*