UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| In the Matter of the Petition<br><br>of<br><br>GRACE OCEAN PRIVATE LIMITED, as Owner of the M/V DALI,<br><br>and<br><br>SYNERGY MARINE PTE LTD, as Manager Of the M/V DALI,<br><br>For Exoneration from or Limitation of Liability | Civil Action No. 1:24 cv. 00941- JKB |

**STAR BULK (SINGAPORE) PTE. LTD'S CLAIM
PURSUANT TO SUPPLEMENTAL FEDERAL RULE F(5)
IN RELATION TO THE KEY BRIDGE ALLISION**

Claimant STAR BULK (SINGAPORE) PTE. LTD ("Star Bulk"), by and through its undersigned attorneys and pursuant to Rule F(5) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, respectfully contests the Petitioner's right to exoneration from or limitation of liability and submits this claim against GRACE OCEAN PRIVATE LIMITED ("Grace Ocean") as owner and SYNERGY MARINE PTE LTD ("Synergy Marine" and, together, the "Petitioners") as manager of M/V DALI (the "DALI"), and alleges upon information and belief as follows:

**JURISDICTION AND VENUE**

1. The Court has admiralty and subject matter jurisdiction pursuant to 28 U.S.C. § 1333, and this is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Rule F(9) of the Supplemental Rule for Admiralty or Maritime Claims and Asset Forfeiture Actions.

## PARTIES

3.      Claimant Star Bulk is a company organized and existing under the laws of Singapore and was the disponent owner of M/V STAR TRIUMPH (the "STAR TRIUMPH").

4.      Petitioner Grace Ocean is a company organized and existing under the laws of Singapore and was the owner of the DALI.

5.      Petitioner Synergy Marine is a company organized and existing under the laws of Singapore and was the manager of the DALI.

6.      Petitioners are subject to the Court's personal jurisdiction as a result of having filed a *Petition for Exoneration From or Limitation of Liability* (the "*Petition*") (Docket No. 1) in this Court.

## DALI'S CASUALTY

7.      On March 26, 2024, the DALI departed Baltimore.

8.      On March 26, 2024, while transiting the Fort McHenry Channel, the DALI lost power and allided with the Francis Scott Key Bridge ("Key Bridge").

9.      As a result of the Casualty, the DALI, which had grounded, and portions of the Key Bridge, which had collapsed, blocked the Fort McHenry Channel.

10.     Upon information and belief, the Casualty was caused by:

   a.   The DALI's longstanding problems with excessive vibrations, which damaged numerous engineering systems including critical electrical systems in both the engine control and transformer rooms;

  b.  The failure of the DALI's crew to inform the United States Coast Guard and the Maryland pilots about the DALI's electrical problems, as required by applicable laws and regulations;

  c.  The failure of the DALI's crew to use the "automatic" control mode on the step-down transformers, which had been the crew's longstanding but improper practice;

  d.  The failure of the DALI's emergency generator to provide emergency power within 45 seconds, as required by applicable laws and regulations;

  e.  The DALI's use of a flushing and pneumatic pumps to supply fuel to its auxiliary engines, instead of proper supply and booster pumps;

  f.  The DALI's failure to have its anchors ready for immediate release, as required by applicable laws and regulations;

  g.  The DALI's failure to have its bow thrusters available for maneuvering, which is custom and practice within the industry;

  h.  The Petitioners' failure to properly man, equip, inspect, maintain, repair, and operate the DALI in a safe and seaworthy condition; and

  i.  Other factors to be discovered and proven at trial.

11. Upon information and belief, the Petitioners knew or should have known about the causes of the Casualty.

12. Upon information and belief, the Casualty was caused by the Petitioners' acts, omissions, faults, lack of due care, negligence, recklessness, and gross negligence, repeated breaches and violations of duties, laws, regulations, and customs, and the DALI's unseaworthy condition, all of which were known or should have been known by Petitioners.

**STAR TRIUMPH**

13. Prior to the DALI's allision, the STAR TRIUMPH had been chartered by a non-claimant to carry a cargo of coal from Baltimore to India.

14. The STAR TRIUMPH arrived in Baltimore on March 24, 2024.

15. However, as a result of the DALI's casualty on March 26, 2024, the STAR TRIUMPH was unable to reach the load berth within Baltimore Harbor, and its charterers declared *force majeure*, refused to count the ship's waiting at the anchorage as laytime, and refused to pay demurrage.

16. As a result of the Casualty, the STAR TRIUMPH's earning capacity was impaired and Star Bulk lost profits, because the vessel could not enter Baltimore Harbor.

17. Star Bulk's losses resulted directly from the Petitioners' wrongful conduct.

18. Based on information presently known, Star Bulk suffered damages of at least $756,402.78 plus fees, costs, expenses, and interest.

**COUNT I: NEGLIGENCE**

19. Paragraphs 1-18 are incorporated herein as if set forth in full.

20. Under general maritime law, the Petitioners had a legal duty to properly man, equip, inspect, maintain, repair, and operate the DALI in a safe and seaworthy condition.

21. Upon information and belief, the Petitioners failed to properly man, equip, inspect, maintain, repair, and operate the DALI in a safe and seaworthy condition.

22. Under general maritime law, a moving vessel, like the DALI, that allides with a stationary object, like the Key Bridge, is presumed to be negligent. *The Oregon*, 158 U.S. 186 (1895).

23. Under general maritime law, a vessel that violates applicable laws and regulations, like the DALI, is presumed to be negligent. *The Pennsylvania*, 86 U.S. 125 (1874).

24. Operators of vessels in a confined harbor, like Baltimore Harbor, with only one means of access by way of a narrow channel, like the Fort McHenry Channel, have a special relationship with the waterway and may reasonably assume that other vessels using the same waterway will obey all laws, regulations, and good maritime practices applicable to and standard in the maritime industry to avoid causing casualties that might block or impede the channel.

25. By virtue of the fact that Petitioners knew or should have known of the DALI's unseaworthy conditions, the Petitioners knew or should have known, and it was reasonably foreseeable, that as a direct result of their acts, omissions, faults, lack of due care, negligence, recklessness, and gross negligence, and their repeated breaches and violations of duties, laws, regulations, and customs, that the DALI would experience power failure and loss of maneuverability, causing the vessel to block the Fort McHenry Channel.

26. By virtue of the fact that the DALI was a massive ship longer than the Fort McHenry Channel was wide, the Petitioners knew or should have known, and it was reasonably foreseeable, that the DALI would, for the reasons aforesaid, including the wrongful and illegal conduct of the vessel's owners, managers, master, and crew, experience power failure and loss of maneuverability, causing the vessel to suffer a casualty resulting in the vessel, and any other vessel or structure involved a collision or allision, blocking navigable waters such as the Fort McHenry Channel.

27. By virtue of the fact that the Fort McHenry Channel provides the only entrance and exit to Baltimore Harbor, it was reasonably foreseeable that the DALI would, for the reasons aforesaid, including the wrongful and illegal conduct of the vessel's owners, managers, master,

and crew, experience a power failure and loss of control of the vessel, suffer a casualty resulting in closure of the Fort McHenry Channel, and block commercial vessels such as the STAR TRIUMPH from entering Baltimore Harbor.

28. The illegal and wrongful conduct of the owners, manager, master, and crew of the DALI, as aforesaid, resulting in the reasonably foreseeable closure of the Fort McHenry Channel, thereby blocking the STAR TRIUMPH from entering Baltimore Harbor, directly caused foreseeable damages to Star Bulk.

29. Petitioners were negligent and, therefore, are liable to Star Bulk for loss of use of the STAR TRIUMPH, other fees, costs, and expenses of the vessel's inability to enter Baltimore Harbor, and lost profits due to the vessel's impaired earning capacity.

## COUNT II: THE OIL POLLUTION ACT

30. Paragraphs 1-29 are incorporated herein as if set forth in full.

31. Upon information and belief, the DALI discharged oil into navigable waters, because first responders observed an oily sheen around the vessel.

32. Upon information and belief, the DALI posed a substantial threat of a discharge of oil into navigable waters, because it carried 1.8 million gallons of oil, and it grounded above a natural gas pipeline.

33. Upon information and belief, the United States Coast Guard determined that the DALI discharged oil into navigable waters and/or posed a substantial threat of the discharge of oil into navigable waters, established a unified command to address oil pollution, drew funding for its response and removal costs from the Oil Spill Liability Trust Fund, designated Petitioners as responsible parties, and ordered Petitioners to place booms around the DALI.

34. Under the Oil Pollution Act, 33 U.S.C. §§ 2700 *et seq.*, a party responsible for a vessel that discharges oil or poses a substantial threat of a discharge of oil into United States navigable waters is strictly liable for:

    a. "Damages for injury to, or economic losses resulting from destruction of, real or personal property, which shall be recoverable by a claimant who owns or leases that property";

    b. "Damages for loss of subsistence use of natural resources, which shall be recoverable by any claimant who so uses natural resources which have been injured, destroyed, or lost, without regard to the ownership or management of the resources"; and

    c. "Damages equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by any claimant."

35. Petitioners are the responsible parties and, therefore, are liable to Star Bulk for loss of use of the STAR TRIUMPH, other fees, costs, and expenses of the vessel's inability to enter Baltimore Harbor, and lost profits due to the vessel's impaired earning capacity.

## COUNT III: PUBLIC NUISANCE

36. Paragraphs 1-35 are incorporated herein as if set forth in full.

37. Petitioners' conduct created an unreasonable obstruction to navigation, blocking the use of the Fort McHenry Channel, and preventing the STAR TRIUMPH from entering Baltimore Harbor.

38. Petitioners created a public nuisance and, therefore, are liable to Star Bulk for loss of use of the STAR TRIUMPH, other fees, costs, and expenses of the vessel's inability to enter Baltimore Harbor, and lost profits due to the vessel's impaired earning capacity.

**WHEREFORE**, Star Bulk respectfully requests that this Court deny the *Petition for Exoneration From or Limitation of Liability* (Docket No. 1), enter judgment against Petitioners in the amount of at least $756,402.78 plus fees, costs, expenses, and interest, and grant such other and further relief as this Court may deem appropriate.

Dated: September 24, 2024
      Baltimore, Maryland

Respectfully submitted,

*/s/ David McI. Williams*
David McI. Williams (Bar # 00357)
Ashley L. Ensor (Bar # 19902)
GORMAN & WILLIAMS
36 South Charles Street, Suite 900
Baltimore, MD 21201
Tel.:    (410) 528-0600
Fax:    (410) 528-0602
Email:    dmwilliams@gw-law.com
           aensor@gw-law.com

and

Robert E. O'Connor (*of counsel*)
Alfred J. Kuffler (*of counsel*)
MONTGOMERY MCCRACKEN WALKER & RHOADS LLP
437 Madison Avenue
New York, New York 10022
Tel.:    (212) 867-9500
Email:    roconnor@mmwr.com
           akuffler@mmwr.com

*Attorneys for Star Bulk (Singapore) Pte. Ltd*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of September 2024, I electronically filed the foregoing with the Clerk of this Court by using the CM/ECF system which will send a notice of electronic filing to those who are on the list to receive e-mail notices for this case, have enrolled in this Court's CM/ECF program, and otherwise consented to receive notice and service via CM/ECF.

                                                              */s/ Ashley L. Ensor*
                                                              Ashley L. Ensor