# (MULTIMODAL) BILL OF LADING CONTRACT FOR CARRIAGE

---------------------------------------- **DEFINITIONS** ---------------------------------------

"Carrier" means Schumacher Cargo Logistics, Inc., on whose behalf this Bill of Lading has been issued as indicated on the face hereof, whether acting as carrier, bailee or agent.
"Carriage" means the whole or any part of the operations and services described by this document as undertaken by or on behalf of the Carrier in respect of the Goods.
"Container" means any container, trailer, transportable tank, flat rack, pallet, skid, drum or any similar article of transport.
"Dangerous or Hazardous Goods" means Goods classified, designated or described as dangerous by any statute, regulation, or the Dangerous Goods code issued by the International Maritime Organization and also includes any Goods which are or may be unstable or present a hazard or danger to the conveyance in which they are carried or to other property, goods or any person, whether or not the Goods are identified as dangerous by any authority.
"Goods" means any and all property (cargo) described on the face hereof or on an attached or referenced manifest, to specifically include live animals as well as containers, pallets or similar articles of transport or packaging not supplied by the Carrier, irrespective of whether such cargo is to be or is carried on or under deck.
"Merchant" means and includes the shipper, consignee, receiver, holder of this document, owner of the Goods, person entitled to the possession of the Goods, and any person, corporation, company or other legal entity having any interest in the Goods, or anyone acting on behalf of any such person or entity.
"Multi-Modal Transportation" means and refers to Carriage of Goods under this Bill of Lading which includes both Carriage by a Vessel and Carriage by one or more inland (surface) motor and/or rail carriers.
"Subcontractor" shall include all direct and indirect subcontractors of Carrier and their respective subcontractors, servants and agents, including vessel operators, motor and rail carriers, warehousemen, stevedores, and container freight stations.
"Vessel" means and includes the vessel set forth on the front page hereof, as well as any other vessel, ship, craft, lighter or other water conveyance used to perform the Carriage or upon which the Goods are loaded for any purpose.

**1. APPLICABILITY OF TERMS:**
These Terms and Conditions for Carriage shall apply to all modes of Carriage utilized to transport the Goods, and the Carrier's responsibility to the Merchant for the Goods shall terminate at the time of delivery under Clause 11. These Terms and Conditions of Carriage shall apply to all claims against the Carrier relating to the performance of the Carriage, whether the claim is founded in contract or in tort, including, but not limited to, claims for indemnity and contribution. In agreeing and accepting the terms of this document, the shipper acts for itself and for each Merchant and warrants it has authority of each Merchant to bind each Merchant to the terms of this document.

**2. ENTIRE AGREEMENT AND SEVERABILITY:**
2.1 In addition to the terms herein, Carriage of Goods is also subject to all of the terms and provisions of Carrier's tariffs on file or published or required to be filed or published, as the case may be, with or by the Federal Maritime Commission or other regulatory body that may govern particular portions of the Carriage. The relevant provisions of the applicable tariff(s) are publicly accessible and/or shall be provided by Carrier or its representatives upon request. In case of inconsistency between this document and any applicable tariff(s), this document shall prevail except as otherwise required by law.
2.2 This document and the incorporated tariff terms constitute the entire agreement of the parties. No servant or agent of Carrier shall have the power to terminate, waive or vary any term of this document unless such termination, waiver or variation is in writing and is specifically authorized or ratified in a writing signed by Carrier.
2.3 If any term herein is rendered unenforceable, such unenforceability shall attach only to the offending provision or part thereof and the remaining part of such provision and all other provisions herein shall continue in full force and effect.

**3. NEGOTIABILITY OF BILL OF LADING AND CARRIER'S RELEASE OF GOODS:**
3.1 This Bill of Lading shall be a negotiable document of title only if consigned "to order," or order of a named consignee. In all other circumstances, or in the event of ambiguity, this Bill of Lading shall be presumed to be non-negotiable.
3.2 If negotiable, an original bill of lading, properly endorsed, is required to be surrendered when the Goods are delivered. If the person receiving the Goods wishes to take delivery without surrender of an original endorsed bill of lading, and if Carrier agrees in its exclusive discretion to deliver the Goods without such surrender, the person receiving the Goods agrees to fully indemnify Carrier against all damages and liabilities which Carrier may incur as a result of delivering the Goods without such surrender. Upon surrender of one original bill of lading, all other original bills of lading will be immediately void. Negotiable bills of lading will in all events become void as a document of title six months after date of issuance, provided the terms of this document shall still apply and Carrier shall continue to be entitled to all rights and limitations of liability herein.
3.3 If this Bill of Lading is non-negotiable, delivery of the Goods may be made, at the sole discretion of the Carrier, to the nominated consignee without surrender of an original counterpart; such delivery shall constitute due delivery hereunder. Carrier may nevertheless in its exclusive discretion, but shall not be required to, demand surrender of an original endorsed non-negotiable bill of lading before release of the Goods.
3.4 Whether a negotiable bill of lading or a non-negotiable bill of lading, the person receiving the Goods in any and all events warrants their entitlement to such receipt and agrees to indemnify Carrier against all damages and liabilities which Carrier may incur as a result of releasing the Goods.

**4. CARRIER'S SUBCONTRACTORS, SERVANTS AND AGENTS:**
4.1 All or part of the Carriage may be performed by subcontractors, servants and agents of the Carrier without prior notice of the same to Merchant. Carrier may freely engage such third parties in accordance with their applicable terms and conditions, which shall in all events be binding upon Merchant.
4.2 If the Goods are lost, damaged, or delayed on the sea portion of the Carriage, and the vessel owner or demise charterer seeks to limit its liability pursuant to 46 U.S. Code §§ 181 et seq. or pursuant to a similar limitation regime of another nation, claims or suits may be brought against that Vessel owner or demise charterer. In all other circumstances, claims or suits may only be brought against Carrier. In the event a claim or suit is nevertheless brought against any Subcontractor, servant or agent of Carrier, that party is entitled to all exceptions, exemptions, defenses, immunities, limitations of liability, privileges and conditions granted or provided to Carrier under this document as a third party beneficiary. The aggregate of the amounts recoverable from the Carrier, its subcontractors, servants and agents shall in no event exceed Carrier's liability limit as provided by the terms and conditions of this contract for carriage.

**5. DESCRIPTION AND COMPLIANCE OF GOODS, SOLAS WEIGHT CERTIFICATION, INSPECTION OF GOODS :**
5.1 This document constitutes a receipt only for the external condition of the Goods visible to Carrier.
5.2 Merchant warrants that, unless special carriage is requested and paid for, the Goods will be carried in an unventilated, unheated, unrefrigerated Container or other stowage space and withstand condensation / container "sweat."
5.3 Merchant warrants that the description, marks, numbers and quantities of the Goods, as well as designation of Merchants, are accurate, complete and comply with all regulations. Merchant shall have the exclusive burden to provide verified gross mass (VGM) of Goods as obtained on calibrated and certified equipment. Carrier shall be entitled to rely on the accuracy of the weight information provided by Merchant for all purposes, including compliance with the VGM requirement under the Safety of Life at Sea Convention (SOLAS). Carrier shall be entitled to tender, counter-sign or endorse such certificates, without weight tickets or other weight data provided by Merchant as Carrier's own VGM to subcontractors, including the Vessel operator. Merchant agrees to indemnify and hold Carrier harmless from any and all claims, losses, penalties and/or costs resulting from incorrect gross mass or other information provided by Merchant.
5.4 Merchant has the exclusive obligation to ensure, and hereby warrants, the Goods and Merchants are compliant with all relevant authorities and are legally eligible for Carriage in all respects under all relevant governing laws and regulations.
5.5 Without any liability to do so, the Carrier shall have unrestricted liberty to inspect the packaging and contents of the Goods for any purpose and to inquire and verify the accuracy or sufficiency of information provided and to seek assurances. Any discrepancies may result in shipment delay, cancellation and/or additional charges assessed by the Carrier. The Carrier may disclose and report, whether on a mandatory or voluntary basis, any and all regulatory non-compliance to authorities; such authorities may exercise forfeiture and/or assess penalties against Merchant.

**6. DANGEROUS AND/OR HAZARDOUS GOODS:**
6.1 Carrier may accept or reject at its exclusive discretion Dangerous or Hazardous Goods offered for transportation.
6.2 Merchant shall comply with applicable law relating to the Carriage of Dangerous or Hazardous Goods and shall inform Carrier in writing prior to tender of the Goods the exact nature of the danger or hazard and indicate the precautions to be taken. If Merchant fails to provide such information and the Goods are deemed a hazard or risk or property, the Goods may at any place be unloaded and destroyed without liability and on the account of Merchant for costs. The burden of proving Carrier knew and accepted the exact nature of the danger and hazard constituted shall be upon Merchant.
6.3 If the Goods become a danger to life or property, they may in like manner be unloaded or landed at any place or destroyed or rendered harmless. If such danger was not caused by the fault and neglect of the Carrier, it shall have no liability and the Merchant shall indemnify the Carrier of all damages and liabilities arising therefrom.

**7. LIMITED COGSA CLAUSE PARAMOUNT:**
7.1 (CARRIAGE TO, FROM AND BETWEEN UNITED STATES PORTS) Whether or not applicable by force of law, and except as specifically provided in this Clause 7 and in Clause 8.1, the United States Carriage of Goods by Sea Act ("U.S. COGSA"), 46 U.S.C. §30701 (Note), is incorporated by reference as terms of this contract for Carriage whether the Goods are carried on or under deck, before the Goods are loaded on and/or after the Goods are discharged from the Vessel, and throughout the entire time the Goods are in the custody or are the responsibility of Carrier in performing the Carriage hereunder, whether acting as carrier or bailee. Nothing contained herein shall be deemed a surrender by Carrier of any of its rights or immunities or an increase of any of its responsibilities under U.S. COGSA. Notwithstanding the foregoing, the provisions of 46 U.S.C. §§ 30701 (3)(8) and (4)(5) of U.S. COGSA addressing minimum liability of the Carrier are excluded from incorporation by reference and shall only apply when required by force of law.
7.2 (CARRIAGE TO AND FROM NON-UNITED STATES PORTS) Whether or not applicable by force of law, and except as specifically provided in this Clause 7 and in Clause 8.1, the Hague-Visby Rules are incorporated by reference as terms of this contract for Carriage whether the Goods are carried on or under deck, before the Goods are loaded on and/or after the Goods are discharged from the Vessel, and throughout the entire time the Goods are in the custody or are the responsibility of Carrier in performing the Carriage hereunder, whether acting as carrier or bailee. Nothing contained herein shall be deemed a surrender by Carrier of any of its rights or immunities or an increase of any of its responsibilities under the Hague-Visby Rules. Notwithstanding the foregoing, the provisions of Article IV(5) of the Hague-Visby Rules addressing minimum liability of Carrier are excluded from incorporation by reference and shall only apply by force of law.

**8. CARRIER'S LIABILITY:**
8.1 Unless the shipper declares a higher value as provided at Clause 8.5, Carrier's liability shall be limited as follows: (a) for loss or damage occurring during any portion of the Carriage governed by U.S. COGSA by force of law, Carrier's liability shall be limited to a maximum of US$500 per package of the portion of Goods adversely affected, or for Goods not shipped in packages, per customary freight unit; (b) for loss or damage occurring during any portion of the Carriage governed by the Hague-Visby Rules by force of law, Carrier's liability shall be limited to a maximum of two Special Drawing Rights (SDRs) per kilogram or 666.67 SDRs per package, or for Goods not shipped in packages, per customary freight unit, whichever is the greater and always subject to just that portion of the Goods adversely affected; (c) for loss or damage occurring during any portion where U.S. COGSA or Hague-Visby is otherwise incorporated herein but is not applicable by force of law, to include periods of domestic water carriage and inland (surface) transportation, Carrier's liability shall be limited to a maximum of the lesser of US$500 per Package or US$0.50 per pound of the portion of Goods adversely affected; (d) for any financial loss other than loss or damage to Goods, Carrier's liability is limited to US$50 per entry or shipment; (e) in the event of loss or damage subject to mandatory applicable law which invalidates Carrier's otherwise applicable maximum contractual liability hereunder, Carrier's liability shall be limited to the lowest amount permissible by / in accordance with such applicable law.

8.2 In any and all events, nothing in this document shall constitute a surrender of any liability immunity or limitation inuring to Carrier's benefit under any applicable law, even if such immunity or limitation by law results in a liability of Carrier less than the otherwise applicable maximum contractual liability hereunder.
8.3 For purposes of Carrier's liability, when it cannot be ascertained at what stage of Multi-Modal Transportation the loss or damage occurred, it shall be presumed to have occurred during periods of inland (surface) transportation.
8.4 For purposes of Carrier's liability, and for good and valuable consideration to Merchant in the form of freight rate, the package or customary freight unit shall be deemed the object and unit referred to in the "No. of Pkgs." column on the face of this document and in the absence of designation in such column shall be deemed the Container.
8.5 The Merchant may avoid the liability limitations hereunder, or any other liability limitation imposed by applicable law, by unequivocally declaring the value of the Goods for liability purposes to Carrier in writing prior to Carriage and paying Carrier an ad valorem freight rate. Such declared value shall only be binding upon Carrier to the extent also memorialized and indicated on the face of this document. Carrier's knowledge of the value of Goods and/or Merchant's declaration of the value of the Goods to Carrier in regular course or for any other purpose, such as for Customs purposes, shall in no event constitute a declared value of the Goods to Carrier for liability purposes.
8.6 In no event shall Carrier be liable for special, incidental or consequential damages, lost profits or revenues or loss of merchantability of the Goods, whether or not Carrier had notice or knowledge that such may occur.
8.7 In no event shall Carrier's aggregate liability exceed the actual value of any loss or damage or the replacement value of the Goods adversely affected, whichever is lower.
8.8 Carrier does not guarantee delivery of the Goods at the port of discharge or place of delivery at any particular time or to meet any particular market or use. Carrier shall have no liability for any direct or consequential damages arising from delay or failure to notify Merchant as to the actual and/or delivery date of the Goods. In the event Carrier is nevertheless for any reason found liable for delay, Carriers liability shall in all circumstances be limited to the lesser of the liability calculated pursuant to Clause 8.1 hereunder or twice the amount of freight charges billed Merchant for the Carriage. If the Goods are not delivered within 90 days of anticipated delivery date, the Goods shall be deemed lost, in the absence of contrary evidence.
8.9 Notwithstanding anything herein to the contrary, Carrier shall in no event have any liability whatsoever for any loss, damage, delay or failure in performance hereunder arising from or attributable to: (a) circumstances of inherent defect, quality or vice of the Goods, including but not limited to wastage in bulk or weight; (b) defective or insufficient packing not reasonably fit to withstand the ordinary rigors of contemplated transportation; (c) insufficiency or inadequacy of marks on or description of Goods; (d) any act or omission of Merchant, its agent or representative; (e) unsuitable or defective container provided by Carrier if such unsuitability or defect would have been apparent to Merchant upon reasonable inspection; (f) arrest or restraint of princes, rulers or people or seizure under legal process, quarantine restrictions or embargo or any act of any public authority; (g) act, neglect or fault of the master, mariner, pilots or the servants of Carrier in the navigation or management of the Vessel; (h) any act of barratry; (i) perils, dangers, and accidents of the sea or other navigable waters; (j) saving or attempting to save life or property at sea or any deviation in rendering such service; (k) bursting of boilers, breakage of shafts or any latent defect in hull, equipment, machinery, hawsers or lines, unseaworthiness unless caused by want of due diligence by Carrier to make the Vessel seaworthy or to have her properly manned, equipped and supplied; (l) fire unless caused by the actual fault or privity of Carrier or its subcontractors, servants or agents; (m) any force majeure event, to include but not be limited to, natural disasters, strikes or lockouts or stoppage/restraint of labor from whatever cause, civil unrest, acts of war or armed conflicts and acts or threatened acts of public enemies, terrorists, pirates, hijackers or assailing thieves; (n) latent defects not discoverable by due diligence of Carrier or its subcontractors, servants or agents; (o) any cause arising without the fault or privity of the Carrier, its subcontractors, servants or agents.
8.10 Merchant shall indemnify Carrier against any claim by a third party or assignee of Merchant which impos

**9. MERCHANT LIABILITY FOR EQUIPMENT**
Merchant shall assume full responsibility for and shall indemnify Carrier against any loss of or damage to Containers and other equipment provided by Carrier or its subcontractors, servants, or agents which loss or damage occurs while in the possession or control of Merchant, its agents or independent vendors engaged by or on behalf of Merchant. Merchant shall indemnify and hold Carrier harmless from and against any loss of or damage to property of other persons or injuries to other persons caused by Containers or the Goods during handling by, or while in the possession or control of, Merchant, its agents or any independent vendors engaged by or on behalf of Merchant.

**10. ROUTE AND METHOD OF TRANSPORTATION**
Without notice to the Merchant, Carrier has liberty and discretion to consolidate the Goods with other cargoes, carry the Goods on or under deck and to choose or substitute the method, means, route, mode and procedure to accomplish the Carriage.

**11. DELIVERY**
11.1 The Goods shall be deemed to be delivered when they have been delivered to or placed at the disposal of the Merchant or its agent in accordance with this Bill of Lading, or when the Goods have been delivered to any authority or other party to which, pursuant to the law or regulation applicable at the place of delivery, the Goods must be delivered or surrendered, or such other place at which the Carrier is entitled to call upon the Merchant to take delivery.
11.2 The Carrier shall also be entitled to store the Goods at the sole risk of the Merchant, and the Carrier's liability shall cease upon the Carrier's tender/delivery of the Goods to the appointed warehouse or storage facility. The cost of such storage shall be paid, upon demand, by the Merchant to the Carrier.
11.3 If at any time the Carriage is or is likely to be affected by any hindrance or risk of any kind (including the condition of the Goods) not arising from any fault or neglect of the Carrier, its subcontractors or agents, the Carrier may: abandon the Carriage of the Goods and, where reasonably practicable, place the Goods or any portion of them at the Merchant's disposal at any place that the Carrier may deem safe and convenient, whereupon delivery shall be deemed to have been made, and the responsibility of the Carrier in respect of such Goods shall cease. In such event, the Carrier shall be entitled to full freight under this Bill of Lading and the Merchant shall pay any additional costs arising out of such event.

**12. FREIGHT CHARGES AND EXPENSES TO MERCHANT**
12.1 Freight charges shall be paid without any reduction or deferment on account of any claim, counterclaim or set-off, whether prepaid or payable at destination. Freight charges shall be deemed earned by the Carrier upon its receipt of the Goods. Earned freight charges are non-refundable.
12.2 Freight charges and all other amounts due Carrier for the Carriage are to be paid in the currency named in this Bill of Lading or, at the Carrier's option, in the currency of the country of origin or destination.
12.3 The Merchant shall reimburse and indemnify the Carrier for any duties, taxes, demurrage, detention, charges, liabilities or other expenses whatsoever in connection with the Goods or arising from any breach of warranty by Merchant hereunder or from any cause or reason not exclusively attributable to a liability of Carrier, its subcontractors, servants or agents.
12.4 In the event Merchant breaches its warranty as to the accuracy and completeness of the description and the marks, numbers, quantities and weight of the Goods, resulting in a lower freight charge than should be due and owing carrier based upon actual correct and complete description, marks, numbers, quantities and weight of the Goods, it is agreed that a sum equal either to double the correct freight charges properly assessed based upon actual correct and complete description, marks, numbers, quantities and weight of the Goods, less the freight previously calculated or charged, shall be payable as liquidated damages to the Carrier. Such liquidated damages shall only relate to freight charges; Carrier reserves all rights to recover from Merchant other damages caused by Merchant's breach of its warranty as to the accuracy and completeness of the description and the marks, numbers, quantities and weight of the Goods.
12.5 Notwithstanding the acceptance by the Carrier of instructions to collect freight charges or other expenses relating to the Carriage from any specific person, Merchant shall remain responsible for such monies on receipt of evidence of demand and the absence of payment for whatever reason. Shipper, consignee and bill-to parties are jointly and severally liable for all charges and expenses related to the Carriage. Charges may be reversed to the responsible parties if the Goods are refused delivery or in the event payment is not made by the original bill-to party.

**13. LIEN**
13.1 The Carrier shall have a lien on any and all of the Merchant's property for all advances, claims, costs, freight charges, duties, surcharges, general average expenses, salvage expenses, taxes, demurrage, money due and payable to the Carrier by Merchant, including any lien and collection-related costs, whether or not related to the Carriage of Goods under this document, a prior transaction / or an unrelated claim and/or any combination of the foregoing. The lien on the Goods shall survive delivery to the Merchant. Carrier may sell the Goods privately or by public auction without notice to the Merchant. If upon sale of the Goods the proceeds fail to satisfy the amount due Carrier, together with the cost and expenses incurred, Carrier shall be entitled to recover any difference from Merchant.
13.2 If the Goods are unclaimed after 30 days from date the Goods are placed at the disposal of the Merchant, or whenever in the Carrier's judgment the Goods will become deteriorated, decayed or worthless, the Carrier may, at its discretion and subject to its lien and without any responsibility attaching to it, sell, abandon, or otherwise dispose of the Goods solely at the risk and expense of the Merchant.

**14. GENERAL AVERAGE**
14.1 In the event of accident, danger, damage or disaster before or after the commencement of the Carriage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the Carrier and its subcontractors, servants and agents are not responsible by statute, contract or otherwise, the Goods and the Merchant shall contribute in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the goods. If a salving ship is owned or operated by the Carrier, its subcontractors, servants or agents, salvage shall be paid for as fully as if the said salving ship or ships belonged to strangers. Such deposit as the Carrier or his agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the Goods and/or the Merchant prior to delivery.
14.2 Merchant shall defend, indemnify and hold harmless the Carrier, its subcontractors, servants or agents in respect of any claim (and any expense arising therefrom) of a General Average which may be made against the Carrier and/or any of its subcontractors, servants or agents. Merchant agrees to pay any and all sums or securities assessed by the General Average Adjuster for payments on account.
14.3 Neither the Carrier nor its subcontractors, servants or agents shall be under any obligation to take any steps whatsoever to post security for General Average or to collect security for General Average contributions due from the Merchant. Notwithstanding the foregoing, Carrier is authorized at its discretion to act on behalf of the Goods in any salvage proceeding at the sole expense of Merchant, unless Merchant arranges for separate representation.

**15. NOTICE OF CLAIM AND TIME FOR SUIT**
15.1 Unless the Merchant provides written notice to the Carrier of the general nature of any loss or damage to the Goods at the time the Carrier delivers the Goods to the Merchant, such delivery by the Carrier is prima facie evidence of the Carrier's delivery of the Goods in good order and condition.
15.2 Where the loss or damage is not apparent and/or latent, the same prima facie presumption shall apply if notice in writing is not given to Carrier within 3 days after the day when the Goods were delivered to the Merchant.
15.3 The Carrier shall be discharged of all liability unless suit is brought against the Carrier within one year from the date of delivery or the date on which the Goods should have been delivered.

**16. MANDATORY VENUE, JURISDICTION, AND APPLICABLE LAW**
Merchant agrees that all claims or disputes hereunder or questions arising out of the Carriage of the Goods shall be determined under United States law solely in the United States District Court for the Central District of California at Los Angeles, to the exclusion of all other courts, and the Merchant and Carrier each agree to submit to the personal jurisdiction of that Court; provided, however, where the Vessel operator issues a bill of lading for the transportation of the Goods that includes a mandatory venue clause with a mandatory venue other than the Central District of California, the Merchant expressly agrees to be bound by the mandatory venue clause of the Vessel operator's bill of lading for any claims, disputes, or questions that the Merchant has against the Carrier and any subcontractor, servant or agent of Carrier. Merchant agrees that equity and judicial efficiency require that a single action shall resolve all claims, disputes, or questions arising out of the Carriage of the Goods.

Schumacher Cargo Logistics Inc.
550 W. 135th Street
Gardena, CA 90248 USA
info@sclusa.com
Phone: 562-408-6677

# House Bill of Lading

Printed: 3/29/2024

| **Shipper** | **Non Negotiable Bill of Lading No:** | | |
|---|---|---|---|
| Wilson/Timothy Mark<br>44480 Scobee Street<br>Maryland  20619<br>Tel: 202-733 0456<br>Email: timwilson490@gmail.com | EBKG08135834 | | |
| | **Forwarder's Ref:**<br>1047017 | **Dispatch Ref:**<br>33005 | **Exporter's Ref:** |
| | **Container or Unit Number**<br>MEDU5564259 | **Seal Number**<br>H0009373 | |
| **Consignee - Receiver**<br>Timothy Mark  Wilson<br>C/o Allied International<br>Australia 4077<br>61-7-3717 5317<br>chris.McDermott@allied.com | **Destination Agent**<br>ALLIED MOVING SERVICES- BRISBANE<br>700 BOUNDARY ROAD RICHLAND, QLD<br>Australia 4077<br>Tel: +61 2 8868 2851 FAX: +61 2 8868 2811<br>**Please contact destination agent for release or delivery of goods** | | |
| **Notify Address**<br>TIMOTHY MARK WILSON<br>C/O ALLIED MOVING SERVICES- UNIT 2/1 FOUNDATION PLACE<br>PEMULWUY NSW 2145<br>AUSTRALIA<br>Contact: Amanda Battishall<br>Ph: +61 2 8868 2851 / Fax: +61 28868 2811<br>Email: importdocs@allied.com | **Origin Agent/Shipper's Representative**<br>Schumacher (Los Angeles)<br>550 W 135th Street<br>Gardena<br>CA 90248<br>Phone: 562 408-6677 | | |
| **Ocean Vessel (or Transport Method)**<br>DALI - 410W | **Port of Loading**<br>Baltimore | **Departure Date**<br>03/26/24 | |
| **Port of Discharge**<br>Brisbane | **Est. Date of Arrival**<br>05/20/24 | **Place of Delivery**<br>Consignee Residence | |

| Marks and Numbers | No. of Items | Description of Goods | Vol (M3) | Wt (Kgs) |
|---|---|---|---|---|
| Wilson | 136 | Loose - 136 USED HOUSEHOLD GOODS AND PERSONAL EFFECTS NOT FOR RESALE HS: 9905.00 | 26.90 | 3,084.46 |
| | | **AES ITN Number: NO EEI 30.37(A)** | **26.90** | **3,084.46** |

According to the declaration of the Origin Agent/Shipper's Representative

**Enclosures**
☐ Marine Insurance Document
☑ Packing List
☑ Passport Copy HHG
☐ Quotation Signed

This is a non-negotiable House Bill of Lading.  Possession of this document does not confer title to the goods described hereon to the bearer.  The shipment described on this House Bill of Lading may be held in lien against payment of charges at orgin and / or destination. The shipment described on this House Bill of Lading has been shipped under the Terms and Conditions of Los Angeles and under the terms of any contract agreed between the shipper or shipper's representative or origin agent and Los Angeles.

**Issued by: Los Angeles, Place and date of issue : Baltimore - 29 March, 2024**