IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division – In Admiralty

| | |
|---|---|
| IN THE MATTER OF THE PETITION OF GRACE OCEAN PRIVATE LIMITED, AS OWNER OF THE M/V DALI, AND SYNERGY MARINE PTE LTD, AS MANAGER OF THE M/V DALI, FOR EXONERATION FROM OR LIMITATION OF LIABILITY. | Case No.: 1:24-cv-941-JKB |

**BALTIMORE GAS AND ELECTRIC COMPANY'S CLAIM AND ANSWER TO PETITION FOR EXONERATION FROM OR LIMITATION OF LIABILITY**

COMES NOW the Claimant, Baltimore Gas and Electric Company ("BGE"), and files its Claim and Answer in the limitation proceeding herein, in accordance with Supplemental Rule F(5) of the Supplemental Rules for Admiralty or Maritime Claims ("Supplemental Admiralty Rules"), as follows:

**INTRODUCTION**

1. On March 26, 2024, the containership M/V DALI (IMO No. 9697428) (the "Vessel") allided with and toppled the Francis Scott Key Bridge (the "Key Bridge"). Tragically, this event took the lives of six construction workers on the bridge and injured two others.

2. In addition, the wreck of the Vessel and several sections of the Key Bridge that fell into the Patapsco River came perilously close to two critical pieces of BGE utility infrastructure: (1) a 24-inch natural gas transmission pipeline that runs under the Baltimore Harbor and (2) an aerial crossing of a 230 kV electric transmission line that runs across the Patapsco River on the harbor side of the Key Bridge.

1

3. As a result of the disaster, BGE incurred more than $2.5 million in losses and response costs in the course of protecting its facilities and ensuring the safety of the Petitioners, Vessel crewmembers, Vessel cargo, first responders, salvors, and the public at large.

4. This tragedy was entirely avoidable. The Petitioners – who now ask the Court to limit their liability to less than $44 million – sent an ill-prepared crew on an abjectly unseaworthy vessel to navigate the Baltimore Harbor. Petitioners' actions were grossly and potentially criminally negligent. But even if this standard were not met, Petitioners' request for exoneration from or limitation of liability must fail because Petitioners' negligence and/or the unseaworthy condition of the Vessel that caused the accident was within Petitioners' privity of knowledge. *See Matter of Bridge Watersports, LLC*, 656 F. Supp. 3d 553, 561-62 (D. Md. 2023), *aff'd sub nom. Bridge Watersports, LLC v. Tressler*, No. 23-1312, 2024 WL 837908 (4th Cir. Feb. 28, 2024) (explaining that "the Court engages in a two-step inquiry in a limitation proceeding"). Accordingly, Petitioners' liability should not be limited in any way.

## CLAIM

5. This is an admiralty and maritime claim within the meaning of Federal Rule of Civil Procedure 9(h) and Supplemental Admiralty Rule F(5).

6. On April 1, 2024, Grace Ocean Private Limited and Synergy Marine PTE Ltd (the "Petitioners") filed their Petition (Doc. 1) requesting relief pursuant to 46 U.S.C. §§ 30501, *et seq.*, for the damages caused by the Vessel on March 26, 2024.

7. Claimant Baltimore Gas and Electric Company is a corporation formed and existing under the laws of the State of Maryland, with a principal office located at 2 Center Plaza, 110 West Fayette Street, Baltimore, Maryland 21201.

8. Petitioner Synergy, IMO Company Number 5507517, is the technical manager of the Vessel and is a Singapore-registered company with a principal place of business at 1 Kim Seng Promenade #10-11/12 Great World City, Singapore 237994.

9. At all times relevant hereto, the Vessel was technically managed by, but was not owned or chartered by, Synergy or its agents.

10. Synergy was not an "owner" of the Vessel for purposes of the Limitation of Liability Act, 46 U.S.C. §§ 30501 et seq.

11. BGE's instant Claim is a direct response to the Petitioners' Petition, as required by the Court's Publication Order (Doc. 6) and Rule F(5) of the Supplemental Admiralty Rules.

12. Petitioners had absolute privity with and knowledge of the conditions and actions that contributed to and/or caused the allision described and the damages expressed herein.

13. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1333(1) over the admiralty claim brought by Petitioners, and specifically over injury or damage caused by a vessel on the navigable waters pursuant to 46 U.S.C. § 30101(a).

14. Claimant BGE, a Maryland corporation, owns a certain 24-inch natural gas transmission pipeline (the "Pipeline") that runs under the Baltimore Harbor approximately 250 feet northwest of the Key Bridge's caissons in the Fort McHenry Channel.

15. Claimant BGE also owns a certain aerial crossing of a 230 kV electric transmission line (the "Transmission Line") across the Patapsco River on the harbor side of the Key Bridge. The Transmissions Line's main span crosses the Patapsco River approximately 500 feet to the north of the Key Bridge. (The Pipeline and Transmission Line shall collectively be referred to as the "Facilities").

16. Petitioners filed the present action as the owner and manager of the Vessel, as more fully identified in the Petition.

17. At all material times, Petitioners owned, operated, managed, and/or controlled the Vessel.

18. Venue is proper in this District pursuant to Rule F(9) of the Supplemental Rules because the Vessel was located within this District at the time of the filing of the Petition.

19. On March 26, 2024, the Vessel commenced a voyage from Baltimore, Maryland, bound for foreign ports, leaving its berth at the Port of Baltimore.

20. As more fully set forth in the Petition and upon information and belief, the Vessel lost power and propulsion, drifted to starboard, then dropped anchor to attempt to arrest its forward progress. Soon thereafter, the Vessel allided with the Key Bridge (the "Allision").

21. As a result of the Allision, portions of the Key Bridge collapsed, and the Vessel and some of its cargo were damaged. Several people on the Key Bridge were injured, or died or are presumed dead.

22. After the Allision, the damaged Vessel remained afloat in the waters in the vicinity of the Allision. Authorities and other parties began responding and assessing risks and damages almost immediately in what was a large-scale emergency situation.

23. Given the presence of its active gas Pipeline in the area, BGE immediately determined that the Allision and resulting conditions (including large debris falling into the riverbed) posed a serious threat to life, property and the public at large, as well as a risk of damage to its Facilities, due to the possibility of a massive explosion, which would cause additional damage to the Vessel and likely halt or delay salvage efforts.

24. At the direction of and/or in coordination with first responders and authorities on the scene, and in discharge of duties owed to the public as a licensed utility provider in the State of Maryland, and also in order to mitigate the risk the Allision posed to the public at large, BGE's Facilities, Petitioners, Vessel crewmembers, Vessel cargo, first responders and salvors, BGE took immediate action to vent the gas within the Pipeline, causing BGE to lose property as a direct result of the Allision.

25. Similarly, BGE also took immediate action to close certain Pipeline valves located on either side of the river crossing.

26. Shortly thereafter, BGE estimated that the Vessel's bow was sitting approximately ten feet below the mudline while amidship, with the Vessel's starboard side grounded with mud penetration of approximately one to two feet, and critically, that a portion of the Pipeline was located directly beneath the Vessel.

27. In order to provide for the safety of the public at large, its Facilities, Petitioners, Vessel crewmembers, Vessel cargo, first responders and salvors, and in discharge of duties owed to the public as a licensed utility provider in the State of Maryland, and in response to an order from the United States Coast Guard, BGE began the process to fill the Pipeline with inert gas to prevent flammable conditions and protect the integrity of the Pipeline during the recovery and salvage operations and reduce Pipeline pressure.

28. By April 1, 2024, the Pipeline was taken out of service completely.

29. During the salvage and recovery operations that commenced following the Allision, BGE monitored the Pipeline and took actions to assess damage and/or prevent further damage to the Pipeline, including, but not limited to injecting the Pipeline with nitrogen gas in order to prevent moisture-related equipment damage and combustion.

30. Additionally, in order to provide safe conditions for crane boom clearance during the salvage and recovery of the Vessel, and to ensure the safety of its Transmission Line, Petitioners, Vessel crewmembers, Vessel cargo, first responders, salvors, and the public at large, and in discharge of duties owed to the public as a licensed utility provider in the State of Maryland, and also in response to an order from the United States Coast Guard, BGE de-energized the Transmission Line.

31. The Transmission Line remained de-energized until April 28, 2024, at which time the United States Coast Guard authorized its re-energization, which occurred on the following day.

32. On May 20, 2024, the Vessel was refloated and brought back to the Port of Baltimore, and thereafter BGE then took steps to place its Pipeline back into service.

33. During the period of time between when the Allision occurred and when the Facilities were placed back into service, BGE has and continues to suffer at least $2,500,000 million in damages for loss of its property, interference with the use of its Facilities, the labor provided and materials furnished relative to its efforts that were necessary to protect its Facilities and/or were necessary to ensure the safety of the Petitioners, Vessel crewmembers, Vessel cargo, first responders, salvors, and the public at large and/or were necessary actions taken in discharge of duties owed as a licensed utility provider in the State of Maryland.

34. Were it not for BGE's actions, the Petitioners, Vessel crewmembers, Vessel cargo, first responders, salvors, and the public at large would have been placed in serious danger during the salvage and recovery of the Vessel, and/or BGE's Facilities would have suffered from extensive damage.

35. BGE seeks recovery against Petitioners for all damages incurred relative to the actions taken to protect its Facilities, or actions that will be taken by it in relation to the events described herein, including but not limited to:

   a. Costs incurred related to BGE's initial response of venting the Pipeline and closing the valves located on either side of the river crossing to initiate the process of taking the Pipeline out of service;

   b. The value of the gas that was vented from the Pipeline;

   c. Costs incurred related to BGE's actions to inert the Pipeline;

   d. Costs incurred to de-energizing the Transmission Line;

   e. Costs incurred to inspect the Pipeline to determine if it suffered any significant integrity issues;

   f. Costs incurred to reinstate the Pipeline; and

   g. Costs incurred to re-energize the Transmission Line;

36. BGE did not cause or contribute to the damages incurred and/or the interference with the use of its Facilities, or that will be incurred, by BGE and other parties in relation to the Allision.

37. The Allision between the Vessel and the Key Bridge, and the resulting damage and damages suffered by BGE and others, was caused by the fault and negligence of the crew, operators, and owners of the Vessel, including Petitioners, and/or by the unseaworthiness of the Vessel, including but not limited to, and upon information and belief, the following:

   a. Employing an incompetent crew that lacked attentiveness to their responsibilities;

    b.    Employing a crew that did not adhere to local navigational norms and customs;

    c.    Employing a crew that failed to navigate the Vessel safely and properly;

    d.    Employing a crew lacking in necessary skills and training;

    e.    Failing to adequately man and equip the Vessel;

    f.    Failing to equip and maintain the Vessel's electrical systems;

    g.    Failing to train the officers in appropriate decision-making when human lives are at risk;

    h.    Mismanaging the Vessel and its crew;

    i.    Failing to implement appropriate policies, procedures, and training for safe vessel operation;

    j.    Failing to oversee the Vessel adequately to ensure safe operations;

    k.    Providing a vessel with unseaworthy equipment, systems, and appurtenances;

    l.    Failing to properly maintain the Vessel;

    m.    Failing to properly maintain or utilize the Vessel's systems;

    n.    Failing to properly maintain or utilize the Vessel's engines;

    o.    Failing to properly maintain or utilize the Vessel's propulsion system;

    p.    Failing to properly maintain or utilize the Vessel's steering system;

    q.    Failing to properly equip the Vessel;

    r.    Failing to provide functioning propulsion systems;

    s.    Failing to provide an engine suitable for the Vessel's intended use;

    t.    Failing to address known hazards promptly;

    u.    Failing to rectify known deficiencies promptly;

      v.      Failing to conduct necessary inspections of the vessel;

      w.      Failing to adhere to industry standards, customs, and practices;

      x.      Recklessly disregarding the most basic safety provisions and the obvious mechanical failures on March 26, 2024; and

      y.      Undertaking a voyage with knowledge that the Vessel that was not performing properly.

## PRAYER FOR RELIEF[1]

WHEREFORE, Baltimore Gas and Electric Company, prays as follows:

1. That Petitioners' request for exoneration and/or limitation of liability be denied;

2. That the Court award damages in its favor and against in amounts to be determined at trial, plus pre-judgment and post-judgment interest; and

3. That it have such other and further relief as the justice of the cause may require.

## ANSWER

Baltimore Gas and Electric Company answers the Petitioners' Petition for Exoneration from or Limitation of Liability, stating as follows:

1. Admitted for jurisdictional purposes.

2. Admitted for venue purposes.

3. BGE lacks sufficient information to admit or deny the allegations in this paragraph, and therefore denies same.

---

[1] This pleading presents civil claims that are not "subject to limitation in the action" (to the extent as plead that Synergy is not a proper party to claim the benefit of the limitation act) and claims that are. See Fed. R. Civ. P. 8(a)(3); Supp. Admiralty Rule F(3). The pleading should be construed as a claim or counterclaim under Rule 18(a) of the Federal Rules of Civil Procedure, which liberally permits the joinder of all claims against Petitioners, whether sounding in limitation or not.

4. BGE lacks sufficient information to admit or deny the allegations in this paragraph, and therefore denies same.

5. BGE lacks sufficient information to admit or deny the allegations in this paragraph, and therefore denies same.

6. On information and belief, admitted.

7. On information and belief, admitted.

8. On information and belief, admitted.

9. BGE lacks sufficient information to admit or deny the allegations in this paragraph, and therefore denies same.

10. On information and belief, admitted.

11. On information and belief, admitted.

12. On information and belief, admitted.

13. Denied.

14. Denied.

15. BGE lacks sufficient information to admit or deny the allegations in this paragraph, and therefore denies same.

16. BGE lacks sufficient information to admit or deny the allegations in this paragraph, and therefore denies same.

17. BGE lacks sufficient information to admit or deny the allegations in this paragraph, and therefore denies same.

18. BGE lacks sufficient information to admit or deny the allegations in this paragraph, and therefore denies same.

19.     BGE lacks sufficient information to admit or deny the allegations in this paragraph, and therefore denies same.

20.     No response is required.

21.     No response is required.

22.     No response is required.

23.     Admitted. Petitioners claim exoneration from liability arising out of the Allison; denied Petitioners have valid defenses to any and all such claims.

24.     Admitted. Petitioners seek the benefits of limitation of liability provided by 46 U.S.C. §§ 30501, *et seq.*, but denied Petitioners are entitled to limitation of liability. No response is required to remaining allegations.

25.     No response is required to the prayer for relief.

26.     All allegations which have not been specifically admitted are denied.

27.     BGE denies that Petitioners are entitled to exoneration from or limitation of liability to BGE or any other claimant for claims arising out of the Allision.

## **DEFENSES AND AFFIRMATIVE DEFENSES**

BGE raises the following Affirmative Defenses to the Petition:

38.     The Petition fails to state a claim upon which relief can be granted.

39.     The Petitioners have failed to establish an adequate limitation fund for the benefit of claimants as required by Supplemental Rule F.

40.     Petitioners failed to exercise due diligence to maintain the Vessel in a seaworthy condition, in that the Vessel was not staunch, tight, properly manned, equipped or supplied and otherwise unfit for her intended journey and/or the service for which she was engaged.

41. Petitioners' Vessel was unseaworthy and therefore cannot invoke the benefits of the Limitation of Liability Act, including but not limited to the particular reasons that are enumerated in Paragraph 37 of BGE's Claim.

42. Petitioners' Master, a person with corporate managerial and supervisory authority, was on board the Vessel and was in operational command of her as the Master, and so Petitioners are charged with privity and knowledge of the faults and omissions which he and/or his Vessel and crew committed to the detriment of the Claimant.

43. Petitioners' request for exoneration from or limitation of liability must fail because the Allision set forth in the Petition was due to the unseaworthy condition of the Vessel, a condition either known, caused, or allowed to exist by the Petitioners and/or their agents or employees, and such unseaworthiness was within the privity and knowledge of Petitioners.

44. Petitioners' request for exoneration from or limitation of liability must fail because Petitioners and/or their employees' or agents' negligence caused or contributed to the Allision set forth in the Petition and such negligence was within the privity or knowledge of Petitioners.

45. Petitioner Synergy has not pleaded that it is an "owner" of the Vessel, but only the ship's "technical manager." While Petitioner Synergy has irrevocably subjected itself to this Court's personal jurisdiction by bringing this Petition, it is not entitled to a limitation of liability because it is not the ship's "owner." 46 U.S.C. § 30523(a) ("[T]he liability **of the owner of a vessel** for any claim, debt, or liability described in subsection (b) shall not exceed the value of the vessel and pending freight." (emphasis added)). Accordingly, Petitioner Synergy faces unlimited liability for the damages caused in this disaster upon finding that it is at least 1 % at fault.

46. BGE reserves the right to amend or supplement the foregoing affirmative defenses up to and through trial when warranted by facts adduced during discovery or otherwise.

WHEREFORE, Baltimore Gas and Electric Company prays that this honorable Court deny Petitioners the relief they request under the Limitation of Liability Act with respect to the Claim asserted herein, and that it have such other and further relief as the justice of the cause may require.

Dated:  September 24, 2024            Respectfully submitted,

**BALTIMORE GAS AND ELECTRIC COMPANY**

*/s/ Mark J. Dimenna*
Mark J. Dimenna (Bar No. 07247)
OFFIT KURMAN, P.A.
1954 Greenspring Drive, Suite 605
Timonium, Maryland 21093
(410) 209-6411 telephone
(410) 209-6435 fax
mark.dimenna@offitkurman.com

Ted G. Semaya (pro hac vice pending)
OFFIT KURMAN, P.A.
590 Madison Avenue, 6th Floor
New York, New York 10022
(347) 589-5806 telephone
(212) 545-1656 fax
tsemaya@offitkurman.com


David N. Ventker (pro hac vice to be filed)
Marissa M. Henderson (pro hac vice to be filed)
VENTKER HENDERSON STANCLIFF, PLLC
256 West Freemason Street
Norfolk, Virginia 23510
Telephone: 757.625.1192
Facsimile: 757.625.1476
dventker@ventkerlaw.com
mhenderson@ventkerlaw.com

*Counsel for Baltimore Gas and Electric Company*