UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE PETITION<br><br>of<br><br>GRACE OCEAN PRIVATE LIMITED, as Owner of the M/V DALI,<br><br>and<br><br>SYNERGY MARINE PTE LTD, as Manager of the M/V DALI,<br><br>for Exoneration from or Limitation of Liability. | Docket No. JKB 24-cv-941<br><br>IN ADMIRALTY |

**ANSWER AND COUNTERCLAIMS OF CARGO CLAIMANTS/RESPONDENTS TO THE PETITION FOR EXONERATION FROM OR LIMITATION OF LIABILITY**

Cargo Claimants, identified as insurers and insureds in the attached Schedules A-1 through A-5 (hereinafter, "Schedules" and "Cargo Claimants"), by their attorneys Skeen & Kauffman, LLP, and as permitted by the Court's Memorandum and Order dated October 1, 2024 (ECF no. 353),[1] hereby respond and assert counterclaims ("Answer and Counterclaims") to the Petition for Exoneration from or Limitation of Liability ("Petition") filed by Grace Ocean Private Limited, as Owner of the container vessel, M/V DALI, and Synergy Marine Pte Ltd, as Manager of the container vessel, M/V DALI (collectively hereinafter, "Petitioners"), and on behalf of the insurers and cargo interests whose cargo was destroyed, damaged, or otherwise affected, by admitting, denying, and alleging, on information and belief, as follows:

---

[1] On October 9, 2024, the undersigned counsel filed the Answer and Counterclaims of various other cargo claimants (ECF nos. 392 to 392-5), which were "Category 1" claims within the meaning of the Memorandum and Order dated October 1, 2024 (ECF no. 353). This Answer and Counterclaims dated November 22, 2024, does not amend or supersede the October 9 filing but instead asserts "Category 2" claims within the meaning of the Court's October 1 order.

## ANSWER

1. Cargo Claimants admit to the admiralty and maritime jurisdiction of this Court.

2. Cargo Claimants admit that this Court is a proper venue for the filing of the Limitation Petition, but otherwise aver that most or all claims of Cargo Claimants against Petitioners are governed by bills of lading and/or sea waybills that call for litigation of disputes arising in connection with loss or damage to cargo in districts other than this Court.

3. Cargo Claimants recognize that Petitioners allege that GRACE OCEAN PRIVATE LIMITED ("Grace Ocean") is a registered owner of the M/V DALI (the "Vessel"), but currently lack knowledge or information sufficient to form a belief as to the truth of the other allegations contained in Paragraph 3 of the Petition.

4. Cargo Claimants recognize that Petitioners allege that SYNERGY MARINE PTE LTD ("Synergy") was a manager of the Vessel at all relevant times hereto, but currently lack knowledge or information sufficient to form a belief as to the truth of the other allegations in Paragraph 4 of the Petition.

5. Cargo Claimants admit that the Vessel is a containership and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 5 of the Petition.

6. Cargo Claimants admit that the Francis Scott Key Bridge ("Key Bridge") was a 1.6-mile span bridge over the Patapsco River at the outer crossing of the Baltimore Harbor, and that the Key Bridge was completed in 1977 and made up part of Interstate 695, also known as the Baltimore Beltway, but otherwise deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 6 of the Petition.

7. Cargo Claimants admit that on March 26, 2024, the Vessel commenced a voyage from Baltimore, Maryland, but otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 7 of the Petition.

8. Cargo Claimants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 8 of the Petition.

9. Cargo Claimants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 9 of the Petition.

10. Cargo Claimants admit that at or about 1:28 a.m. local time on March 26, 2024, the Vessel allided with the Key Bridge.

11. Cargo Claimants admit that as a result of the allision, portions of the Key Bridge collapsed and were damaged, and certain cargo aboard the Vessel sustained damage, but currently lack knowledge or information sufficient to form a belief as to the truth of the other allegations in Paragraph 11 of the Petition and, on that basis, deny those allegations.

12. Cargo Claimants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 12 of the Petition.

13. Cargo Claimants deny the allegations of Paragraph 13 of the Petition.

14. Cargo Claimants deny the allegations of Paragraph 14 of the Petition.

15. Cargo Claimants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 15 of the Petition.

16. Cargo Claimants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 16 of the Petition.

17. Cargo Claimants deny that the value of the Vessel is affected by salvage costs and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 17 of the Petition.

18. Cargo Claimants deny that the value of the Vessel is affected by salvage costs and otherwise deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 18 of the Petition.

19. Cargo Claimants deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 19 of the Petition.

20. Cargo Claimants admit that Petitioners have offered an Interim Stipulation of Value in the amount of $43,670,000, and that this amount is substantially less than the amount expected to be claimed for losses and damages arising out of the Vessel's allision with the Key Bridge, but deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 20 of the Petition.

21. Cargo Claimants admit that the identity of all potential claimants with potential claims or demands against Petitioners and/or the Vessel and the amounts of their claims have not yet been fully determined, but deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 21 of the Petition.

22. Cargo Claimants admit the allegation set forth in Paragraph 22 of the Petition.

23. Cargo Claimants deny the allegations, conclusions, and entitlement to relief claimed by Petitioners in Paragraph 23 of the Petition.

24. Cargo Claimants deny the allegations, conclusions, and entitlement to relief claimed by Petitioners in Paragraph 24 of the Petition.

## CARGO CLAIMANTS' AFFIRMATIVE DEFENSES

### AS AND FOR A FIRST AFFIRMATIVE DEFENSE

25. The amount of security tendered by Petitioners in connection with the Petition is insufficient and must be increased because, *inter alia*, such amount does not adequately reflect the value of the M/V DALI together with pending freight.

### AS AND FOR A SECOND AFFIRMATIVE DEFENSE

26. The amount of security tendered by Petitioners in connection with the Petition is insufficient and must be increased because, *inter alia*, such amount is inadequate to secure the Petitioners' liabilities and obligations to the Cargo Claimants herein and other cargo claimants.

### AS AND FOR A THIRD AFFIRMATIVE DEFENSE

27. Cargo Claimants' cargoes loaded aboard the M/V DALI were carried subject to the terms and conditions of various bills of lading and/or other contracts of carriage. The loss of and/or damage to Cargo Claimants' cargoes was caused in whole or in part by the Petitioners' negligent and/or willful breaches of the aforesaid contracts.

### AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

28. Prior to, and at all times referenced in the Petition, Petitioners failed to exercise due diligence to make the M/V DALI seaworthy. The M/V DALI was at all relevant times not fit to undertake the service in which she was engaged. The losses, damages and/or charges and expenses suffered by or in connection with Cargo Claimants' cargoes were caused in whole or in part by the Petitioners' failure to exercise due diligence to make the M/V DALI seaworthy at the commencement of the voyage.

### AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

29. The losses, damages and/or charges and expenses suffered by or in connection with the Cargo Claimants' cargoes, as well as the casualty alleged in the Petition and the subsequent events related thereto, were caused in whole or in part by the fault, design or neglect, or want of care of the Petitioners, and/or the M/V DALI, and/or those in charge of the M/V DALI, and/or persons for whom Petitioners are responsible.

### AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

30. The losses, damages and/or charges and expenses suffered by or in connection with Cargo Claimants' cargoes, as well as the casualty alleged in the Petition and the subsequent events related thereto, resulted from causes within the privity and knowledge of Petitioners, and/or their officers, directors, managers, supervisors, superintendents and/or such persons whose privity and knowledge are imputable to Petitioners.

### AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

31. Petitioners are not a proper party for and are not entitled to exoneration from or limitation of liability pursuant to the Limitation Act, 46 U.S.C. § 30501, *et seq*.

32. Petitioner Synergy Marine Pte Ltd has not pleaded that it is an "owner" of the DALI, but only that it is the ship's "manager." *See, e.g.,* Petition ¶ 4.  Petitioner Synergy is not entitled to a limitation of liability because it is not the ship's "owner."  46 U.S.C. § 30523(a) ("[T]he liability of **the owner of a vessel** for any claim, debt, or liability described in subsection (b) shall not exceed the value of the vessel and pending freight." (emphasis added)).

### AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE

33. The Petition for Exoneration from or Limitation of Liability contains vague and ambiguous statements which are objectionable under Federal Rule of Civil Procedure 12(e), and Cargo Claimants seek more definite statements of the allegations, regardless of the nature, manner, and extent of the within Answer and Counterclaims.

### AS AND FOR A NINTH AFFIRMATIVE DEFENSE

34. The events culminating in the damages and losses sustained by Cargo Claimants were not the result of any negligence, fault, or want of due care on the part of the Cargo Claimants.

### AS AND FOR A TENTH AFFIRMATIVE DEFENSE

35. Cargo Claimants specifically reserve all rights to pursue all available claims and no part of this Answer and Counterclaims shall be construed to be a waiver of those rights.

### AS AND FOR AN ELEVENTH AFFIRMATIVE DEFENSE

36. Cargo Claimants' claims are subject to mandatory jurisdiction provisions in the applicable bills of lading and/or sea waybills calling for litigation of claims for loss or damage to cargo in other jurisdictions, including the United States District Court for the Southern District of New York.

### AS AND FOR A TWELFTH AFFIRMATIVE DEFENSE

37. Cargo Claimants specifically reserve the right to pursue all available claims in Federal Court, including but not limited to other United States District Courts.

### AS AND FOR A THIRTEENTH AFFIRMATIVE DEFENSE

38. To the extent the Petition for Exoneration from and/or Limitation of Liability in any way implicates any rights or declarations of general average, any claims or disputes arising

from general average declarations are subject to jurisdiction in the Southern District of New York subject to mandatory jurisdiction clause(s) in the applicable general average security and/or bills of lading or sea waybills.

## COUNTERCLAIMS

Cargo Claimants, identified in Schedules A-1 through A-5 hereto annexed and by this reference made a part hereof (hereinafter, "Schedules" and "Cargo Claimants"), which specifically reserve all rights and defenses asserted in Cargo Claimants' accompanying Answer to the Petition for Exoneration from or Limitation of Liability ("Petition"), make this claim pursuant to Rule F(5) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture of the Federal Rules of Civil Procedure against Petitioners, Grace Ocean Private Limited, as Owner of the container vessel, M/V DALI, and Synergy Marine Pte Ltd, as Manager of the container vessel, M/V DALI (collectively hereinafter, "Petitioners"), and in support thereof, state as follows:

## THE CARGO CLAIMANTS

39. Cargo Claimants are the insurers, insureds, owners, shippers, and/or consignees of certain cargoes laden aboard the captioned vessel, or the claims agents for those interests, which cargoes may have been partially or totally damaged.

40. At and during all times hereinafter mentioned, Petitioners were engaged in business as a common carrier of merchandise by water for hire, and owned, operated, managed, chartered or controlled the Vessel, which operates in regularly scheduled liner service between ports in the Far East, the United States, Canada, and Europe.

41. In or about February-March 2024, at various ports of loading at which the Vessel called, there was delivered to the Vessel and Petitioners in good order and condition the shipments

described in the Schedules, which the Vessel and Petitioners received, accepted and agreed to transport for certain consideration to specified ports of destination.

42. Since then, the shipments described in the Schedules have not been delivered in the same good order and condition in which they were received.

43. Petitioners, including the Vessel, by reason of the premises, breached their duties as common carriers by water for hire to the Cargo Claimants and were otherwise at fault.

44. Cargo Claimants were the insurers, insureds, owners, shippers, and/or consignees, or the claims agents for those interests, who otherwise had a proprietary interest of and in the cargoes described in the Schedules, as subrogees, responsible guarantors and/or otherwise of said cargoes, and bring this action on their own behalf and, as agents and trustees, on behalf of and for the interests of all parties who may be or become interested in the said shipments, as their respective interests may ultimately appear, and Cargo Claimants are entitled to maintain this action.

45. Cargo Claimants, as well as their respective insureds and/or assureds, have duly performed all duties and obligations on their part to be performed.

## THE ALLISION

46. On March 26, 2024, at approximately 12:45 a.m., the Vessel departed from the Port of Baltimore to begin its voyage to its next port of destination in Sri Lanka, where it was scheduled to arrive on April 22, 2024.

47. Shortly after the Vessel's departure, approximately twelve minutes after leaving its berth at the Port of Baltimore, the Vessel began to shift its course, turning toward the Key Bridge. The National Transportation Safety Board obtained recorded audio from the Vessel, recorded just

before the allision, in which "numerous aural alarms" were sounding aboard the Vessel during this time.

48. Video from the night of the allision shows that, at approximately 1:25 a.m., the Vessel suddenly lost power.

49. Adrift, without power and moving at approximately 7 knots, the Vessel allided with the Key Bridge at or about 1:28 a.m., causing the bridge's immediate collapse and directly causing the loss and/or damage to cargoes aboard the Vessel (the "Allsion").

50. The full extent of the damaged cargoes and containers is not presently known, but Petitioners conditioned the delivery of the cargo and containers on the posting of security for general average and/or salvage by Cargo Claimants.

51. Certain cargoes insured and/or owned by the Cargo Claimants are a total loss, have sustained damage, were never delivered to their discharge port and/or destination, were delayed in delivery to their discharge port and/or destination, were not delivered in good order and condition at their discharge port and/or destination, and/or otherwise were affected as a result of the Allision.

52. At the time of the commencement of the voyage at issue, the Vessel was unseaworthy, and Petitioners, including the Vessel, breached, failed, and violated the duties they owed to the Cargo Claimants as common carriers by water for hire and/or bailees and caused additional aggravated damages above and beyond the invoice values of the cargo, and were negligent and otherwise at fault.

53. The Vessel and Petitioners knew or had reason to know of the unseaworthy conditions leading to the Allision, which was and is the proximate cause of the loss.

54. The Allision was caused or contributed to by the unseaworthy condition of the Vessel, which Petitioners knew about, failed to remedy prior to the voyage described herein, and ultimately led to the loss and/or damage to the Cargo Claimants' cargoes.

55. The Allision and resulting damage and/or loss were caused by the Vessel's and Petitioners' failure to: (a) properly maintain and/or prepare the Vessel for its intended use and voyage; (b) properly and safely stow the cargo(es) aboard the Vessel in order to mitigate the risk of loss from an allision; (c) properly and adequately repair the Vessel despite ongoing issues with its electrical system and/or other systems; and (d) properly and timely deviate to a port of refuge so as to limit loss and/or damage, and for such other and further reasons as may be developed during discovery.

## AS AND FOR A FIRST COUNTERCLAIM
### (Breach of Contract / Unseaworthiness)

56. Cargo Claimants repeat and reallege their responses, averments, defenses and allegations stated in Paragraphs 39 through 55 as if fully set forth herein at length.

57. At and during all times relevant hereto, defendant Grace Ocean Private Limited, as Owner of the container vessel, M/V DALI, was and now is a corporation or other business entity with an office and place of business in Singapore and was and now is engaged in business as a common carrier of goods for hire and issued and/or ratified bills of lading and sea waybills for carriage of cargo aboard the Vessel including cargoes destined for ports including, but not limited to, along the East Coast of the United States, the Far East, and Europe.

58. At and during all times relevant hereto, defendant Synergy Marine Pte Ltd, as Manager of the container vessel, M/V DALI, was and now is a corporation or other business entity with an office and place of business in Singapore, and was a manager of the container vessel, M/V DALI. At all relevant times, Synergy Marine Pte Ltd was and now is engaged in business as a

11

common carrier of goods for hire and issued and/or ratified bills of lading and sea waybills for carriage of cargo aboard the Vessel including cargoes destined for ports including, but not limited to, along the East Coast of the United States, the Far East, and Europe.

59. At and during all times relevant hereto, the M/V DALI was and is a containership ("Vessel").

60. Bills of lading and sea waybills issued for the subject voyage were ratified by Petitioners upon the sailing of the Vessel, M/V DALI, from certain ports of call after loading cargoes.

61. The carriage of Cargo Claimants' cargoes aboard the Petitioners' Vessel was subject to the terms and conditions of the aforementioned bills of lading, sea waybills, and/or other contracts of carriage, including those bills of lading and sea waybills identified in the Schedules. The loss and/or damage to Cargo Claimants' cargoes were caused in whole or in part by the Petitioners' and Vessel's negligent and/or willful breaches of the aforesaid contracts.

62. The Allision and resulting damage and/or loss were caused by the Vessel's and Petitioners' failure to: (a) properly maintain and/or prepare the Vessel for its intended use and voyage; (b) properly and safely stow the cargo(es) aboard the Vessel in order to mitigate the risk of loss from an allision; (c) properly and adequately repair the Vessel despite ongoing issues with its electrical system and/or other systems; and (d) properly and timely deviate to a port of refuge so as to limit loss and/or damage, and for such other and further reasons as may be developed during discovery.

63. By reason of the premises, Cargo Claimants have sustained damage to cargo and/or have suffered particular average losses, as nearly as same can now be estimated, no part of which has been paid, in the amounts reflected in the Schedules (with errors and omissions excepted).

**REQUEST FOR RELIEF**

**W H E R E F O R E**, Cargo Claimants respectfully demand judgment against Petitioners and the M/V DALI as follows:

A.  Dismissing the Petition with prejudice in all respects;

B.  Denying Petitioners' request for exoneration from or limitation of liability pursuant to the Limitation Act, 46 U.S.C. § 30501, *et seq*.;

C.  Directing the Petitioners to post additional financial security as the Court may determine to fully discharge and to secure the Petitioners' liabilities and obligations to Cargo Claimants and to all other claimants;

D.  Directing the Petitioners to post additional financial security sufficient to reflect the actual value of the M/V DALI and the pending freight;

E.  For the full amount of Cargo Claimants' damages claims, as they may subsequently be proven, together with interest thereon and the costs and disbursements of this action;

F.  For the legal fees, costs, and disbursements incurred herein;

G.  For pre-judgment and post-judgment interest as allowed by law; and/or

H.  Granting such other and further relief as the Court seems just and proper.

Dated:  Baltimore, Maryland
         November 22, 2024

/s/ Terry L. Goddard Jr.
James D. Skeen (00010)
Terry L. Goddard Jr. (15460)
Skeen & Kauffman, LLP
9256 Bendix Road, Suite 102
Columbia, MD 21045
T: (410) 625-2252
F: (410) 625-2292
jskeen@skaufflaw.com
tgoddard@skaufflaw.com

John J. Sullivan (*pro hac vice*)<br>
HILL RIVKINS LLP<br>
45 Broadway, Suite 2110<br>
New York, NY 10006<br>
jsullivan@hillrivkins.com<br>
T: (212) 669-0609<br>
F: (212) 669-0698<br>
<br>
*Attorneys for Cargo Claimants*

### Certificate of Service

I hereby certify that on the 22nd day of November, 2024, I uploaded the foregoing and any attachments/exhibits to the Court's CM/ECF system for filing and service on all interested parties.

/s/ Terry L. Goddard Jr.<br>
Terry L. Goddard Jr.