UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| **In the Matter of the Petition** **Of** **GRACE OCEAN PRIVATE LIMITED,** as Owner of the M/V DALI, **And** **SYNERGY MARINE PTE LTD,** as Manager of the M/V DALI, **for Exoneration from or Limitation of Liability** | **Docket No. JKB 24-cv-941** *IN ADMIRALTY* |

### THE STATE CLAIMANTS' MOTION AND MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PARTIAL LIFTING OF STAY[1]

By statute and Supreme Court precedent, certain categories of claims are not subject to limitation under the Limitation of Liability Act, 46 U.S.C. §§ 30501, *et seq*. ("Limitation Act"). Among them are claims for breach of contract and certain statutory environmental claims. The State Claimants have asserted multiple such claims against Petitioners, Grace Ocean Private Limited and Synergy Marine PTE Ltd. Because those claims are unaffected by the Limitation Act, the State Claimants request this Court modify the current restraining order (ECF No. 08) to allow them to prosecute those claims outside of this limitation

---

[1] The "State Claimants" are the State of Maryland, by and through Anthony G. Brown, Attorney General of Maryland; the Maryland Transportation Authority, the Maryland Port Administration, and the Maryland Department of the Environment.

1

proceeding, consistent with their rights under the savings-to-suitors clause, 28 U.S.C. § 1333(1). Consideration of this motion does not require the resolution of any disputed facts.

## RELEVANT FACTUAL BACKGROUND

### A. Basic Facts Involving the Allision

The background facts below are taken from the Marine Investigation Preliminary Report issued by the National Transportation Safety Board ("NTSB") on May 14, 2024.[2] These facts are useful in framing the issues for the Court's consideration.[3]

- The DALI docked at the Seagirt Marine Terminal in Baltimore on March 23, 2024. (Report at 13.)

- Two days later, on March 25, while still berthed at the Seagirt Marine Terminal, the DALI suffered two electrical blackouts. (Report at 13-14.)

- The DALI departed the Seagirt Marine Terminal early on March 26. Not long thereafter, the ship suffered two more electrical blackouts. (Report at 9-11.)

- The two blackouts on March 26 caused the DALI to lose propulsion and rendered her steering ineffective. (Report at 10.)

- At 0129 hours on March 26, the DALI struck the Francis Scott Key Bridge ("FSK Bridge"), causing it to collapse. (Report at 12.)

- Many containers aboard the DALI contained hazardous chemicals and were at risk of damage due to the allision. (Report at 17.)

---

[2] https://www.ntsb.gov/investigations/Documents/DCA24MM031_PreliminaryReport%203.pdf (last visited on November 26, 2024).

[3] Courts may take judicial notice of factual findings in NTSB reports. *Major v. CSX Transp.*, 278 F. Supp. 2d 597, 604-05 (D. Md. 2003) ("The portions of the NTSB Report cited by Plaintiff in her Amtrak Opposition are not excludable . . . because they are part of the factual investigation narrative of the NTSB Report rather than the analysis, findings, or recommendations sections of the Report. The references . . . are also not excludable as hearsay because the NTSB Report qualifies as a public record as defined in [FRE] 803(8).").

- The FSK Bridge collapsed onto the bow of the DALI and into the Patapsco River, together with a number of the containers that had been aboard the ship. (Report at 12, 17.)[4]

### B. The MPA Tariff

The Maryland Port Administration ("MPA") owns the Seagirt Marine Terminal.[5] The MPA has published a tariff, the Terminal Services Schedule No. 23 (the "Tariff"), that applies to all vessels using that facility. The Tariff is publicly available on the MPA website.[6] The Tariff provides the MPA and the State with certain contractual rights with respect to vessels that berth at the terminal.

### C. The State Claimants' Answer and Claim

The Answer and Claim filed by the State Claimants (ECF No. 157) asserts causes of action under the Tariff and causes of action under federal and state environmental statutes. Specifically, the pleading includes three breach-of-contract claims (Counts XI, XII, and XIII), and five environmental claims (Counts VI, VII, VIII, IX, and X). None of these eight causes of action are eligible for limitation.

---

[4] The NTSB Report confirms that the DALI's allision with the FSK Bridge caused debris and other contaminants to fall into the Patapsco River. However, the extent of the environmental damage to the river and the riverbed is not yet determined.

[5] https://mpa.maryland.gov/Pages/seagirt-marine-terminal.aspx (last visited on November 26, 2024).

[6] The Tariff can be found at https://mpa.maryland.gov/Documents/MPAScheduleNo23.pdf (last visited on November 26, 2024). The Tariff has also been filed with the Federal Maritime Commission ("FMC") and the URL for accessing the Tariff is listed on the FMC website at https://www2.fmc.gov/FMC1Users/scripts/ExtReports.asp?tariffClass=mto (last visited on November 26, 2024).

Error! Unknown document property name.

# ARGUMENT

This motion is procedural, not substantive. The State Claimants are not asking this Court to evaluate the merits of any claims. Rather, they ask only that the Court evaluate whether two categories of claims – breach of contract claims and statutory environmental claims – are eligible for limitation under the Limitation Act. Upon concluding that the claims are not subject to limitation, the State Claimants request that this Court modify its prior stay order to allow those claims to be prosecuted in a separate proceeding in the State Claimants' choice of venue.

### A. Claims for Breach of Contract are Not Subject to Limitation of Liability

It is hornbook maritime law that contract-based claims against a vessel owner are personal in nature and are not subject to limitation under the Limitation Act. *See American Car & Foundry Co. v. Brassert*, 289 U.S. 261, 264 (1933) (shipowners are entitled to limit liability for acts of the master and crew done without their privity or knowledge, but remain liable for their own fault, neglect, and contracts); *Pendleton v. Benner Line*, 246 U.S. 353, 356-57 (1918) (holding that the Limitation Act does not limit owners' liability for contractual obligations); *Richardson v. Harmon,* 222 U.S. 96, 106 (1911) (the Limitation Act "leaves [the owner] liable for his own fault, neglect and contracts."). Accordingly, claims for breach of contract are not properly adjudicated in a limitation action. *Orion*

4

*Marine Constr., Inc. v. Carroll*, 918 F.3d 1323, 1332 n.3 (11th Cir. 2019) ("contracts entered into by vessel owners are personal and not subject to the [Limitation] Act.").[7]

The law is also clear that an action to enforce a tariff "is simply one for the enforcement of a contract." *Broadvox-Clec, LLC v. AT&T Corp.*, No. 13-1130, 2014 WL 3013275, at *10 (D. Md. July 2, 2014) (quoting *Advamtel, LLC v. AT&T Corp.*, 105 F. Supp. 2d 507, 511 (E.D. Va. 2000)). Courts have consistently upheld this principle, enforcing tariffs as implied contracts. *See Ondimar Transportes Maritimos v. Beatty St. Prop., Inc.*, 555 F.3d 184, 185 (5th Cir. 2009) (holding that a tariff was enforceable against the owner and operator of a vessel as an implied contract); *Lofthouse Mfg. Ltd. v. Ports Am. Baltimore, Inc.*, No. 15-03821, 2016 WL 4662337, at *6 (D. Md. Sept. 7, 2016) ("A marine terminal operator's schedule … is enforceable by an appropriate court as an implied contract."); *Sea Land Indus., Inc. v. Gen. Ship Repair Corp.*, 530 F. Supp. 550, 556 (D. Md. 1982) (reiterating that the contract between the MPA and a vessel for the use of the terminal is a maritime contract).

Here, the DALI's owner and operator became bound by the terms of the MPA Tariff when the ship berthed at the Seagirt Marine Terminal. Counts XI, XII, and XIII are contractual claims based on the MPA Tariff and are therefore not subject to limitation under the Limitation Act.

---

[7] This rule also applies to contractual indemnity obligations. *Mediterranean Shipping Co. S.A. Geneva v. POL-Atl.*, 229 F.3d 397, 403 (2d Cir. 2000) (indemnity claims "are based on personal contract, and, as such, they are not subject to limitation under the Act."); *S&E Shipping Corp. v. Chesapeake & Ohio Ry. Co.*, 678 F.2d 636, 644 (6th Cir. 1982) (liability stemming from indemnity claims "is not subject to limitation under the Act.").

5

## B. Environmental Claims are Not Subject to Limitation of Liability

Like claims for breach of contract, causes of action based upon the violation of environmental statutes, including but not limited to those seeking civil penalties authorized by statute, are not subject to limitation under the Limitation Act.

First, claims brought pursuant to federal environmental statutes, including the Oil Pollution Act of 1990 ("OPA"), the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), and the Federal Water Pollution Control Act ("CWA"), are not subject to the Limitation Act. *See* 33 U.S.C. § 2718(a) (OPA); 42 U.S.C. § 9607(h) (CERCLA); *see also Metlife Cap. Corp. v. M/V EMILY S.*, 132 F.3d 818, 822 (1st Cir. 1997) (the Limitation Act does not apply to OPA claims); *In re Wilkie,* No. 11-00205, 2012 WL 1918775, at *3 (D. Alaska May 24, 2012) (noting the "inapplicability of CERCLA to Limitation Act cases"); *United States v. CF Indus., Inc.*, 542 F. Supp. 952, 955-56 (D. Minn. 1982) (the Limitation Act does not apply to CWA claims).

Second, OPA, CERCLA, and the CWA provide a floor for liability, allowing states to enact more stringent environmental requirements. Indeed, OPA and CERCLA expressly authorize states to enact laws providing for additional liability. *See* 33 U.S.C. §§ 2718(a), 1370 (OPA); 42 U.S.C. § 9614 (CERCLA). OPA and CERCLA further contain Congress' express intent to exempt the state analogue statutes from the Limitation Act. 33 U.S.C. § 2718(a); 42 U.S.C. § 9607(h); *see also Bouchard Transp. Co. v. Updegraff*, 147 F.3d 1344, 1352 (11th Cir. 1998) ("OPA 90 authorizes states to adopt liability laws for oil spills and exempts those laws from the provisions of the [Limitation Act]."); *Lexington Ins. Co. v. Langei*, No. 12-1036, 2014 WL 3563380, at *2 (W.D. Wash. 2014) (holding that the

6

Limitation Act did not apply to claims brought under Washington's Model Toxics Control Act which, like CERCLA, applies to the cleanup of hazardous substances); *In Matter of Jahre Spray II K/S*, No. 95-3495, 1996 WL 451315, at *6 (D.N.J. Aug. 5, 1996) ("[T]he Court has found that it does not have authority under the [Limitation] Act to enjoin claims pursuant to the OPA, it similarly finds that it lacks authority in this limitation proceeding to enjoin the federal, state and common laws claims raised by the claimants related to the oil spill.").

Although the CWA does not contain the same express language found in OPA and CERCLA, the "notwithstanding" language in the CWA's savings clause accomplishes the same purpose by reflecting Congress' intent that state analogue statutes are exempt from the Limitation Act. *See* 33 U.S.C. § 1370 ("Except as expressly provided in this chapter, nothing in this chapter shall (1) preclude or deny the right of any State or political subdivision thereof or interstate agency to adopt or enforce (A) any standard or limitation respecting discharges of pollutants, or (B) any requirement respecting control or abatement of pollution . . ."); *see also In re Hokkaido Fisheries, Co., Ltd.,* 506 F. Supp. 631, 634 (D. Alaska 1981) (section 1321(f) of the CWA precludes application of the Limitation Act to CWA claims).

Additionally, claims seeking to recover civil regulatory penalties may not be limited by the Limitation Act. *See In re Transporter Marine, Inc.*, 217 F.3d 335, 338-39 (5th Cir. 2000) ("We do not read the Limitation Act to embody an intention to protect against fines and forfeitures in the form of civil regulatory penalties."); *United States v. CF Indus., Inc.*,

Error! Unknown document property name.

542 F. Supp. 952, 955 (D. Minn. 1982) (noting that the Limitation Act "does not specifically cover suits for statutory penalties").

Here, the State Claimants have brought two causes of action under CERCLA (Counts IX and X) and three causes of action under Maryland's environmental statutes authorized by CERCLA, OPA, and the CWA (Counts VI, VII, and VIII). For all five claims, the State Claimants seek to recover damages and civil penalties for the violations of the statutes.[8] None of these five claims is subject to limitation under the Limitation Act.

### C. Where Claims are Not Subject to Limitation, the State Claimants are Entitled to Pursue Them in the Forum of Their Choosing

Maritime law distinguishes between *in rem* claims and *in personam* claims. Although the former must be brought in federal court, the savings-to-suitors clause, 28 U.S.C. § 1333(1), preserves a plaintiff's right to bring *in personam* maritime claims in non-maritime courts. Gilmore and Black, THE LAW OF ADMIRALTY (1957), at 36 ("Where the suit is *in personam*, it may be brought either in admiralty or, under the saving clause, in an appropriate non-maritime court, by ordinary civil action.").[9]

Because the Limitation Act is in tension with the rights embodied in the savings-to-suitors clause, when claims are not subject to limitation, "plaintiffs generally have been able to choose the forum in which they bring *in personam* claims." *In re Lion Air Flight*

---

[8] The civil penalties available under state law arise under Md. Code Ann., Envir. §§ 4-417, 7-266(a), and 9-342.

[9] This rule applies to claims for breach of a maritime contract. *Atl. & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 359 (1962) ("…a suit for breach of a maritime contract, while it may be brought in admiralty, may also be pursued in an ordinary civil action").

*JT 610 Crash*, 110 F.4th 1007, 1014 (7th Cir. 2024) (providing a historical overview of admiralty jurisdiction and the savings-to-suitors clause). Said differently, "[w]ith the reason for concursus and restraint of other proceedings removed, no reason remained to deprive plaintiffs of their choice of forum or of their statutory right to jury trials." *Wheeler v. Marine Navigation Sulphur Carriers*, 764 F.2d 1008, 1011 (4th Cir. 1985); *see also Pickle v. Char Lee Seafood, Inc.*, 174 F.3d 444, 449-51 (4th Cir. 1999) ("In the event that the limitation of liability is denied, the court should lift the stay and provide the claimants a choice to pursue their claims in the limitation-of-liability action or to revive their original actions where they have demanded trials by jury."); *Complaint of McCarthy Bros. Co./Clark Bridge*, 83 F.3d 821, 827 (7th Cir. 1996) (when a shipowner is not entitled to limit its liability, "the federal court must relinquish exclusive jurisdiction and allow the claimant to proceed in state court").

Here, the State Claimants have brought eight causes of action that are not subject to limitation under the Limitation Act. Because there is no "reason for concursus" with respect to those claims, the State Claimants should be allowed to pursue them outside the limitation proceeding in the forum of their choice.

## CONCLUSION

For the reasons stated above, the State Claimants respectfully ask this Court to modify its prior restraining order to allow them to sue Grace Ocean Private Limited and Synergy Marine PTE Ltd. in the venue of their choosing in pursuit of the following causes

Error! Unknown document property name.

of action identified in their Answer and Claim: Counts XI, XII, and XIII (contractual claims based on the MPA Tariff), and Counts VI, VII, VIII, IX, and X (environmental claims).

Respectfully submitted,

ANTHONY G. BROWN
Attorney General of Maryland

Robert A. Scott (24613)
Howard R. Feldman (05991)
Assistant Attorneys General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
rscott@oag.state.md.us
(410) 576-6324

and

*/s/ Margaret Fonshell Ward*
Margaret Fonshell Ward (04586)
DOWNS WARD BENDER HERZOG &
KINTIGH, P.A.
1350 McCormick Road
Executive Plaza 3, Suite 400
Hunt Valley, Maryland 21031
mward@downs-ward.com
(410) 584-2800

R. Keith Jarrett, T.A.*
David L. Reisman, T.A.*
Raymond T. Waid*
Elizabeth B. McIntosh*
Jessie E. Shifalo*
Elizabeth A. Strunk*
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099

10

dreisman@liskow.com
rkjarrett@liskow.com
rwaid@liskow.com
ebmcintosh@liskow.com
jshifalo@liskow.com
eastrunk@liskow.com
(504) 581-7979

Scott S. Partridge*
Partridge LLC
231 Glendale Drive
Metairie, Louisiana 70001
scott@partridgellc.com
(314) 952-4132

William J. Jackson*
Andrew W. Homer*
Ivan Morales*
Maria F. Pimienta*
KELLEY DRYE & WARREN LLP
515 Post Oak Blvd, Suite 900
Houston, Texas 77027
bjackson@kelleydrye.com
ahomer@kelleydrye.com
imorales@kelleydrye.com
mpimienta@kelleydrye.com
(713) 355-5000

Philip D. Robben*
Julia Schuurman*
KELLEY DRYE & WARREN LLP
3 World Trade Center
175 Greenwich Street
New York, New York 10007
probben@kelleydrye.com
jschuurman@kelleydrye.com
(212) 808-7800

Melissa E. Byroade (31335)
KELLEY DRYE & WARREN LLP
Washington Harbour, Suite 400
3050 K Street, NW
Washington, DC 20007

11

**Error! Unknown document property name.**

mbyroade@kelleydrye.com
(202) 342-8400

Mark Lanier*
Alex Brown*
The Lanier Law Firm
10940 W. Sam Houston Pkwy N
Suite 100
Houston, TX 77064
mark.lanier@lanierlawfirm.com
(713) 659-5200

*Assistant Counsel to Claimants*

*\*Admitted pro hac vice*

## CERTIFICATE OF SERVICE

I CERTIFY that on this 26th day of November 2024, the foregoing was filed in the United States District Court for the District of Maryland via the Court's CM/ECF filing system, which will provide notice of this failing to all counsel of record.

*/s/ Margaret Fonshell Ward*
Margaret Fonshell Ward