UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(NORTHERN DIVISION)

---------------------------------------------------------------x
In the Matter of The Petition of

GRACE OCEAN PRIVATE LIMITED, as Owner of the M/V DALI,

And

SYNERGY MARINE PTE LTD, as Manager of the M/V DALI,

For Exoneration from or Limitation of Liability.
---------------------------------------------------------------x

Docket No: 1:24-cv-00941

*IN ADMIRALTY*

**REPLY OF ACE AMERICAN INSURANCE COMPANY TO PETITIONERS' OPPOSITION TO MOTION FOR PARTIAL LIFTING OF STAY**

Claimant Ace American Insurance Company ("Ace") hereby replies to the arguments raised by Petitioners in their opposition to Ace's Motion for Partial Lifting of Stay. Ace adopts and incorporates all arguments raised by the Maryland Claimants in their reply brief regarding the substantive bases for the contract claims and partial lifting of the stay. (ECF No. 458). Petitioners also raise several meritless defenses aimed specifically at Ace, which are addressed herein.

First, without citing any legal authority whatsoever, Petitioners make the claim that Ace has waived its right to assert contract claims based upon language in the Joint Status Report[1]. The language at issue provides as follows:

> … for example, the State of Maryland has asserted a number of claims that will not inure to Ace's benefit, including economic

---

[1] Petitioners also make a reference to a "seat at the table." Ace is entitled to a "seat at the table" because, among other reasons, it suffered $350,000,000.00 in damages at the hands of the Petitioners' recklessness, gross negligence, negligence, incompetent and criminal behavior, which also breached the MPA tariff. Putting aside the loss of life, the value of which is incalculable, Ace has suffered a massive loss that, in and of itself, entitles Ace a "seat at the table."

>losses flowing from the destruction of the Francis Scott Key Bridge, pollution claims, contract claims and punitive damages claims.

(ECF No. 406 at 5).

The destruction of the Francis Scott Key Bridge ("the Key Bridge") caused Maryland Claimants to suffer a myriad of damages far in excess of Ace's policy limits of $350 million - some of the damages are covered under the policy and some of the damages are not covered under the Ace policy. The repair costs of the Key Bridge alone exceeded the overall policy limit so Ace did not specifically assess all damages sustained by the Maryland Claimants that were potentially covered under the policy. Notably, the policy contains coverages for property damage to the Key Bridge, demolition, debris removal, pollution clean-up, lost revenue and other causes of loss (all subject to the terms of the policy and limits). The Maryland Claimants suffered losses across all of these coverages and demanded payment of the policy limits. Ace adjusted the claim and determined that the repair costs of the Key Bridge on its own was well in excess of the overall $350 million policy limits. Accordingly, and without even evaluating the possible environmental clean-up costs and other covered aspects of the claim, Ace paid its limits. By virtue of its payments, Ace is now legally, contractually and equitably subrogated to the rights of the Maryland Claimants to the full extent of its payments and the policy coverages under which those payments were made.[2]

The Maryland claimants have asserted claims related to environmental cleanup costs in Count VI (Environment Title VII, Subtitle to Claim Under Maryland Law), Count VII (Environment Title IV, Subtitle IV Claim Under Maryland Law), Count VIII (Environment Title

---

[2] Petitioners incorrectly presume that Ace's subrogation rights arise only by contract under the policy. Petitioners are mistaken, again. Ace's subrogation rights may arise not only under the policy, but also by contractual assignment and legally and equitably by operation of law following its payments. See *The Potomac, 105 U. S. 630 (1881)* and *Poteet v. Sauter, 766 A.2d 150 (Md. 2001).* Where a carrier has only partially reimbursed its insured for a loss, both the insured and carrier retain an interest in a claim, have substantives interest in claims against tortfeasors and are real parties in interest who can separately pursue that claim. 766 A.2d at 159.

IX, Subtitle III Claim Under Maryland Law), Count IX (Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9607(a)); and Count X (Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.C.S. §§ 9613(G)). These claims (some or all of them) for environmental clean-up costs *may* have fallen within coverages for environmental claims under the Ace policy[3]. However, Ace adjusted the claim and paid its limits based on an evaluation of the damages sustained by the Maryland Claimants to the Key Bridge, which on their own, significantly exceeded the $350 million policy limit. This is just one of many examples of why Ace's claims are not co-extensive with the Maryland Claimants' claims.

Putting aside for a moment the damages suffered by Maryland Claimants that Ace is *not* seeking, the Maryland Claimants have suffered BILLIONS in property damage due to direct physical damage to the Key Bridge which is defined as INSURED PROPERTY in the Declarations of the Policy. *See*, Exhibit "A," at 1 of 3. In Count XIII of the Maryland Claimants Answer, they allege "BREACH OF INDEMNIFCATION OBLIGATION IN MARITIME CONTRACT, TARIFF 34-108". Paragraphs 178 and 179 of the Maryland Claimant's Petition alleges as follows:

> 178. The DALI's allision with the FSK Bridge was incidental to or resulting from Petitioners' use of the Seagirt Marine Terminal.

---

[3] The policy provides coverage for Pollution or Contamination clean-up. Specifically, the policy provides, in part, that Ace will pay "the necessary and reasonable expenses incurred by the NAME INSURED to clean-up and remove CONTAMINANTS OR POLLUTANTS from land or water at the location of INSURED PROPERTY shown on the Declarations if the discharge, dispersal, seepage, migration, release or escape of the CONTAMINANTS OR POLLUTANTS is caused by or results in direct physical loss or damage that occurs during the Policy period, and which is not excluded by this Policy." *See* Exhibit "A," Ace policy at 2 of 3. CONTAMINANTS OR POLLUTANTS are defined to include "any solid, liquid, gaseous or thermal irritant or contaminant including vapor, fumes, acids, soot, alkalis, virus, chemicals and waste or any hazardous substances as listed in the Federal Water Pollution Control Act, Clean Air Act, Resource Conservation and Recovery Act or 1976, and Toxic Substances Control Act, or as designated by the US Environmental Protection Agency. See Exhibit "A," Ace Policy at 12 of 14.

> 179. The DALI's allision with, and destruction of, the FSK Bridge has caused MPA to suffer, among other things, losses, damages, costs, and attorney's fees.
>
> …
>
> 181. Contractual claims such as this are not subject to limitation under the Limitation of Liability Act, whose provisions apply only to claims that sound in tort. MPA, therefore, asserts its right to have this breach-of-contract claim heard in a form of its choosing.

(ECF No. 157 at ¶¶ 178, 179 and 181).

While some of contract and/or pollution claims being asserted by the Maryland Claimants *may* not inure to Ace, other causes of action seeking damages to the Key Bridge, demolition, debris removal, lost toll revenues and environmental cleanup costs, do inure to the benefit of Ace to the extent the damages were covered damages under the Ace policy and Ace made payments to the Maryland Claimants for these damages as part of its overall $350 million policy limit payment. The Joint Status Report, which sets forth the general proposition that not *all* the Maryland Claimants' claims inure to the benefit of ACE, merely states the obvious, i.e., that Ace and the Maryland Claimants' claims are not co-extensive because *some* of the claims asserted by Maryland do not inure to Ace. However, nothing in the Joint Status Report statement implies or suggests that Ace was giving up viable contract or other theories of liability that might allow for a recovery of the payments made by Ace to the Maryland Claimants for damages that were covered by the Ace policy.

Next, Petitioners suggest Ace has not established or proven its subrogation rights because it did failed to provide the Court with a copy of the governing insurance policy. Petitioners missed the mark because, as pointed out by the Maryland Claimants, this Motion is procedural and not substantive. For the same reason that Ace was not required to attach a copy of its policy

to its Claim, it should not be required to attach a copy of the policy to its Motion.[4] This Motion merely reflects Ace's *allegation* that it is subrogated to the rights of the Maryland Claimants and, therefore, should be permitted to bring its contract claims in state court along with its subrogor. At the appropriate time, Ace will be required to establish its subrogation rights as an element of proof. The Petitioners' Opposition is akin to a Motion to Dismiss, such that Ace's allegations of a subrogation right should be accepted as true.

Additionally, Petitioners assert that Ace's failure to assert contract claims in its Claim should end the inquiry and result in denial of its motion. However, Petitioners ignore this Court's Order staying claims outside this limitation proceeding. Indeed, while some parties chose to allege specific causes of action with their claim, none of the claimants are required to do so under the Limitation Act and given the stay. When the limitation is broken, Ace, like all of the other claimants, will have the right to bring its claims, whether asserted in this Court or in a separate state court action. However, in the interim, the very purpose of this Motion is to seek leave for the filing of contract claims outside this limitation action. Alternatively, if this Court deems amendment or proof of subrogation rights necessary for the granting of this Motion, Ace would ask that the Court provide it with leave to amend its Claim to assert the specific contract claim asserted by the Maryland Claimants.

Finally, it is a matter of hornbook Admiralty Law that personal contracts of a shipowner are not subject to limitation under the Act. *See* Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 15-7, at 314 (2d Ed. 1994). *See also American Car & Foundry Co. v. Brassert,* 289 U.S. 261, 264; 53 S.Ct. 618 (1933) (shipowners entitled to limit liability for acts of master and crew

---

[4] A subrogating carrier would not be required to attach a copy of its policy to a complaint if it initiated an action. The same holds true of Ace in its capacity as Claimant in this limitation action  While Ace does not believe it was necessary to attach a copy of the policy to either its Claim or its Motion, in order to moot this issue, Ace has attached a copy of the policy as Exhibit A.

done without their privity or knowledge, but remain liable for own fault, neglect, <u>and contracts</u>) (emphasis added); *Richardson v. Harmon,* 222 U.S. 96, 106, 32 S.Ct. 27, 56 L.Ed. 110 (1911) (shipowner entitled to limit liability under Limitation Act for all claims arising out of conduct of master and crew, but remains liable for own fault, neglect, <u>and contracts</u>); *The Loyal,* 204 F. 930, 932–33 (2d Cir.1913) (owner's personal contract is outside limitation statute); *see also,* 2 Schoenbaum, *supra,* § 15–8, at 318–19. This exception to limitation determines the outcome sought here by ACE and the Maryland Claimants. The personal contract exception prevents shipowners and bareboat charterers from attempting to limit liability that they have contracted to bear. "In application this is an equitable doctrine based on the proposition that a shipowner should not be able to promise an undertaking or performance that was within his personal control and then turn around and limit liability when his performance was faulty." 2 Schoenbaum, *supra,* § 15–8, at 318; *see Richardson,* 222 U.S. at 106, 32 S.Ct. 27.

Here, the Vessel Owner contracted with the State of Maryland for use and access to the Maryland Port in Baltimore. The breach of contract causes of action are outside of the Limitation. As subrogee, and as set forth in Movant's original papers, ACE is also entitled to allege breach of contract causes of action outside of the Limitation because Ace stands in the Maryland Claimants' shoes to the extent of its payments for claims covered under the Ace policy. Accordingly, if the damage to the Key Bridge and other resulting damages are recoverable under the contract based theories, then Ace should be entitled to assert them in a separate proceeding along with its insured.

Petitioners' Opposition (ECF No. 456) does not dispute that claims for breach of contract and claims for environmental penalties are beyond the scope of the Limitation. In fact, Blank Rome, counsel for the Limitation Petitioners, recognized in an article published on its own

website that "certain seaman's claims are not subject to limitation, *nor are claims related to personal contracts involving the shipowner* or those arising under the Oil Pollution Act of 1990 and the Clean Water Act." *See The Gateway to Federal Court: Admiralty Jurisdiction and Limitation of Liability,* Blank Rome Mainbrace: December 2021 edition, https://www.blankrome.com/publications/gateway-federal-court-admiralty-jurisdiction-and-limitation-liability.

This concept was also recently recognized after the Limitation of Liability Act was invoked in the Deepwater Horizon oil spill by Transocean Ltd. In that case, the United States government filed a separate action against BP and other defendants which also included a breach of contract relative to a lease as well as environmental claims, which was brought in a separate consolidated action rather than within the limitation. (See Case 2:10-cv-04536-CJB-SS, Document 1 Filed 12/15/10 at Paragraphs 24 and 25). In present matter, the Maryland Claimants and Ace have similar contract based causes of action that were originally stayed by this Court's Order. This Court's Order staying such claims is the very reason for this Motion and the Court specifically directed the parties to move for a partial lift of the stay in its Case Management Order No. 3. (ECF 438 at p. 6). It is for this reason that Ace and Maryland Claimants should be permitted to file these *ex-contractu* claims in a forum of their choosing relative to those causes of action.

The only question for this Court on the present motion is whether the Maryland claims exist outside of the limitation. If the Court decides that those claims may be brought, now and outside of the limitation action, then both the Maryland Claimants and Ace should be permitted to file those claims in a forum of their choosing. At that point, the viability of those claims and Ace's subrogation rights can be determined.

Respectfully submitted,

COZEN O'CONNOR

By: _____
   Robert Phelan, Esq.
   D. Md. Bar. ID 31070
   Lawrence F. Walker, Esq.
   D. Md. Bar ID 31059
   *Proctor in Admiralty*
   Daniel J. Luccaro, Esq.
   D. Md. Bar ID 31079
   One Liberty Place
   1650 Market St., Suite 2800
   Philadelphia, PA 19103
   (800) 523-2900
   rphelan@cozen.com
   lwalker@cozen.com
   dluccaro@cozen.com

*Counsel for Claimant Ace American Insurance Company*

Dated: December 23, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2024, a copy of the foregoing Reply of ACE American Insurance Company to Petitioners' Opposition to Motion for Partial Lifting of Stay was filed electronically and served on all counsel through the Court's CM/ECF System.

By:_____
Robert W. Phelan, Esq.