UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| In the Matter of the Petition<br><br>Of<br><br>GRACE OCEAN PRIVATE LIMITED, as Owner of the M/V DALI,<br><br>And<br><br>SYNERGY MARINE PTE LTD, as Manager of the M/V DALI,<br><br>for Exoneration from or Limitation of Liability | Docket No. JKB 24-cv-941<br><br>*IN ADMIRALTY* |

**CLAIMANTS' MEMORANDUM IN
SUPPORT OF MOTION TO COMPEL PETITIONERS
TO SUBMIT TO DEPOSITION IN THE DISTRICT OF MARYLAND**

Claimants, appearing herein through court-appointed lead counsel, respectfully move this Court pursuant to Rule 37 of the Federal Rules of Civil Procedure for an order compelling Petitioners, Grace Ocean Private Ltd. and Synergy Marine Pte. Ltd., to appear for deposition in this judicial district, where they chose to bring this Limitation Action. Petitioners insist that both their corporate depositions and the depositions of their key management employees must take place overseas. The case law—including cases from this Court—makes clear that corporate plaintiffs (and their agents and employees) are obligated to appear for deposition in the venue where they chose to file suit. Petitioners cannot carry their burden of demonstrating any extraordinary conditions that would warrant a deviation from that settled rule.

## **BACKGROUND**

Grace Ocean and Synergy Marine are the owner and manager, respectively, of the M/V DALI. According to their Complaint, both corporations are organized under the laws of Singapore, with their corporate offices in Singapore. (ECF 1 at paras. 3 and 4.)

After the M/V DALI struck the Francis Scott Key Bridge on March 26, 2024, Grace Ocean and Synergy Marine wasted no time initiating litigation, filing this proceeding a mere six days later, at a time when the FBI had already begun an investigation.[1] Petitioners were under no obligation to file the limitation action at that time, *see* 46 U.S.C. § 30511(a) (vessel owners have six months from written notice of a claim within which to file a limitation petition), or even at all. Petitioners could have elected instead to assert a limitation-of-liability defense in opposition to any of the lawsuits that the victims were sure to bring, whether in federal or state court. *See Langnes v. Green*, 282 U.S. 531 (1931). If they had followed that route, they would have preserved their ability to object to appearing in this district for deposition.

Notwithstanding those options, not only did Petitioners choose to bring suit in this judicial district, they demanded and obtained an injunction prohibiting suit against them elsewhere. (ECF 8.) Said differently, Petitioners forced all those seeking damages as a result of the allision to appear in and file their claims in the very venue Petitioners now seek to evade.

Given that Claimants have been forced to assert their claims in this judicial district, they properly and justifiably seek to take the corporate depositions of Grace Ocean and Synergy Marine here, as well as the depositions of certain Synergy Marine management personnel, all of whom are

---

[1] "The FBI has been involved in the investigation from the beginning, said William DelBagno, special agent in charge for the Baltimore field office." https://news.usni.org/2024/03/26/coast-guard-heading-search-and-rescue-effort-after-container-ship-collapses-baltimore-bridge.

foreign nationals.[2] The parties are mindful of this Court's admonition that they should work together to resolve issues such as deposition venues. Case Management Order No. 3 at 4 (ECF 438). To that end, they have held—in good faith—several meet-and-confers on this issue.[3] Unfortunately, however, the parties are at an impasse.

In arguing against bringing their witnesses to the United States for deposition, Petitioners have pointed to the government's ongoing criminal investigation.[4] They also point out that certain crewmembers of the DALI have been detained in this country since the allision.[5] Petitioners fear their management personnel could face the same fate (being called upon to account for their actions) if forced to come here. But, again, Petitioners voluntarily chose to file suit in this forum when they had no such obligation. Moreover, in order to meet their burden of proof (discussed *infra*), Petitioners will undoubtedly need to produce these same witnesses here for trial. Petitioners should not be able to use the Limitation Act as a sword and a shield, producing witnesses where, when, and how they choose.

---

[2] Synergy Marine has identified the following shoreside personnel who assisted in the management of the DALI: Balaji V. (Fleet Manager), Capt. Ravi Sekhar BV (Marine Manager), Vishal C. Prabhu (Superintendent), Capt. Melroy Dsouza (Marine Superintendent), Rajesh Inigo K. (Manager – QHSE), Narayanan K. (Technical – Procurement), and R. Karthik Nair (Assistant Manager – Technical). Synergy Marine has suggested these are the persons who should be deposed. *See* Email from Wm. Bennett dated 12.18.24, attached hereto as Ex. A.

[3] The most recent meet-and-confer took place on January 22, 2025, and involved William Bennett and Thomas Belknap on behalf of Petitioners. During that conference, Petitioners offered to produce their witnesses in London rather than insist on depositions in Asia. They also offered to defray a portion of the costs for certain of the Claimants' counsel to travel to London.

[4] https://www.baltimoresun.com/2024/04/15/dali-fbi-agents/.

[5] https://thedailyrecord.com/2024/06/20/attorneys-for-baltimore-seek-to-keep-dali-crew-members-from-returning-home/.

## DISCUSSION

**A.     Plaintiffs Must Appear for Deposition in Their Chosen Venue**

The general rule is that plaintiffs (and their agents and employees) must make themselves available for deposition in the district in which they brought suit. *See* 8A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane & Richard L. Marcus, *Federal Practice & Procedure* § 2112 (3d ed.) (hereafter "Wright & Miller"); 1 Discovery Proceedings in Federal Court § 9.4 (3d ed.); *Webb v. Green Tree Servicing, LLC*, 283 F.R.D. 276, 279 (D. Md. 2012) ("Generally, plaintiffs 'must make themselves available for examination in the district in which suit was brought.' . . . This rule 'is based on the rationale that the plaintiff has selected the forum and should not be heard to complain about having to appear there for a deposition.'"). "By commencing litigation in this district (and by transacting [business] in this district), Plaintiffs should have reasonably anticipated being required to appear in this district for depositions or other proceedings, including trial." *Wei Su v. Sotheby's Inc.*, No. 17-4577, 2019 WL 4053917, at *2 (S.D.N.Y. 2019).

When the plaintiff is a corporation, the general rule also applies to its "agents and employees." *See Detweiler Bros., Inc. v. John Graham & Co.*, 412 F. Supp. 416, 422 (E.D. Wash. 1976) ("As a normal rule plaintiff will be required to make himself available for examination in the district in which he has brought suit…This rule would also apply to plaintiff's agents and employees."); *Lexington Ins. Co. v. Commonwealth Ins. Co.*, No. 98-3477, 1999 WL 33292943, at *9 (N.D. Cal.1999) (finding general rule "applicable to plaintiff's agents and employees"); *Radian Asset Assur., Inc. v. College of Christian Bros. of N.M.*, No. 09-0885, 2010 WL 5150718, at *5 (D.N.M. 2010) ("The Court will require that Radian Asset's agents, officers, and current employees travel to Albuquerque for depositions…Because Radian Asset, a corporate plaintiff, chose the litigation forum, the Court finds it reasonable to require Radian Asset to produce its officers, employees, and agents in the forum for depositions."); *Buergofol GmbH v. Omega Liner*

*Co.*, 2024 WL 4290795, at *2 (D.S.D. 2024) ("This rule is also applicable to plaintiff's agents and employees.").

### 1. Local Depositions Also Make Practical Sense in This Case

The general rule requiring Petitioners (and their agents and employees) to appear for deposition in Baltimore is also the most practical and efficient approach. The event giving rise to this lawsuit is a matter of grave and foremost importance to both the litigants and to Maryland's citizens. The monumental case involves dozens of Claimants and attorneys and all proceedings to date have taken place in person, in Baltimore.

In considering deposition locations, some courts assess the efficiency of the proposed venue. For example, in *In re Honda Am. Motor Co. Dealership Relations Litig.*, 168 F.R.D. 535 (D. Md. 1996), Honda sought to quash depositions of its "directors, officers or managing agents," which were noticed for Baltimore, in favor of taking the depositions in Japan. The court rejected that motion, noting: "[T]he plaintiffs persuasively argue that the travel costs of deposing Honda's four managing agents in Baltimore would be far less than if all plaintiffs and their attorneys (as well as other defendants and their counsel) were required to travel to Japan." *Id*. at 539. Here, as many as 18 lawyers have expressed an interest in attending these depositions on Claimants' behalf, and more on behalf of Petitioners. It would be far more efficient in terms of time and expense to require the deponents (the two corporate Petitioners and certain management personnel) to travel to the United States than to require both the deponents *and* numerous lawyers to travel to London.[6]

---

[6] The efficiency of Maryland depositions is especially true in this case, where counsel for most parties—including Petitioners—have offices in or easily accessible to Maryland. *See In re Vitamin Antitrust Litigation*, No. 99-197, 2001 WL 35814436, at *5 (D.D.C. 2001) ("Given the number of parties and attorneys actively involved in this litigation, and, in particular, the number of defense attorneys with offices in or easily accessible to Washington, D.C. (whose travel, food, and lodging costs to attend depositions in Europe and Japan would impose significant burdens on their clients), there are considerable efficiencies to be gained by ordering depositions here[.]").

Another factor favoring local depositions is the large number of documents that are expected to be discussed with the deponents. It would be much simpler in terms of cost and logistics to present the documents domestically rather than haul them to London. *See Turner v. Prudential Ins. Co. of Am.*, 119 F.R.D. 381, 383 (M.D.N.C. 1988) (recognizing the "expense and inconvenience of moving large amounts of documents" as a relevant factor in determining deposition location); *In re Honda*, 168 F.R.D. at 539-40 (fact that relevant documents were located domestically favored depositions in Baltimore instead of Japan).

In addition, Petitioners are Singapore corporations, and the management deponents are all foreign nationals residing in Singapore or India or Japan. Although Petitioners have agreed that the Federal Rules of Civil Procedure will govern the overseas depositions, and have suggested the London venue in part to ameliorate Claimants' concerns, any risk that the depositions may be restricted by legal and procedural requirements of a foreign country also weighs in favor of conducting the depositions in the United States. *See In re Vitamin Antitrust Litigation*, 2001 WL 35814436, at *6-10 (declining to accept counsel's representation that Federal Rules depositions could proceed without incident abroad).

Finally, the availability of the Court to resolve any disputes that may arise during the depositions favors taking them locally. *See Schall v. Suzuki Motor of Am., Inc.*, No. 14-00074, 2018 WL 283266, at *4 (W.D. Ky. 2018) ("[I]f a dispute were to arise during a deposition in Japan, the Court's authority to intercede would be severely impeded both by the difference in time zones between the Court and the deposition, and the Court's diminished power to intercede in a dispute that arises on foreign soil.").[7]  Here, the depositions of Petitioners and their key management

---

[7]   *See also Mill-Run Tours, Inc. v. Khashoggi*, 124 F.R.D. 547, 551 (S.D.N.Y. 1989) ("A much more compelling factor here is the need for judicial supervision. Although a judge or magistrate could conceivably resolve discovery disputes at an overseas deposition by telephone, such a procedure is costly and unwieldy. … Holding them in New York would accelerate the resolution of these disputes

personnel are very important. Should disputes arise during the depositions, access to the Court will be important. Foreign depositions compromise that accessibility, and adjourning the deposition for completion at a later date—after the dispute is resolved—is not practical with witnesses from a foreign country.

Taking all these factors together, it is inarguable that it would be more practical and efficient for the litigants, their counsel, and the Court to hold Petitioners' depositions in Maryland, the district in which they chose to file this action, in accordance with the general rule.

### 2. The General Rule is Particularly Appropriate in Limitation Proceedings

The general rule requiring that a plaintiff come to its venue of choice applies with even greater force to a limitation proceeding, especially a limitation proceeding involving an allision.

For one reason, and as discussed *supra*, limitation proceedings are initiated by vessel owners (who are only nominal plaintiffs), that select the forum and force claimants (who would ordinarily be the plaintiffs) to appear in the owners' venue of choice. *See* 46 U.S.C. §30511(c), Fed. R. Civ. P. Supp. Admiralty and Maritime Rules F(3) and F(4). If Claimants have been forced to appear and litigate in a venue they did not choose, fairness requires that the parties who chose the venue (*i.e.*, Petitioners) should be required to appear here.

For another reason, vessel owners bear the burden of proof on most key issues in allision cases. One of those issues is fault. The *Oregon* Rule, derived from a case of the same name (*The*

---

and minimize the risk that any deposition will be interrupted for a significant period. Thus, consideration of litigation efficiency, together with other pertinent factors, tips the balance in favor of conducting the defendants' depositions here."); *McKesson Corp. v. Islamic Republic of Iran*, 185 F.R.D. 70, 80-81 (D.D.C. 1999) (deposition required in Washington D.C., where action was pending, instead of in London, "a location with no relation to the present controversy," in light of travel time, cost, and because "[t]he court's ability to effectively resolve [] disputes would be seriously impaired if the deposition takes place halfway around the world. For example, the time zone difference between the court in Washington, D.C. and a deposition in the Hague or London would result in large breaks in time between when a conflict arises and when the court would have the first opportunity to resolve it.").

*Oregon*, 158 U.S. 186 (1895)), creates a presumption of fault under maritime law when a vessel strikes a fixed structure. The vessel owner carries the burden of proving the absence of fault. *See McLean Contracting Co. v. Waterman Steamship Corp.*, 277 F.3d 477, 481 (4th Cir. 2002) (explaining presumption and affirming finding that barge owner "had not met its burden of proof to disprove the presumption of fault"). Applied here, the *Oregon* Rule requires Petitioners to prove that the DALI struck the Francis Scott Key Bridge through no fault of its own. Meeting that burden of proof will require Petitioners to produce witnesses to testify to such facts. If those witnesses are going to appear here for trial, then they must appear here for deposition. *See Moore v. EO Products LLC*, No. 22-7618, 2024 WL 4441488, at *2 (N.D. Cal. 2024) (requiring the plaintiff to appear for deposition in district where the suit was filed where no showing of hardship was made and the plaintiff said she was willing to travel to testify in-person at trial).

Finally, vessel owners in a limitation proceeding must prove that their management lacked privity or knowledge of any negligent act or vessel condition that caused or contributed to the casualty. 46 U.S.C. §30505(b); Case Management Order No. 3 (ECF 438) at 2. Meeting that burden of proof requires Petitioners to produce management witnesses. *See Coryell v. Phipps*, 317 U.S. 406 (1943) (focusing the privity inquiry on the knowledge of the "executive officer, manager, or superintendent"); *Craig v. Continental Ins. Co.*, 141 U.S. 638 (1891) (focusing inquiry on "managing officers"); and *In re Hellenic Inc.*, 252 F.3d 391 (5th Cir. 2001) (focusing inquiry on "managing agents"). Again, if Petitioners must bring those witnesses here for trial, then they must appear here for deposition. *Moore*, 2024 WL 4441488, at *2. Stated conversely, if the Court denies this motion, consistency dictates that it advise Petitioners that they will not be permitted to bring witnesses to testify at trial that they refused to produce in this forum for deposition.[8]

---

[8] That result is also equitable given that witness credibility will be so important in this case. *See Mt. Hawley Ins. Co. v. Adell Plastics, Inc.,* 348 F. Supp. 3d 458, 469 (D. Md. 2018) (Bredar, J.), *on*

B.  **Petitioners Cannot Carry Their Burden of Proving a Basis
    to Deviate from the Settled Rule**

The general rule can be varied if a plaintiff demonstrates good cause. *See* Wright & Miller, § 2112 (the general rule is not followed "if plaintiff can show good cause for not being required to come to the district where the action is pending."); *Sony Corporation v. Vizio, Inc.*, 2009 WL 10674940, at *2 (C.D. Cal. 2009) ("[T]he deposition of a plaintiff, including a corporate plaintiff, its agents and employees, must generally be taken in the forum in which the plaintiff filed suit, unless the plaintiff can show good cause that the deposition should take place at another location.").

1.  **Petitioners Bear the Burden of Proof**

Although Claimants are the movers here, Petitioners bear the burden of establishing a good basis for taking the depositions somewhere other than Baltimore. *See Mullins v. Premier Nutrition Corp.*, No. 13-1271, 2014 WL 4058484 (N.D. Cal. 2014). That decision granted the defendant's motion to compel a plaintiff to appear for deposition in San Francisco, the judicial district where the plaintiff filed suit, rather than Chicago, where the plaintiff lived. The court made clear that the plaintiff, the non-mover, had the burden of proof: "To avoid the application of [the general] rule, a plaintiff **has the burden of proving** that undue hardship or exceptional or compelling circumstances justify his refusal to travel to his chosen forum." *Id.* at *1-2 (emphasis added). *See also In re Outsidewall Tire Litigation*, 267 F.R.D. 466, 471 (E.D. Va. 2010) (The general rule

---

*reconsideration,* No. 17-252, 2018 WL 6305780 (D. Md. Dec. 3, 2018) (Noting that where genuine factual disputes exist because "the parties present conflicting evidence such that the Court cannot decide the issue without weighing the evidence and assessing the credibility of witnesses," and where the dispute is material, the factual analysis of the issue "is best suited for further development at trial, where the witnesses can testify and be subject to cross-examination."). If Petitioners' witnesses will appear here to testify at trial so that their credibility can be assessed, then they can and must appear here for deposition. *See Moore*, 2024 WL 4441488, at *2 (requiring plaintiff to appear for deposition in district where suit was filed where no showing of hardship was made and plaintiff asserted that she was willing to travel to testify in-person at trial).

requires a plaintiff to appear for deposition in the venue where suit was filed, "but to overcome it, **a foreign plaintiff must persuasively demonstrate** that requiring him to travel to the forum district for his deposition would, for physical or financial reasons, be practically impossible, or that it would be otherwise fundamentally unfair.") (emphasis added).

The circumstances under which courts have found good cause to deviate from the general rule are extremely limited, and none apply here. For example, good cause has been found when a plaintiff is financially or physically unable to travel to the forum, where there is another form of hardship (e.g., travel during wartime), and when it would be "simpler and fairer" to take the deposition at the plaintiff's place of residence. Wright & Miller, at § 2112. None of those facts are applicable here. Notably, Petitioners have not identified any hardship – financial or otherwise – that would preclude their witnesses from coming to Maryland for deposition.[9]

### 2. A Risk of Criminal Charges is Not Good Cause

One circumstance that does not qualify as good cause is a fear of criminal prosecution. In *Novel v. Garrison*, 42 F.R.D. 234 (E.D. La. 1967), for example, the plaintiff filed a suit in Louisiana, where he was under indictment. He resisted returning to Louisiana for deposition, requesting instead that he be deposed in Ohio or Alabama. Denying the plaintiff's motion to quash, the court reasoned:

---

[9] Petitioners' insurers are paying the costs of defense, which would include travel expenses for its witnesses. Moreover, the Petitioners' offer to pay some portion of the travel costs for certain attorneys confirms there are no financial considerations which would impose a hardship on Petitioners if their witnesses travel to Baltimore for their depositions. Of course, Petitioners' offer to defray expenses did not extend to all claimants, only some. They prefer to pick and choose which parties they deem worthy of in-person attendance, further weighing against their choice of a foreign forum.

Furthermore, there is little material difference in terms of convenience in requiring the witnesses to travel to the United States rather than London. Travel time from Singapore to London is approximately 14.5 hours, while Singapore to New York is approximately 18 hours. However, it would take the domestic attorneys over four times longer to travel to London instead of Baltimore.

> The cases which have varied the rule that a non-resident plaintiff should make himself available for pretrial examination in the forum where the action is brought concern themselves with the financial inability of the plaintiff to travel to the site of the deposition or with the physical infirmity of the plaintiff to travel a long distance to the site of the deposition. None of these "special circumstances" are present in this case and no undue hardship in this regard is even seriously suggested by the plaintiff. What difficulties the plaintiff may be having with the District Attorney for Orleans Parish should not be used as a barrier to orderly discovery under the Federal Rules.
>
> Were this Court to adopt the theory proposed by the plaintiff, it would in effect be extending the protective order referred to in 30(b) to include such "special circumstances" as those arising, for example in a case wherein a plaintiff refused to subject himself to the jurisdiction of this state for fear of having to stand trial for a serious felony on down to facing his impoverished wife in the Juvenile Court for criminal non-support.

*Id.* at 235. Many other courts have adhered to the same reasoning.[10]

### 3. A Fear of Self-Incrimination is Not Good Cause

Petitioners' counsel have represented that none of the management witnesses under discussion intends to plead his Fifth Amendment right in response to questions in a civil deposition. However, even if that witness were to change his mind, such a concern would not constitute good cause. In *In re Vitamin Antitrust Litigation*, 2001 WL 35814436, at *4-5, the district court ordered depositions of the defendants to take place in the United States despite the argument that the

---

[10] *See, e.g., Collazos v. U.S.*, 368 F.3d 190, 194 (2d Cir. 2004) (upholding requirement that plaintiff appear for deposition in the United States despite her fear that she would be arrested on a pending criminal charge in Texas); *Restis v. Am. Coal. Against Nuclear Iran, Inc.*, No. 13-5032, 2014 WL 1870368, at *3 (S.D. N.Y. Apr. 25, 2014) (granting motion to compel the plaintiff's deposition in New York even though the plaintiff was under a travel restriction imposed by his home country (Greece)); *U.S. v. All Funds on Deposit at Old Mut. Of Bermuda Ltd. Contract No. CX4011696 in Bermuda*, No. 13-294, 2014 WL 1912091, at *2 (S.D. Tex. May 13, 2014) (denying motion by claimant seeking to force a remote deposition because he was under indictment in Texas – "Petitioner's fear of arrest is not a legitimate reason for holding a remote deposition."); *Perez v. Bastis*, No. 16-902 (N.D. Ga. Dec. 15, 2017) (Rec. Doc. 78) (denying motion for protective order in which plaintiff sought to avoid a deposition in Georgia where he feared "facing child support delinquency proceedings").

witnesses intended to plead the Fifth Amendment: "That some or even many managing agents may avail themselves of their right not to incriminate themselves does not seem to be a strong reason for requiring depositions abroad . . . ." *See also SEC v. Banc de Binary*, No. 13-993, 2014 WL 1030862 (D. Nev. 2014) (the court ordered the defendants' depositions in the United States rather than in Cyprus (the corporation's principal place of business), concluding that the defendants' potential invocation of the Fifth Amendment privilege militated in favor of taking the depositions in the United States because of the potential for a discovery dispute over the invocation that would require court resolution).

## **CONCLUSION**

For all of the above reasons – the Petitioners' choice of forum, the practicalities of stateside depositions, the uniqueness of limitation proceedings, and the absence of any cognizable hardship on Petitioners, Claimants respectfully move this Court to require Petitioners to produce their witnesses for deposition in this forum.

Respectfully submitted this 4th day of February 2025,

        ANTHONY G. BROWN
        Attorney General of Maryland

        Robert A. Scott (24613)
        Howard R. Feldman (05991)
        Assistant Attorneys General
        Office of the Attorney General
        200 Saint Paul Place, 20th Floor
        Baltimore, Maryland 21202
        rscott@oag.state.md.us
        T: (410)576-63214

        and

*/s/ Margaret Fonshell Ward*
Margaret Fonshell Ward (04586)
DOWNS WARD BENDER HERZOG
& KINTIGH, P.A.
1350 McCormick Road
Executive Plaza 3, Suite 400
Hunt Valley, Maryland 21031
mward@downs-ward.com
(410) 584-2800

*/s/ David L. Reisman*
R. Keith Jarrett, T.A. *
David L. Reisman, T.A. (La. Bar # 21833)*
Raymond T. Waid*
Elizabeth B. McIntosh*
Jessie E. Shifalo*
Elizabeth A. Strunk*
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
T: (504) 581-7979
dreisman@liskow.com
rkjarrett@liskow.com
rwaid@liskow.com
ebmcintosh@liskow.com
jshifalo@liskow.com
eastrunk@liskow.com

Scott S. Partridge*
PARTRIDGE LLC
231 Glendale Drive
Metairie, Louisiana 70001
scott@partridgellc.com
(314) 952-4132

William J. Jackson*
Ivan Morales*
Maria F. Pimienta*
KELLEY DRYE & WARREN LLP
515 Post Oak Blvd, Suite 900
Houston, Texas 77027
bjackson@kelleydrye.com
imorales@kelleydrye.com
mpimienta@kelleydrye.com
(713) 355-5000

Philip D. Robben*
Julia Schuurman*
KELLEY DRYE & WARREN LLP
3 World Trade Center
175 Greenwich Street
New York, New York 10007
probben@kelleydrye.com
jschuurman@kelleydrye.com
T: (212) 808-7800

Andrew W. Homer*
KELLEY DRYE & WARREN LLP
888 Prospect Street, Suite 200
La Jolla, California 92037
ahomer@kelleydrye.com
T: (858) 795-0426

Mark Lanier*
The Lanier Law Firm
10940 W. Sam Houston Pkwy N
Suite 100
Houston, TX 77064
mark.lanier@lanierlawfirm.com
T: (713) 659-5200

*Admitted *Pro hac vice*
***Attorneys for State of Maryland***

Daniel O. Rose
Kreindler & Kreindler LLP
485 Lexington Avenue
Ste 28th Floor
New York, NY 10017
drose@kreindler.com
Telephone: (212) 973-3414
***Lead Counsel for Personal Injury and Wrongful Death Claimants***

Robert W. Phelan
Cozen O Connor
3 WTC, 175 Greenwich Street
55th Floor
New York, NY 10007
rphelan@cozen.com
Telephone: (212) 908-1274

Facsimile: (866) 850-7490
***Lead Counsel for Property Damage Claimants***

Adam J. Levitt
DiCello Levitt Gutzler LLC
Ten North Dearborn Street
Ste Sixth Floor
Chicago, IL 60602
alevitt@dicellolevitt.com
Telephone: (312) 214-7900
***Lead Counsel for Local Government Claimants***

Todd D. Lochner
Lochner Law Firm, P.C.
7076 Bembe Beach Rd; Suite 201
Mailbox 6
Annapolis, MD 21403
tlochner@lochnerlawfirm.com
Telephone: (443) 716-4400
***Lead Counsel for Private Economic Loss Claimants***

Terry L Goddard, Jr
Skeen & Kauffman LLP
9256 Bendix Road
Suite 102
Columbia, MD 21045
tgoddard@skaufflaw.com
Telephone: (410) 625-2272
Facsimile: (443) 817-0744
***Lead Counsel for Cargo Claimants***

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 3rd day of February 2025, a copy of the foregoing Joint Status Report was served via the court's CM/ECF system on all counsel of record.

>    */s/ David L. Reisman*
>    David L. Reisman (La. Bar # 21833)