IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| In the Matter of the Petition of GRACE OCEAN PRIVATE LIMITED, *et al.*, for Exoneration from or Limitation of Liability | Civ. No. 24-00941-JKB<br><br>*IN ADMIRALTY* |

\* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM

Following the March 26, 2024, allision of the M/V Dali with the Francis Scott Key Bridge, Petitioners Grace Ocean Private Limited and Synergy Marine Pte, Ltd—the alleged owner and manager, respectively, of the Dali—filed this action pursuant to the Limitation of Liability Act (the "Limitation Act" or, simply, the "Act"), 46 U.S.C. §§ 30501–30530. On April 1, 2024, the Court accepted Petitioners' security of $43,671,000 (ECF No. 7), and issued an order enjoining "[t]he commencement of or further prosecution of any claims or causes of action against the Petitioners and/or the Vessel arising out of the [March 26, 2024, allision] except in this action . . . until the hearing and determination of this proceeding." (ECF No. 8 at 2.) Since then, the period for filing claims has closed (approximately 55 claims were timely filed),[1] discovery has commenced, and a bench trial on the question of Petitioners' entitlement to limitation of or exoneration from liability has been scheduled for June 2026. (Case Mgmt. Order No. 3 (ECF No. 438).)

---

[1] The Court granted a limited time extension, until December 2, 2024, for certain Claimants. (*See* ECF Nos. 353; ECF No. 438 at 7.) Some Claims are brought on behalf of many individual Claimants (*e.g.*, ECF No. 449) or on behalf of a putative class of Claimants (*e.g.*, ECF No. 239). The United States brought a Claim (ECF No. 82), but subsequently reached a settlement with Petitioners and was voluntarily dismissed from this action (ECF Nos. 411, 412).

Now pending before the Court are two Motions for Partial Lifting of Stay: one filed by the State of Maryland, the Maryland Transportation Authority ("MTA"), Maryland Port Administration, and the Maryland Department of the Environment (collectively, the "State") (ECF No. 451); and the other filed by Ace American Insurance Company ("Ace") (ECF No. 454). The Motions request that the Court partially lift its April 1, 2024, injunction order to permit the State and Ace to pursue certain contractual and statutory claims alleged to be outside the scope of the Limitation Act. The Motions are fully briefed, and no hearing is required. *See* Local Rule 105.6 (D. Md. 2023). For the following reasons, the Motions will be denied.

I.   **Legal Framework**

The Limitation Act "provides that a shipowner's liability for a maritime loss or mishap is limited to the value of the ship and her pending freight if the mishap occurred 'without the privity or knowledge' of the owner." *Pickle v. Char Lee Seafood, Inc.*, 174 F.3d 444, 448 (4th Cir. 1999). Under the Act, "the fund against which the claimants must make their claim is equal to the value of the ship *after* the voyage on which the incident occurred." *Id.* (emphasis in original). "Thus if the ship is lost, the value is zero; if a few strippings from the wreck and a life boat or two are saved, those may be solemnly handed over to a trustee or their value ascertained and a bond posted." *Id.* (quoting Grant Gilmore & Charles L. Black, Jr., *The Law of Admiralty* § 10–29, at 907 (2d ed. 1975)).

Congress's purpose in enacting the Act "was to encourage shipbuilding and to induce the investment of money in [the maritime] industry by limiting the venture of those who build the ships to the loss of the ship itself or her freight then pending." *Matter of Sprit Cruises, LLC*, Civ. No. ELH-16-4097, 2017 WL 2276834, at *2 (D. Md. May 25, 2017) (quoting *Hartford Accident & Indem. Co of Hartford v. S. Pac. Co.*, 273 U.S. 207, 214 (1927)). Congress aimed to "assist

shipowners by placing them in parity with European (and particularly English) shipowners who had long enjoyed the benefits of limiting their liability for marine disasters." *Norfolk Dredging Co. v. Wiley*, 439 F.3d 205, 209 (4th Cir. 2006) (quoting *Pickle*, 174 F.3d at 448).

To ensure that shipowners can effectively avail themselves of the protections of the Act, the statute provides that, upon the proper filing of a limitation action, "all claims and proceedings against the owner related to the matter in question shall cease." 46 U.S.C. § 30529(c). This mechanism serves to ensure that "all claims are marshaled and brought into one action—establishing a '*concursus*' of all claims." *Pickle*, 174 F.3d at 449 (quoting *Md. Casualty Co. v. Cushing*, 347 U.S. 409, 414 (1954)). However, the concursus contemplated by the Limitation Act stands in "tension" with the saving-to-suitors clause of 28 U.S.C. § 1333, which permits state courts to exercise concurrent jurisdiction with federal courts over *in personam* (as opposed to *in rem*) admiralty cases.[2] *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 445, 448 (2001). In order to protect the rights of claimants to pursue state-law *in personam* claims in the forum of their choosing, federal courts typically maintain the concursus only until a decision on limitation has been made; if limitation of liability is denied, the stay is lifted, and claimants are given the choice of remaining in the federal action or bringing suit in the forum of their choosing. *Pickle*, 174 F.3d at 451; *In re Aramark Sports & Ent. Servs., LLC*, 831 F.3d 1264, 1273 (10th Cir. 2016) (After a decision on limitation or exoneration, "[t]he claimant then may pursue relief in any suitable forum.").

At issue today, however, is not what happens after the injunction is lifted at the conclusion of the trial on the questions of limitation and exoneration (*i.e.*, after the conclusion of "Phase 1"

---

[2]   Federal courts retain exclusive original jurisdiction over *in rem* proceedings against a vessel, pursuant to the general grant of admiralty jurisdiction provided by 28 U.S.C. § 1333(1). *Am. Dredging Co. v. Miller*, 510 U.S. 443, 446–47 (1994).

3

of this case, *see* Case Mgmt. Order No. 3 (ECF No. 438)). Instead, the question before the Court is whether that injunction—which all parties agree must remain at least partially in effect during Phase 1—should be modified to permit certain Claimants to pursue certain claims allegedly not subject to the Limitation Act. The State and Ace argue that, because a subset of their claims are not subject to the Act, it is not appropriate for the Court to enjoin the prosecution of those claims, and that the injunction should be lifted.

It has long been held that shipowners are not entitled to the protections of the Limitation Act with respect to certain kinds of claims. As relevant here, two categories of claims not subject to limitation are breach-of-contract claims,[3] and claims brought under certain environmental statutes. As for the former, "[t]he Supreme Court has made clear that contracts entered into by vessel owners are personal and not subject to the Act." *Orion Marine Constr., Inc. v. Carroll*, 918 F.3d 1323, 1332 n.3 (11th Cir. 2019) (first citing *Am. Car & Foundry Co. v. Brassert*, 289 U.S. 261, 264 (1933); and then *Richardson v. Harmon*, 222 U.S. 96, 106 (1911)); *see also Mediterranean Shipping Co. S.A. Geneva v. POL-Atl.*, 229 F.3d 397, 403 (2d Cir. 2000) ("Personal contracts entered into by a vessel owner or bareboat charterer are not subject to limitation under the Act.").[4] Similarly, claims under certain federal statutes such as the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") are not subject to limitation of liability. *See, e.g.*, 42 U.S.C. § 9607(h) (provision of CERCLA providing for vessel

---

[3]   As Claimants rightly note, actions to enforce marine tariffs are treated as actions for breach of implied contract. *See Ondimar Transportes Maritimos v. Beatty St. Props., Inc.*, 555 F.3d 184, 185 (5th Cir. 2009); *Lofthouse Mfg. Ltd. v. Ports Am. Balt., Inc.*, Civ. No. CCB-15-3821, 2016 WL 4662337, at *6 (D. Md. Sept. 7, 2016).

[4]   This exception has been justified on the theory that "a shipowner should not be able to promise an undertaking or performance that was within his personal control and then turn around and limit liability when his performance was faulty." 2 Thomas J. Schoenbaum, *Admiralty & Maritime Law* § 15:3 (6th ed. 2024).

owner's liability "[n]otwithstanding any provision of [the Limitation of Liability Act]"); *see also* 3 *Benedict on Admiralty* § 32 (2024) (listing various statutes that impose liability outside the scope of the Act). And, some federal district courts have held that claims under certain state environmental statutes are not subject to limitation of liability, although the Court is not aware of any controlling authority as to whether the specific Maryland statutes at issue here are subject to the Limitation Act. (*See* ECF No. 451 at 6–7 (first citing *Lexington Ins. Co. v. Langei*, Civ. No. 12-1036, 2014 WL 3563380, at *2 (W.D. Wash. July 18, 2014); and then *In Matter of Jahre Spray II K/S*, Civ. No. 95-3495, 1996 WL 451315, at *6 (D.N.J. Aug. 5, 1996).)

## II. The Positions of the Parties

Here, the State requests that the Court lift the injunction so it can pursue two categories of claims in the forum of its choosing. First, the State has three breach-of-contract claims (Counts XI–XIII), relating to Petitioners' alleged breach of the Maryland Port Administration's published tariff in effect at Seagirt Marine Terminal in Baltimore.[5] Second, the State brings claims under state environmental statutes relating to unauthorized discharge of pollutants (Counts VI–VIII); and claims for cost recovery, damages, and declaratory relief under CERCLA (Counts IX–X). (ECF No. 451 at 4–8.) Ace, meanwhile, argues that it is subrogated to the rights of the State with respect to the State's breach-of-contract claims, and that accordingly it should be permitted to bring such claims outside of this limitation action. (ECF Nos. 454; 460 at 1–6.) Both movants argue that because the claims at issue in their Motions are not subject to the Limitation Act, there is no reason for enforcing the concursus, and that they should be free to immediately pursue these claims in the fora of their choosing. (*See, e.g.*, ECF No. 451 at 8–12.)

---

[5]   The tariff is formally known as "Terminal Services Schedule No. 23," and is viewable at the Port Administration's website. *Rate Schedules/Tariffs*, Maryland Port Administration, https://mpa.maryland.gov/Pages/rate-schedules.aspx (last visited February 6, 2025) (select "2016 Maryland Port Administration Price/Rules Schedule 23").

Petitioners do not contest the movants' position that the claims at issue in their Motions are outside the scope of the Limitation Act. Instead, they oppose the requests on several other grounds: first, that policy considerations in favor of maintaining a concursus counsel against permitting movants to pursue certain claims outside of such concursus (ECF No. 456 at 4–6); second, that the Court has supplemental jurisdiction over the claims (*id.* at 6–7); third, that the State's contractual claims are substantively meritless (*id.* at 7–10); fourth, that pursuit of the State's environmental claims is "improper" for a variety of reasons (*id.* at 10–13); and fifth, that Ace is not entitled to assert that it is subrogated to the State's breach-of-contract claims (*id.* 13–14.)

## III. Discussion

Ultimately, the Court considers it unnecessary to determine whether the specific claims at issue in the pending Motions are subject to the Limitation Act. The Court will assume *arguendo* that Petitioners are not entitled to limit their liability with respect to any such claims. The Court will also assume Ace is, or may be, subrogated to the State's contractual claims.[6] Nevertheless, even after conceding these issues to the movants, it does not follow that the Court is required to lift the injunction with respect to those claims, nor even that it would be advisable for the Court to do so.

To begin, to the extent that the movants contend that the Court *must* lift the injunction because their claims are outside the scope of the Limitation Act, such an argument is unavailing. The Supreme Court has repeatedly emphasized that, even when an injunction against state court suits is not strictly necessary to protect a shipowner's Limitation Act rights, the decision to dissolve

---

[6] The Court does not address Petitioners' arguments about the merits of the claims at issue in the pending motions, nor does it address whether Ace is entitled to subrogate itself to the State's contractual claims, because such matters must be addressed only after a decision on limitation has been reached. However, the Court does pause to note Petitioners' characterization of the State's environmental claims as a "cynical sideshow." (ECF No. 456 at 10–11.) This kind of intemperate language tends to detract from, rather than advance, the substance of Counsel's arguments.

or modify the stay is "one of discretion in every case." *Lewis*, 531 U.S. at 449 (quoting *Langnes v. Green*, 282 U.S. 531, 544 (1931)).

The Court has carefully considered the arguments of the State and Ace, and finds many of their contentions to be well-taken. Nevertheless, the Court declines to exercise its discretion to modify the terms of the injunction, because any such modification would frustrate the purpose of the Limitation Act, would risk creating inconsistent judgments with respect to core issues pertaining to the question of whether Petitioners are entitled to limitation of liability, and would be contrary to the interests of judicial economy and fairness.

### A. *Undermining of the Concursus*

First, the lifting of the injunction would undermine the very "heart" of the Limitation Act, namely, "a concursus of all claims to ensure the prompt and economical disposition of controversies in which there are often a multitude of claimants." *Cushing*, 347 U.S. at 415. The benefits of the concursus are lost if parallel litigation is permitted to proceed in other fora:

> [A]fter [limitation] proceedings have been commenced in the proper district court in pursuance thereof, the prosecution *pari passu* of distinct suits in different courts, *or even in the same court by separate claimants*, against the shipowners, is, and must necessarily be, utterly repugnant to such proceedings, and subversive of their object and purpose.

*Pickle*, 174 F.3d at 450–51(emphasis and alterations in original) (quoting *The San Pedro*, 223 U.S. 365, 373 (1912)). The sharpest terms in this quotation may be inapposite when, as here, there is a credible argument that claims are not subject to limitation, but the essential principle remains—all the claims (whether subject to limitation or not) arise out of the exact same series of events that led to the filing of this action, and it is appropriate for the Court to maintain the concursus in full force until its purpose has been fulfilled.

The Court recognizes that the concursus has its disadvantages, not the least of which is that

it forces Claimants who wish to be heard on the question of limitation—many of whom have allegedly suffered catastrophic losses—into a forum not of their choosing. But, Congress has made the decision that a concursus is proper in maritime casualties in which limitation of liability is sought, and it is not the place of the Court to second-guess that judgment. *See Lake Tankers Corp. v. Henn*, 354 U.S. 147, 151 (1957) ("It is, therefore, crystal clear that the operation of the Act is directed at misfortunes at sea where the losses incurred exceed the value of the vessel and the pending freight."). Moreover, as the Fourth Circuit and Supreme Court have recognized, "the *concursus* is not solely for the benefit of the shipowner. The elaborate notice provisions of the Admiralty Rules . . . ensure that all claimants, not just a favored few, will come in on an equal footing to obtain a pro rata share of their damages." *Pickle*, 174 F.3d at 449 (alteration in original) (quoting *Cushing*, 347 U.S. at 417). To be sure, as the Court has previously emphasized, the Limitation Act has only a "limited purpose" of deciding whether vessel owners are entitled to limitation; it is not intended to provide a single forum to decide ultimate questions of liability. (Case Mgmt. Order No. 3 (ECF No. 438 at 2) (quoting *Wheeler v. Marine Navig. Sulphur Carriers, Inc.*, 764 F.2d 1008, 1011 (4th Cir. 1985)).) But, in order to enforce even this limited purpose, a concursus of all related claims is ordinarily required.

## B. Risk of Inconsistent Judgments

Moreover, the Court cannot predict how litigation would proceed in the Claimants' chosen forum, which presumably would be a Maryland state court. But it is likely that there will be no way for any court to decide Claimants' contractual and environmental claims without making legal conclusions or factual findings about the extent to which Petitioners were at fault in the allision. For example, in the State's operative pleading, in the section setting out the allegations concerning its claim for breach of contract, the State alleges that Petitioners "failed . . . to undertake and be

liable for all preventative, investigative, remedial, and other actions." (ECF No. 157 at 48.) Any findings with respect to Petitioners' failure to take such preventative actions could then have issue-preclusive effect in the instant Limitation Act proceeding, where the Court is tasked with deciding closely related questions, such as negligence, unseaworthiness, privity, and knowledge. This outcome would undermine the exclusive jurisdiction of the federal courts over a limitation action, and the right of the Petitioners to this forum. *See Ex Parte Green*, 286 U.S. 437, 439–40 (1932) ("[T]he state court has no jurisdiction to determine the question of the owner's right to a limited liability . . . ."); *Magnolia Marine Trans. Co. v. Laplace Towing Corp.*, 964 F.2d 1571, 1575 (5th Cir. 1992) ("The court's primary concern is to protect the shipowner's absolute right to claim the Act's liability cap, and to reserve the adjudication of that right in the federal forum.").

Furthermore, although not raised by Petitioners, the Court observes that in cases where the district court has dissolved an injunction to permit a claimant to proceed in state court, the court's decision is often made in reliance on a set of stipulations that have the effect of safeguarding the vessel owner's right to seek limitation regardless of the outcome of the state court action. *See, e.g., Norfolk Dredging*, 439 F.3d at 210 (listing a "series of stipulations that [the claimant] presented to the court in connection with his motion to dissolve the injunction"). Unlike in such cases, here neither the State nor Ace has offered any stipulation to the effect that, for example, they waive "any claim of res judicata from the state court action concerning issues bearing on the limitation of liability." *Lewis*, 531 U.S. at 453. Without such stipulations, the Court cannot be assured that a state court—in the course of resolving Claimants' contractual and environmental claims—would not decide critical issues relating to limitation of liability, such as negligence and privity. Thus, the Court cannot be confident that Petitioners' right to seek limitation of liability will be adequately protected. *See Lewis*, 531 U.S. at 454 (stating that the district court may decide

9

not to dissolve a Limitation Act injunction "[i]f the district court concludes that the vessel owner's right to limitation will not be adequately protected—where for example a group of claimants cannot agree on appropriate stipulations or there is uncertainty concerning the adequacy of the fund or the number of claims").[7]

### C. *Concerns of Fairness and Manageability*

The movants' frustration at being unable to immediately pursue claims that may very well be outside the scope of the Limitation Act is understandable. But they have not explained why their claims are particularly time-sensitive, or why they would be prejudiced by having to wait until after limitation is decided to pursue them. The Court recognizes that district courts have in some instances partially dissolved injunctions to permit claims not subject to the Limitation Act to proceed outside the concursus. *See, e.g.*, *In re S. Scrap Material Co.*, 541 F.3d 584, 595 (5th Cir. 2008) (affirming district court's partial lifting of injunction to permit United States to pursue

---

[7] The Court observes that even if stipulations were proffered that were technically sufficient to preserve Petitioners' right to seek limitation, the Court would still be disinclined to dissolve the injunction. The Court takes notice of the fact that this case is a matter of substantial public interest and concern. Any time the Court, acting in equity, grants, modifies, or dissolves an injunction, it properly considers the public interest. *See Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008); *Am. Milling Co. v. Brennan Marine, Inc.* 623 F.3d 1221, 1226 (8th Cir. 2010) ("A limitation proceeding is 'the administration of equity in an admiralty court.'" (quoting *Hartford Accident & Indem.*, 273 U.S. at 216)). The public has a legitimate interest in having a single, final determination as to the questions of seaworthiness, negligence, and privity. The public interest is disserved by multiple, possibly conflicting decisions on such important issues. While res judicata is generally waivable, such a waiver in the particular circumstances of this case would be inconsistent with the fundamental principle that, to the extent possible, the same set of facts should not be the subject of multiple, inconsistent judgments. After all, "[t]he doctrine of res judicata 'is not a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, of public policy and of private peace, which should be cordially regarded and enforced by the courts . . . .'" *Shoup v. Bell & Howell Co.*, 872 F.2d 1178, 1182 (4th Cir. 1989) (alteration in original) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 401 (1983)).

Of course, as the Court has previously recognized, the Limitation Act is not intended to prevent a "multiplicity of suits," *Lake Tankers*, 354 U.S. at 153, especially if the request for limitation is denied. Conflicting decisions may ultimately be unavoidable if limitation is denied and Claimants eventually secure differing decisions with respect to their individual claims. But so long as the concursus remains, the Court intends to avoid piecemeal litigation, and to keep this case proceeding as a whole.

claims not subject to limitation); *In the Matter of Complaint of Encore Dredging Partners, LLC*, Civ. No. 4:23-604, 2024 WL 4351348, at *3–4 (July 25, 2024), *report and recommendation adopted*, 2024 WL 4357564 (S.D. Tex. Sept. 30, 2024). Were this a case of a more ordinary scale, the Court might be more inclined to grant the requested relief. But, in the circumstances of this unusually sprawling matter—where there are dozens of claims, scores of parties, and international third-party discovery (*see* ECF No. 472 (Court's issuance of letters rogatory to the South Korean judiciary))—the Court must consider how any partial dissolution of the injunction would affect the Court's duty to resolve, in a just and efficient manner, the core issue: whether the Petitioners are entitled to exoneration from, or limitation of, liability.

There is another consideration guiding the Court's decision. The Court does not consider it equitable to set certain Claimants loose to pursue the merits of their claims—and, perhaps, obtain favorable judgments—while all other Claimants are required to wait and abide by the schedule set by this Court. If the movants' relief were granted, they may realize certain benefits (for example, with respect to the ease of satisfying judgments, or the favorability of settlement offers) simply by virtue of their being ahead, as a matter of timing, of all other Claimants. It is even conceivable—although perhaps unlikely—that there could be insufficient insurance coverage to satisfy all losses, in the event that limitation is denied. *Cf. Complaint of Paradise Holdings, Inc.*, 619 F. Supp. 21, 27 (D. Haw. 1984), *aff'd*, 795 F.2d 756 (9th Cir. 1986). In short, the Court's conclusion is that the only fair way to manage this proceeding is to insist that everyone wait their turn.

District courts are granted considerable discretion with respect to structuring the sequencing of a Limitation Act proceeding to appropriately balance the rights of both vessel owners and claimants, and for good reason. A massive maritime disaster litigation such as this one is complex under the best of circumstances; without a firm hand on the tiller, it risks becoming

unmanageable. The Court has structured this litigation with a singular focus on arriving at an answer to the question of limitation of liability as expeditiously as practicable. As the Court has explained, it has decided to "confine its determinations during Phase 1 to those necessary to resolving whether Petitioners are entitled to exoneration from or limitation of liability," and in so doing rejected Petitioners' request that the Court determine ultimate issues of liability during Phase 1 as well. (Case Mgmt. Order No. 3 (ECF No. 438 at 1–2).) This decision was "guided by two considerations: (1) the purposes and limits of a limitation action; and (2) the Court's intent to bring a practical, pragmatic perspective to this case." (*Id.* at 1.) The Court is well aware of the stakes of the decision on limitation on essentially all future litigation concerning the allision at the center of this case. That focus is reflected in the aggressive discovery and trial schedule that has been set, and in the carefully cabined scope of proceedings during Phase 1 of the litigation. (*See generally id.*) If parallel litigation with many of the same parties and involving the exact same issues is permitted to proceed during the pendency of Phase 1, the parties will inevitably be distracted, and there can be no guarantee that delays will not ensue. *Cf. Handy v. Shaw, Bransford, Veilleux & Roth*, 325 F.3d 346, 349 (D.C. Cir. 2003) ("[P]arallel litigation of factually related cases in separate fora is inefficient . . . . Indeed, separate parallel proceedings have long been recognized as a judicial inconvenience."). Moreover, if the Court were to grant the Claimants' requests to pursue their claims outside of this action, there is every risk that other Claimants will come before the Court, seeking to show why their claims are actually not subject to the Act. The Court has no intention of getting bogged down in such matters now, when by far its most important duty is determining whether Petitioners are entitled to limitation or exoneration.

The same considerations that led the Court to narrowly circumscribe the scope of Phase 1 counsel in favor of maintaining the injunction in full force during Phase 1. If Petitioners' request

for limitation of or exoneration from liability is ultimately denied, the Court's expectation is that it would then set Claimants free to pursue any remaining claims in any court of competent jurisdiction. But permitting parallel litigation to occur in the pendency of the decision on limitation will undermine the concursus, risk having a state court decide issues that are vested in the exclusive jurisdiction of federal courts, and create needless risks of delay, unfairness, and inefficiency.

## IV. Conclusion

For the foregoing reasons, a separate order will issue denying the pending Motions for Partial Lifting of Stay. (ECF Nos. 451, 454.)

DATED this 7 day of February, 2025.

BY THE COURT:

_/s/ James K. Bredar_
James K. Bredar
United States District Judge