**UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
NORTHERN DIVISION**

| |
|---|
| In the Matter of the Petition<br><br>of<br><br>GRACE OCEAN PTE LTD., as Owner of the M/V DALI,<br><br>and<br><br>SYNERGY MARINE PTE LTD, as Manager of the M/V DALI,<br><br>for Exoneration from or Limitation of Liability. |

Docket No. JKB 24-cv-941

*IN ADMIRALTY*

**PETITIONERS' OPPOSITION TO
CLAIMANTS' MOTION TO COMPEL PETITIONERS TO
<u>SUBMIT TO DEPOSITION IN THE DISTRICT OF MARYLAND</u>**

## TABLE OF CONTENTS

SUMMARY OF OPPOSITION ................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND .........................................................3

    a.    The Limitation Action ...............................................................3

    b.    Synergy Witnesses .......................................................................4

    c.    30(b)(6) Witnesses ......................................................................7

    d.    The Parties' Positions Regarding Depositions ...................................7

ARGUMENT ...........................................................................................................9

    A.    The Cases Are "All Over the Lot" and the Court Has Wide Discretion in Determining Deposition Location ...............................................................9

    B.    Petitioners' 30(b)(1) Witnesses Have No Duty to Appear in Baltimore ...........10

    C.    Petitioners Did Not Choose the Venue ............................................12

    D.    The Practical Issues of London Depositions Identified by Claimants are Easily Rectified ...........................................................................................13

CONCLUSION ........................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Archer Daniels Midland Co. v. Aon Risk Servs., Inc. of Minnesota*,
  187 F.R.D. 578 (D. Minn. 1999) ....................................................................................10, 11

*Complaint of Kreta Shipping, S.A.*,
  No. 96CIV.1137(KMW)(AJP), 1998 WL 173167 (S.D.N.Y. Jan. 29, 1998) ........................13

*E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*,
  268 F.R.D. 45 (E.D. Va. 2010) ............................................................................................11

*Ellis Air Lines v. Bellanca Aircraft Corp.*,
  17 F.R.D. 395 (D. Del. 1955) ...............................................................................................13

*Enter. v. Lin*,
  No. CV 12-2734 PSG (SS), 2014 WL 12580251 (C.D. Cal. Mar. 10, 2014).........................11

*In re Honda Am. Motor Co. Dealership Rel. Litig.*,
  168 F.R.D. 535 (D. Md. 1996).......................................................................................14, 15

*In re Outsidewall Tire Litig.*,
  267 F.R.D. 466, 471 (E.D. Va. 2010) ....................................................................................2

*Kovalsky v. Avis Rent-A-Car, Inc.*,
  48 F.R.D. 453 (D.P.R. 1969) ...............................................................................................13

*Langnes v. Green*,
  282 U.S. 531 (1931)............................................................................................................12

*McKesson Corp. v. Islamic Republic of Iran*,
  185 F.R.D. 70 (D.D.C. 1999)...............................................................................................14

*Mill-Run Tours, Inc. v. Khashoggi*,
  124 F.R.D. 547 (S.D.N.Y. 1989) .........................................................................................14

*In re Norfolk Dredging Co.*,
  240 F. Supp. 2d 532 (E.D. Va. 2002) ..................................................................................13

*Patrnogic v. U.S. Steel Corp.*,
  43 F.R.D. 402 (S.D.N.Y. 1967) ...........................................................................................13

*Pegoraro v. Marrero*,
  281 F.R.D. 122 (S.D.N.Y. 2012) ...........................................................................................1

*Rapoca Energy Co., L.P. v. Amci Exp. Corp.*,
    199 F.R.D. 191 (W.D. Va. 2001)........................................................11

*Robins Dry Dock & Repair Co. v. Flint*,
    275 U.S. 303 (1927)........................................................................8

*SEC v. Aly*,
    320 F.R.D. 116 (S.D.N.Y. 2017) ....................................................13

*Turner v. Prudential Ins. Co. of Am.*,
    119 F.R.D. 381 (M.D.N.C. 1988) ...................................................15

*United States v. One Gulfstream G-V Jet Aircraft Displaying Tail No. VPCES*,
    304 F.R.D. 10 (D.D.C. 2014).........................................................14

*In re Vitamin Antitrust Litig.*,
    No. 99-197, 2001 WL 35814436 (D.D.C. Sept. 11, 2001)....................15

*Webb v. Green Tree Servicing LLC*,
    283 F.R.D. 276 (D. Md. 2012).........................................................2

*Wei Su v. Sotheby's Inc.*,
    No. 17-4577, 2019 WL 4053917 (S.D.N.Y. 2019)..............................2

**Statutes**

2 Admiralty & Mar. Law § 15:6 ...........................................................13

Shipowners Limitation of Liability Act of 1851,
    46 U.S.C. §§ 30501, *et seq.*...........................................................3

**Other Authorities**

Fed. R. Civ. P.
    26(c)(1)(B) ..................................................................................1
    30(b)(6) ..........................................................................1, 10, 11
    37..............................................................................................1
    45(c)(1) ....................................................................................11
    Fed. R. of Civ. P. R. Commentary rule 30 .........................................2

Model Rules of Pro. Conduct R. 1.1 .......................................................9

Supp. R. F(9)..............................................................................3, 12

**PETITIONERS' OPPOSITION TO
CLAIMANTS' MOTION TO COMPEL PETITIONERS TO
SUBMIT TO DEPOSITION IN THE DISTRICT OF MARYLAND**

Petitioners, through undersigned counsel BLANK ROME LLP and DUANE MORRIS LLP, submit this Memorandum in Opposition to Claimants' Motion to Compel Petitioners to Submit to Deposition in the District of Maryland (ECF No. 475) ("Motion to Compel").

## SUMMARY OF OPPOSITION

As a preliminary matter, despite having had the opportunity to do so since November 7, 2024,[1] Claimants have not actually noticed a single 30(b)(6) deposition[2] of either Petitioner or any 30(b)(1) deposition of any of Petitioner Synergy Marine Pte Ltd's ("Synergy") shoreside employees. Absent any notices of deposition of or subpoenas to Petitioners' employees, Claimants' Motion to Compel is premature.[3] Indeed, normally, ordinary employees of a party must be subpoenaed and deposed where they reside.

The fact that we are even talking about depositions of these witnesses in London – a reasonable middle ground – rather than in India and Singapore, where the witnesses here at issue

---

[1] After a hearing on October 29, 2024, the Court issued Court Management Order No. 3 on November 7, 2024, which set the scope of discovery and procedures (ECF No. 438). It also permitted fact witness depositions to begin as early as December 2, 2024.

[2] In their Local Rule 104.7 Certificate of Conference of Counsel attached to the Motion to Compel, Claimants state that "[o]ne issue that could not be resolved was the location to be used when taking depositions of the Petitioners under Rule 30(b)(6) of the Federal Rules of Civil Procedure, as well as depositions of managerial employees of Synergy Marine Pte Ltd." On January 22, 2025, Claimants' counsel provided Petitioners' counsel with a "draft list of topics for a 30(b)(6) deposition of Grace Ocean." To date, however, neither Petitioner has received a 30(b)(6) deposition notice nor **any** other deposition notice for **any** of their employees.

[3] Petitioners are unaware of any witnesses Claimants may wish to depose beyond the Synergy shoreside employees discussed herein (whose depositions have not actually been noticed). To the extent Claimants eventually notice or subpoena depositions of other Petitioner employees, the holding of this Court regarding the location for depositions should apply. *See Pegoraro v. Marrero*, 281 F.R.D. 122, 128 (S.D.N.Y. 2012) ("Absent evidence that the witnesses at issue were given reasonable written notices stating the time and place of their depositions, as required by Rule 30(b)(1), or that they failed to comply with subpoenas compelling their attendance, pursuant to Rule 45, the Court has no authority to compel witnesses, including the parties, to attend any depositions which were neither noticed nor for which subpoenas were issued.").

reside, is because Petitioners are prepared to compromise on this point. In the early stages of this case, when certain crew members were permitted by the Department of Justice to leave Baltimore and return home, Claimants were willing to compromise and the parties agreed that if those witnesses' depositions were required in the future, they would proceed in London, an agreed neutral and mutually convenient location. Claimants have not adequately explained why that same compromise is not equally appropriate here.

In filing this Motion to Compel, Claimants have muddied the waters as to the applicable standards and burdens of proof.[4] Indeed, seeking Court intervention regarding the location for depositions at all is out of line with standard industry practice in complex commercial litigation. *See* 3 Bus. & Com. Litig. Fed. Cts. § 31:9 (5th ed.).[5]

Beyond that, and contrary to Claimants' assertions, Petitioners did not voluntarily or strategically elect this forum. This is a limitation action commenced in respect of a marine casualty that occurred in Maryland, and the applicable venue rules provide no discretion as to where such

---

[4] Specifically, Claimants' Motion was filed pursuant to Fed. R. Civ. P. 37. Throughout their Motion to Compel, however, Claimants refer to the "good cause standard," which comes from Fed. R. Civ. P. 26(c)(1)(B) ("The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense ... [by] specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery."). Reference to a "good cause standard" also appears in a number of cases relied on by Claimants, but always in the context of good cause to issue a protective order. *See Wei Su v. Sotheby's Inc.*, No. 17-4577, 2019 WL 4053917, at *2 (S.D.N.Y. 2019); *Webb v. Green Tree Servicing LLC*, 283 F.R.D. 276, 278 (D. Md. 2012). Contrary to Claimants' position, however, "good cause" is not the appropriate standard of review in this case. If any standard is applicable, it should be as set out in *In re Outsidewall Tire Litig.*, 267 F.R.D. 466, 471 (E.D. Va. 2010)("[the presumption that plaintiff may be deposed in the judicial district where the action was brought] is not irrebuttable, but to overcome it, a foreign plaintiff must persuasively demonstrate that requiring him to travel to the forum district for his deposition would, for physical or financial reasons, be practically impossible, or that it would be otherwise fundamentally unfair.").

[5] "In commercial litigation, following negotiation most depositions are taken near the residence of the witness, whether the witness is the plaintiff or the defendant or a third party, and whether the witness is an officer, director, or managing agent of a company. Each party bears its own costs for attending the deposition. Thus, where a witness, even an employee of a plaintiff company, resides outside the forum, it is most common that two or more lawyers travel to the residence of the witness, a practice that typically reflects the desire of the clients involved." *See also* 1 Federal Rules of Civil Procedure, Rules and Commentary Rule 30 ("In many cases, counsel will cooperate in the scheduling of depositions—both with respect to the time and location of the deposition. Courts certainly encourage the parties to do so.").

an action may be filed. Moreover, there is no settled rule in this judicial district regarding plaintiffs making themselves available for deposition in the forum in which they brought suit. And to the extent there is any generally applicable guidance on this point, it applies only to 30(b)(6) witnesses, which is not the focus of Claimants' motion.[6] To the extent any such "general rule" might apply beyond that, it is clear that the unique facts of this case warrant a departure from such rule.

Perhaps most importantly, Claimants' Motion papers do not identify *any* requirement that depositions *must* proceed in Baltimore. For the reasons set forth below, Petitioners respectfully request the Court exercise its broad discretion to hold that requiring Petitioners' witnesses to appear in Baltimore would be impracticable and fundamentally unfair.

## **FACTUAL AND PROCEDURAL BACKGROUND**

In the early morning hours of March 26, 2024, the M/V DALI (the "Vessel"), owned by GRACE OCEAN PRIVATE LIMITED ("Owner") and managed by SYNERGY MARINE PTE LTD ("Synergy") (jointly referred to as "Petitioners"), allided with the Francis Scott Key Bridge (the "Casualty").

a.  The Limitation Action

On April 1, 2024, pursuant to the Shipowners Limitation of Liability Act of 1851, 46 U.S.C. §§ 30501, *et seq.* ("Limitation Act"), Petitioners filed a Complaint seeking exoneration from and/or limitation of liability before this Court (the "Limitation Proceeding").

---

[6] It is difficult to address Claimants' hypothetical 30(b)(6) depositions because they have not noticed such depositions nor identified any topics for Petitioner Synergy. And Claimants have only circulated a draft of such topics for Petitioner Grace Ocean. Petitioners agree that, as a starting point, courts may refer to the "general rule" referenced throughout Claimants' Motion to Compel regarding witnesses appearing where a deposition has been noticed is applicable to 30(b)(6) witnesses (and only 30(b)(6) witnesses), and that the burden to proceed with depositions elsewhere may be higher. However, the same concerns held by Synergy's shoreside employees regarding appearing for deposition in the United States can be logically imparted to any yet-to-be-named 30(b)(6) witnesses for either Petitioner. Further, if 30(b)(1) depositions are ordered in London, it follows that 30(b)(6) depositions should also take place there, as all necessary parties will be in one place. There may also be topics identified in Claimants' eventual 30(b)(6) Notices that could be covered by Petitioners' 30(b)(1) witnesses, so it would make sense to conduct those depositions simultaneously.

To put in context Claimants' contention that Petitioners "wasted no time initiating litigation,"[7] Petitioners filed their Petition in accordance with the Limitation Act, which requires such action to be filed within six months of receiving notice of a claim. The law is clear that if a vessel has not been arrested or attached, suit has not been commenced, and the vessel is located in a particular district, then that district is where the limitation proceeding must be commenced. Fed. R. Civ. P. Supp. R. F (9). Petitioners did not "demand[] and obtain[] an injunction prohibiting suit against them elsewhere" in a vacuum. (ECF No. 475-1 at 2). Rather, Petitioners moved expeditiously and in line with the Limitation Act and standard maritime industry practice for a large-scale event with many potential claims. As discussed below, practically speaking, Petitioners had no other choice of venue besides this District.

At present, there are approximately 45 claims pending and 100+ lawyers who have noticed appearances in this case. Case Management Order No. 2 (ECF No. 409) identifies lead counsel for six categories of claims.

b.  <u>Synergy Witnesses</u>

Petitioners submit the declaration of Anand Sashidharan ("Sashidharan Declaration") in support of this Opposition.

As a matter of courtesy and as noted in Claimants' Motion to Compel (*See* Ex. A), on December 18, 2024, Petitioners' counsel identified certain Synergy employees with knowledge of the day-to-day operations on the Vessel, with the expectation that Claimants probably would want to depose such witnesses. Those Synergy shoreside employees are:

- ▪ Balaji Vanmeekesan (Fleet Manager)

- ▪ Capt. Ravi Sekhar BV (Marine Manager/Designated Person Ashore)

---

[7] (ECF No. 475-1 at 2).

- Rajesh Inigo (QHSE Manager)

- Vishal C. Prabhu (QHSE Superintendent)

- R. Karthik Nair (Technical Superintendent)

- Capt. Melroy Dsouza (Marine Superintendent)

- Narayanan K Krishnamachari (Procurement)

(Sashidharan Decl. ¶ 3.) All of the above individuals are Indian citizens with Indian passports (except for Mr. Narayanan K Krishnamachari, who does not have a passport[8]) and are based in Synergy's Chennai office, except for Balaji Vanmeekesan, who is an Indian citizen with an Indian passport but is based out of the Singapore office. (Sashidharan Decl. ¶ 9.)

　　　None of the identified individuals are officers, directors, or managing agents of the company. Rather, they are all mid-level employees who provide varying levels of technical supervision and assistance depending on their qualifications and experience. For instance, technical superintendents are typically responsible for about five ships; marine superintendents are responsible for about ten ships; and the Fleet Manager, Marine Manager and QHSE manager are responsible for between 45-60 vessels, all out of a global fleet of approximately 650 vessels within the Synergy Group. The QHSE superintendent reports to the QHSE manager and provides support and assistance, and the procurement team provides assistance to the Synergy-managed fleet with ordering and supplying parts to its vessels. (Sashidharan Decl. ¶ 4.)

　　　While all of these individuals are willing and prepared to give deposition testimony in this matter, all have expressed that they do not want to travel to the United States for a deposition. (Sashidharan Decl. ¶ 5). The main reason for this is that they are concerned they would be detained

---

[8] Mr. Narayanan K Krishnamachari is a brahmin priest, who had taken a three-year break from employment at Synergy in order to attend to his duties as a priest in Tirupati, India. According to the beliefs in his family and temple and as believed by many Hindus, he is not allowed to cross the borders of India. To the extent Claimants want to depose Mr. Narayanan K Krishnamachari, they will have to do so in India, or via videoconference. (Sashidharan Decl. ¶ 11).

by the U.S. Department of Justice as material witnesses in connection with its ongoing criminal investigation concerning the Casualty, and would not be able to return home for a very long time.[9] In this respect, they are all well aware that several of the Vessel's crew members have been detained in Baltimore since March 26, 2024[10], and other former crew have been detained when arriving in the U.S. on other ships, and that there is no present prospect for most of them being permitted to return home to their families in the foreseeable future. (Sashidharan Decl. ¶ 6). Such detention would significantly affect the well-being of these employees as they would be away from their homes and families for a significant period of time. (Sashidharan Decl. ¶ 7). Such detention, if it occurred, would also be of significant detriment to Synergy as these employees would not be able to perform many of their usual duties. (Sashidharan Decl. ¶ 8). Under Indian law, Synergy as a company cannot force these employees to travel to the United States to participate in depositions for a foreign litigation. (Sashidharan Decl. ¶ 10).

All of the above employees (except for Mr. Narayanan K Krishnamachari) are willing to travel to London for depositions, and they also are amenable to having their depositions taken in Chennai, India or Singapore, Singapore.[11] (Sashidharan Decl. ¶ 12).

With respect to visas, Vishal Prabhu C, Rajesh Inigo, Ravisekhar BV, and Balaji

---

[9] Claimants' arguments at pages 10-11 of their Memorandum and the cases cited therein (ECF No. 475-1 at §§ B.2-B.3) are irrelevant because Claimants have assumed inaccurate reasons why the Synergy shoreside employees will not travel to the United States.

[10] The Vessel's crew have had their passports confiscated, which has made their detention in Baltimore even more difficult, as they lack a commonly accepted means of identification that is required to travel within the United States, enter certain facilities, and make certain purchases. They are also unable to apply for Maryland Identification documents as they are not Maryland residents. All this to say, the identified Synergy witnesses would face great hardship if their fears were realized.

[11] Claimants assert in footnote 9 of their Memorandum of Law that "there is little difference in terms of convenience in requiring the witnesses to travel to the United States rather than London." This is incorrect. A direct flight from Chennai to London is about 11 hours, while a flight from Chennai to Baltimore takes about 23 hours, not accounting for a necessary layover.

Vanmeekesan have existing B1/B2 visas permitting entry into the United States. Capt. Melroy Dsouza does not have a visa. R. Karthik Nair recently had an application for a B1/B2 visa rejected by the U.S. government. While no reason was given for rejection of his visa, he believes that the reason for rejection of his visa is possibly due to the fact that he is unable to account for the location of a passport that he had previously lost. In contrast, traveling from India to the U.K. is relatively simple, and all of these individuals (except for Mr. Narayanan K Krishnamachari) expect that they would have no difficulty traveling to London for depositions. (Sashidharan Decl. ¶¶ 13-16).

    c.   <u>30(b)(6) Witnesses</u>

As noted above, Claimants have provided a draft list of anticipated topics for a potential 30(b)(6) deposition of a Grace Ocean representative but have not served a 30(b)(6) deposition notice as of this filing. Claimants have not even provided a list of topics for a Synergy 30(b)(6) deposition, much less served a notice. Petitioners take the view that convenience and practicality warrant all depositions, be they pursuant to Fed. R. Civ. P. 30(b)(1) or 30(b)(6), should take place in the same forum, particularly given that some 30(b)(1) witnesses may be designated to address certain of the topics in any eventual 30(b)(6) deposition notice.[12]

    d.   <u>The Parties' Positions Regarding Depositions</u>

As per the Court's Case Management Order No. 1 (ECF No. 326), the parties submitted a

---

[12] Petitioners reserve any arguments they may have with respect to a suitable deposition location for any 30(b)(6) witnesses if and when Claimants notice such depositions.

Joint Status Report on October 22, 2024 (ECF No. 406). Both Claimants[13] and Petitioners[14] proposed a location of the depositions. The issue of location of deposition for Petitioners' employees was also flagged as an issue in the "Additional Issues" section (ECF No. 406 at 16-17).

The location of depositions was then discussed on the record at the initial pretrial conference on October 29, 2024, when Claimants expressed their preference for depositions to proceed in Baltimore. (*See* Oct. 29, 2024 Tr., 72:14-75:14). During that conference, the Court encouraged the parties to "look hard at each situation and see if a virtual solution isn't the right one in that particular instance," to which the Claimants agreed.[15] In the Court's Case Management Order No. 3 (ECF No. 438), it declined to adopt either side's Proposed Order language regarding deposition locations, and specifically did not order the depositions to take place in Baltimore. In fact, the Court set the expectation that the Parties would negotiate venue *without* Court involvement: "The Court expects the parties to resolve issues regarding deposition length, timing, and venue without involvement of the Court." (ECF No. 438).

As acknowledged by Claimants (ECF No. 475-1 at n. 9; ECF No. 475-1 at n.3), prior to filing this Motion, Petitioners offered to defray a portion of the travel costs for most of Claimants' lead counsel to travel to London.[16] Petitioners consider London is a logical meeting point for

---

[13] Claimants proposed the following relevant language: "As the parties previously have agreed, the Court hereby Orders that Petitioners shall produce the former crew of the M/V DALI who have been repatriated to India or elsewhere to appear for depositions in London or the United States. The presumptive location for depositions of all other employees of Petitioners shall be the United States, subject to Petitioners' right to move for a protective order seeking to re-locate the deposition of a particular witness." (ECF 406-1).

[14] Petitioners proposed the following language: "As the parties previously have agreed, the Court hereby Orders that Petitioners shall produce the former crew of the M/V DALI who have been repatriated to India or elsewhere to appear for depositions in London or elsewhere by written agreement." (ECF 406-2).

[15] "That's certainly fair, Your Honor. We'll commit to that." (Oct. 29, 2024 Hearing Transcript, 75:11-12).

[16] In the last discussion on this topic before Claimants filed their motion, Petitioners' counsel explained that Petitioners objected to funding travel costs for counsel for the economic loss claimants given the frivolous nature of those claims under *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927). Petitioners are prepared to amend their position on this point if necessary.

depositions because it is a midway point for both counsel and witnesses; counsel for both sides have strong local ties to assist with securing office space and other needs; and the United Kingdom is favorable with respect to timely issuing visas for work travel. Moreover, the parties previously agreed that London is an exceptionally neutral place for depositions of members of the Vessel's crew who were not detained by the Department of Justice as material witnesses. (ECF No. 49-1[17] at 3). Petitioners also have offered remote access to depositions for any counsel that cannot or do not want to travel to London, in line with standard practice in modern litigation. Out of line with current ethical guidelines for lawyers,[18] Claimants have noted they are "old school[] in this regard." (Oct. 29, 2024 Tr., 74:24-25).

## ARGUMENT

### A.    The Cases Are "All Over the Lot" and the Court Has Wide Discretion in Determining Deposition Location

As a preliminary matter, and as will become abundantly clear to this Court in reviewing the cases offered by both Claimants and Petitioners, there is no one "general rule"[19] regarding the standard of review for, or the treatment of, requests to order the location for depositions—and any presumptions can be overcome based on a fact-based analysis. As stated in a chapter titled

---

[17] Correspondence attached to Claimants' Motion to Withdraw their June 18, 2024 Emergency Hearing Request, wherein counsel for the State of Maryland stated, "In exchange for the claimants withdrawing the motion [ ] and letter [ ] requesting an emergency pre-trial conference or hearing, [Petitioners] agree as follows: . . . 5. [t]he depositions of the above referenced witnesses will be taken in London or elsewhere by written agreement of all parties to the Litigation." (ECF No. 49); Judge Bredar also agreed this was a sensible solution. (ECF No. 50 at 1).

[18]*See* Model Rules of Pro. Conduct R.1.1, Comment 8; https://www.americanbar.org/groups/law_practice/resources/law-technology-today/2017/technology-competence-part-i/ ("In short: lawyers can no longer be proudly unaware of technology and still claim to ethically serve their clients' needs.").

[19] Without citing any authority, Claimants boldly assert that "[t]he general rule requiring that a plaintiff come to its venue of choice applies with even greater force to a limitation proceeding, especially a limitation proceeding involving an allision." (ECF No. 475-1 at 7). Petitioners posit that it should actually be the opposite: the unique nature of a limitation proceeding involving an allision should warrant flexibility in interpretation of any so-called "rules."

"Location of Depositions" in DISCOVERY PROBLEMS AND THEIR SOLUTIONS by Former District of Maryland Judge Paul Grimm, "[j]udicial discretion being what it is, however, the **cases are all over the lot**." *See* PAUL W. GRIMM ET AL, DISCOVERY PROBLEMS AND THEIR SOLUTIONS, 163 (ABA Publ'g 4th Ed. 2020) (emphasis added).

While recognizing that "a plaintiff is *usually* subject to deposition where suit is brought," Judge Grimm also expressly acknowledges that Rule 30 "is silent on *where* a deposition should be held." *Id.* at 161 (citing *Clayton v. Velociti, Inc*., 2009 U.S. Dist. LEXIS 33111, at *5 (D. Kan. Apr. 17, 2009) (emphasis added)). Judge Grimm goes on to note that, "[s]ignificantly, however, that presumption 'is based in part on the assumption that the plaintiff exercised choice as to the forum of the lawsuit, and thus the presumption is weakest where the plaintiff was constrained to file suit in a particular forum.'" *Id.* (citing *SEC v. Aly*, 320 F.R.D. 116, 118 (S.D.N.Y. 2017)). As discussed further below, and contrary to Claimants' argument otherwise, Petitioners *were* constrained to file the Limitation Action in this forum, and thus any "general rule" should be given little deference.[20]

## B.    Petitioners' 30(b)(1) Witnesses Have No Duty to Appear in Baltimore

With respect to 30(b)(1) witnesses like the identified shoreside personnel here at issue, a distinction must first be drawn between a party's ordinary employees and its directors, officers and other high-level representatives. *See Archer Daniels Midland Co. v. Aon Risk Servs., Inc. of Minnesota*, 187 F.R.D. 578, 587 (D. Minn. 1999): "'Except where the employee has been designated by the corporation under Rule 30(b)(6),' or is an officer, director, or managing agent,

---

[20] Claimants' citation to the burden of proof scheme in allision cases and the *Oregon* Rule (ECF No. 475-1 at 7-8) is out of place in this context. The various burdens of proof at trial are wholly irrelevant to a procedural discovery dispute. Moreover, any obligation Petitioners may have to bring witnesses to this District for trial can be addressed when preparations for trial begin.

'an employee is treated in the same way as any other witness,' and '[h]is or her presence **must be obtained by subpoena rather than notice.**[21]'" *Id.* (citing § 2103 Persons Subject to Examination—Corporations and Other Organizations, 8A Fed. Prac. & Proc. Civ. § 2103 (3d ed.) (emphasis added)); *see also Rapoca Energy Co., L.P. v. Amci Exp. Corp.*, 199 F.R.D. 191, 193 (W.D. Va. 2001) ("[u]nder the Federal Rules of Civil Procedure, however, there is a distinction between agents or officers of a corporate party, who may be compelled to attend a deposition based on notice only, and employees who are not officers, directors or managing agents of the corporate party and who must be served with a subpoena to compel their testimony"); *E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 268 F.R.D. 45, 48 (E.D. Va. 2010) ("[i]f the specified person, however, is not an officer, director, or managing agent, then the examining party 'must resort to Fed. R. Civ. P. 45[22] for subpoenas on non-party witnesses.'").

While Petitioners acknowledge that some courts have applied a general rule in favor of a 30(b)(6) witness or managing agent/corporate representative being required to appear in the forum for deposition,[23] there are exceptions to any such "rule." For instance, in *Archer Daniels Midland*, 187 F.R.D. at 588, the court found that conducting all depositions in a common location would minimize the logistical difficulties and minimize the amount of "nonproductive time." *See also Enter. v. Lin*, No. CV 12-2734 PSG (SS), 2014 WL 12580251, at *2 (C.D. Cal. Mar. 10, 2014)

---

[21] To date, Petitioners have not insisted that their employee witnesses be subpoenaed, but reserve the right to insist on that requirement if a mutually acceptable location cannot be agreed.

[22] Fed. R. Civ. P. 45(c)(1) provides, in relevant part, that "a subpoena may command a person to attend [ ] deposition only as follows: (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person."

[23] Claimants cite to a number of cases in support of their position that when the plaintiff is a corporation, such "general rule" also applies to its "agents and employees." (ECF No. 475-1 at 4-5). However, all of the cases cited by Claimants, which are out-of-district cases with no precedential effect on this Court, were decided by each respective court using their broad judicial discretion to analyze the facts of each case, none of which bears any factual similarities to the facts at hand. Such citations, therefore, should carry little weight.

(depositions of two 30(b)(6) plaintiff witnesses ordered to take place in their domicile of Taiwan where "the totality of the circumstances and the equities of the situation" warranted it).

Petitioners urge this Court to order that both 30(b)(6) and 30(b)(1) depositions should proceed in London so as to minimize "nonproductive time" and otherwise streamline the taking of depositions.

### C.     Petitioners Did Not Choose the Venue

Contrary to Claimants' contentions otherwise (ECF 475-1 at 2-3) and as discussed above, Petitioners had no choice of forum in this matter pursuant to Fed. R. Civ. P. Supp. R. F (9). The only available forum was the District of Maryland, because that is where the unfortunate Casualty took place, and where the Vessel was located at the time (and for almost two months thereafter). The venue requirements for a limitation action, set forth in Supplemental Admiralty Rule F (9), are not discretionary and, in these circumstances, required that it be filed, if at all, in the district where the Vessel was located. Claimants suggest the Petitioners could have elected not to file a limitation action and waited to plead limitation as a defense so that they could insist on having depositions abroad, but that contention merely admits that Petitioners were going to be in Maryland either way, and the order in which these cases were filed should have no bearing on where depositions should proceed.[24] Courts have ruled that where a plaintiff had no choice of forum, any applicable general guideline that plaintiff should return to the forum for deposition is significantly reduced. *See, e.g.*, *Kovalsky v. Avis Rent-A-Car, Inc.*, 48 F.R.D. 453, 454 (D.P.R. 1969); *Ellis Air Lines v. Bellanca Aircraft Corp.*, 17 F.R.D. 395, 396-97 (D. Del. 1955); *Patrnogic v. U.S. Steel Corp.*, 43 F.R.D. 402, 403 (S.D.N.Y. 1967); *SEC v. Aly*, 320 F.R.D. 116, 118 (S.D.N.Y. 2017)

---

[24] Claimants cite to *Langnes v. Green* to put forward the notion that Petitioners *could* have filed a limitation-of-liability defense; however, *Langnes* is in no way similar to the proceeding at hand and involved a $5,000 claim on a fishing boat for personal injury suffered while plaintiff was employed by owner. *See Langnes v. Green*, 282 U.S. 531 (1931).

(finding " . . . the presumption is weakest where the plaintiff was constrained to file suit in a particular forum."). As per the Federal Rules of Civil Procedure, case law, and instructive maritime treatises, Claimants *and* Petitioners were forced to file in this District.[25]

And it is no answer to say that Petitioners "chose" to call at Baltimore in the first place. Because the Vessel was on time charter at the time, the owner and manager have no control over the Vessel's itinerary. Indeed, in other circumstances, courts have held that a vessel owner and manager are not subject to the jurisdiction of a district court based on a vessel's U.S. calls where a time charterer has selected the route of a vessel.[26]

### D. The Practical Issues of London Depositions Identified by Claimants are Easily Rectified

As discussed above, Petitioner Synergy's 30(b)(1) witnesses are entitled to insist on subpoenas for depositions to be conducted at the location of their place of business, which is India and Singapore. That said, Petitioners are willing, and have offered, to produce the identified Synergy shoreside employees[27] in London for depositions. Claimants' contention that London is an inappropriate location for depositions is misplaced and outdated.

First, it is highly unlikely that the Parties will need court intervention during depositions.[28] In any event, even with the 5-hour time difference, Claimants will still have access to the Court

---

[25] *In re Norfolk Dredging Co.*, 240 F. Supp. 2d 532, 535 (E.D. Va. 2002)("As of [date of filing limitation], no vessel had been attached and no action was pending against [petitioner]. Thus, venue is proper in the district where the vessel was located at the time the suit was filed."); § 15:6. Procedure and practice, 2 Admiralty & Mar. Law § 15:6 (6th ed.); 3 Benedict on Admiralty § 72 (2024).

[26] *See Complaint of Kreta Shipping, S.A.*, No. 96CIV.1137(KMW)(AJP), 1998 WL 173167, at *6 (S.D.N.Y. 1998) (in evaluating jurisdiction, the court noted "the fact that the [vessel] visited United States ports is merely fortuitous so far as [managing agent] is concerned. This is not the type of act that may be said to constitute a 'purposeful availment' of the privilege of conducting activities in the United States, and therefore does not create specific jurisdiction.").

[27] With the exception of Narayanan K Krishnamachari, who does not have a valid passport.

[28] At least among the lawyers working on Petitioners' side of the Motion, we collectively cannot recall any instance in recent memory where it was necessary to call a Judge during a deposition.

during local business hours if the depositions proceed in London.[29] Claimants cite to a handful of cases on this point, which all employ a court's discretion to weigh particular facts. (ECF 475-1 at 6-7). In two of the cases, the existence of "acrimony" or lengthy contentious litigation leading up to the deposition warranted judicial supervision such that access to the court was a key factor in determining deposition location.[30] Here, while Claimants have sought judicial intervention for this discovery issue, Petitioners do not consider the parties' relationship to be acrimonious or particularly in need of judicial oversight. To the contrary, interactions among counsel have, to date, been professional and cordial, and the likelihood that court intervention would be required is very low.

Next, the efficiency of the proposed venue does not necessarily point to Baltimore. Claimants rely on *In re Honda Am. Motor Co. Dealership Rel. Litig.*, 168 F.R.D. 535 (D. Md. 1996)[31] to argue that it would be more efficient for the shoreside witnesses and yet-to-be-noticed corporate representatives to travel to the United States than for 18 attorneys to travel to London. Setting aside the question of why each of the six claimant groups would need to have three lawyers attend these depositions, we note that, at the time *Honda* was decided, videoconferencing didn't exist and the only options were in-person or via telephone.[32]

Claimants also note that "it would be much simpler to present documents domestically

---

[29] Courts also are capable of handling discovery disputes during or after the deposition, regardless of the deposition's location or method. *See United States v. One Gulfstream G-V Jet Aircraft Displaying Tail No. VPCES*, 304 F.R.D. 10, 15 (D.D.C. 2014).

[30] *See Mill-Run Tours, Inc. v. Khashoggi*, 124 F.R.D. 547, 551 (S.D.N.Y. 1989); *McKesson Corp. v. Islamic Republic of Iran*, 185 F.R.D. 70, 80-81 (D.D.C. 1999).

[31] Seeking depositions of "directors, officers or managing agents," which indicates a 30(b)(6) standard rather than 30(b)(1).

[32] The same analysis applies to *In re Vitamin Antitrust Litig.*, No. 99-197, 2001 WL 35814436 (D.D.C. Sept. 11, 2001) (ECF No. 475-1 at n. 6).

rather than haul them to London" (ECF 475-1 p. 6). As is routine in a post-Covid world, however, documents can be uploaded to a share file and clearly displayed during depositions. There is no need to carry boxes of documents to London.[33]

It is also worth noting that several of Claimants' counsel, including lead counsel for the State of Maryland, would have to travel by air even if the depositions proceeded in Baltimore, so those logistics are not much different in either case.

Similarly unavailing is Claimants' assertion that legal or procedural requirements may be at issue (ECF No. 475-1 at 6 (citing *In re Vitamin Antitrust Litig.*, 2001 WL 35814436, at *6-10)). This is a non-issue as Petitioner has already confirmed that any depositions will be subject to the Federal Rules of Civil Procedure, which will be the case wherever they take place. (ECF No. 475-1 at 6).

Most significantly, as set forth in the Sashidharan Declaration and recited above, six out of the seven[34] identified Synergy shoreside employees are available to travel to London. (Sashidharan Decl. ¶ 12). Two witnesses are not permitted to travel to the United States because of visa issues. (Sashidharan Decl. ¶¶ 14-15). All seven witnesses have a real and valid fear of traveling to the United States for fear they will be detained indefinitely by the U.S. Department of Justice as material witnesses. (Sashidharan Decl. ¶¶ 6-8). By contrast, there are no visa issues for any of the witnesses that are available to travel to London (Sashidharan Decl. ¶ 16), and thus, *practically*, London is the most logical venue.

---

[33] Claimants' authority on this point, *Turner v. Prudential Ins. Co. of Am.*, 119 F.R.D. 381, 383 (M.D.N.C. 1988), was decided in 1988.

[34] With the exception of Narayanan K Krishnamachari, who does not have a valid passport.

## CONCLUSION

**WHEREFORE**, Petitioners respectfully request that the Court grant an Order as follows:

a.      Denying the Claimants' Motion to Compel Petitioners to Submit to Deposition in the District of Maryland in its entirety;

b.      Ordering that depositions of Petitioners' employees and 30(b)(6) designees go forward in London, England except where other accommodation is necessary in respect of individual witnesses, or such other jurisdiction as will be agreed by the Parties; and

c.      Granting such other and further relief as the Court may deem just and appropriate.

Dated: February 14, 2025

DUANE MORRIS LLP

*/s/ Laurie G. Furshman*
Laurie G. Furshman (Bar No. 29604)
Lgfurshman@duanemorris.com
Robert B. Hopkins (Bar No. 06017)
Rbhopkins@duanemorris.com
1201 Wills Street, Suite 330
Baltimore, MD 21321
(410) 949-2900

BLANK ROME LLP

Luke M. Reid (Bar No. 31228)
Luke.Reid@blankrome.com
125 High Street, 3rd Floor
Boston, MA 02110
617-415-1200

William R. Bennett, III*
William.Bennett@blankrome.com
Thomas H. Belknap, Jr.*
Thomas.Belknap@blankrome.com

Noe S. Hamra
Noe.Hamra@blankrome.com*
1271 Avenue of the Americas
New York, NY 10020
212-885-5000

Kierstan L. Carlson*
Kierstan.Carlson@blankrome.com
Emma C. Jones*
Emma.Jones@blankrome.com
1825 Eye St. NW
Washington, DC 20006
202-420-2200
*Admitted *pro hac vice*

## <u>CERTIFICATE OF SERVICE</u>

I CERTIFY that on this 14th day of February 2025, the foregoing was filed in the United States District Court for the District of Maryland via the Court's CM/ECF filing system, which will provide notice of this filing to all counsel of record.

*/s/ Laurie G. Furshman*
Laurie G. Furshman (Bar No. 29604)
Lgfurshman@duanemorris.com
