UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| **In the Matter of the Petition**<br><br>**Of**<br><br>**GRACE OCEAN PRIVATE LIMITED, as Owner of the M/V DALI,**<br><br>**And**<br><br>**SYNERGY MARINE PTE LTD, as Manager of the M/V DALI,**<br><br>**for Exoneration from or Limitation of Liability** | **Docket No. 24-cv-00941-JKB**<br><br>*IN ADMIRALTY* |

**CLAIMANTS' MEMORANDUM IN
OPPOSITION TO PETITIONERS' OBJECTION
AND APPEAL OF MAGISTRATE JUDGE'S ORDER**

On February 26, Magistrate Judge Sullivan issued a Memorandum and Order (ECF 489) granting a motion to compel filed by Claimants. Judge Sullivan's Order enforced the long-standing federal rule that corporate plaintiffs, plus their agents and employees, must appear for deposition in the district in which they filed suit. Petitioners have filed an Objection and Appeal to the Order, contending that it "is both clearly erroneous and contrary to law." (ECF 492 at 2) Their arguments fall short, however, as Judge Sullivan's decision is factually correct and supported by extensive precedent. Moreover, the rationale underlying the customary rule applies with even greater force in the unique setting of a limitation-of-liability proceeding.[1]

---

[1] Neither the DALI's presence in Baltimore nor the initiation of suit there resulted from happenstance. As to the former, vessel management affirmatively directed the vessel to call at the Port of Baltimore to load and discharge cargo. And as to the latter, Petitioners had choices as to where to file suit, *see* Fed. R. Civ. P. Supp. R. F(9), but perceived strategic advantages to bringing a limitation action in Baltimore before they were sued elsewhere or before the DALI was moved to another judicial district.

1

# ARGUMENT

I. **The Standard of Review Requires Deference to Discovery-Related Decisions Rendered by a Magistrate Judge**

Whenever an appeal involves a discovery-related decision from a magistrate judge, the standard of review is central to its resolution. Petitioners' memorandum correctly identifies the standard of review (which requires the decision to be upheld unless "clearly erroneous or contrary to law"), but fails to acknowledge the deference which is to be applied. This Court previously spelled out both the standard of review and the degree of deference in *Prusin v. Canton's Pearls, LLC*, No. 16-0605, 2018 WL 620473 (D. Md. Jan. 30, 2018) (Bredar, J.):

> Discovery motions, such as the one at issue here, are "quintessential non-dispositive motions." *United States v. Performance Food Grp., Inc.*, No. CV MJG-13-1712, 2016 WL 1028019, at *1 (D. Md. Mar. 15, 2016). The reviewing judge must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also* Local Rule 301.5(a) (D. Md. 2016); 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."). "The 'clearly erroneous' standard applies to factual findings, while legal conclusions will be rejected if they are 'contrary to law.'" *Sky Angel U.S., LLC v. Discovery Commc'ns, LLC*, 28 F. Supp. 3d 465, 479 (D. Md. 2014) (quoting *MMI Prods. v. Long*, 231 F.R.D. 215, 218 (D. Md. 2005)). "Under the clearly erroneous standard, the reviewing court is not to ask whether the finding is the best or only conclusion permissible based on the evidence. Nor is it to substitute its own conclusions for that of the magistrate judge." *Huggins v. Prince George's Cnty.*, 750 F. Supp. 2d 549, 559 (D. Md. 2010). Rather, the Court is "only required to determine whether the magistrate judge's findings are reasonable and supported by the evidence." *Id.* "**Moreover, the district court should, normally, give great deference to the judgment calls necessarily made by a Magistrate Judge in the course of resolving discovery disputes**." *United States v. Performance Food Grp., Inc.*, No. CIV.A. MJG-13-1712, 2015 WL 2226252, at *1 (D. Md. Apr. 23, 2015).

2018 WL 620473, at *3 (emphasis added).

## II. What Exactly is Being Appealed

Under 28 U.S.C. § 636(b)(1)(C), district judges shall determine "those portions of the [magistrate judge's] report or specific proposed findings or recommendations to which objection is made." Although Petitioners' pleading says they are appealing Judge Sullivan's Order broadly, the language used in the body of their pleading reveals a narrower focus.

For clarity, Claimants' motion to compel sought an order compelling both of the Petitioners (Grace Ocean Private Ltd. and Synergy Marine Pte. Ltd.) to appear for deposition in this judicial district together with their agents and employees. (ECF 475 at p. 1) Judge Sullivan's Order granted this precise relief: "Petitioners and their management agents and employees shall make themselves available for deposition in the District of Maryland." (ECF 489 at p. 4)[2]

Petitioners' Appeal focuses only on the individual Synergy employees referenced in Judge Sullivan's Order. Indeed, the entire thrust of the appeal is that employees should be treated differently from their employer because none of the Synergy individuals is a "corporate witness," and none have been "offered by Petitioners as corporate representatives pursuant to Fed. R. Civ. P. 30(b)(6)." (ECF 492 at p. 2) Petitioners' Appeal never puts forth any argument contesting Baltimore as the location of their corporate depositions.

Therefore, as an initial point, due to the narrow focus of Petitioners' arguments, Judge Sullivan's Order must be upheld as respects the location of Petitioners' corporate depositions.[3]

---

[2]  Notably, the scope of Judge Sullivan's Order is not limited to specific individuals. On its face it applies to all agents and employees of Petitioners.

[3]  Under 28 U.S.C. § 636(b)(1)(C), district judges "may accept, reject, or modify, **in whole or in part**, the findings or recommendations made by the magistrate judge." (Emphasis added.)

**III.     None of Judge Sullivan's Factual Findings Were Clearly Erroneous**

Although Petitioners contend that Judge Sullivan's Order is both clearly erroneous and contrary to law, their pleading blurs the arguments:

> The Magistrate Judge's Order granting Claimants' Motion to compel is both clearly erroneous and contrary to law. The Order analyzes the appropriate location for depositions of the non-party witnesses using the standard for a corporate witness and fails to account for the fact that the identified Synergy Marine Pte Ltd ("Synergy") employees are not party witnesses that can be noticed pursuant to Fed. R. Civ. P. 30(b)(1) and were not offered by Petitioners as corporate representatives pursuant to Fed. R. Civ. P. 30(b)(6).

(ECF 492 at p. 2) This passage reads like a complaint about the legal test that was applied by Judge Sullivan rather than a complaint about one of the judge's factual findings.

**A.     Apparently, Petitioners Complain About Only One of the Order's Factual Findings: the Relative Convenience of the Parties**

Judge Sullivan's Order made only a few factual findings. The table below summarizes those findings and identifies which have been challenged.

| Factual Findings | Petitioners' Challenges |
|---|---|
| The convenience of the parties favors depositions in Maryland given the number of lawyers involved and the fact that Petitioners' employees will have to travel regardless of whether the deposition venue is in the U.S. or the U.K. (ECF 489 at p. 2) | "Nothing about the potential detention of up to seven of [Synergy's] employees for an unknown period of time is convenient to Petitioners—much less the witnesses themselves." (ECF 492 at p. 7) |
| There was no evidence that health concerns or financial restrictions would prevent the individual witnesses from traveling to the U.S. (ECF 489 at p. 2) | Unchallenged |

4

| | |
|---|---|
| The Court lacked information as to whether any of the individual witnesses have been identified as possible material witnesses in a criminal proceeding. (ECF 489 at p. 2) | Unchallenged |
| The Court lacked information as to whether any of the individual witnesses would be unable to obtain visas to the U.S. (ECF 489 at p. 3) | Unchallenged |

As seen, Petitioners' only factual challenge is to Judge Sullivan's conclusion regarding the relative convenience of depositions in the United States. The only basis for that challenge involves a point of conjecture: whether any of Synergy's Asia-based employees face a possibility of detention should they travel to Baltimore. As Judge Sullivan noted in his Order, he was presented with no evidence on this point (ECF 489 at p. 2), and Petitioners' Appeal offers no evidence either. "A [factual] finding is clearly erroneous when 'although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed.'" *Norfolk Shipbuilding & Drydock Corp. v. M/Y La Belle Simone*, 537 F.2d 1201, 1203 (4th Cir. 1976). It seems obvious that Judge Sullivan's finding cannot be clearly erroneous when the countervailing consideration is purely conjectural. Moreover, because the magistrate judge was required to balance between facts on one hand and conjecture on the other, his conclusion is exactly the sort of "judgment call" this Court has said is entitled to "great deference." *Prusin*, 2018 WL 620473, at *3.[4]

---

[4] It bears emphasis that courts routinely reject fear of arrest as a justification for deviating from the prevailing rule that requires plaintiffs to appear for deposition in the venue where they brought suit. *See, e.g., Novel v. Garrison*, 42 F.R.D. 234 (E.D. La. 1967); *Collazos v. U.S.*, 368 F.3d 190, 194 (2d Cir. 2004); *U.S. v. All Funds on Deposit at Old Mut. Of Bermuda Ltd. Contract No. CX4011696 in Bermuda*, No. 13-294, 2014 WL 1912091, at *2 (S.D. Tex. May 13, 2014). In sum, if fear of arrest is an insufficient basis on which to seek relief from the prevailing rule, then a conjectural concern regarding possible detention as a material witness must provide even less justification.

5

In addition, Judge Sullivan's Order points out that any individuals who might someday be identified as material witnesses in the DALI investigation have recourse in this federal court. Although the Appeal argues that this assurance is insufficient (ECF 492 at p. 6), it bears repeating that Petitioners' concern about detention is only hypothetical. The record contains no evidence on that subject.

## IV. None of Judge Sullivan's Legal Conclusions Were Contrary to Law

The main argument raised in Petitioners' Appeal is legal, not factual. Petitioners contend that Judge Sullivan erred in failing to determine whether any of the Synergy employees is a "managing agent" of the company, arguing that absent such status the magistrate judge lacked authority to order their deposition in Baltimore. (ECF 492, at pp. 3-4) This is a false premise.

### A. The Case Law Authorizes Courts to Order that Employees of a Corporate Plaintiff Appear for Deposition in the Venue Where Their Employer Filed Suit

Petitioners abandoned their argument from below that there is no prevailing rule requiring plaintiffs to make themselves available for deposition in the district in which they brought suit. That change in strategy is tacit recognition of the body of authority confirming the principle – including from this Court. *See, e.g.,* 8A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane & Richard L. Marcus, *Federal Practice & Procedure* § 2112 (3d ed.) (hereafter "Wright & Miller"); 1 Discovery Proceedings in Federal Court § 9.4 (3d ed.); *Webb v. Green Tree Servicing, LLC*, 283 F.R.D. 276, 279 (D. Md. 2012) (Grimm, J.); *Loeser v. Noble Supply & Logistics, LLC*, No. 23-2657, 2024 WL 2155219, at *2, n.2 (D. Md. May 14, 2024) (Bredar, J.).

Instead, Petitioners focus on whether the prevailing rule can apply to their employees. Yet conspicuously absent from their briefing is a discussion of the many cases cited to Judge Sullivan which hold that the prevailing rule does extend to a corporate plaintiff's "agents and employees."

6

*See Detweiler Bros., Inc. v. John Graham & Co.*, 412 F. Supp. 416, 422 (E.D. Wash. 1976) ("As a normal rule plaintiff will be required to make himself available for examination in the district in which he has brought suit…This rule would also apply to plaintiff's agents and employees."); *Lexington Ins. Co. v. Commonwealth Ins. Co.*, No. 98-3477, 1999 WL 33292943, at *9 (N.D. Cal.1999) (finding general rule "applicable to plaintiff's agents and employees"); *Radian Asset Assur., Inc. v. College of Christian Bros. of N.M.*, No. 09-0885, 2010 WL 5150718, at *5 (D.N.M. 2010) ("The Court will require that Radian Asset's agents, officers, and current employees travel to Albuquerque for depositions…Because Radian Asset, a corporate plaintiff, chose the litigation forum, the Court finds it reasonable to require Radian Asset to produce its officers, employees, and agents in the forum for depositions."); *Buergofol GmbH v. Omega Liner Co.*, 2024 WL 4290795, at *2 (D.S.D. 2024) ("This rule is also applicable to plaintiff's agents and employees.").

Given that Judge Sullivan had ample precedent on which to base his decision, it is axiomatic that his ruling consistent with those precedents cannot – by definition – be "contrary to law." *See Trudell Med. Int'l v. D R Burton Healthcare, LLC*, No. 18-9, 2021 WL 684200, at *3 (E.D.N.C. Feb. 22, 2021) (quoting *Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 518 (D.N.J. 2008)) ("A ruling that is contrary to law is one where 'the magistrate judge has misinterpreted or misapplied applicable law.'"); *see also In re Outsidewall Tire Litig.*, 267 F.R.D. 466, 470 (E.D. Va. 2010) ("The 'contrary to law' standard ordinarily suggests a plenary review of legal determinations, but many courts have noted that decisions of a magistrate judge concerning discovery disputes and scheduling should be afforded 'great deference.'").

### B. Petitioners' Appeal Contradicts the Arguments they Raised Below

Rather than engaging with the case law that was cited to Judge Sullivan, the Appeal shifts its focus to an argument that Petitioners expressly elected not to raise below. The gist of

7

Petitioners' current argument is that Judge Sullivan lacked the authority to compel their employees to appear for deposition in Baltimore because the employees' attendance would have to be secured by subpoena under Federal Rule of Civil Procedure 45, not by notice under Rule 30. (ECF 492 at pp. 3-4) When arguing to Judge Sullivan, however, Petitioners never contended that he was unauthorized to issue the order on this basis. Instead, Petitioners chose to take a "wait and see" approach, stating: "Petitioners have not insisted that their employee witnesses be subpoenaed, but reserve the right to insist on that requirement if a mutually acceptable location cannot be agreed." (ECF 482, at p. 11, n.21) Petitioners' current argument that their employees' depositions can be obtained through subpoena only – which they raised only *after* the magistrate judge ruled against them on the grounds that were actually argued – should not be considered. *See Dune v. G4s Regulated Sec. Sols., Inc.*, No. 13-01676, 2015 WL 799523, at *2 (D.S.C. Feb. 25, 2015) ("The Court is not obligated to consider new arguments raised by a party for the first time in objections to the Magistrate's Report.").[5]

### C. Under Petitioners' False Construct, Judge Sullivan's Analysis is Still Legally Correct

According to Petitioners, Judge Sullivan's Order concerning their employees can stand only if those employees qualify as "managing agents." (ECF 492 at pp. 3-4) But even if there existed such a rule as Petitioners put forward (*contra* Section IV(A), *supra*), the record contains sufficient evidence to support a finding that the individuals at issue satisfy the status of "managing agent" for purposes of this case.

---

[5] In their Appeal, Petitioners say that *after* Judge Sullivan's ruling, they determined that their shoreside employees should be provided with independent counsel. (ECF 492 at p. 5) As discussed in the text above, Petitioners' post hoc arguments should not be considered in evaluating whether Judge Sullivan's decision was clearly erroneous or contrary to law.

Petitioners' brief acknowledges that "the identification of a managing agent . . . should be determined on a 'case-by-case basis.'" (ECF 492 at p. 3)  Claimants agree.  In making that determination, the party seeking the deposition need only show there is "a close question" as to whether the proposed deponent is a managing agent.  *Amimon Inc. v. Shenzhen Hollyland Tech Co.*, No. 20-9170, 2025 WL 66633, at *20 (S.D.N.Y. Jan. 10, 2025).  This burden is "modest" and "any doubts are resolved in favor of the examining party."  *Id.*  *See also In re Honda Am. Motor Co. Dealership Relations Litig.*, 168 F.R.D. 535, 540 (D. Md. 1996).  Claimants have easily met this burden.

This lawsuit is a limitation-of-liability proceeding.  In limitation cases, one of the principal issues – often the principal issue – is whether vessel management had privity or knowledge of any negligent act or unseaworthy condition that caused or contributed to the casualty.  *See* 46 U.S.C. §30505(b); Case Management Order No. 3 (ECF 438) at 2.  In *Coryell v. Phipps,* 317 U.S. 406, 410 (1943), the Supreme Court explained that for corporate shipowners, "liability may not be limited under the statute where the negligence is that of an executive officer, manager or superintendent whose scope of authority includes supervision over the phase of the business out of which the loss or injury occurred."  Many subsequent cases use the phrase "managing agent" to describe the type of employee whose knowledge would be imputable to the shipowner.  *See, e.g., Cupit v. McClanahan Cont., Inc.,* 1 F.3d 346, 348 (5th Cir.1993) ("[T]he dispositive question is whether the corporate employee is a 'managing agent' with respect to the field of operations in which the negligence occurred."), *In re Hellenic Inc.*, 252 F.3d 391 (5th Cir. 2001) (same).

Fortunately, there is plenty of case law describing who qualifies as a managing agent for purposes of a limitation proceeding.  One of the primary factors is "the scope of the agent's authority over day-to-day activity in the relevant field of operations."  *In re Vulcan Materials Co.,*

369 F. Supp. 2d 737, 741 (E.D. Va. 2005). As would be expected, "managing agents" expressly include shoreside personnel. *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico*, 21 F. Supp. 3d 657, 744 (E.D. La. 2014) ("Courts applying the Limitation Act to corporate owners interpret 'privity and knowledge' to mean 'the privity and knowledge of a managing agent, officer, or supervising employee, including **shoreside personnel**.'") (*quoting* 2 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 15-6, at 191 (5th ed.2011)) (emphasis added).

The individuals named in the motion to compel were **identified by Petitioners** as Synergy's "shoreside personnel" who "assisted in the management of the DALI" and had "the most knowledge of the day-to-day operations of the DALI." The pertinent email is imbedded below.[6]

> I refer to our telephone conversation yesterday wherein we discussed the scheduling of depositions. As requested, we provide herein a list of shoreside personnel that assisted in the management of the DALI:
>
> | | |
> |---|---|
> | Balaji V | Fleet Manager |
> | Capt. Ravi Sekhar BV | Marine Manager / DPA / CSO |
> | Vishal C Prabhu | Superintendent |
> | Capt. Melroy Dsouza | Marine Superintendent |
> | Rajesh Inigo. K | Manager - QHSE |
> | Narayanan. K | Technical- Procurement |
> | R. Karthik Nair | Assistant Manager - Technical |
>
> The list is not exhaustive but includes the personnel we think have the most knowledge of the day-to-day operations of the DALI. We are working putting together a list of the personnel that handled the same tasks for the CEZANNE and SALTORO and will provide that to you when completed.
>
> We are also working on getting each witness a Visa for Canada and the United Kingdom. The Visa for Canada could take between 60-100 days to secure while a Visa for the United Kingdom takes about 15 days to obtain.
>
> Kind regards,
>
> **William "Bill" R. Bennett III**
> **PARTNER** | BLANKROME

---

[6] The full email identifying the Synergy shoreside employees with management responsibility for the DALI is attached as Ex. A to Claimants' motion to compel (ECF 475-2).

In the pleadings filed with Judge Sullivan, Claimants agreed that they would not need to depose Mr. Narayanan, a point acknowledged in Judge Sullivan's Order (ECF 489 at p. 2, n.1).

If one simply compares the roles of these individuals to the case law, it is easy to see that Claimants satisfy the "modest" burden of showing that the individuals qualify as managing agents under maritime law. *See, e.g., Waterman Steamship Corp. v. Gay Cottons*, 414 F.2d 724, 731 (9th Cir. 1969) ("A managing officer is anyone to whom the corporation has delegated "general **management** or general **superintendence** of the whole or a particular part of the business.") (emphasis added); *McAllister Towing of Virginia, Inc. v. United States*, No. 2:10CV595, 2012 WL 1438770, at *8 (E.D. Va. Apr. 25, 2012) ("[T]he privity or knowledge requirement applies to an executive officer, **manager**, or **superintendent**, whose scope of authority includes supervision over the phase of the business out of which the injury occurred.") (quoting *Empresas Lineas Maritimas Argentinas S.A. v. U.S.,* 730 F.2d 153, 155 (4th Cir.1983)) (emphasis added); *Paragon Asset Co. Ltd. v. Gulf Copper & Mfg. Corp.*, 622 F. Supp. 3d 360, 407 (S.D. Tex. 2022), *aff'd*, 99 F.4th 736 (5th Cir. 2024) (holding that a **Marine Operations Manager** was a managing agent); *Complaint of Tecomar S.A.*, 765 F. Supp. 1150, 1181 (S.D.N.Y. 1991) (holding that a **Technical Director** was a managing officer).

Even if the employees' management status was not obvious from the job titles alone, Synergy fleshed out their job responsibilities in Chapter 2B of its Office Procedure Manual, entitled "Ship Management Team."[7] Looking at the job descriptions, the employees' status as "managing agents" becomes even more apparent:

- "**Marine Manager**": among other responsibilities, this person ensures that the requirements of the ISM Code are implemented, ensures efficient and safe working of the vessels through the respective Marine Superintendents, monitors and supervises the navigation and cargo operations through Superintendents, assists through Marine Superintendents in all matters relating to safe navigation

---

[7] A district judge may "receive further evidence" in considering objections to a magistrate judge's ruling. 28 U.S.C. § 636(b)(1)(C). Chapter 2B of the Office Procedure Manual is attached hereto as Exhibit 1.

- of the vessel, and reviews existing manning levels for addition or reduction in requirements.[8]  [This title applies to Capt. Ravi Sekhar.]

- "**Fleet Manager/Technical Manager**": among other duties, this person has responsibility for quality and maintenance standards aboard the vessels, and ensures efficient and safe working of the vessels through the Technical Superintendents.[9]  [This title applies to Mr. Balagi V and Mr. Rajesh Inigo.[10]]

- "**Marine Superintendent**": among other responsibilities, this person monitors the operations of the vessel assigned, reviews the navigational practices and procedures on board to ensure highest navigation standards, conducts audits of the vessel, conducts training to sea staff as assigned by Marine Manager, and ensures proper handing over of Master and Chief Officer during crew changes.[11]  [This title applies to Mr. Prabhu and Capt. Dsousa.]

- "**Technical Superintendent**" (also applicable to "Assistant Manager – Technical"): among other responsibilities, this person evaluates ship operations particularly with respect to safety and overall reliability of the engineering plant, ensures all flag state documentation is completed, ensures vessel inspections are carried out, ensures immediate steps are taken to rectify defects, monitors fleet personnel, and ensures proper handing over of Chief Engineer and Second Engineer during crew changes.[12]  [This title applies to Mr. Nair.]

The way in which these positions relate to one another is depicted visually in a Synergy organizational chart that was included in Petitioners' document production.[13]

Given the level of responsibility of these individuals and their degree of involvement with the DALI, it would be curious indeed if none of them were nominated to testify at Synergy's yet-to-be-scheduled Rule 30(b)(6) deposition, which will by necessity focus on issues of management's privity and knowledge.  That's because, as a practical matter, it is difficult to foresee

---

[8]   *See* Ex. 1, at Petitioner_0012379-0012381, 0012383-0012386.

[9]   *See* Ex. 1 at Petitioner_0012381-0012383.

[10]  Mr. Inigo, who was identified as the DALI's Manager–QHSE in the email (ECF 475-2), was also identified as the DALI's Technical Manager for the period Nov. 2019 – Jan. 2024 in Synergy's Responses to Claimants' First Set of Amended Interrogatories.

[11]  *See* Ex. 1 at Petitioner_0012386-0012388.

[12]  *See* Ex. 1 at Petitioner_0012389-0012392.

[13]  *See* Synergy's Organizational Chart, attached hereto as Exhibit 2, bearing Bates Petitioner_0083039.

how Petitioners will be able to carry their burden of proof as to a lack of privity or knowledge if they do not produce testimony from the shoreside personnel who are responsible for "the management of the DALI" and have "the most knowledge of the day-to-day operations of the DALI." *See* Case Management Order No. 3 (ECF 438) at 2 ("[T]the 'shipowner seeking limitation of liability bears the burden of proving that [it] was without privity or knowledge of the condition or negligence responsible for the collision.'") (*citing Hellenic Lines, Ltd. v. Prudential Lines, Inc.*, 730 F.2d 159, 166 (4th Cir 1984)). Heretofore, Petitioners have hedged on whether these Synergy employees will one day testify on behalf of the corporation.[14]

In sum, the Synergy employees have job titles and job responsibilities that clarify their status as "managing agents" in the context of this lawsuit. Judge Sullivan correctly held that these individuals must make themselves available for deposition in Baltimore.

## **CONCLUSION**

Magistrate Judge Sullivan's Memorandum and Order was neither clearly erroneous nor contrary to law. For all of the reasons discussed above and in Claimants' original pleadings – e.g., the Petitioners' choice of forum, the scope of the prevailing rule, the relative convenience of stateside depositions, the conjectural hardship on the Synergy employees, the uniqueness of limitation proceedings, and the roles and responsibilities of the individual employees – Claimants respectfully ask this Court to affirm the Magistrate Judge's Memorandum and Order in its entirety.

---

[14]  Petitioners' brief notes that none of the Synergy shoreside employees have been "offered by Petitioners as corporate representatives pursuant to Fed. R. Civ. P. 30(b)(6)." (ECF 492 at p. 2) That is true. But Petitioners have suggested that might change. *See* ECF 482 at p. 7 ("some 30(b)(1) witnesses may be designated to address certain of the topics in any eventual 30(b)(6) notice"), and ECF 482 at p. 3 n.6 ("There may also be topics identified in Claimants' eventual 30(b)(6) Notices that could be covered by Petitioners' 30(b)(1) witnesses, so it would make sense to conduct those depositions simultaneously.").

ANTHONY G. BROWN
Attorney General of Maryland

Robert A. Scott (24613)
Howard R. Feldman (05991)
Assistant Attorneys General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, MD 21202
rscott@oag.state.md.us
T: (410)576-63214

*/s/ Margaret Fonshell Ward*
Margaret Fonshell Ward (04586)
DOWNS WARD BENDER HERZOG
& KINTIGH, P.A.
1350 McCormick Road
Executive Plaza 3, Suite 400
Hunt Valley, MD 21031
mward@downs-ward.com
T: (410) 584-2800

*/s/ David L. Reisman*
R. Keith Jarrett, T.A. (La. Bar #16984)*
David L. Reisman, T.A. (La. Bar # 21833)*
Raymond T. Waid*
Elizabeth B. McIntosh*
Jessie E. Shifalo*
Elizabeth A. Strunk*
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, LA 70139-5099
T: (504) 581-7979
dreisman@liskow.com
rkjarrett@liskow.com
rwaid@liskow.com
ebmcintosh@liskow.com
jshifalo@liskow.com
eastrunk@liskow.com

Scott S. Partridge*
PARTRIDGE LLC
231 Glendale Drive
Metairie, LA 70001
scott@partridgellc.com
T: (314) 952-4132

14

William J. Jackson*
Ivan Morales*
Maria F. Pimienta*
KELLEY DRYE & WARREN LLP
515 Post Oak Blvd, Suite 900
Houston, TX 77027
bjackson@kelleydrye.com
imorales@kelleydrye.com
mpimienta@kelleydrye.com
T: (713) 355-5000

Melissa E. Byroade (31335)
KELLEY DRYE & WARREN LLP
Washington Harbour
3050 K Street NW, Suite 400
Washington, D.C. 20007
mbyroade@kelleydrye.com
T: (202) 342-8823

Philip D. Robben*
Julia Schuurman*
KELLEY DRYE & WARREN LLP
3 World Trade Center
175 Greenwich Street
New York, NY 10007
probben@kelleydrye.com
jschuurman@kelleydrye.com
T: (212) 808-7800

Andrew W. Homer*
KELLEY DRYE & WARREN LLP
888 Prospect Street, Suite 200
La Jolla, CA 92037
ahomer@kelleydrye.com
T: (858) 795-0426

Mark Lanier*
The Lanier Law Firm
10940 W. Sam Houston Pkwy N.
Suite 100
Houston, TX 77064
mark.lanier@lanierlawfirm.com
T: (713) 659-5200

*Admitted *Pro hac vice*

*Attorneys for State of Maryland*

Daniel O. Rose
Kreindler & Kreindler LLP
485 Lexington Avenue, 28th Floor
New York, NY 10017
drose@kreindler.com
Telephone: (212) 973-3414
*Lead Counsel for Personal Injury and Wrongful Death Claimants*

Robert W. Phelan
Cozen O Connor
3 WTC, 175 Greenwich Street
55th Floor
New York, NY 10007
rphelan@cozen.com
Telephone: (212) 908-1274
*Lead Counsel for Property Damage Claimants*

Adam J. Levitt
DiCello Levitt Gutzler LLC
Ten North Dearborn Street, Sixth Floor
Chicago, IL 60602
alevitt@dicellolevitt.com
Telephone: (312) 214-7900
*Lead Counsel for Local Government Claimants*

Todd D. Lochner
Lochner Law Firm, P.C.
7076 Bembe Beach Rd; Suite 201
Annapolis, MD 21403
tlochner@lochnerlawfirm.com
Telephone: (443) 716-4400
*Lead Counsel for Private Economic Loss Claimants*

Terry L Goddard, Jr
Skeen & Kauffman LLP
9256 Bendix Road, Suite 102
Columbia, MD 21045
tgoddard@skaufflaw.com
Telephone: (410) 625-2272
*Lead Counsel for Cargo Claimants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 21st day of March, 2025, a copy of the foregoing pleading was served via the court's CM/ECF system on all counsel of record.

/s/ R. Keith Jarrett  
R. Keith Jarrett (La. Bar # 16984)