UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| In the Matter of the Petition<br><br>of<br><br>GRACE OCEAN PTE LTD., as Owner of the M/V DALI,<br><br>and<br><br>SYNERGY MARINE PTE LTD, as Manager of the M/V DALI,<br><br>for Exoneration from or Limitation of Liability. | Docket No. JKB 24-cv-941<br><br>*IN ADMIRALTY* |

**PETITIONERS' REPLY IN SUPPORT OF OBJECTION AND APPEAL TO DISTRICT JUDGE OF MAGISTRATE JUDGE'S ORDER (ECF NO. 489)**

Petitioners, through undersigned counsel BLANK ROME LLP and DUANE MORRIS LLP, submit this Reply to Claimants' Memorandum in Opposition to Petitioners' Objection and Appeal of the Magistrate Judge's Order ("Opposition"). ECF No. 496.

**ARGUMENT**

As a preliminary matter, and as stated in Petitioners' Objection and Appeal, the Magistrate Judge's Order failed to consider any of the facts set forth in the Declaration of Anand Sashidharan ("Sashidharan Declaration") and did not consider the appropriate standard to determine the status of the Synergy employees in compelling them to appear for depositions in Baltimore. The Sashidharan Declaration clearly stated that (1) none of the employees are managing agents of the company and (2) each such employee faces the risk of detention if they travel to Baltimore.

1

Petitioners contend that Judge Sullivan's failure to address the status of these witnesses in his Memorandum and Order was clearly erroneous.

Further, it is not "obvious" that Judge Sullivan's finding cannot be clearly erroneous "when the countervailing consideration is purely conjectural." ECF No. 496 at 5. This whole exercise has been purely conjectural since Claimants have not actually noticed any depositions. What is not hypothetical, however, is the fact that the named Synergy employees have all indicated an unwillingness to travel to Baltimore for depositions and that they have all now retained their own legal counsel to advise them on the pros and cons of doing so.

These employees' fears are well-founded. In cases involving vessels subject to investigation, the U.S. Coast Guard and U.S. Department of Justice often keep foreign seafarer witnesses in the United States for extended periods of time pursuant to "Security Agreements." Security Agreements are contracts between vessel owners and operators and the U.S. Coast Guard, in which the vessel owners and operators agree to lodge, pay, and care for the seafarers while they remain in the United States, the seafarers agree to surrender their passports to the vessel agent (or risk detention as a material witness), and the U.S. Coast Guard agrees to allow the relevant vessel to continue trading and to take reasonable measures to expedite its investigation. Although these ostensibly are "voluntary" arrangements for the seafarers, in order to return home the seafarers either need permission from the government, or must demand the return of their passports, after which point the government has 72 hours to object and determine whether to seek material witness warrants for the seafarers. This type of legal arrangement is common in U.S. investigations and well-known in the maritime industry.

Here, about half of the DALI's crewmembers have remained in the United States since the vessel's departure from the jurisdiction pursuant to a Security Agreement, and with a few

exceptions, most have not returned home, even temporarily. Additionally, numerous other seafarers, even some who did not serve on the DALI, have been issued Grand Jury subpoenas upon arrival in the United States aboard other vessels or transiting through U.S. airports, and at least one seafarer was required to stay in the United States in a hotel for several months until an interview with the government could be scheduled. All of these foreign seafarers face the true "Hobson's Choice" – risk the trauma of being arrested and detained as a material witness or stay in a hotel indefinitely on a "voluntary" basis.

Synergy's shoreside employees are fully aware of the history in this case (and about Security Agreements generally). Thus, their fear of being detained in the United States – either as a material witness or as an addition to the Security Agreement – is real and concrete.

### I. Claimants Misconstrue Petitioners' Argument Regarding the Need to Notice Depositions by Subpoena.

Petitioners maintain that these witnesses have no obligation to travel to Baltimore since they are not managing agents of the company and therefore must be subpoenaed where they reside.[1]

---

[1] Petitioners must reiterate that they did not "choose" the forum. As explained in *Vatican Shrimp Co., Inc. v. Solis*, 820 F.2d 674, 678-79 (5th Cir. 1987), waiting to plead the right to limitation as a defense is not as clear-cut as Claimants suggest:

> We recognize that shipowners may choose to set up the defense of limitation of liability under either method: by pleading the substantive provisions of section 183 in a properly filed answer in any court, or by filing a section 185 petition in a federal district court. However**, if a shipowner is sued in state court, the owner's failure to file a section 185 petition in a federal district court within six months after receiving written notice of the claim will result in forfeiture of the right to limit liability should the claimant contest the limitation defense**. This is so because solely filing in the state court an answer in which limitation is pled obviously does not provide a federal court with jurisdiction to act. In contrast, defensive pleading under section 183 in a federal district court answer does not present the same jurisdictional problems. The district court, having jurisdiction to hear the entire case initially filed with it, can adjudicate and rule on a limited liability issue that is raised in a properly filed answer.

(Emphasis added).

3

Petitioners' arguments have been consistent, and their Objection and Appeal does not contradict the arguments raised below or make new arguments for consideration. *See* ECF No. 482 at 1, 10-11, 13; ECF No. 496 at 7-8. In Petitioners' Opposition to Claimants' Motion to Compel (ECF No. 482), Petitioners expressly stated that, "normally, ordinary employees of a party must be subpoenaed and deposed where they reside." ECF No. 482 at 1, 10. Petitioners also expressly stated that "Petitioner Synergy's 30(b)(1) witnesses are entitled to insist on subpoenas for depositions to be conducted at the location of their place of business." ECF No. 482 at 13. Petitioners' argument that the named employees must be subpoenaed is not a new argument raised after Judge Sullivan's Order was issued. It has been Petitioners' position since their Opposition to Claimants' Motion to Compel that the witnesses identified in Claimants' motion are not managing agents and cannot be compelled to testify in Baltimore.

Petitioners' footnote no. 21 at p. 15 of their Opposition Brief, ECF No. 482, stating that they "have not insisted that their employee witnesses be subpoenaed, but reserve the right to insist on that requirement if a mutually acceptable location cannot be agreed" was not a concession that subpoenas were not required or a "wait and see approach." Rather, Petitioners' statement was posed as a hypothetical because, as stated in Petitioners' Opposition to Claimants' Motion to Compel, Claimants had not (and still have not) noticed any depositions. Petitioners could not demand that subpoenas be issued where no deposition notices had been made. Further, Petitioners' had not insisted on subpoenas of these witnesses because they had expected and hoped, based on this Court's October 29, 2024 admonition, that the Parties would be able to agree to a mutually-acceptable location, which, as evidenced by Exhibit A to Claimants Motion to Compel, Petitioners had identified as the United Kingdom or Canada as early as December 17, 2024. *See* ECF No. 482 at 8, n. 15.

##       II.    The Named Employees are Knowledgeable but are Not Managing Agents.

The Magistrate Judge's Order made no finding that the Synergy witnesses were managing agents.[2] In their Reply in support of their Motion to Compel, Claimants conceded that Narayanan K Krishnamachari is "a relatively unimportant witness" (ECF No. 485 at n.1) and do not contend that he is a managing agent. At the same time, however, they also posit that, because Petitioners identified the named employees as "hav[ing] the most knowledge of the day-to-day operations of the DALI," the named employees are necessarily managing agents. ECF No. 496 at 10-11. The fact that Claimants willingly dropped Mr. Krishnamachari from consideration belies their contention that Petitioners' mere identification of employees with knowledge, which includes Mr. Krishnamachari, automatically makes them managing agents. Claimants offer an organizational chart which identifies the employee witnesses' "management" responsibilities but omits that that chart reflects but one branch of a much larger organizational tree in which the small fleet of vessels within the employees' responsibility are just a few of the vessels within Synergy's overall management. See Ex. A (Petitioner_0011562). While the named witnesses have knowledge of the specific facts of the casualty voyage in question, they do not bear the requisite authority and oversight within the company as to be deemed the managing agents thereof.

Although not addressing the question in the context of whether a particular witness is sufficiently senior to be subject to deposition by notice to the company rather than by subpoena, one case cited by Claimants, *In Re Oil Spill*, is particularly instructive on this point. As quoted by

---

[2] Claimants make much of the fact that Petitioners' Objection did not address cases Claimants cited in their Motion to Compel regarding managing agent status. ECF No. 496 at 6-7. But those cases were not addressed or referenced by Judge Sullivan in his Order, and Petitioners previously distinguished those cases in their response to Claimants' Motion to Compel and in the Objection and Appeal, noting specifically that it is clear that managing agent status is a fact-based inquiry. *See* ECF No. 482 at 3, 9, 11, 11 n. 23, 14; ECF No. 492 at 3, 4. Thus, it is not true that because Claimants cited to cases in support of their argument Judge Sullivan's ruling cannot be contrary to law. ECF No. 496 at 7. Rather, a fact-based analysis should have been done.

Claimants, the court in that case stated that "[c]ourts applying the Limitation Act to corporate owners interpret 'privity and knowledge' to mean 'the privity and knowledge of a managing agent, officer, or supervising employee, including shoreside personnel.'" *In re Oil Spill*, 21 F. Supp. 3d 657 (E.D. La. 2014) (quoting 2 Thomas J. Schoenbaum, Admiralty and Maritime Law § 15-6, at 191 (5th ed. 2011) (citing cases reflecting that the determination of whether an employee is a managing agent is fact specific); ECF No. 496 at 10. However, not cited by Claimants is the next sentence, which reads: "[c]onsequently, one of the most difficult issues that arise under the Limitation Act is whether the person responsible for the error is sufficiently high up in the corporate hierarchy that her acts or omissions will be deemed within the owner's 'privity and knowledge.'" *Id*. (citing Schoenbaum, § 15-6, at 193). In *In re Oil Spill*, the court is conducting an analysis of a corporation's "privity and knowledge" under the Clean Water Act ("CWA"), comparing a prior iteration of the CWA to the Limitation Act, ultimately noting that because the newer version of the CWA removed the "privity and knowledge" standard it "removed a significant hurdle" as "no longer was the Government required to show that the extra-negligent conduct was committed by an employee of a certain rank or agent with the requisite level of authority." *Id.* at 744.[3] As acknowledged by the *In re Oil Spill* court, and by Schoenbaum, the leading admiralty scholar on which the court relied, shoreside personnel are not necessarily managing agents of a company. The determination of the status of these employees is a factual one that must be made based on evidence to be presented at trial. Such determination cannot be made on the basis of an org chart and an email. In any event, it is too significant a distinction to have been entirely ignored in the Magistrate Judge's Order.

---

[3] The *In re Oil Spill* court also expressly stated that "the Court need not determine whether BPXP authorized or ratified the conduct, or whether [named employees] (or any other BP employee) were 'managerial agents,' or any other attribution standard that may apply under general maritime law, 'traditional' common law, or any other law or jurisdiction." *Id*. at 745.

6

In asserting that the named employees are managing agents of Synergy, Claimants also argue that "Petitioners have hedged on whether these Synergy employees will one day testify on behalf of the corporation." ECF No. 496 at 13. Again, Petitioners can only have ever referenced hypothetical situations because Claimants have not, to date, actually noticed a Rule 30(b)(6) deposition of Synergy; there is no elusive motive. But in any event, whether or not an individual might testify as a corporate designee pursuant to Fed. R. Civ. P. 30(b)(6) has no bearing on their actual role within the company as a managing agent or not. As Your Honor summarized in *Paul Revere Life Ins. Co. v. Jafari*, 206 F.R.D. 126, 127 (D. Md. 2002):

> The testimony elicited at the Rule 30(b)(6) deposition represents the knowledge of the corporation, not of the individual deponents. The designated witness is "speaking for the corporation," and this testimony must be distinguished from that of a "mere corporate employee" whose deposition is not considered that of the corporation and whose presence must be obtained by subpoena. [Citations omitted] . . . If persons designated by the corporation do not possess personal knowledge of the matters set out in the deposition notice, the corporation is obligated to prepare the designees so that they may give knowledgeable and binding answers for the corporation. [Citations omitted].

(citing *United States v. J. M. Taylor*, 166 F.R.D. 356, 361-362 (M.D. N.C. 1996)). Any decision by Petitioners to designate the named witnesses as part or all of a corporate 30(b)(6) designation is wholly unrelated to any managing agent status of such witnesses, which is denied.

### III.   Petitioners Do Not Have Control Over the Named Witnesses.

The fact remains that Petitioners do not have control over the named witnesses, at least insofar as concerns their decision whether to travel to the U.S. As noted in Petitioners' Objection and Appeal, where witnesses have made it clear that they will not appear, even at the risk of sanctions for their employer, courts applying *Honda*-like factors have concluded that such individuals' interests are not sufficiently aligned with that of the employer such that they should be considered managing agents thereof. ECF No. 492 (citing *JSC Foreign Econ. Ass'n*

7

*Technostroyexport v. Int'l Dev. & Trade Servs.*, 220 F.R.D. 235, 238 (S.D.N.Y. 2004)); *see also United States v. Afram Lines, Ltd.*, 159 F.R.D. 408 (S.D.N.Y. 1994).

This fact has only been reinforced by developments since Magistrate Judge Sullivan issued his February 26, 2025 Order, and particularly the fact that these Synergy employees now have engaged their own counsel to advise them on whether to agree to travel to the United States for depositions. Where additional facts are presented that were not available to a Magistrate Judge at the time of his or her Rule 72 ruling, district courts have found that such new facts can warrant a "clearly erroneous" determination. *See, e.g.*, *U.S. ex rel. Carter v. Halliburton*, 266 F.R.D. 130, 134 (E.D. Va. 2010) (overturning a Rule 72 objection as "clearly erroneous" where new depositions were completed after the time of the ruling which changed the analysis at issue).

## CONCLUSION

Petitioners are not trying to be obstructive and are not aiming to make this already complicated case more complicated. From the outset of this matter, Petitioners have granted Claimants broad access to the Vessel to conduct extensive surveys, inspections and testing and have produced key documents to Claimants well before issue was joined in this matter and a discovery schedule was set. Petitioners have produced over 675,000 documents to date in response to Claimants' extensive discovery demands, with further productions being made on an expedited and rolling basis. Petitioners have at all times acted in good faith to comply with their discovery obligations. Petitioners want these witnesses to appear for depositions and have offered several options to Claimants to facilitate that happening. But Petitioners must also respect these individual employees' personal rights and interests and cannot force their employees to do more than they are willing to do. This has been Petitioners' position to Claimants since at least December 17, 2024. ECF No. 475-2.

Based on the briefing on Claimants' Motion to Compel and on Petitioners' Objection to the Magistrate Judge's Order, the Parties agree that the Court has broad discretion regarding discovery disputes. Here, Petitioners contend that the unique facts and circumstances of this case warrant reconsideration of Judge Sullivan's Order, which failed to apply the proper standard to the witnesses in question and to account for the unique factors in this matter.

**WHEREFORE**, Petitioners respectfully request that the Court grant an order:

a. Sustaining Petitioners' Objection and setting aside or modifying the Magistrate Judge's Order Requiring Petitioners to Submit to Deposition in the District of Maryland;

b. Ordering that the named employees of Petitioner Synergy are not managing agents, officers, or directors of Synergy for purposes of discovery and that their attendance at depositions must be subpoenaed pursuant to Fed. R. Civ. P. 45 or, because they are based abroad, pursuant to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters or other principles of international comity.

c. Granting such other and further relief as the Court may deem just and appropriate.

Dated: March 25, 2025

DUANE MORRIS LLP

/s/ *Laurie G. Furshman*
Laurie G. Furshman (Bar No. 29604)
Lgfurshman@duanemorris.com
Robert B. Hopkins (Bar No. 06017)
Rbhopkins@duanemorris.com
1201 Wills Street, Suite 330
Baltimore, MD 21321
(410) 949-2900

BLANK ROME LLP

Luke M. Reid (Bar No. 31228)

Luke.Reid@blankrome.com
125 High Street, 3rd Floor
Boston, MA 02110
617-415-1200

William R. Bennett, III*
William.Bennett@blankrome.com
Thomas H. Belknap, Jr.*
Thomas.Belknap@blankrome.com
Noe S. Hamra*
Noe.Hamra@blankrome.com
Neil P. McMillan*
Neil.McMillan@blankrome.com
1271 Avenue of the Americas
New York, NY 10020
212-885-5000

Kierstan L. Carlson*
Kierstan.Carlson@blankrome.com
Emma C. Jones*
Emma.Jones@blankrome.com
1825 Eye St. NW
Washington, DC 20006
202-420-2200
*Admitted *pro hac vice*

**CERTIFICATE OF SERVICE**

I CERTIFY that on this 25th day of March 2025, the foregoing was filed in the United States District Court for the District of Maryland via the Court's CM/ECF filing system, which will provide notice of this filing to all counsel of record.

*/s/ Laurie G. Furshman*
Laurie G. Furshman (Bar No. 29604)
Lgfurshman@duanemorris.com
