IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| In the Matter of the Petition of | : | |
| | : | |
| GRACE OCEAN PRIVATE LIMITED, as Owner of the M/V DALI, | : | DOCKET NO: |
| | : | |
| | : | 1:24-cv-00941 |
| And | : | |
| | : | *IN ADMIRALTY* |
| SYNERGY MARINE PTE LTD, as Manager of the M/V DALI, | : | |
| | : | |

### MOTION FOR *IN CAMERA* REVIEW OF VDR AUDIO FILES IN THE POSSESSION OF THE NATIONAL TRANSPORTATION SAFETY BOARD PURSUANT TO 49 U.S.C §1154

Ace American Insurance Company ("Claimant Ace"), by and through its undersigned counsel, on behalf of all Claimants, and pursuant to 49 U.S.C §1154, respectfully moves this Court to conduct an *in camera* review of MV Dali's voyage data recorder's ("VDR") audio files that are currently in the exclusive possession of the National Transportation Safety Board ("NTSB"). Claimants contend that the audio files are necessary for a fair trial. To the extent the Court agrees they are necessary for a fair trial after its *in camera* review, Claimants respectfully request the Court to Order the NTSB to produce the audio files to the parties subject to the Case Management Order No. 5 – Amended Protective Order.

Counsel for Claimant Ace has consulted with counsel for Petitioners on this request and counsel for the Petitioners have advised that they take no position on this application to the Court for an *in camera* review of the audio files. Counsel for Claimant Ace has also consulted with the NTSB on this motion and the NTSB has advised it also takes no position on the motion.

### BACKGROUND OF RELEVANT FACTS

On March 26, 2024, the MV Dali ("the Dali") experienced two blackouts leading to an allision with the Francis Scott Key Bridge ("the Allision"). Subsequently, the NTSB and Claimants conducted parallel investigations. Claimants contend: (1) the first blackout occurred when the number 1 transformer circuit breaker tripped because of a loose wire on an undervoltage protection

device; and (2) the second blackout occurred because of a lack of fuel pressure to auxiliary generators 3 and 4. Claimants contend the second blackout occurred because the Dali was using a flushing pump, instead of the intended pumps, to supply fuel to auxiliary generators 3 and 4. The flushing pump does not restart automatically after a blackout. When the crew recovered from the first blackout by manually closing the No.1 transformer circuit breaker, the flushing pump did not restart. Within moments the second blackout occurred when the circuit breakers for auxiliary generators 3 and 4 tripped due to a lack of fuel pressure. After the second blackout, the Dali could not regain propulsion or steering. The Allision followed.

Claimants have learned that the day before the Allision (March 25, 2024), two blackouts also occurred while the Dali was at her berth. The March 25, 2024 blackouts provided the Dali with an eerie foreshadowing of what was to come. Claimants reasonably believe and contend that the second blackout on March 25, 2024 also occurred because the Dali was operating the flushing pump as a primary fuel supply. Critically important to the outcome of this Motion, and because of the NTSB's VDR transcript summaries, Claimants know that on March 25, 2024, conversations between crew members of the Dali about the blackouts occurred on the bridge and those conversations were recorded by the Dali's VDR system. For obvious reasons, those conversations are relevant to a fair trial in this matter. An Order compelling production of the VDR audio by the NTSB is necessary because the information is not available for any other source. This is particularly true given that the Petitioners do not have a copy of the VDR, the NTSB summaries are typically not admissible, and because of the subject matter of the pending Motion relating to crew deposition redactions.

As part of its investigation, NTSB collected and now has in its exclusive possession the Dali's VDR system. The VDR system captures all data and audio files from various electronic systems on the vessel. In response to prior requests from Claimants, the NTSB previously released data (as distinguished from the audio files) from the VDR system subject to a confidentiality agreement.[1] However, to date, the NTSB has not released either publicly or privately any of the

---

[1] At the request of the parties, the Court has issued several updated confidentiality orders. The most recent version is Case Management Order No. 5 – Amended Protective Order, which specifically addresses the handling of confidential materials produced by the NTSB.

2

audio files from VDR system. As discussed below, the audio files contain important factual information and are critical evidence that are needed by Claimants for a fair trial in this matter.

On April 16, 2025, the NTSB publicly released additional factual information from its investigation onto its public docket. The public release included the *Voyage Data Recoder – Audio Group Chairman's Factual Report* ("the Audio Factual Report"). A copy of the Audio Factual Report is attached as Exhibit A. The Audio Factual Report provided an overview of the VDR data collected by the NTSB and the methods used to extract the data. The NTSB initially collected 37 days of VDR data including audio files and then subsequently converted the 24 hours of audio files leading up to and including the Allision to usable WAV format. *See* Exhibit A at p. 10. In the Audio Factual Report, the NTSB included the following:

- A summary of the audio from 14:00 EDT March 25, 2024 to 00:00 on March 26, 2024. *See* Exhibit A at pp. 15-17. This is the time period on the day before the Allision where the Dali was still docked alongside the Seagirt Marine Terminal.

- A summary of the audio from 00:00 EDT March 26, 2024 to 01:02:40 EDT on March 26, 2024. *See* Exhibit A at pp. 17-20. This is the time period on the day of the Allision immediately preceding the Dal's departure and the initial moments of the voyage.

- A detailed "audio transcript" of the MV Dali's voyage from 01:02:40 EDT March 26, 2024 to 01:34:16 on March 26, 2024. *See* Exhibit A at pp. 23-72. This is the period during which the Allision occurred.[2]

- A summary of the audio from 01:34:15 on March 26, 2024 to 02:00:00 on March 26, 2024. *See* Exhibit A at pp. 73-74. This is the time period immediately following the Allision.

On May 29, 2025, Counsel for Claimant Ace sent a request to the NTSB for a complete copy of all VDR audio files in its possession. A copy of the letter request is attached as Exhibit B. On June 2, 2025, the NTSB denied the request citing a prohibition from "publicly releasing any part of the voice recorder recording under 49 U.S.C. §1114(d)". A copy of the NTSB's denial letter is attached as Exhibit C.

---

[2] The Allision occurred at approximately 01:29 EDT.

Therefore, it is apparent that the VDR files can only be obtained under 49 U.S.C §1154(a)(3) after an *in camera* review of the audio files for consideration of production of the audio files to the parties. The NTSB has also confirmed the following facts that are relevant to this motion:

(1) Other than the audio transcript found at pages 23-72 of the Audio Factual Report, it does not have any other transcripts of the audio; and

(2) The NTSB does not believe that the Petitioners have a copy of the full VDR audio.

## LEGAL AUTHORITY & ARGUMENT

The VDR audio recordings are discoverable under 49 U.S.C. §1154(a) provided certain conditions are met that ensure it will not be publicly disseminated in an inappropriate manner. *See McCoy v. Southwest Airlines Co, Inc.*, 208 F.R.D. 617 (C.D. Cal. 2002)(addressing the issue of the NTSB's production of cockpit recording from an airplane crash and finding recording was one of the few neutral pieces of evidence available to the plaintiffs).

49 U.S.C. §1154(a) provides in pertinent part:

**(1) Except as provided by this subsection, a party in a judicial proceeding may not use discovery to obtain—**

**(A) any still image that the National Transportation Safety Board has not made available to the public under section 1114(c) or 1114(d) of this title;**

**(B) any part of a cockpit or surface recorder transcript that the National Transportation Safety Board has not made available to the public under section 1114(c) or 1114(d) of this title; and**

**(C) A cockpit or surface vehicle recording.**

\* \* \* \* \* \* \* \* \* \* \* \*

**(3) Except as provided in paragraph (4)(A) of this subsection, a court may allow discovery by a party of a cockpit or surface vehicle recording including with regard to a video recording any still image that the National Safety Board has not made available to the public under section 1114(c) or 1114(d) of this title, if, after an in camera review of the recording, the court decides that-**

**(A) the parts of the transcript made available to the public under section 1114(c) or 1114(d) of this title and to the party through discovery under paragraph (2) of this subsection do not provide the party with sufficient information for the party to receive a fair trial; and**

4

      **(B) discovery of the cockpit or surface vehicle recorder recording, including with regards to a video recording any still image that the National transportation Safety Board has not made available to the public under section 1114(c) or 1114(d) of this title,  is necessary to provide the party with sufficient information for the party to receive a fair trial.**

  **(4)**

      **(A) When a court allows discovery in a judicial proceeding of a still image or part of a cockpit or surface vehicle recorder transcript not made available to the public under section 1114(c) or 1114(d) of this title or a cockpit or surface vehicle recording, the court shall issue a protective order-**

          **(i)    To limit the use of the still image, the part of the transcript, or the recording to the proceeding; and**

          **(ii)   To prohibit dissemination of the still image, the part of the transcript, or the recording to any person that does not need access to the still image, the part of the transcript or the recording for the proceeding.**

49 U.S.C. §1154(a).

In this instance, the NTSB has collected and converted to a usable format 24 hours of VDR audio from the Dali.  However, the NTSB has only publicly released a transcript of 31 minutes and 54 seconds of this audio.  The NTSB has publicly released a *summary* of an additional 11.5 hours of the audio recording, which includes the day before the Allision when the Dali was experiencing electrical issues while still docked.   However, the audio summary publicly released is only a brief summary and not a detailed transcript of the audio.

The blackouts that occurred on March 25, 2024 are relevant to this matter because Claimants contend that the second March 25, 2024 and March 26, 2024 blackouts occurred for the same exact reason, i.e., using a flushing pump for fuel oil instead of the designed and intended booster and supply pumps. Indeed, if proven to be true, Petitioners were given a "dry run" and clear warning of the possible consequences of using a flushing pump as a primary fuel oil pump.  What was discussed by the crew on the bridge of the Dali after the March 25, 2024 blackouts is relevant to what the crew and possibly management knew just hours before the fateful voyage.  This is critical evidence for the Claimants in establishing that the Dali was not seaworthy for purposes of the present Limitation

5

Action. Therefore the production of the full recordings is necessary for Claimants to receive a "fair trial" in the current action.

The NTSB is in exclusive possession of this critical information as it collected the DVR system from the Dali early on in its investigation. Accordingly, Claimants do not have any other way to get this information other than from the NTSB. The NTSB summary of the audio of this critical timeline publicly released by the NTSB is incomplete, may not be admissible and does not provide Claimants with full detail on the conversations that were recorded on the bridge of the Dali. Claimants should be entitled to have the full audio so that they can have their own transcription of the audio of this time period.

If the Court reviews the audio files and determines that their full release is necessary for the Claimants to have a fair trial in this matter, then the audio files can be produced to the parties subject to the existing Confidentiality Order, which specifically addresses confidential materials produced by the NTSB.

WHEREFORE, Claimants respectfully request that the Court:

1.) Order the NTSB to provide all VDR audio recording in its possession for an in camera review; and

2.) After the in-camera review, order the NTSB to produce the VDR audio recordings in its possession to Claimants subject to the Protective Order.

Respectfully Submitted,

COZEN O'CONNOR


By: */s/ Lawrence F. Walker*
   Lawrence F. Walker, Esq.  (31059)
   Daniel J. Luccaro, Esq. (31079)
   Robert Phelan, Esq. (31070)
   One Liberty Place
1650 Market St., Suite 2800
Philadelphia, PA 19103
(800) 523-2900
rphelan@cozen.com
lwalker@cozen.com
dluccaro@cozen.com
**Counsel for Claimant Ace American Insurance Company**

## CERTIFICATE OF ELECTRONIC FILING AND SERVICE

I certify that on this 24th day of June 2025, a copy of the foregoing motion was electronically filed using the court's CM/ECF system which provides notification of the filing to all counsel of record.

A copy of the motion was also sent via electronic mail to the National Transportation Safety Board.

By: <i>/s/ Lawrence F. Walker</i><br>
Lawrence F. Walker, Esq.