## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
## NORTHERN DIVISION

**In the Matter of the Petition**

**Of**

**GRACE OCEAN PRIVATE LIMITED,
as Owner of the M/V DALI,**

**And**

**SYNERGY MARINE PTE LTD, as
Manager of the M/V DALI,**

**for Exoneration from or Limitation of
Liability**

**Docket No. 24-cv-000941-JKB**

*IN ADMIRALTY*

## STIPULATED ORDER REGARDING DISCOVERY
## OF ELECTRONICALLY STORED INFORMATION

Petitioners and certain Claimants (individually, a "Party," and collectively, the "Parties")[1] in the above-captioned action, by and through their undersigned counsel, hereby stipulate and agree to this Protocol Regarding Discovery of Electronically Stored Information (the "Stipulated Order" or "ESI Protocol").

### 1.    PURPOSE AND SCOPE

This Stipulated Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, the District of Maryland's Local Rules, and any other applicable orders and rules. Except as expressly

---

[1] The Cargo Claimants, while not currently signatories, have not asserted an objection to the Stipulated Order.

provided, nothing herein shall alter the Parties' respective rights or obligations under the Federal Rules of Civil Procedure. Nothing in this Stipulated Order establishes any agreement regarding the subject matter or scope of discovery in this action, or the relevance or admissibility of any ESI or other document or thing. Except as provided expressly herein, the parties do not waive any objections as to the production, discoverability, authenticity, admissibility, or confidentiality of documents and ESI. Nothing in this Stipulated Order shall be interpreted to require disclosure of irrelevant information or ESI protected from discovery by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity.

## 2.    COOPERATION

The Parties commit to cooperate in good faith throughout the matter. No Party may seek relief from the Court concerning compliance with the Stipulated Order unless it has conferred in good faith with the affected Parties.

## 3.    DEFINITIONS

"Documents" is defined to be synonymous in meaning and equal in scope to the usage of the term in Rule 34(a) of the Federal Rules of Civil Procedure and includes ESI existing in any medium from which information can be translated into a reasonably usable form, including but not limited to any writing, book, record, or other item conveying information, whether maintained on paper, electronically, or any other material; any communication, including all email messages, electronic calendars, electronic calendar invitations, text messages, messages sent through messaging platforms, voice recordings, voicemail or audio messages, social media posts or communications, and handwritten or

mailed correspondence, including all records or documents in custodial files; any and all drafts of records or documents; any photograph, whether maintained on paper, film, or digitally; and any other material having on it representations of thoughts conveyed by letters, symbols, drawings, or other marks. "Document," as used herein, shall be construed expansively to include all possible forms. The term "Document(s)" shall include Hard Copy Documents, Electronic Documents, and Electronically Stored Information (ESI) as defined herein.

"Named Custodians" means the individual custodians to be identified by the Parties for whom discoverable Documents are most likely to exist.

"Electronically Stored Information" or "ESI," as used herein, means information that is stored electronically as files, documents, or other data on computers, servers, mobile devices, online repositories, disks, USB drives, tape or other real or virtualized devices or digital media.

"Load File" means an electronic file containing information identifying a set of paper-scanned images and/or processed ESI and indicating where individual pages or files belong together as Documents, including attachments, and where each Document begins and ends. A Load File will also contain certain data relevant to the individual Documents, including, where reasonable and possible, extracted and user created Metadata, coded data, and OCR or Extracted Text, as specified herein and in Attachment A.

"Metadata" means information about information or data about data, and includes without limitation (1) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and

(2) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted or otherwise manipulated by a user of such system. Except as otherwise provided herein, this Stipulated Order does not create a duty on a Party to create Metadata that is not kept in the ordinary course (excluding production-related Metadata, such as Bates numbers) and reasonably captured and produced.

"Native File" means ESI in the file type for (or of) the application in which such ESI is normally created, viewed and/or modified.

"OCR" means the optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based Documents and making such Documents searchable using appropriate software.

### 4. THE COLLECTION AND CULLING OF ESI:

### A. Named Custodians, Non-Custodial ESI, and ESI Search Methodology

In the attached Attachment B, Petitioners identify the named Custodians and centralized data sources (i.e., non-custodial ESI) from which Petitioners are collecting ESI for production in the Action.

In the attached Attachment C, Claimants identify the named Custodians and centralized data sources (i.e., non-custodial ESI) from which they are collecting ESI for production in the Action.

Should any Party dispute the selection of named Custodians, the Parties will work in good faith to identify, discuss, agree upon and revise, if necessary, the named Custodians and sources of non-custodial ESI to avoid an unduly burdensome production or retrieving

a large quantity of non-responsive ESI. In addition, the Parties will work in good faith to agree on the use of reasonable search terms, file types, and date ranges, along with any other relevant search parameters from any source that is disputed per the above.

A document that is captured by application of any agreed-upon search terms, or otherwise, does not mean that such document is necessarily responsive to any propounded discovery request or is otherwise relevant to this litigation or any required disclosure. The fact that a document may have been retrieved by application of agreed upon search terms, or otherwise, shall not prevent any Party from withholding from production such document for lack of responsiveness or privilege, if applicable.

### B.  Collection of ESI

Each Party shall make a reasonable and diligent effort to search for and collect reasonably accessible and responsive (1) Custodial Documents from named Custodians and (2) ESI from the agreed-to sources of non-custodial ESI.

### C.  Other Methods to Streamline Culling of ESI

Documents may be de-duplicated globally (i.e. across multiple custodians) provided that the producing Party identifies the additional custodians in the CustodiansAll field specified in Attachment A. Duplicates shall be identified by industry standard hash values or other comparable automated process only. Any other methodology for identification of duplicates must be discussed with the receiving Party and approved before implementation.

A.  To reduce the volume of entirely duplicative content within email threads, the Parties may, but are not required to, use email threading. A party may use industry standard message threading technology to remove email messages where the content of

those messages, and any attachments, are wholly contained within a later email message in the thread (also referred to as "inclusive" email messages).

The Parties may not use e-mail thread suppression where any part of the thread is withheld or redacted on the basis of attorney-client privilege, attorney work product, or any similar basis for withholding or redacting Documents or ESI.

## 5.    PRODUCTION FORMATS

The Parties shall produce Documents and ESI in reasonably usable form. Except as otherwise provided herein (*e.g.*, Section 7 regarding Native Files), or as agreed hereafter by the Parties, such reasonably usable form shall be the single-page TIFF-image format with extracted text (or OCR text if, and only if, extracted text is unavailable) and the associated Metadata set out in Attachment A (to the extent available and reasonable to collect and produce). If particular Documents warrant a different format, the Parties will cooperate to arrange for the mutually-acceptable production of such Documents.

### A.    Production Media

The production media for Document productions shall be by secure FTP link provided via email or another format and mode of transport mutually agreeable to the Parties. Each item of production media shall be labelled in a consistent and logical manner to inform the receiving Party of its contents.

### B.    TIFFs

All production images will be provided as black and white single page Group IV TIFFs of at least 300 dpi resolution (except for documents requiring a different resolution or page size); for production of color images, *see* Section 5.G. Each image will use the

Bates number of the first page of the Document as its unique file name. Original Document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Hidden content, tracked changes or edits, comments, notes, and other similar information viewable within the Native File shall also be imaged so that this information is captured on the produced image file. The TIFF files shall be grouped into folders; there shall not be a separate folder created for each document.

### C.    Text Files

Each Document or ESI item produced under this Stipulated Order shall be accompanied by a text file.  All text files shall be provided as a single Document level text file for each item, not one text file per page. Each text file shall be named using the Bates number of the first page of the corresponding production item. The full path of the text file must be provided in the Load File.  Text files themselves should not be delivered in the Load File.

Where feasible, all Documents and ESI will be accompanied by extracted text, rather than OCR. Paper or other non-ESI Documents may be accompanied by an OCR file if extracted text is unavailable. The Parties will endeavor to generate accurate OCR and will utilize quality OCR processes and technology. OCR text files should indicate page breaks where possible. Emails and other ESI will be accompanied by extracted text taken from the ESI item itself. The Parties agree not to degrade the searchability of text extracted from ESI or produced via OCR.

To the extent that a Document or ESI is redacted, the text file should not contain the text of the redacted portions.

### D.    Bates Numbering

All images must be assigned a Bates number that must always: (1) be unique across the entire production; (2) maintain a constant length (0-padded) across the entire production; (3) contain no special characters or embedded spaces; and (4) be sequential within a given Document. Bates numbers should be a combination of an alpha prefix along with a number (*e.g.*, ABC00000001). The number of digits in the numeric portion of the Bates number format should not change in subsequent productions.

Bates numbers should generally be assigned sequentially as Documents are processed. If a Bates number or set of Bates numbers is skipped in a production, the producing Party will so note in a cover letter or production log accompanying the production.

The producing Party will brand each TIFF image in the lower right-hand corner with its corresponding Bates number, using a consistent font type and size. The Parties must use best efforts to apply Bates numbers so as not to obscure any part of the underlying image. If the placement in the lower right-hand corner will result in obscuring the underlying image, the Bates number should be placed as near to that position as possible while using best efforts to preserve the underlying image.

### E.    Parent-Child Relationships

Parent-child relationships between Documents that have been maintained in the ordinary course of business should be preserved. For example, if a Party is producing an e-mail with its attachments, the attachments should be processed in order behind the e-mail, except attachments withheld on privilege grounds, which will be indicated on the

associated privilege log and the withheld attachment will be replaced with a slip sheet stating "Document withheld for privilege."

### F.    Load Files

All production items will be provided with a Load File.  Acceptable formats for the Image Load File are .opt and .dat (Opticon cross reference file and Concordance load file). Acceptable formats for metadata load files are concordance delimited .dat.  The Load File must reference each file (whether in TIFF or Native File format) in the corresponding production. Metadata for a given Metadata field shall be produced with uniform formatting across different Documents and productions to the extent practicable.

Load File names should contain the volume name of the production media. Additional descriptive information may be provided after the volume name. For example, both ABC001.dat or ABCOOl_metadata.dat would be acceptable.

### G.    Color

Documents or ESI containing color need not be produced initially in color. However, if an original Document or ESI item contains color markings or highlighting and it is necessary to see those markings or highlighting in their original color to understand the meaning or content of the Document, then the receiving Party may, in good faith, request that the Document or ESI item be produced in its original colors. The Parties reserve the right to request these files in an alternative format (either in color TIFF or .jpg format), though there is no presumed requirement for a Party to produce "color for color" across all of its delivered documents.

### H.    Confidentiality Designations

If a particular Document or ESI item qualifies for confidential treatment pursuant to the terms of the protective order entered by the Court in this litigation, or has been redacted in accordance with applicable law or Court order, the appropriate confidentiality designation shall be shown both on the face of all TIFFs pertaining to such item/Document, and in the appropriate data field in the Load File.

### 6.    PRODUCTION OF PAPER DOCUMENTS

The Parties agree that responsive paper (or other non-ESI) Documents will be scanned and produced electronically rather than in paper format. The form of production for scanned Documents shall be: (1) TIFF images, consistent with the specifications in Section 5.B; (2) the appropriate Load Files consistent with the specifications below; and (3) searchable OCR text of scanned Documents created by the producing Party, consistent with the specifications in Section 5.C.

The following information (as further described in Attachment A) shall be produced in the Load File accompanying production of all paper (or other non-ESI) Documents: (1) BegBates, (2) EndBates, (3) BegAttach, (4) EndAttach, (5) Custodian.

### 7.    PRODUCTION OF ESI

### A.    Metadata Fields and Processing

Attachment A sets forth the minimum Metadata fields that must be produced, but only to the extent that Metadata exists and can be reasonably retrieved. Except as otherwise set forth below, to the extent that Metadata does not exist, is not reasonably accessible or

available, or would be unduly burdensome to collect, nothing in this Stipulated Order shall require any Party to extract, capture, collect, or produce such data.

The Parties are not obligated to manually populate any of the fields in Attachment A for an ESI item if such fields cannot be extracted from the ESI item using an automated process, with the exception of the following fields: (1) BegBates, (2) EndBates, (3) BegAttach, (4) EndAttach, (5) Custodian. These fields should be populated regardless of whether the fields can be populated pursuant to an automated process.

The Parties will use reasonable efforts and standard industry practices to address and resolve exception issues for items that present processing, imaging or form of production problems (including encrypted, corrupt and/or protected files identified during the processing of ESI). The Parties will meet and confer regarding procedures that will be used to identify, access, and process and resolve exception issues.

For archive files (zip, jar, rar, gzip, TAR, etc.), all contents should be extracted from the archive with source pathing and family relationships preserved and produced. The fully unpacked archive container file does not need to be included in the production.

**B.    Production of Native File Items**

The following items of ESI shall be produced in Native File format: spreadsheet-application files (*e.g.*, MS Excel, Tab Separated Value (.tsv), Comma Separated Value (.csv)), personal databases (*e.g.*, MS Access), multimedia audio/visual files such as voice and video recordings (*e.g.*, .wav, .mpeg, and .avi) and presentation files and/or presentation application files (*e.g.*, MS PowerPoint), with any speaker notes and any other similar text

produced with the presentation slides, unless redactions are made. For responsive database data, please such data should be produced in a flat file, delimited ASCII format file. The first line of the file should show the column headers for each filed of data included. The producing Party should identify the delimiters used between fields, between entries within a field, and for the end of record marker.

In addition to producing the above file types in Native File format, the producing Party shall produce a single-page TIFF slip sheet indicating that a Native File item was produced and providing the file name of the natively produced document, as well as any confidentiality designation. The corresponding Load File shall include the NativePath data field for each Native File that is produced. Any electronic file produced in Native File format shall be given a file name consisting of a unique Bates number, for example, "ABC00000002.XLS."

Through the pendency of this case, the producing and receiving Party shall exercise reasonable, good faith efforts to maintain all discoverable and/or preserved Native Files in a manner that does not materially alter or modify the files or their Metadata.

### C.    Requests for Other Native Files

If good cause exists – i.e. to decipher the meaning, context, or content of a document produced in TIFF – for the receiving Party to request production of a certain Document in native format, the receiving Party may request production in native format by providing a list of the Bates numbers of Documents it requests to be produced in native format. The producing Party will make reasonable, good-faith efforts to respond to reasonable requests made in good faith for production of such Documents in native format.

**D.    Redaction**

The Parties agree that where Documents or ESI need to be redacted, they shall be produced in TIFF with each redaction clearly indicated.  For any redacted Document or ESI, any unaffected Metadata fields specified in Attachment A shall be provided, subject to the conditions set forth in Section 7.A. "Metadata Fields and Processing."

If the items redacted and partially withheld from production are Excel-type spreadsheets, and the Native Files are withheld, the entire ESI item must be produced in TIFF format, including all unprivileged pages, hidden fields and other information that does not print when opened as last saved by the custodian or end-user. For Excel-type spreadsheets, this shall include, but is not limited to, hidden rows, columns, and worksheets, as well as all cell values, annotations and notes.  The producing Party shall also make reasonable efforts to ensure that any spreadsheets produced only as TIFF images are formatted so as to be legible.  For example, column widths should be formatted so that the numbers in the column will display rather than "##########."

ESI that does not render well (e.g., spreadsheets) or cannot be rendered in image format (e.g., audio or video files) may be redacted and produced in native format.

If the items redacted and partially withheld from production are audio/visual files, the producing Party shall provide the unredacted portions of the content. The Parties shall meet and confer regarding the appropriate form for production of any types of ESI not specifically addressed herein.

### E.    Technical Exceptions

The Parties will use reasonable efforts and standard industry practices to address and resolve exception issues for items that present processing, imaging or form of production problems (including encrypted, corrupt and/or protected files identified during the processing of ESI). The Parties will meet and confer regarding procedures that will be used to identify, access, and process and resolve exception issues.

### F.    Not Reasonably Accessible and Unusable ESI

If a producing Party asserts that certain ESI is not reasonably accessible due to undue cost or burden or otherwise unnecessary under the circumstances, or if the receiving Party asserts that, following production, certain ESI is not reasonably usable, the Parties shall meet and confer before presenting the issue to the Court for resolution.

### G.    Irretrievable ESI

If a Party believes that responsive, unique ESI no longer exists in its original format, or is no longer retrievable, the Parties shall meet and confer to attempt to resolve the issue expeditiously.

### H.    Compressed Files

Compression file types (i.e., .CAB, .GZ, .TAR, .Z, .ZIP) shall be decompressed in a reiterative manner resulting in individual folders and/or files in the lowest possible compression, for example to ensure that a zip within a zip is fully decompressed into individual non-zip files.  Once decompressed into individual non-container files, the compressed container file does not need to be produced. Compressed items should be treated as compressed folders and not as compressed items.

## 8.    DOCUMENTS PROTECTED FROM DISCOVERY

### A.    No Waiver of Privilege or Protection

The production of improperly marked confidential, privileged or work-product protected ESI, whether inadvertent or otherwise, is not a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding. This provision shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d). Accordingly, in assessing the validity of any claim of privilege or protection, the Court shall not consider the provisions of Federal Rule of Evidence 502(b)(2).

### B.    Clawback Procedures

Within a reasonable time after discovering that it inadvertently produced privileged or work product protected documents or ESI ("Inadvertently Produced Material"), the producing party shall send a written request to the receiving party requesting return of such Inadvertently Produced Material.

Within five (5) business days after receipt of a producing party's written request, the receiving party shall: (i) immediately return, delete or destroy such Inadvertently Produced Material – as well as any portions of work product that reflect or are derived from such Inadvertently Produced Material - and copies thereof; (ii) not make any use of such Inadvertently Produced Material or work product; and (iii) upon request by the producing party, confirm in writing that it has returned, deleted, or destroyed all such Inadvertently Produced Material and any copies thereof. Absent a Court order, the

receiving party shall not thereafter use such Inadvertently Produced Material for any purpose.

In the event that the producing party asserts privilege as to only a portion of an inadvertently produced document or item, the receiving party shall not thereafter use the Privileged Material in the redacted document or item for any purposes.

If a receiving party knows that it has received privileged or work product protected documents, it shall: (i) sequester such documents; (ii) refrain from using such documents or any portions of work product that reflect or are derived from such documents; and (iii) within five (5) business days, notify the producing party of the existence of such documents in order to permit the producing party to take the protective measures set forth above.

Nothing herein shall limit a receiving party's right to challenge a producing party's assertion that documents are protected from disclosure by a privilege, protection or immunity.

## 9.  PRIVILEGE LOG

For any responsive Document withheld in its entirety or produced but redacted, the Producing Party shall supply a log of the documents withheld or redacted under a claim of privilege and/or work product with sufficient information to allow the Receiving Party to understand the basis for the claim. Communications involving trial counsel that post-date the filing of the complaint need not be placed on a privilege log.  The privilege log will contain the following populated fields:

Document Identifier (e.g., Beg Bates Number [if redacted] or Control Number [if withheld])
Group Identifier
End Bates Number
Date/Time
Custodian
From
To
CC
Redacted/Withheld
Privilege Asserted
Privilege Description

The Parties agree to meet and confer in good faith over the deadline for production of privilege logs after they have ascertained the volume of potentially responsive information.

## 10.    COST OF DOCUMENT PRODUCTION

Unless the Court orders otherwise, each Party shall bear the costs of preserving, collecting, processing, reviewing, and producing its own documents and ESI, provided, however, that a producing Party may move the Court for cost shifting for requests for ESI that is unduly burdensome as to cost, and/or not reasonably accessible. Prior to incurring expenses associated with obtaining ESI that is not reasonably accessible, or moving the Court for cost shifting for requests for ESI that unduly burdensome as to cost and/or is not reasonably accessible, the Parties shall meet and confer in an attempt to resolve the issue in a cost-effective manner.

## 11.    MEET AND CONFER

The Parties agree to work together to resolve any ESI discovery conflict before filing any type of discovery related motion. The Parties must make genuine efforts to meet

and confer prior to filing a motion to compel even if there is no requirement to do so otherwise. The agreement to meet and confer includes on any issues relating to this Stipulated Order or the modification thereof.

### 12.    CONSTRUCTION

This Stipulated Order should be construed in light of any protective order previously issued by the Court in this Action and any future confidentiality order agreed to by the Parties. Ordinary construction principles will apply such that the ESI protocol and protective order(s) should be read together as harmonious documents. If a conflict exists between the ESI protocol and the protective order, then the ESI protocol will govern.

### 13.    MODIFICATION

This Stipulated Order may be modified by stipulation of the parties or by Court Order for good cause shown.

**IT IS SO STIPULATED,** through Counsel of Record.

ANTHONY G. BROWN
Attorney General of Maryland

Robert A. Scott (24613)
Howard R. Feldman (05991)
Assistant Attorneys General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
rscott@oag.state.md.us
T: (410)576-63214

and

*/s/ Melissa E. Byroade*
Melissa E. Byroade (31335)
KELLEY DRYE & WARREN LLP
Washington Harbour, Suite 400
3050 K Street, NW
Washington, DC 20007
mbyroade@kelleydrye.com
(202) 342-8400

Margaret Fonshell Ward (04586)
DOWNS WARD BENDER HERZOG
& KINTIGH, P.A.
1350 McCormick Road
Executive Plaza 3, Suite 400
Hunt Valley, Maryland 21031
mward@downs-ward.com
(410) 584-2800

R. Keith Jarrett, T.A. *
David L. Reisman, T.A. (La. Bar # 21833)*
Raymond T. Waid*
Elizabeth B. McIntosh*
Jessie E. Shifalo*
Elizabeth A. Strunk*
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
T: (504) 581-7979
dreisman@liskow.com
rkjarrett@liskow.com
rwaid@liskow.com
ebmcintosh@liskow.com
jshifalo@liskow.com
eastrunk@liskow.com

Scott S. Partridge*
PARTRIDGE LLC
231 Glendale Drive
Metairie, Louisiana 70001
scott@partridgellc.com
(314) 952-4132

William J. Jackson*
Andrew W. Homer*
KELLEY DRYE & WARREN LLP
515 Post Oak Blvd, Suite 900
Houston, Texas 77027
bjackson@kelleydrye.com
mbyroade@kelleydrye.com
ahomer@kelleydrye.com
(713) 355-5000

Mark Lanier*
The Lanier Law Firm
10940 W. Sam Houston Pkwy N
Suite 100
Houston, TX 77064
mark.lanier@lanierlawfirm.com
T: (713) 659-5200
***Assistant Counsel to Claimants***
*Admitted Pro Hac Vice*

*/s/ Daniel O. Rose*
Daniel O. Rose
Kreindler & Kreindler LLP
485 Lexington Avenue
Ste 28th Floor
New York, NY 10017
drose@kreindler.com
Telephone: (212) 973-3414
***Lead Counsel for Personal Injury and***
***Wrongful Death Claimants***

*/s/ Robert W. Phelan*
Robert W. Phelan
Cozen O Connor
3 WTC, 175 Greenwich Street
55th Floor
New York, NY 10007
rphelan@cozen.com
Telephone: (212) 908-1274
Facsimile: (866) 850-7490
***Lead Counsel for Property Damage Claimants***

*/s/ Adam J. Levitt*
Adam J. Levitt
DiCello Levitt Gutzler LLC
Ten North Dearborn Street
Ste Sixth Floor
Chicago, IL 60602
alevitt@dicellolevitt.com
Telephone: (312) 214-7900
**Lead Counsel for Local Government Claimants**

*/s/ Todd D. Lochner*
Todd D. Lochner
Lochner Law Firm, P.C.
7076 Bembe Beach Rd; Suite 201
Mailbox 6
Annapolis, MD 21403
tlochner@lochnerlawfirm.com
Telephone: (443) 716-4400
**Lead Counsel for Private Economic Loss Claimants**

BLANK ROME LLP

*/s/ Thomas H. Belknap*
William R. Bennett, III*
William.Bennett@blankrome.com
Thomas H. Belknap, Jr.*
Thomas.Belknap@blankrome.com
Noe S. Hamra*
Noe.Hamra@blankrome.com
Neil P. McMillan*
Neil.McMillan@blankrome.com
1271 Avenue of the Americas
New York, NY 10020
212-885-5000

Luke M. Reid (Bar No. 31228)
Luke.Reid@blankrome.com
125 High Street, 3rd Floor
Boston, MA 02110
617-415-1200

Kierstan L. Carlson*
Kierstan.Carlson@blankrome.com
Emma C. Jones*
Emma.Jones@blankrome.com
1825 Eye St. NW
Washington, DC 20006
202-420-2200

DUANE MORRIS LLP
Laurie G. Furshman (Bar No. 29604)
Lgfurshman@duanemorris.com
Robert B. Hopkins (Bar No. 06017)
Rbhopkins@duanemorris.com
1201 Wills Street, Suite 330
Baltimore, MD 21321
(410) 949-2900
***Attorneys for Petitioners***
   *Admitted Pro Hac Vice*

**PURSUANT TO STIPULATION, IT IS SO ORDERED**.

Dated: _July 7_____, 2025

Timothy J. Sullivan
United States Magistrate Judge

**Attachment A: Metadata Coding Fields**

The Metadata fields described below shall be populated for the indicated types of documents, in accordance with terms of the foregoing Order.

"Email" means any email message.

"Edoc" means any item of ESI other than Email.

"All" means Email, Edocs, and scanned hard copy documents.

| Field Name | Description |
|---|---|
| Beg Bates | The bates label of the first page of the document. |
| End Bates | The bates label of the last page of the document. |
| Beg_Attach | The bates label of the first page of a family of documents (*e.g.,* email and attachment). |
| End Attach | The bates label of the last page of a family of documents. |
| Custodian | The custodian in whose file the document was found. |
| Time Zone | The time zone used to process the document. |
| Sent Date | For email, the sent date of the message. |
| Sent Time | For email, the sent time of the message. |
| Create Date | Fore-files or attachments, the document's creation date or operating system creation date. |
| Create Time | Fore-files or attachments, the document's creation time or operating system creation time. |
| Modified Date | Fore-files or attachments, the document's last modified date or operating system last modified date. |
| Modified Time | Fore-files or attachments, the document's last modified time or operation system last modified time. |

| Subject | The subject of an email or the filename of an attachment or standalone e-file. |
|---|---|
| File Name | The original file name of the native document. |
| Author | The author of a stand-alone e-file or attachment. |
| From | The sender of an email message. |
| To | The recipient(s) of an email message, in a semi-colon delimited multi-value list. |
| cc | The copyee(s) of an email message, in a semi-colon delimited multi-value list. |
| BCC | The blind copyee(s) of an email message, in a semi-colon delimited multi-value list. |
| MD5 Hash | |
| Redacted | Indicate whether a document is redacted. |
| Confidentiality | Confidentiality Designation |
| TextLink | |
| NativeLink | |

**Attachment B: Petitioners' Named Custodians and Sources of Non-Custodial ESI**

**[To be completed by Petitioners]**

**Attachment C: Claimants' Named Custodians and Sources of Non-Custodial ESI**

**[To be completed by Claimants]**