### UNITED STATES DISTRICT COURT
### DISTRICT OF MARYLAND
### NORTHERN DIVISION

| | |
|---|---|
| **In the Matter of the Petition**<br><br>**Of**<br><br>**GRACE OCEAN PRIVATE LIMITED, as Owner of the M/V DALI,**<br><br>**And**<br><br>**SYNERGY MARINE PTE LTD, as Manager of the M/V DALI,**<br><br>**for Exoneration from or Limitation of Liability** | **Docket No. JKB 24-cv-941**<br><br>_**IN ADMIRALTY**_<br><br>**Request for International Judicial Assistance Pursuant to Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters** |

### LETTER OF REQUEST

_Request for International Judicial Assistance_

_Pursuant to the Hague Convention of 18 March 1970 on_

_the Taking of Evidence in Civil or Commercial Matters_

By the United States District Court,

District of Maryland

Hon. James K. Bredar

**TO THE DIRECTOR OF INTERNATIONAL AFFAIRS, NATIONAL COURT ADMINISTRATION OF THE REPUBLIC OF KOREA:**

The District of Maryland presents its compliments to the appropriate judicial authority of the National Court Administration of the Republic of Korea and requests international judicial assistance to obtain a Deposition by Written Question of HD Hyundai Heavy Industries Co., Ltd. concerning the design, construction, equipment, inspection, and maintenance of the M/V DALI.

This Court requests the assistance described herein pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, as adopted and implemented in the United States of America at 28 U.S.C. § 1781, and in the Republic of Korea by the Act on International Judicial Mutual Assistance in Civil Matters. The District of Maryland is a competent court of law and equity which properly has jurisdiction over this proceeding and has the power to compel the attendance of witnesses and production of documents both within and outside its jurisdiction.

1

The Deposition by Written Question of HD Hyundai Heavy Industries Co., Ltd. concerning the design, construction, equipment, inspection, and maintenance of the M/V DALI is intended for use in *In the Matter of the Petition of GRACE OCEAN PRIVATE LIMITED, as Owner of the M/V DALI, and SYNERGY MARINE PTE LTD, as Manager of the M/V DALI, for Exoneration from or Limitation of Liability*, Docket No. JKB 24-cv-941, and in the view of this Court will be highly relevant to the claims against the Petitioners related to the M/V DALI's management and operation.

This request is made with the understanding that it will in no way require any persons to commit any offense, or to undergo a broader form of inquiry than they would if the litigation were conducted in Republic of Korea.  In the proper exercise of its authority, this Court has determined that a Deposition by Written Question of HD Hyundai Heavy Industries Co., Ltd. concerning the design, construction, equipment, inspection, and maintenance of the M/V DALI should be secured with the intervention of the National Court Administration of the Republic of Korea.

## 1. Senders

Hon. James K. Bredar
District Judge
United States District Court, District of Maryland
101 West Lombard Street
Chambers 5A
Baltimore, MD 21201
United States of America

## 2. Central Authority of the Requested State

National Court Administration
Attn: Director of International Affairs
Seocho-daero 219
Seocho-gu
SEOUL 06590
Republic of Korea

## 3. Person to whom the executed request is to be returned

Margaret Fonshell Ward
Downs Ward Bender Herzog & Kintigh, P.A.
Executive Plaza III, Suite 400
11350 McCormick Road
Hunt Valley, Maryland 21031
United States of America
Telephone: +1 443 589 3313
Email: MWard@downs-ward.com

**4. Specification of the date by which the requesting authority requires receipt of the response to the Letter of Request**

29 August 2025

**5. IN CONFORMITY WITH ARTICLE 3 OF THE CONVENTION, THE UNDERSIGNED APPLICANT HAS THE HONOR TO SUBMIT THE FOLLOWING REQUEST:**

**a. Requesting judicial authority (article 3(a))**

United States District Court
District of Maryland
101 West Lombard Street
Baltimore, MD 21201
United States of America

**b. To the competent authority of (article 3(a))**

National Court Administration
Attn: Director of International Affairs
Seocho-daero 219
Seocho-gu
SEOUL 06590
Republic of Korea

**c. Name of case and identifying number**

*In the Matter of the Petition of GRACE OCEAN PRIVATE LIMITED, as Owner of the M/V DALI, and SYNERGY MARINE PTE LTD, as Manager of the M/V DALI, for Exoneration from or Limitation of Liability*, Docket No. JKB 24-cv-941, United States District Court, District of Maryland

**6. Names and addresses of the parties and their representatives (including representatives in the requesting state) (article 3(b))**

**a. Petitioners**

Grace Ocean Private Limited
6 Shenton Way
#35-01 OUE Downtown Singapore, 068809
Singapore

**Representatives**
Blank Rome LLP

3

William Bennett
1271 Avenue of the Americas
New York, NY 10020
Telephone: +1 212 885 5152
Email: william.bennett@blankrome.com

AND

Synergy Marine Pte Ltd
1 Kim Seng Promenade
#10-11/12 Great World City West Tower, Singapore, 237994
Singapore

**Representatives**
Blank Rome LLP
William Bennett
1271 Avenue of the Americas
New York, NY 10020
Telephone: +1 212 885 5152
Email: william.bennett@blankrome.com

**b. Claimants**

The State of Maryland
Office of the Attorney General
200 St. Paul Place
Baltimore, MD 21202

**Representatives**
Liskow & Lewis, APLC
David L. Reisman
701 Poydras Street
Suite 5000
New Orleans, LA 70139
United States of America
Telephone: +1 504 556 4016
Email: DReisman@liskow.com

AND

Downs Ward Bender Herzog & Kintigh, P.A.
Margaret Fonshell Ward
Executive Plaza III, Suite 400
11350 McCormick Road
Hunt Valley, Maryland 21031
United States of America

Telephone: +1 443 589 3313
Email: MWard@downs-ward.com

**c. Additional Claimants**

1. Fornazor International, Inc
2. Hussain Ali Saeed AlDosariy
3. Timothy Mark Wilson (pro se)
4. Zim Integrated Shipping Services, LTD
5. MSC Mediterranean Shipping Company S.A.
6. NAJ Logistics Express, Inc. and Nejoum Al Jazeera Used Cars LLC
7. Wisconsin Spice, Inc.
8. JLJ International Holdings, LLC and Atlantic Specialty Insurance Company
9. ALTS USA, LLC and Atlantic Specialty Insurance Company
10. Skyline International Corporation and Atlantic Specialty Insurance Company
11. Mukesh Desai on behalf R.M Metals, a Division of R.M. Creations
12. Liberty Mutual Insurance Co
13. New York Marine and General Insurance Company and Certain Underwriters at Lloyd's of London, Axis Syndicate 1686
14. MSC Mediterranean Shipping Company S.A. and MSC Mediterranean Shipping Company Holding S.A.
15. Underwood Energy, Inc.
16. R.E. West, Inc.
17. R. Marine Motor Yacht Sales PTY LTD.
18. Captain C. Logistics LLC
19. International Trading Solutions, Inc
20. Penn Manufacturing Industries LLC
21. PMI ENG Exports Private TLD
22. PMI Global Technologies PVT LTD
23. Navision Shipping DK A/S
24. Consol Energy Inc.
25. Star Bulk (Singapore) PTE. LTD's
26. American Sugar Refining, Inc. and Florida Sugar & Molasses Exchange, Inc.
27. PMI ENG Exports Private TLD
28. PMI Global Technologies PVT LTD
29. Gerald Barney
30. Thomas Crawley
31. Ryan Hale
32. Tulani Hasan
33. Donny Jackson
34. Alonzo Key
35. Charles Peacock
36. Douglas Ramos
37. American Publishing, LLC
38. Karen Austin
39. Charles Austin, Jr.

40. Markel Syndicate Management Limited
41. Mayor and City Council of Baltimore
42. Baltimore County
43. Damon Davis
44. Julio Cervantes Suarez and Marisel Hernandez Salgado
45. Ace American Insurance Company
46. Brawner Builders
47. State Farm Insurance Companies
48. Baltimore Gas and Electric Company
49. Zurich American Insurance Co
50. Estate of Carlos Daniel Hernandez Estrella
51. Estate of Alejandro Hernandez Fuente
52. Estate of Miguel Angel Luna
53. Estate of Dorlian Ronial Castillo Cabrera
54. Estate of Maynor Suazo Sandoval
55. Estate of Jose Mynor Lopez

**7.**
**a. Nature of the action (article 3(c))**

Shipowner's Limitation of Liability action filed by the owners and managers of the M/V DALI for claims arising from the vessel's allision with and destruction of the Francis Scott Key Bridge in Baltimore, Maryland, on March 26, 2024.

**b. Summary of complaint**

Following the allision of the M/V DALI with the Francis Scott Key Bridge in Baltimore, Maryland on 26 March 2024, the vessel's owners and managers filed this Limitation of Liability action, asserting that they should be entitled to limit their liability to the post-casualty value of the M/V DALI.

**c. Summary of defenses and counterclaims**

The State of Maryland along with several other claimants have brought claims in the concursus established by the Limitation of Liability action. The State of Maryland and other claimants also assert that because the negligence and unseaworthy conditions that brought about the allision were within the privity and knowledge of the M/V DALI's owners and managers, neither claimant should be entitled to limit its liability.

**8.**
**a. Evidence to be obtained or other judicial act to be performed (article 3(d))**

Not Applicable

**b. Purpose of the evidence or judicial act sought**

The requested evidence from the time of vessel construction through the present, which evidence is only in the possession of HD Hyundai Heavy Industries Co., Ltd.  Such evidence is material to the question whether the owners and managers of the M/V DALI are entitled to limit their liability as a result of the allision with and destruction of the Francis Scott Key Bridge.

**9. Identity and address of any person to be examined (article 3(e))**

HD Hyundai Heavy Industries Co., Ltd.
1000, Bangeojinsunhwan-doro, Dong-gu
Ulsan, 44032
South Korea

**10. Questions to be put to the persons to be examined or statement of the subject matter about which they are to be examined (article 3(f))**

The deposition will be conducted pursuant to the written questions attached hereto as Exhibit A, and as supplemented by other litigants.

**11. Documents or other property to be inspected (article 3(g))**

Not Applicable

**12. Any requirement that the evidence be given on oath or affirmation and any special form to be used (article 3(h))**

Deposition by Written Question is to be given under oath and transcribed by a certified court reporter.

**13. Special methods or procedure to be followed (articles 3(i) and 9)**

Not Applicable

**14. Request for notification of the time and place for the execution of the Request and identity and address of any person to be notified (article 7)**

Please notify the following counsel regarding the time and place for the execution of the Request:


Liskow & Lewis, APLC
David L. Reisman
701 Poydras Street
Suite 5000

New Orleans, LA 70139
United States of America
Telephone: +1 504 556 4016
Email: DReisman@liskow.com

**15. Request for attendance or participation of judicial personnel of the requesting authority at the execution of the Letter of Request (article 8)**

No attendance of judicial personnel is requested.

**16. Specification of privilege or duty to refuse to give evidence under the law of the State of origin (article 11(b))**

Not Applicable

**17. The fees and costs incurred which are reimbursable under the second paragraph of article 14 or under article 26 of the Convention will be borne by**

The State of Maryland

**18. Date of Request**

Dated: _____

_____

Hon. James K. Bredar

District Judge

**Exhibit A** to Letter of Request to
HD Hyundai Heavy Industries Co., Ltd.

## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
## NORTHERN DIVISION

| | |
|---|---|
| In the Matter of the Petition | |
| Of | |
| GRACE OCEAN PRIVATE LIMITED, as Owner of the M/V DALI, | Docket No. JKB 24-cv-941 |
| And | *IN ADMIRALTY* |
| SYNERGY MARINE PTE LTD, as Manager of the M/V DALI, | |
| for Exoneration from or Limitation of Liability | |

## NOTICE OF DEPOSITION OF
## HD HYUNDAI HEAVY INDUSTRIES CO., LTD., BY WRITTEN QUESTIONS

**To:  All Counsel of Record**

**YOU ARE HEREBY NOTIFIED** that the State of Maryland, by and through Anthony G. Brown, Attorney General of Maryland, on its own behalf and on behalf of all its agencies (the "State"); the Maryland Transportation Authority ("MDTA"), the Maryland Port Administration ("MPA"), and the Maryland Department of Environment ("MDE"), will take the deposition of **HD Hyundai Heavy Industries Co., Ltd.** ("HHI") upon certain written questions in accordance with Rule 31 of the Federal Rules of Civil Procedure.  The deposition will be taken by stenographic and videographic means on **August 28, 2025, at 9 a.m.** (E.S.T), before a notary public or other officer duly authorized to administer the oath.  The identity of the court reporter will be provided in advance of the deposition.  The deposition is being taken for all purposes allowable under the Federal Rules of Civil Procedure, including, but not limited to, perpetuation and use at trial.

Pursuant to Rule 31(a)(3), a copy of the written questions that the State of Maryland will ask of HHI are attached hereto.  Cross questions, redirect questions, and recross questions may be duly served in accordance with Rule 31(a)(5).

Pursuant to Rule 31(a)(4), HHI is hereby notified that it must designate one or more persons to answer the questions on its behalf.  The representative of HHI shall appear before the court reporter on the date mentioned above to answer questions under oath as prescribed in Rule 31(b).

RESPECTFULLY SUBMITTED,

ANTHONY G. BROWN
Attorney General of Maryland

Robert A. Scott (24613)
Howard R. Feldman (05991)
Assistant Attorneys General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
rscott@oag.state.md.us
T: (410)576-63214

and

Margaret Fonshell Ward (04586)
DOWNS WARD BENDER HERZOG
& KINTIGH, P.A.
1350 McCormick Road
Executive Plaza 3, Suite 400
Hunt Valley, Maryland 21031
mward@downs-ward.com
(410) 584-2800

*/s/ David L. Reisman*
R. Keith Jarrett, T.A. *
David L. Reisman, T.A. (La. Bar # 21833)*
Raymond T. Waid*
Elizabeth B. McIntosh*
Jessie E. Shifalo*
Elizabeth A. Strunk*
LISKOW & LEWIS
701 Poydras Street, Suite 5000

New Orleans, Louisiana 70139-5099
T: (504) 581-7979
dreisman@liskow.com
rkjarrett@liskow.com
rwaid@liskow.com
ebmcintosh@liskow.com
jshifalo@liskow.com
eastrunk@liskow.com

Scott S. Partridge*
PARTRIDGE LLC
231 Glendale Drive
Metairie, Louisiana 70001
scott@partridgellc.com
(314) 952-4132

William J. Jackson*
Ivan Morales*
Maria F. Pimienta*
KELLEY DRYE & WARREN LLP
515 Post Oak Blvd, Suite 900
Houston, Texas 77027
bjackson@kelleydrye.com
imorales@kelleydrye.com
mpimienta@kelleydrye.com
(713) 355-5000

Philip D. Robben*
Julia Schuurman*
KELLEY DRYE & WARREN LLP
3 World Trade Center
175 Greenwich Street
New York, New York 10007
probben@kelleydrye.com
jschuurman@kelleydrye.com
T: (212) 808-7800

Andrew W. Homer*
KELLEY DRYE & WARREN LLP
888 Prospect Street, Suite 200
La Jolla, California 92037
ahomer@kelleydrye.com
T: (858) 795-0426

Mark Lanier*
The Lanier Law Firm

10940 W. Sam Houston Pkwy N
Suite 100
Houston, TX 77064
mark.lanier@lanierlawfirm.com
T: (713) 659-5200

*Admitted *Pro hac vice*
**Attorneys for the State of Maryland**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of July 2025, a copy of the foregoing pleading

was served on all counsel of record via email.

*/s/ David L. Reisman*
David L. Reisman (La. Bar # 21833)

UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| In the Matter of the Petition<br><br>Of<br><br>GRACE OCEAN PRIVATE LIMITED, as Owner of the M/V DALI,<br><br>And<br><br>SYNERGY MARINE PTE LTD, as Manager of the M/V DALI,<br><br>for Exoneration from or Limitation of Liability | Docket No. JKB 24-cv-941<br><br>*IN ADMIRALTY* |

**DIRECT EXAMINATION QUESTIONS
TO BE PROPOUNDED TO HD HYUNDAI HEAVY
INDUSTRIES CO., LTD., BY THE STATE OF MARYLAND**

TO:    HD Hyundai Heavy Industries Co., Ltd.
       Ulsan, South Korea

       Through its Counsel:
       John V. Hobgood, Esq.
       john.hobgood@wilmerhale.com
       Alan Schoenfeld, Esq.
       alan.schoenfeld@wilmerhale.com
       Wilmer Hale
       60 State Street
       Boston, MA  02109

**Introduction / Background**

1.    Please state your name, your age, and your business address for the record.

2.    The questions that follow are being asked of Hyundai Heavy Industries ("HHI") in
      connection with a civil lawsuit associated with the March 26, 2024, allision by the M/V

DALI (IMO 9697428) with the Francis Scott Key (FSK) Bridge in Baltimore, Maryland. Are you aware of the nature of the proceeding?

3.    Has HHI asked you to represent the company with respect to these questions?

4.    Please describe your professional background and history with HHI.

5.    Have you done sufficient research of company records and sufficient interviews of company personnel so as to provide answers to the following questions on behalf of HHI?

**HHI/s Business and Relationship to the DALI**

6.    Is it true that HHI is the world's largest shipbuilder?

7.    Where is HHI's shipyard located?

8.    Is it true that the services provided by HHI include vessel design and construction, and marine engine design and construction?

9.    Did HHI design and build the vessel now known as the DALI?

10.   Did that design and construction include the DALI's main engine, the four auxiliary diesel generators, and their support systems?  Please explain your answer.

11.   Did HHI design and build the DALI's electrical power system, inclusive of the electrical switchboards, the step-down transformers, and the associated protective devices?

12.   When was the DALI delivered?

13.   Did HHI build other vessels using the same design as the DALI?

14.   Is it correct that two sister ships of the DALI are now known as the M/V CEZANNE (IMO No. 9697416) and the M/V MAERSK SALTORO (IMO No. 9725706)?

15.   Did HHI intend that its design of the DALI comply with the applicable design requirements of the International Convention for the Safety of Life at Sea ("SOLAS")?  Please explain.

16.   Did HHI intend that its design of the DALI comply with the applicable design requirements set out by the American Bureau of Shipping ("ABS")?  Please explain.

**Periodic Maintenance of the DALI**

17. If HHI has provided a recommended maintenance and inspection schedule for the DALI's electrical switchboards, please describe that maintenance and inspection schedule, including the scope of work that HHI recommends be performed during the ship's five-year dry-docking.

18. Is it important for the DALI's electrical switchboards to be inspected, maintained, and overhauled in accordance with HHI's recommended schedule?  Please explain why or why not.

19. If HHI has provided a recommended maintenance and inspection schedule for the DALI's vacuum circuit breakers (VCBs), please describe that maintenance and inspection schedule, including the scope of work that HHI recommends be performed during the ship's five-year dry-docking.

20. If HHI has provided a recommended maintenance and inspection schedule for the DALI's air circuit breakers (ACBs), please describe that maintenance and inspection schedule, including the scope of work that HHI recommends be performed during the ship's five-year dry-docking.

21. Is it important for the DALI's VCBs and ACBs to be inspected, maintained, and overhauled in accordance with HHI's recommended schedule?  Please explain why or why not.

22. Does HHI consider it important for the DALI's VCBs and ACBs to be inspected, maintained, and overhauled by approved service companies?  Please explain why or why not.

23. Can the maintenance and testing of the VCBs and ACBs required as part of the five-year dry-docking be carried out by the ship's officers?  Please explain why or why not.

24. What are the qualification requirements needed to competently perform testing and inspection of the DALI's VCBs and ACBs during the five-year dry-docking?

25. When HHI delivered the DALI, did it provide the owner with the electrical test equipment that would be needed to carry out the testing and inspection of the DALI's VCBs and ACBs during the five-year dry-docking?

26. As the designer and builder of the DALI, does HHI recommend that the inspection, maintenance, and overhaul schedule recommended by the manufacturer of the steering gear system be followed?  Please explain why or why not.

27. As the designer and builder of the DALI, does HHI recommend that the inspection, maintenance, and overhaul schedule recommended by the bow thruster manufacturer be followed?  Please explain why or why not.

28. Please describe HHI's recommended maintenance and inspection schedule of the DALI's 24V DC battery charger used to supply power to the bridge equipment.

29. Please describe HHI's recommended maintenance and inspection schedule of the DALI's 220V AC UPS used to supply power to the ACONIS IACS displays within the ECR.

30. As the designer and builder of the DALI's four ship service generators, why are the auxiliary diesel engines fitted with the Jet Assist function and what purpose does it serve?

31. If the Jet Assist function is unavailable on the four ship service generators, what is the impact on blackout recovery?  Please explain why or why not.

32. If the Jet Assist function is unavailable on the four ship service generators, will there be an impact on the vessel's ability to perform maneuvering?  Please explain why or why not.

33. As a maker and supplier of the ship service generators for the DALI, if auxiliary diesel engines Nos. 3 and 4 were dedicated to using LSMGO only, would service letter Ref. No.: HGS-HSM-SL-20-001 and its guidance apply?  Please explain why or why not.

34. As a maker and supplier of the four ship service generators for the DALI, does HHI approve the use of LSMGO to the auxiliary engines without an operational fuel oil automatic filter and MGO cooler?  Please explain why or why not.

### M/V DALI's 2020 Drydocking

35. The DALI underwent its first five-year dry-docking in the spring of 2020 in the Yiu Lian Dockyards in China.  Did HHI perform any inspection, maintenance, or overhaul of the DALI's electrical switchboards during that dry-docking?  If so, please describe.

36. Has HHI ever performed any inspection, maintenance, or overhaul of the DALI's electrical switchboards since the ship's delivery and March 26, 2024?  If so, please describe.

37. During the DALI's 2020 dry-docking, did HHI perform any inspection, maintenance, or overhaul of the ship's VCBs or ACBs?  If so, please describe.

38. Has HHI ever performed any inspection, maintenance, or overhaul of the DALI's VCBs or ACBs since the ship's delivery and March 26, 2024?  If so, please describe.

39. If HHI had inspected, maintained, or overhauled the DALI's VCBs, would the scope of that work have included inspection or testing of the wiring of the undervoltage release (Node 381) on the VCB that protects Transformer No. 1? If so, please describe.

40. Was HHI the author of the document entitled "Inspection & Test Report" (HHI-DALI-00033410-457) (hereafter "Inspection & Test Report")?

41. Please explain the subject of the Inspection & Test Report.

42. Is testing and diagnostic work of electrical equipment among the services that HHI provides in the regular course of its business?

43. Was the Inspection & Test Report created by HHI in the normal course of its business? Please explain your answer.

44. Did HHI author the document entitled "Onboard Test Procedures of Electrical Equipment" (HHI-DALI-00018411-476) (hereafter "Onboard Test Procedures")?

45. Please explain the purpose of the Onboard Test Procedures.

46. Was the Onboard Test Procedures created by HHI in the normal course of its business? Please explain your answer.

47. During the DALI's 2020 dry-docking, did HHI perform any inspection, maintenance, or overhaul of the ship's steering gear system? If so, please describe.

48. Has HHI ever performed any inspection, maintenance, or overhaul of the DALI's steering gear system since the ship's delivery and March 26, 2024? If so, please describe.

49. During the DALI's 2020 dry-docking, did HHI perform any inspection, maintenance, or overhaul of the ship's bow thruster? If so, please describe.

50. Has HHI ever performed any inspection, maintenance, or overhaul of the DALI's bow thruster since the ship's delivery and March 26, 2024? If so, please describe.

51. Does HHI recommend that periodic maintenance to the switchboards, VCBs, and ACBs be performed by HHI-approved vendors? Please explain why or why not.

52. Has HHI approved either of the following electrical vendors for service on HHI-built switchboards, VCBs, or ACBs: Ocean Link Marine Automation Co., LTD. or Hang Marine, LTD.? If yes, please explain the approval process.

53.    During the DALI's 2020 dry-docking, the shipyard installed an Exhaust Gas Cleaning System (a/k/a "scrubber").  Did anyone contact HHI for source material to be used in the scrubber design?  If so, please describe the source material that HHI provided.

## DALI's Electrical Power System

54.    Is it correct that the DALI's high-voltage bus connects to the low-voltage bus via two step-down transformers?

55.    In normal operations, should the DALI connect the high-voltage bus to the low-voltage bus using one or two step-down transformers?

56.    If the DALI is operating with only one step-down transformer in service, does HHI recommend that the standby transformer be placed in manual mode or automatic mode?  Please explain your answer.

57.    In the event that the in-service step-down transformer trips offline, how long does it take for the DALI's electrical system to switch to the standby step-down transformer if the transformers are set in automatic mode?

58.    When the DALI's step-down transformers are set to automatic mode, is any crew member intervention needed to switch from one transformer to the other in the event that one transformer trips offline?

59.    When the DALI is underway and wants its bow thruster to be available for immediate use, please explain how many ship service generators should be running and online according to HHI's original design?

## M/V DALI's Fuel System

60.    Did HHI's original design of fuel oil system for the four auxiliary engines incorporate an electric-powered flushing pump, "G/E M.D.O./M.G.O. Flush'G P/P" (16.2M3/H X 6 KG/CM2) (the "Flushing Pump")?

61.    Please explain the design purpose of the Flushing Pump?

62. In HHI's original design of the DALI's fuel oil system, was the Flushing Pump intended to be used as the main fuel oil supply pump for any of the ship's auxiliary engines?  Please explain why or why not.

63. Did the DALI's owner or operator ever seek HHI's guidance on the possibility of using the Flushing Pump as the main fuel oil supply pump for any of the ship's auxiliary engines?

64. Please identify any reasons why the Flushing Pump would be unsuitable for use as the main fuel oil supply pump for any of the DALI's auxiliary engines?

65. In the event the DALI suffered an electrical power outage to her 440-volt distribution system, was the Flushing Pump designed to automatically restart once electrical power was restored?

66. Given the absence of automatic restart capability on the Flushing Pump, would that pump satisfy the design and operational requirements of SOLAS Regulation II-1/41.5.1.1 if the Flushing Pump was being used as the main fuel oil supply pump for any of the DALI's four auxiliary engines?

67. Please explain the design purpose of the DALI's Pneumatic Flushing Pump?

68. How does the capacity of the DALI's Pneumatic Flushing Pump compare to that of the Electric Flushing Pump?


**DALI's Steering Capabilities**

69. Imbedded below is a photo of a wheelhouse placard that was installed on the bridge of the DALI.  It bears Bates No. Petitioner_690409, and has been previously numbered as Exhibit 205 in the list of deposition exhibits in the lawsuit.  Was HHI the author of that placard?



70.    Please describe the circumstances that led HHI to create Exhibit 205.

71.    Did HHI create Exhibit 205 in the normal course of its business?

72.    Does Exhibit 205 advise that the DALI should be able to use the ship's steering gear to maintain course, even if the propeller is stopped, provided the vessel is traveling at a speed of 4.8 knots or greater?  Please explain your answer.

73.    Was the steering information in Exhibit 205 determined by HHI based on actual testing of vessel performance before delivery?  Please explain your answer.

**DALI's Propulsion System**

74.   Is it correct that for the DALI's main engine to function, one or more of the four ship service generators must be operating and supplying the vessel with 440-volt electrical power?

75.   If the DALI loses 440-volt electrical power, is it true that certain auxiliary equipment needed to support the main engine will shut down?  Please explain your answer.

76.   If the DALI loses 440-volt electrical power while underway, once 440-volt electrical power is restored, how long would it take to re-start all auxiliary equipment needed to re-start the DALI's main engine?

77.   If the DALI loses 440-volt electrical power while underway, how long should it take to restart the main engine once 440-volt power is restored?

78.   Once the DALI's main engine is restarted after recovery from an electrical blackout, how long should it take the main engine to accelerate to 35 RPM?

**DALI's Vibration**

79.   Was HHI aware that the DALI suffered from heavy vibration whenever the ship's propeller was turning in a range between approximately 63-68 RPMs?

80.   Did the DALI's owner make a warranty claim against HHI for the ship's vibration problem.

81.   Did HHI propose a remedial plan to reduce or eliminate these vibrations?  Please explain your answer.

82.   Was HHI's vibration remedy implemented aboard the DALI or any of her sister vessels? Please explain your answer.

83.   How was the owner's vibration warranty claim for the DALI resolved?

84.   Did HHI have an expectation that the DALI's owner would use the proceeds from the resolution of the vibration warranty claim to address the vibration problem aboard the vessel? Please explain your answer.

85.   Is HHI aware whether the DALI's vibration issues ever caused any collateral problems aboard the vessel?  Please explain your answer.

86. Did the DALI's owner or operator ever ask HHI for guidance on how to modify the ship's maintenance procedures to guard against any adverse consequences that might result from the vessel's vibration problem?

**Post-Allision Testing**

87. Since March 26, 2024, has HHI performed any testing or diagnostic work aboard the DALI with a goal of identifying the cause(s) of the DALI's electrical power failures on March 26, 2024?  Please explain your answer.

88. What did HHI determine to be the root cause(s) of the DALI's electrical power failures on March 26, 2024?  Please explain your answer.

89. Did HHI create the document entitled "HD Hyundai Heavy Industries Revised Final Report to the NTSB" (HHI-DALI-00026740-796) (hereafter "Final Report")?

90. Was the testing or diagnostic work that HHI performed aboard the DALI recorded in the Final Report?

91. Please explain the purpose of the Final Report.

92. Does HHI regularly create a record of the testing and diagnostic work it performs?

93. Do the services that HHI provides in the regular course of its business include – when necessary – testing and diagnostic work aboard vessels that it designed and built?

**HHI's Document Production**

94. Are you familiar with the documents that HHI has produced in this litigation, bearing Bates stamp HHI-DALI-00000001 through HHI-DALI-00033457 (the "HHI Document Set")?

95. In the regular or ordinary course of its business, does HHI make or keep the types of records contained in the HHI Document Set?  Please explain your answer.

96. Were the documents contained within the HHI Document Set made by or from people with knowledge of the matters set forth therein?

97.    Were the documents contained within the HHI Document Set created or kept by HHI in the ordinary course of its business?

98.    Are the documents contained within the HHI Document Set either original records or exact duplicates of the original records?

[END OF QUESTIONS]