# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
## NORTHERN DIVISION

| | |
|---|---|
| In the Matter of the Petition<br><br>of<br><br>GRACE OCEAN PRIVATE LIMITED, as Owner of the M/V DALI,<br><br>And<br><br>SYNERGY MARINE PTE LTD, as Manager of the M/V DALI,<br><br>for Exoneration from or Limitation of Liability | Docket No. JKB 24-cv-941<br><br>*IN ADMIRALTY* |

## MEMORANDUM OF LAW
## IN SUPPORT OF CLAIMANTS' MOTION FOR
## SUMMARY JUDGMENT TO DISMISS SYNERGY MARINE'S
## PETITION FOR LIMITATION DUE TO ITS LACK OF STANDING

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES.............................................................. ii

INDEX OF EXHIBITS ...................................................................iv

MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT ...........................

I.     The Limitation Act .............................................................2

II.    The DALI's Management Structure ......................................3

      A.    Allegations in the Petition..........................................3

      B.    Division of Responsibility Under the Vessel Contracts ......................................................................4

      C.    Synergy Marine Bears no Financial Risk ...................7

III.    The Summary Judgment Standard When the Non-Movant Bears the Ultimate Burden of Proof ......................9

IV.    Synergy Marine's Ineligibility Under the Limitation Act .................10

      A.    Synergy Marine Lacks the Characteristics of an Owner Pro Hac Vice ...................................................10

      B.    Cases Evaluating Managers Under the Limitation Act ........................................................................11

      C.    Synergy Marine Did Not Employ the DALI's Crew ...............13

      D.    Synergy Marine Bears No Financial Risk .................14

      E.    Synergy Marine Acts as an Agent .............................18

      F.    Synergy Marine Lacks Autonomy ...........................18

V.    Conclusion.......................................................................22

i

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*Agrico Chemical Co. v. M/V Ben W. Martin*, 664 F.2d 85 (5th Cir. 1981) ...... passim

*American Commercial Lines v. United States*,
   590 F. Supp. 816 (E.D. Mo. 1984) ........................................................................12

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................................10

*Archer Daniels Midland Co. v. M/T AMERICAN LIBERTY*,
   No. 19-10525, 2021 WL 1951217 (E.D. La. May 14, 2021) ........................ 12, 14

*Birmingham Southeast v. M/V Merchant Patriot*,
   124 F. Supp. 2d 1327 (S.D. Ga. 2000) .................................................... 12, 15, 19

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ....................................................9, 10

*Coryell v. Phipps*, 317 U.S. 406 (1943) ....................................................................1

*Flink v. Paladini*, 279 U.S. 59 (1929) .......................................................................2

*Guzman v. Pichirilo*, 369 U.S. 698 (1962) .................................................................3

*Hooven-Lewis v. Caldera*, 249 F.3d 259 (4th Cir. 2001) ........................................10

*In re Barracuda Tanker Corp.,* 281 F. Supp. 228 (S.D.N.Y. 1968) ........................12

*In re CF, LLC*, 19-00154, 2020 WL 557720 (W.D. La. Feb. 3, 2020) ............. 12, 18

*In re David & Colleen, Inc*., No 04-1176, 2006 WL 2092445
   (S.D. Tex. 2006), *aff'd*, 234 Fed. Appx. 211 (5th Cir. 2007) ........................ 12, 13

*In re Ingram Barge Co*.,
   No. 05-4419, 2007 WL 2088369 (E.D. La. July 19, 2007) ......................... 12, 14

*In re M/V Seaboard Spirit*, No. 11-23841, 2014 WL 3673323
   (S.D. Fl. July 23, 2014) ............................................................................... 12, 14

*In the Matter of the American Milling Co.*,
   409 F.3d 1005 (8th Cir. 2005) ........................................................ 12, 20, 21, 22

*In the Matter of the Complaint of Chesapeake Shipping, Inc.*,
   803 F. Supp. 872 (S.D.N.Y. 1992) ................................................................ 12, 13

*Matter of Grace Ocean Private Ltd.*,
   No. 24-00941-JKB, 2025 WL 437878 (D. Md. Feb. 7, 2025) ............................ 8

*Matter of Oil Spill by Amoco Cadiz Off Coast of France on March 16, 1978*,
   954 F.2d 1279 (7th Cir. 1992) ...................................................................... 12, 18

*Matter of Petition of United States of America*,
   259 F.2d 608 (3d Cir. 1958) ................................................................ 12, 15, 16

*Matter of Wilson Yachts, LLC*, 605 F. Supp. 3d 695, 707 (D. Md. 2022), *aff'd sub
   nom. In re Wilson Yachts, LLC*, 22-1766, 2024 WL 1171207 (4th Cir. Mar. 19,
   2024) ......................................................................................................................17

*Norfolk Dredging Co. v. M/V A.V. Kastner*,
   264 F. Supp. 2d 265 (D. Md. 2003) ........................................................... passim

*Pickle v. Char Lee Seafood, Inc.*, 174 F.3d 444 (4th Cir. 1999) ............................17

*Reed v. The Yaka*, 373 U.S. 410 (1963) ....................................................................2

*The Main v. Williams*, 152 U.S. 122 (1894) ..............................................................2

**Statutes**

46 U.S.C. § § 181-196 ................................................................................................2

46 U.S.C. § § 30501-30530 ............................................................................ 1, 2, 22

**Rules**

F.R.C.P. 56 ..................................................................................................................9

# INDEX OF EXHIBITS

Exhibit 1:    Time Charter Party Agreement ("Charter") .............................4, 5, 6, 7

Exhibit 2:    Ship Management Agreement ("SMA") ............................... 5-9, 12, 18

Exhibit 3:    Rule 30(b)(6) Deposition of Grace Ocean Private Ltd.
through Yoko Nakagawa ("Grace Depo.").................5-9, 14-16, 19-20

Exhibit 4:    Rule 30(b)(6) Deposition of Synergy Marine PTE Ltd.
through Ajith Kumar ("Synergy Depo.") ..............5-9, 11, 14-16, 18-20

Exhibit 5:    Exemplar employment contract between Grace Ocean and
a DALI crewmember ................................................................6

The Limitation of Liability Act of 1851 ("Limitation Act" or "Act"), 46 U.S.C. §§ 30501-30530, exists solely to benefit vessel "owners." However, the benefits of exoneration and limited liability are available only if the injuries were "incurred[] without the privity or knowledge of the owner." 46 U.S.C. § 30523(b). The owner has the burden of proving a lack of privity or knowledge. *Coryell v. Phipps*, 317 U.S. 406, 409 (1943).

Here, two parties seek the protection of the Limitation Act. One is Grace Ocean Private Limited, the owner of the M/V DALI, and the other is Synergy Marine PTE Ltd., the vessel's "Manager." The evidence will show (a) that neither Petitioner is entitled to exoneration given their acts of negligence and the DALI's unseaworthy conditions, and (b) that both Petitioners had privity or knowledge of the DALI's unseaworthiness such that neither of them may limit their liability. However, the instant motion is not addressed to fault or to privity or to knowledge. Rather, this motion demonstrates that Synergy Marine's status as Manager renders it ineligible to invoke the Limitation Act in the first place. Synergy Marine lacks standing to seek limitation because Grace Ocean did not completely and exclusively relinquish possession, command, and navigation of the DALI. Simply put, Synergy Marine is not an "owner pro hac vice." Claimants therefore seek judgment as a matter of law dismissing Synergy Marine's petition for limitation.

## I.    The Limitation Act

The Limitation Act applies to "seagoing vessels."  46 U.S.C. § 30502(a).

More specifically, the statute applies to the owners of such vessels. *Id*. at § 30523(a).

The Act defines "owner" as follows:

> In this chapter: . . . [t]he term "owner" includes a charterer
> that mans, supplies, and navigates a vessel at the charterer's
> own expense or by the charterer's own procurement.

*Id*. at § 30501(2).[1]  The case law makes clear that the statute describes both a titled

owner and a bareboat charterer, also known as an "owner pro hac vice." *See Norfolk*

*Dredging Co. v. M/V A.V. Kastner*, 264 F. Supp. 2d 265, 267 (D. Md. 2003) (only

"[a]ctual owners or owners pro hac vice can invoke the benefits of the Act").[2]  The

Supreme Court has held that the phrase "owner pro hac vice" is synonymous with

"bareboat charterer." *Reed v. The Yaka*, 373 U.S. 410, 412 (1963) ("It has long been

---

[1]    For many years the Limitation Act was codified at 46 U.S.C. § § 181-196 and did not include a definitional section.

[2]    When discussing a prior codification of the Limitation Act, the Supreme Court stated that the word "owner" should be viewed "in a broad and popular sense." *Flink v. Paladini*, 279 U.S. 59, 63 (1929).  That observation came in a case unlike the one at bar, however.  In *Flink*, the Court evaluated whether the stockholders of a corporation that owned a ship were also eligible to seek limitation as owners of the vessel given Congress's intent "to encourage investment by exempting the investor from loss in excess of the fund he is willing to risk in the enterprise." *Id*. at 62.  However, that conclusion must be read in *pari materia* with another observation the Court made decades earlier, when it noted that the Limitation Act is "in derogation of the common law" such that "the court should not limit the right of the injured party to a recovery beyond what is necessary to effectuate the purposes of Congress." *The Main v. Williams*, 152 U.S. 122, 132-33 (1894).

recognized in the law of admiralty that, for many, if not most, purposes the bareboat charterer is to be treated as the owner, generally called owner *pro hac vice.*").

In *Agrico Chemical Co. v. M/V Ben W. Martin*, 664 F.2d 85 (5th Cir. 1981), the Fifth Circuit explained that the essence of a bareboat charter arrangement is a "complete transfer of possession, command, and navigation of the vessel from the owner." *Id.* at 91. *Accord Guzman v. Pichirilo*, 369 U.S. 698, 699-700 (1962) ("To create a demise the owner of the vessel must completely and exclusively relinquish 'possession, command, and navigation' thereof to the demisee . . . tantamount to, though just short of, an outright transfer of ownership.").

## II. The DALI's Management Structure

### A. Allegations in the Petition

The Petition never uses the phrase "owner pro hac vice." However, it sketches out Synergy Marine's argument for such status in Paragraph 4, where it describes the company's responsibilities as including "manning and victualing the Vessel, procuring and providing deck, engine, and cabin stores, maintenance and repairs for hull and machinery, providing spare parts, maintenance and repairs for the Vessel, and communicating with Owner and the Vessel's time charterers."[3] This paragraph

---

[3]  Petition (Dkt. No. 1) at ¶ 4.

was clearly drafted to mimic *Norfolk Dredging*'s observation that vessel managers *might* qualify for pro hac vice status where they have responsibilities including:

> Manning the vessels; victualing the vessels, providing for navigation, which involved procuring and providing deck, engine and cabin stores; maintenance and repairs for hull and machinery; providing spare parts, maintenance and repairs for communication and navigation equipment ..., and communicating with [the owner] and the vessels' time charterers.

*Norfolk Dredging*, 264 F. Supp. 2d at 267.

This memorandum tests the allegations in the Petition against the actual facts established through discovery. Those facts make it readily apparent that Synergy Marine's role vis-à-vis the DALI is nothing like that of an owner pro hac vice.

### B. Division of Responsibility Under the Vessel Contracts

When the DALI allided with the Francis Scott Key Bridge, three companies participated in the vessel's management and operation. Grace Ocean was the owner. Maersk Line A/S was the DALI's time charterer under a Time Charter Party Agreement ("Charter") between it and Grace Ocean.[4] And Synergy Marine was the DALI's manager, with its duties set forth in a Ship Management Agreement

---

[4] The Charter is dated September 2016, and is attached hereto as Exhibit 1. The Charter was produced in discovery by Synergy Marine (note the Bates numbers) and attested by Grace Ocean in its corporate deposition. *See* Rule 30(b)(6) Deposition of Grace Ocean Private Ltd. through Yoko Nakagawa (April 24, 2025) ("Grace Depo.") at 58:3-16, a copy of which is attached as Exhibit 3.

("SMA").[5]  The relationship among the three parties was further described in the corporate depositions of Grace Ocean and Synergy Marine.[6]  The division of operational and financial responsibilities between and among the parties is set out in the table below:

| Task or Attribute | Performance Responsibility | Financial Responsibility | Evidentiary Source |
|---|---|---|---|
| **Ownership** | Grace Ocean | Grace Ocean | Petition (Dkt. No. 1), ¶ 3 |
| **Insurance (hull)** | Grace Ocean | Grace Ocean | SMA, Ex. 2, ¶¶ 5.3.1(a); Grace Depo., Ex. 3, pp. 123:1-124:9; Synergy Depo., Ex. 4, pp. 36:21-37:16 |
| **Insurance (liability)** | Grace Ocean | Grace Ocean | SMA, Ex. 2, ¶¶ 5.3.1(b); Grace Depo., Ex. 3, pp. 123:1-124:9; Synergy Depo., Ex. 4, pp. 36:21-37:16 |
| **Fuel** | Maersk | Maersk | Charter, Ex. 1, Part II, ¶ 12; Grace Depo., Ex. 3, p. 65:1-7; Synergy Depo., Ex. 4, p. 25:6-9 |
| **Manning (Arranging)** | Synergy Marine Recruitment[7] | Grace Ocean* | SMA, Ex. 2, Annex 1, pp. 10–11; Grace Depo., Ex. 3, pp. 119:21-120:13 & 127:8-128:1; Synergy Depo., Ex. 4, pp. 42:6-45:6 |

---

[5]   The SMA is attached hereto as Exhibit 2.  The agreement dates to 2010, although the DALI was added to the agreement in 2016.  The SMA was produced in discovery by Synergy Marine and attested by Grace Ocean in its corporate deposition.  *See* Grace Depo., Ex. 3 at 104:6-20.

[6]   *See generally* Grace Depo., Ex. 3, at 34:9-14, 58:17-59:4, and 108:17-110:15.  *See also* Rule 30(b)(6) Deposition of Synergy Marine PTE Ltd. through Ajith Kumar (August 15, 2025) ("Synergy Depo."), a copy of which is attached hereto as Exhibit 4, at 24:21-27:16, and 307:23-309:6.

[7]   Synergy Marine Recruitment PTE Ltd. is a Synergy Group affiliate that specializes in the recruitment of mariners on behalf of Synergy Marine and other Synergy Group companies. Synergy Depo., Ex. 4, at 42:6-45:6.

| Task or Attribute | Performance Responsibility | Financial Responsibility | Evidentiary Source |
|---|---|---|---|
| **Manning (Employment)** | Grace Ocean | Grace Ocean | Synergy Depo., Ex. 4, p. 46:7-22[8] |
| **Navigation** | Grace Ocean Maersk | Grace Ocean | Synergy Depo., Ex. 4, pp. 39:19-40:9[9] |
| **Supplies** | Synergy Marine | Grace Ocean* | SMA, Ex. 2, Annex 1, p. 12; Grace Depo., Ex. 3, pp. 119:21-120:13 |
| **Routine Maintenance** | Synergy Marine | Grace Ocean* | SMA, Ex. 2, Annex 1, pp. 11–12; Grace Depo., Ex. 3, pp. 119:21-120:13 |
| **Repairs** | Synergy Marine | Grace Ocean | SMA, Ex. 2, Annex 1, p. 12 ¶ (iv); Annex 2, p. 16 ¶ (x); Grace Depo., Ex. 3, pp. 119:21-120:13 |
| **Dry Docking** | Synergy Marine | Grace Ocean[10] | Charter, Ex. 1, Clause 24; Grace Depo., Ex. 3, p. 83:4-10 |
| **Soliciting Cargo** | Maersk | Maersk | Charter, Ex. 1, Part II, ¶ 6; Grace Depo., Ex. 3, p. 65:1-10; Synergy Depo., Ex. 4, p. 25:15-18 |
| **Cargo Stowage Plan** | Maersk | Maersk | Charter, Ex.1, Part II, ¶ 6; Grace Depo., Ex. 3, pp. 68:20-69:4 |
| **Port Agents** | Maersk | Maersk | Synergy Depo., Ex. 4, p. 27:14-16 |
| **Stevedoring** | Maersk | Maersk | Charter, Ex. 1, Part II, ¶ 6; Synergy Depo., Ex. 4, pp. 307:12-309:6 |

---

[8] An exemplar employment contract between Grace Ocean and a DALI crewmember is attached as Exhibit 5. This exemplar is the contract for Karthikeyan Deenadayalan, Chief Engineer of the DALI. The employment contract was produced in discovery by Synergy Marine as indicated by the Bates numbers.

[9] Day-to-day navigation of the DALI is performed by the vessel's crew, all of whom are Grace Ocean employees. However, Maersk decides where the vessel goes, and when.

[10] Whenever the DALI goes into dry dock, Grace Ocean decides which repairs to make and pays for that work. Synergy Depo., Ex. 4, at 62:4-10.

| Task or Attribute | Performance Responsibility | Financial Responsibility | Evidentiary Source |
|---|---|---|---|
| Customs | Maersk | Maersk | Synergy Depo., Ex. 4, pp. 307:12-309:6 |
| Ports of Call | Maersk | Maersk | Charter, Ex. 1, Part II, ¶ 6; Grace Depo., Ex. 3, p. 68:2-6 |
| Schedule | Maersk | Maersk | Synergy Depo., Ex. 4, p. 26:14-18 |
| Tugs | Maersk | Maersk | Charter, Ex. 1, Part II, ¶ 6; Grace Depo., Ex. 3, pp. 65:16-67:3; Synergy Depo., Ex. 4, pp. 307:12-309:6 |
| Pilots | Maersk | Maersk | Charter, Ex. I, Part II, ¶ 6; Grace Depo., Ex. 3, pp. 65:16-67:3; Synergy Depo., Ex. 4, pp. pp. 307:12-309:6 |
| *Via monthly lump sum capital paid to Synergy Marine | | | |

### C.  Synergy Marine Bears no Financial Risk

The SMA makes clear that Grace Ocean, not Synergy Marine, bears all financial risk from the DALI's operations.  The SMA provides that Grace Ocean will defend and indemnify Synergy Marine from any claims "arising out of or in connection with the performance of this Agreement."  *See* SMA, Ex. 2, ¶ 7.3. Indeed, in their corporate depositions, both Grace Ocean and Synergy Marine confirmed that Synergy Marine has no independent exposure to claims resulting from the allision with the Francis Scott Key Bridge.[11]

---

[11]  For example, consider this testimony from Grace Ocean:

As this Court previously recognized, "Congress's purpose in enacting the [Limitation] Act was to encourage shipbuilding and to induce the investment of money in the maritime industry by limiting the venture of those who build the ships to the loss of the ship itself or her freight then pending." *Matter of Grace Ocean Private Ltd.*, No. 24-00941-JKB, 2025 WL 437878, at *2 (D. Md. Feb. 7, 2025) (cleaned up). As respects the DALI, Synergy Marine is not among the parties that Congress intended to benefit through the Limitation Act given its lack of financial investment or risk in the DALI.

Furthermore, in addition to indemnity, the SMA also specifies that Grace Ocean is obligated to provide Synergy Marine with insurance protection from both hull and machinery losses and protection and indemnity risks. *See* Ex. 2, ¶ 5.3. That

---

Q. And so what that means, in practice, is that Grace Ocean will be indemnifying Synergy for any claims made against Synergy in this lawsuit?

[Objection]

Q. You can answer.

**A. Yes.**

Q. So, what I conclude from Paragraph 7.2 and 7.3 is that Synergy Marine doesn't have any independent exposure to claims being made as a result of the allision; isn't that true?

[Objection] Go ahead.

**A: Yes.**

Grace Depo., Ex. 3, at 126:12-127:6. This fact was also confirmed in Synergy Marine's corporate deposition. *See* Synergy Depo., Ex. 4, at 38:8-23. Note that the SMA provision which releases Synergy Marine from liability to the vessel owner (¶ 7.2), contains an exception for gross negligence. But even then, Synergy Marine's liability is limited to $60,000. *Id.*

coverage is effectuated by having Grace Ocean's policies endorsed to name Synergy Marine as a co-insured.[12]  This fact also undermines Synergy Marine's claim to pro hac vice status because a "bareboat charterer typically is required to carry insurance on the vessel as well as protection and indemnity insurance and crew insurance." *Agrico Chemical*, 664 F.2d at 92.  By relying on Grace Ocean for both indemnity and insurance coverage, Synergy Marine lacks any financial risk, which is both a key attribute of ownership and the *raison d'être* for the Limitation Act.

## III.    The Summary Judgment Standard When the Non-Movant Bears the Ultimate Burden of Proof

A court may grant a motion for summary judgment upon all or any part of a claim when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  F.R.C.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  When a motion for summary judgment targets an issue on which the nonmoving party will bear the burden of proof at trial, the mover satisfies its burden by pointing out that there is insufficient proof concerning an essential element of the nonmovant's claim.  *Celotex*, 477 U.S. at 325.

That is the situation here.  As the party seeking to invoke the Limitation Act, Synergy Marine bears the burden of proving eligibility.  *Norfolk Dredging*, 264 F.

---

[12]    Grace Depo., Ex. 3, at 80:9-81:4; Synergy Depo., Ex. 4, at 37:9-16.

Supp. 2d at 267. Because it bears the burden of proof, if it chooses to oppose this motion Synergy Marine must "designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. "Only disputes over facts that might affect the outcome" are relevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is mandatory "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001).

## IV.    Synergy Marine's Ineligibility Under the Limitation Act

As explained in *Norfolk Dredging*, Synergy Marine has standing under the Limitation Act only if it qualifies as the DALI's owner pro hac vice.

### A.    Synergy Marine Lacks the Characteristics of an Owner Pro Hac Vice

Synergy Marine fails to qualify as an owner pro hac vice for many reasons. ***First***, Grace Ocean – not Synergy Marine – employed the DALI's crew and thereby retained both possession and navigation. ***Second***, Synergy Marine bears no financial liability for loss—a fundamental tenet of ownership and the policy principle underpinning the Limitation Act—because Grace Ocean is both insuring and indemnifying Synergy Marine for claims arising from the allision. ***Third***, Synergy Marine has admitted that it performed every responsibility described in Paragraph 4

of the Petition as Grace Ocean's agent, not as the DALI's owner.[13] **And fourth**, Synergy Marine's management of the DALI was not autonomous enough to confer ownership status. Grace Ocean exercised **daily** oversight of the DALI. Indeed, both Grace Ocean and Maersk exercised so many aspects of ownership that what remained for Synergy Marine to manage was far less than the requisite "full possession and control" that define an owner pro hac vice.

In sum, Synergy Marine's role does not satisfy the statutory definition of an owner in the Limitation Act; nor does it meet the factors that characterize an owner pro hac vice. Accordingly, its petition for limitation of liability should be dismissed.

### B.   Cases Evaluating Managers Under the Limitation Act

Prior courts have wrestled with vessel managers seeking standing under the Limitation Act. The results in those cases are necessarily fact-specific. However, Claimants are aware of no case where a manager was found eligible under the Act on facts similar to those present here. The table below collects cases finding and rejecting eligibility.

---

[13]    Synergy Depo., Ex. 4, at 29:8-12.

| Cases Rejecting Eligibility | Cases Finding Eligibility[14] |
|---|---|
| *Matter of Oil Spill by Amoco Cadiz Off Coast of France on March 16, 1978*, 954 F.2d 1279 (7th Cir. 1992) | *Matter of Petition of United States of America*, 259 F.2d 608 (3d Cir. 1958) |
| *In the Matter of the American Milling Co.*, 409 F.3d 1005 (8th Cir. 2005) | *In the Matter of the Complaint of Chesapeake Shipping, Inc.*, 803 F. Supp. 872 (S.D.N.Y. 1992) |
| *Birmingham Southeast v. M/V Merchant Patriot*, 124 F. Supp. 2d 1327 (S.D. Ga. 2000) | *In re M/V Seaboard Spirit*, No. 11-23841, 2014 WL 3673323 (S.D. Fl. July 23, 2014) |
| *Norfolk Dredging Co. v. M/V A.V. Kastner*, 264 F. Supp. 2d 265 (D. Md. 2003) | *American Commercial Lines v. United States*, 590 F. Supp. 816 (E.D. Mo. 1984)[15] |
| *In re CF, LLC*, 19-00154, 2020 WL 557720 (W.D. La. Feb. 3, 2020) | *In re Ingram Barge Co.*, No. 05-4419, 2007 WL 2088369 (E.D. La. July 19, 2007) |
| *In re David & Colleen, Inc.*, No 04-1176, 2006 WL 2092445 (S.D. Tex. 2006), *aff'd*, 234 Fed. Appx. 211 (5th Cir. 2007) | *Archer Daniels Midland Co. v. M/T AMERICAN LIBERTY*, No. 19-10525, 2021 WL 1951217 (E.D. La. May 14, 2021) |

A common thread in the cases that allow a manager the benefit of protection under the Limitation Act is that the manager acted "autonomously" from the vessel

---

[14]   In *In re Barracuda Tanker Corp.,* 281 F. Supp. 228 (S.D.N.Y. 1968), the court considered whether a time charterer might qualify as an owner pro hac vice, but never reached an answer. On a motion for summary judgment, the court simply ruled that disputed facts meant the question would be held over for trial.  281 F. Supp. at 230-32.

[15]   In *American Commercial Lines,* a vessel operator was allowed to limit its liability, but there was no discussion of the basis for that conclusion, suggesting the operator's eligibility was not challenged.

owner.  *See, e.g., Chesapeake Shipping*, 803 F. Supp. at 874.  That is not the situation for the DALI.

## C.  Synergy Marine Did Not Employ the DALI's Crew

As described earlier, a bareboat charterer or owner pro hac vice involves a "complete transfer of **possession, command, and navigation** of the vessel from the owner to the charterer, . . . tantamount to, though just short of, an outright transfer of ownership." *Agrico Chemical*, 664 F.2d at 91 (emphasis added).  Those three characteristics necessarily require that the owner pro hac vice employ the crew.

Here, Synergy Marine is responsible for *recruiting* suitable crew members for the DALI, but it does not actually *employ* them.  To the contrary, all crew members execute employment contracts with Grace Ocean.  In practice, this fact means that Synergy Marine lacks "**possession**" of the DALI because the ship is crewed by employees of Grace Ocean.  Likewise, Synergy Marine lacks "**command**" or "**navigation**" of the DALI for the same reason.  Those facts are conclusive in establishing that Synergy Marine is not an owner pro hac vice and therefore ineligible under the Limitation Act.  *See In re David & Colleen, Inc*., 2006 WL 2092445, *2 (the operator of a towing vessel had no standing to seek limitation because "the transfer of control over [the] vessel's possession, command, and navigation" was incomplete as evidenced by the fact that the title owner employed the vessel's crew).  *Cf. Petition of United States*, 259 F.2d at 610 (tanker operator

permitted to seek limitation primarily because it employed the vessel crew and was required to procure the necessary insurance for the vessel); *In re M/V Seaboard Spirit*, No. 11-23841, 2014 WL 3673323, *2-3 (S.D. Fl. July 23, 2014) (a ship manager was permitted to pursue limitation where it hired the crew and insured the vessel); *Archer Daniels Midland Co.*, 2021 WL 1951217, at *4 (terminal that exercised "exclusive control" over the vessel, including employing the crew, defeated motion challenging its eligibility).[16]

### D.    Synergy Marine Bears No Financial Risk

Grace Ocean provides the funds that Synergy Marine uses to manage the DALI.  In addition to a monthly management fee of $10,000,[17] Grace Ocean also pays to Synergy Marine each month a lump sum of working capital to cover the vessel's operating expenses (including wages, repairs, and maintenance), calculated based on an annual budget.[18]  And what's more, Synergy Marine keeps as profit any funds not expended from working capital.[19]  In other words, Synergy Marine has the

---

[16]  Only one case appears to have found a party to be eligible to seek limitation without having employed the crew.  *See In re Ingram Barge Co*., 2007 WL 2088369, at *3.  That conclusion is an anomaly and contrary to the overwhelming weight of authority.

[17]  Synergy Depo., Ex. 4, at 33:14-25.

[18]  Grace Depo., Ex. 3, at 119:21-122:8; Synergy Depo., Ex. 4, at 34:1-35:4.

[19]  In the corporate deposition, Synergy Marine testified that whether it keeps any savings is a decision left to the owner.  Synergy Depo., Ex. 4, at 67:17-70:18.  But Grace Ocean confirmed that Synergy Marine keeps any savings from the DALI's operations:

*opposite* of financial responsibility for the DALI's operations:  Grace Ocean operates the vessel through its employees and pays for all expenses, whereas Synergy Marine has a financial incentive while managing those operations to avoid spending the working capital in order to "keep the difference" for itself.[20]

This financial arrangement likewise precludes Synergy Marine's standing under the Limitation Act.  The Act defines an owner as one who "mans, supplies, and navigates a vessel **at [its] own expense**."  46 U.S.C. § 30501(2) (emphasis added).  That phrasing does not describe Synergy Marine.  In *Birmingham Southeast*, the court denied a bid by the vessel manager (V Ships) for pro hac vice status under the Limitation Act in part because "V Ships did not have any ownership or financial interest in the M/V Merchant Patriot."  124 F. Supp. 2d at 1330.[21]

---

Q       … [I]f Synergy manages the vessel in an efficient way in order to beat the budget, they get to keep the difference?

**A.      They are keeping, yes.**

Q.      Yes.  So, if Synergy manages it efficiently, and [is] able to beat the budget, the difference, the delta, is theirs to keep?

**A.      Yes.**

Grace Depo., Ex. 3, at 122:10-21.

[20]  Synergy Marine manages 14-15 vessels for Grace Ocean.  Between this group, Synergy Marine's accumulated surplus exceeded $5.0 million.  Synergy Depo., Ex. 4, at 78:24-79:6.

[21]  In *Petition of United States,* the Third Circuit found that a vessel operator who was reimbursed by the owner for operating expenses was nevertheless eligible to pursue limitation.  259 F.2d at 610.  But that case involved an operator who exercised "exclusive possession and management of the tanker," including – most importantly – employment of the vessel's crew.  It also bears mentioning that the case was decided prior to the addition of a definitional section into the Limitation Act.

In addition, it is significant that Synergy Marine has no independent exposure to claims.[22]  This is a distinguishing feature from other cases that permit managers to seek limitation.  For example, in *Chesapeake Shipping*, the court permitted a tanker manager to pursue limitation in part because the agreement between the owner and manager specified that only the manager would have liability for the claims at issue.  803 F. Supp. at 873.  Of course, this case presents the 180-degree opposite situation.

Finally, Grace Ocean has provided insurance protection to Synergy Marine by including Synergy Marine as an additional insured on Grace Ocean's policies.[23]  This fact also undermines Synergy Marine's claim to pro hac vice status because a "bareboat charterer typically is required to carry insurance on the vessel as well as protection and indemnity insurance and crew insurance." *Agrico Chemical*, 664 F.2d at 92.  Several of the cases that found a manager eligible to seek limitation were influenced by the fact that it was required to procure insurance for the vessel. *See*, *e.g.*, *Petition of United States*, 259 F.2d at 609 (vessel operator had "exclusive possession and management of the tanker" because – among other factors – the operator employed the vessel crew and was required to procure the necessary

---

[22]  Grace Depo., Ex. 3, at 126:12-127:6; Synergy Depo., Ex. 4, at 38:8-23.

[23]  Grace Depo., Ex. 3, at 80:9-81:4; Synergy Depo., Ex. 4, at 37:9-16.

insurance for the vessel); *Chesapeake Shipping*, 803 F. Supp. at 872-74 (tanker manager's role notably included employing the crew and handling the insurance).

Bearing the risk of loss from vessel operations is a fundamental characteristic of vessel ownership, yet Synergy Marine is relieved from any financial risk associated with the DALI. Without such risk, Synergy Marine cannot claim to be the DALI's owner pro hac vice. *Cf. Matter of Wilson Yachts, LLC*, 605 F. Supp. 3d 695 (D. Md. 2022), *aff'd sub nom. In re Wilson Yachts, LLC*, 22-1766, 2024 WL 1171207 (4th Cir. Mar. 19, 2024) (finding no joint venture between vessel owner and vessel manager where "[n]o provision of the agreement pertains to a sharing of profits and losses; no mention is made of a mutual or shared enterprise over which each shall have managerial rights; and no provision of the agreement purports to extend a proprietary or ownership interest in [the vessel] to [the manager]").

Nor *should* Synergy have access to the Limitation Act as a matter of policy. "Congress designed the Limitation Act to induce the heavy financial commitments the shipping industry requires." *Pickle v. Char Lee Seafood, Inc.*, 174 F.3d 444, 449 (4th Cir. 1999). Synergy Marine has made no financial commitment towards the DALI and bears no financial risk for her operation. Under those facts, Synergy Marine does not fit the profile of companies the Act was designed to benefit.

### E.    Synergy Marine Acts as an Agent

Significantly, the SMA specifies that Synergy Marine performs all of its functions "as agent for and on behalf of [Grace Ocean]," and not as the owner itself.[24] In the famous case of *Matter of Oil Spill by Amoco Cadiz Off Coast of France on March 16, 1978*, 954 F.2d 1279 (7th Cir. 1992), the Seventh Circuit denied the tanker manager's eligibility under the Limitation Act because the controlling agreement "expressly designated [the manager] to be an agent of [the owner], and not the owner itself." *Id*. at 1303.[25]  Likewise here, Synergy Marine should be denied eligibility for the same reason.

### F.    Synergy Marine Lacks Autonomy

Even if the Court were to look past the facts that Synergy Marine did not employ the DALI's crew, bears no financial risk, and acts solely as an agent for Grace Ocean, Synergy Marine's claim to owner pro hac vice status fails on other grounds.  A key inquiry under the Limitation Act is "the degree of autonomy from the actual owners the managers exercise."  *In re CF, LLC*, 2020 WL 557720, at *3.

---

[24]  SMA, Ex. 2, ¶ 1.2.  Synergy Marine acknowledged this fact.  Synergy Depo., Ex. 4, at 29:8-12.

[25]  The *Amoco Cadiz* case is also noteworthy because the ship manager was denied eligibility under the Limitation Act despite being "the party in charge of the operation, maintenance, and repair of the Amoco Cadiz and the selection of its crew."  954 F.2d at 1303.

The contracts between Grace Ocean, Synergy Marine, and Maersk illustrate that Synergy Marine was not managing the DALI autonomously.  *See* part II.B, *supra*.  In their corporate depositions, Grace Ocean and Synergy Marine confirmed that Grace Ocean retained detailed oversight of the DALI.  For example:  Grace Ocean reviews <u>operational reports</u> from the DALI each day at noon,[26] it reviews <u>financial reports</u> for the DALI every month,[27] and it regularly reviews <u>technical reports</u> when provided by Synergy Marine.[28]  Indeed, according to Grace Ocean, its director and chief engineer supervise Synergy Marine's obligation to keep the DALI in class "**every day**."[29]  In *Birmingham Southeast*, the court rejected a manager's bid under the Limitation Act because its "role was not 'autonomous'" given that the manager was "in constant contact" with the owner regarding the status of the vessel.  124 F. Supp. 2d at 1338.  The court reached this conclusion notwithstanding the fact that the manager employed the crew and was responsible for vessel maintenance.

---

[26]  Synergy Depo., Ex. 4, at 73:1-10.

[27]  Synergy Depo., Ex. 4, at 72:20-25.

[28]  Grace Depo., Ex. 3, at 35:18-21, 36:1-7, and 29:2-16; *see also* pp. 33:21-34:4 (Grace Ocean's director and chief engineer oversee technical matters with respect to the DALI).

[29]  Grace Depo., Ex. 3, at 63:1-18, and 54:1-5.  Ship classification societies are non-governmental organizations that establish and maintain technical standards for ship construction and operation.  Certification by a classification society is required for a ship owner to register the ship.  https://en.wikipedia.org/wiki/Ship_classification_society  The DALI maintains its classification through Nippon Kaiji Kyokai ("Class NK"), of Tokyo, Japan.  https://www.classnk.or.jp/hp/en/index.html

*Id.* at 1339 (manager's role "did not rise to the status of *owner pro hac vice*, and [the manager] therefore cannot seek to invoke the protection of the Act").

Grace Ocean's ultimate control over the DALI is also evident through its authority to accept or reject the officers that Synergy Marine proposes for service aboard the DALI.[30] In *Matter of the American Milling Co.*, the Eighth Circuit denied a vessel manager's attempt at limitation in part because the vessel owner retained the right to approve or disapprove officers proposed by the manager.  409 F.3d at 1016-17.  Furthermore, Grace Ocean decided what repair and maintenance would be performed in dry dock and then paid for the work,[31] and it was Grace Ocean's permission—not Synergy Marine's—that was necessary whenever Maersk sought to inspect the vessel.[32]

In addition, Maersk's role as time charterer gives it decision-making responsibility for tasks ordinarily exercised by a vessel owner.  These tasks include soliciting cargo,[33] arranging for and paying for fuel, handling customs, dictating vessel speed, and identifying the DALI's ports of call and schedule.[34]  Stated simply, Maersk—not Synergy Marine—decides where the vessel is going and when.

---

[30]  Grace Depo., Ex. 3, at 131:7-12; Synergy Depo., Ex. 4, at 45:7-46:6.

[31]  Grace Depo., Ex. 3, at 83:15-21; Synergy Depo., Ex. 4, at 62:4-10.

[32]  Grace Depo., Ex. 3, at 72:16-73:5.

[33]  *Id.* at at 67:20-68:1.

[34]  *Id.* at 68:2-5; Synergy Depo., Ex. 4, at 307:12-309:6.

Finally, *Matter of the American Milling* provides a fitting analysis for this case. That lawsuit involved an allision by a towing vessel with a bridge over the Mississippi River in St. Louis. 409 F.3d at 1007. American Milling owned the towing vessel, but the vessel was operated by Winterville Marine Services, which employed the crew. *Id*. at 1007. The vessel was under time charter to East Side River Transportation. *Id*. at 1008. Winterville performed vessel maintenance, but American Milling paid routine expenses. *Id*. In evaluating the Winterville's eligibility to pursue limitation, the court framed the analysis as follows: "The question in general, then, is whether a party who claims the status of an owner exercised sufficient dominion and control over the vessel to be an owner pro hac vice even though neither technically a title-holding owner nor a charterer." *Id*. at 1014. The court concluded that Winterville lacked sufficient dominion and control to qualify under the Act even though Winterville employed the vessel crew. Among the factors influencing the court's decision were these:

- Like Grace Ocean, American Milling (the vessel owner) retained authority to approve the crew.

- Like Grace Ocean, American Milling (the vessel owner) was in daily contact with the vessel.

- Like Grace Ocean, American Milling (the vessel owner) paid the vessel's insurance.

- Like Grace Ocean, American Milling (the vessel owner) paid for major repairs, including drydocking.

- Like Maersk, East River (the time charterer) controlled the vessel's destinations and provided the fuel.

Those facts led the Eighth Circuit to observe that "**Winterville did not have an investment in the ship, and Winterville contractually limited its obligations regarding the ship**." *Id*. at 1017 (emphasis added).  The court thus concluded that Winterville lacked sufficient control to qualify as an owner pro hac vice.  *Id*. Respectfully, based on the analogous facts presented here, this Court should reach the same conclusion regarding Synergy Marine.

### V.    Conclusion

The benefits of the Limitation of Liability Act are restricted to actual owners and owners pro hac vice.  46 U.S.C. § 30501(2); *Norfolk Dredging*, 264 F. Supp. 2d at 267.  Synergy Marine asks the Court to find it an owner pro hac vice even though (i) it does not employ the DALI's crew and is not responsible for the vessel's navigation, (ii) it operates solely as an agent for the vessel owner, (iii) it is subject to daily oversight by the owner and time charterer in areas as varied as whether the DALI is in class, what cargo she carries, what route she follows, and what schedule she keeps, (iv) it has made no financial investment in the DALI and has no financial responsibility for the her operation, (v) it has no financial exposure for claims arising out of the allision, and (vi) it does not provide insurance coverage for the vessel. These substantial limits in Synergy Marine's responsibilities illustrate there has not

been a "complete transfer of possession, command, and navigation of the vessel," which are the characteristics that distinguish an owner pro hac vice. *See Agrico Chemical*, 664 F.2d at 91.

Synergy Marine played a key role in the disaster that unfolded at the Francis Scott Key Bridge, but its role was not that of an owner pro hac vice. Therefore, Synergy Marine lacks standing under the Limitation Act and its petition for limitation should be dismissed.

Respectfully submitted this 29th day of August 2025,

> Margaret Fonshell Ward (04586)
> DOWNS WARD BENDER HERZOG
> & KINTIGH, P.A.
> 1350 McCormick Road
> Executive Plaza 3, Suite 400
> Hunt Valley, Maryland 21031
> mward@downs-ward.com
> T: (410) 584-2800
>
> */s/ R. Keith Jarrett*
> R. Keith Jarrett, T.A. (La. Bar # 16984)*
> David L. Reisman, T.A.*
> Raymond T. Waid*
> Elizabeth B. McIntosh*
> Jessie E. Shifalo*
> Elizabeth A. Strunk*
> LISKOW & LEWIS
> 701 Poydras Street, Suite 5000
> New Orleans, Louisiana 70139-5099
> T: (504) 581-7979
> dreisman@liskow.com

rkjarrett@liskow.com
rwaid@liskow.com
ebmcintosh@liskow.com
jshifalo@liskow.com
eastrunk@liskow.com

Scott S. Partridge*
PARTRIDGE LLC
231 Glendale Drive
Metairie, Louisiana 70001
scott@partridgellc.com
T: (314) 952-4132

William J. Jackson*
Maria F. Pimienta*
KELLEY DRYE & WARREN LLP
515 Post Oak Blvd, Suite 900
Houston, Texas 77027
bjackson@kelleydrye.com
mpimienta@kelleydrye.com
T: (713) 355-5000

Philip D. Robben*
Julia Schuurman*
KELLEY DRYE & WARREN LLP
3 World Trade Center
175 Greenwich Street
New York, New York 10007
probben@kelleydrye.com
jschuurman@kelleydrye.com
T: (212) 808-7800

Andrew W. Homer*
KELLEY DRYE & WARREN LLP
888 Prospect Street, Suite 200
La Jolla, California 92037
ahomer@kelleydrye.com
T: (858) 795-0426

Melissa E. Byroade (31335)

-24-

KELLEY DRYE & WARREN LLP
Washington Harbour, Suite 400
3050 K Street, NW
Washington, DC 20007
mbyroade@kelleydrye.com
T: (202) 342-8400

Mark Lanier*
The Lanier Law Firm
10940 W. Sam Houston Pkwy N
Suite 100
Houston, TX 77064
mark.lanier@lanierlawfirm.com
T: (713) 659-5200

*Admitted *Pro hac vice*
**Attorneys for State of Maryland**

Daniel O. Rose
Kreindler & Kreindler LLP
485 Lexington Avenue
Ste 28th Floor
New York, NY 10017
drose@kreindler.com
Telephone: (212) 973-3414
**Lead Counsel for Personal Injury and**
**Wrongful Death Claimants**

Robert W. Phelan
Cozen O Connor
3 WTC, 175 Greenwich Street
55th Floor
New York, NY 10007
rphelan@cozen.com
Telephone: (212) 908-1274
Facsimile: (866) 850-7490
**Lead Counsel for Property Damage Claimants**

Adam J. Levitt
DiCello Levitt Gutzler LLC
Ten North Dearborn Street
Ste Sixth Floor
Chicago, IL 60602
alevitt@dicellolevitt.com
Telephone: (312) 214-7900
***Lead Counsel for Local Government Claimants***


Todd D. Lochner
Lochner Law Firm, P.C.
7076 Bembe Beach Rd; Suite 201
Mailbox 6
Annapolis, MD 21403
tlochner@lochnerlawfirm.com
Telephone: (443) 716-4400
***Lead Counsel for Private Economic Loss Claimants***

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 29th day of August 2025, a copy of the foregoing pleading was served via the court's CM/ECF system on all counsel of record.

<u>*/s/ R. Keith Jarrett*            </u>

R. Keith Jarrett (La. Bar #16984)