13th October, 2016

ADDENDUM 3 TO APPENDIX 1

TO SHIP MANAGEMENT AGREEMENT (SMA)

1.  As per Clause 13 of the SMA dated 1st September, 2010 between Grace Ocean Pte Ltd (the Owners) and Synergy Marine Pte Ltd (the Managers), the following Vessel has been added:

Name of Vessel: MV Dali

Particulars of the Vessel:  M.V. DALI

IMO No.:        9697428

Call sign:      V5283

Flag:           SINGAPORE

Built:          2014

GRT:            94730

NRT:            52150

2.  All other terms and conditions of the SMA shall remain unchanged.

| Owners:                GRACE OCEAN PRIVATE LIMITED | Managers: |
|---|---|
| Name:           HENG TOCK HIN ANTHONY / DIRECTOR Designation: | Name: UMESH IYENGAR Designation: TECHNICAL MANAGER |



EXHIBIT 90
WIT: Nakagawa
DATE: 4-24-25
MLG, CSR, RPR, CRR, CCR



## AGREEMENT FOR MARINE SERVICES

This agreement made this 1st day of September 2010 between

GRACE OCEAN PTE LTD, a Company incorporated in Singapore, having registered office at 79, Robinson Road, CPF Building, #11-07, Singapore 068897, hereinafter called the "Company", which expression shall, unless repugnant to the context or meaning thereof, be deemed to include its successors and assigns, of the ONE PART;

AND

SYNERGY MARINE PTE LTD, a Company incorporated in Singapore, having registered office at 1, Kim Seng Promenade, #12-01 Great World City East Tower, Singapore 237994 hereinafter called "Manager", which expression shall, unless repugnant to the context or meaning thereof be deemed to include its successors and assigns, of the OTHER PART.

(collectively, referred to as the "Parties" and the "Party" shall refer to any one of them)

WHEREAS

(A)     The Manager is engaged in the business of providing marine services, including manning and technical support, to owners.

(B)     The Company is desirous of appointing the Manager to provide marine services for the vessels set out in Annex 1 attached hereto, and the Manager is agreeable to provide such marine services on the terms set out herein

THE PARTIES HEREBY AGREE AS FOLLOWS:

1.      Appointment

1.1     The Company hereby appoints the Manager and the Manager hereby agree to act as the Managers of the vessels set out in Appendix 1 (collectively the "Vessels" and individually the "Vessel").





1

1.2    Manager shall provide the Services (hereinafter defined) as agent for and on behalf of the Company. The "Services" to be provided hereunder shall comprise of Basic Services and Additional Services.

1.3    "Basic Services" means services relating to Crewing, Technical Management, Purchasing, Accounting, Operations, Shipboard Oil Pollution Emergency Plan, OPA and Assistance with Sale more specifically set out in Annex 1; and "Additional Services" are all services not included in the Basic Services.

1.4    The Company may entrust the Manager to carry out Additional Services as may be considered being necessary by the Manager from time to time. Costs for any such Additional Services shall be mutually agreed between the Company and the Manager.

**2.    Term of Appointment**

2.1    The Appointment shall be effective from the day and year stated above and continuing unless and until terminated pursuant to Clause 2.2 below. Notwithstanding so, the appointment shall be reviewed every 12 months, commencing from the date of execution of this Agreement.

2.2    Subject to clause [4.8], either party may terminate this Agreement by providing the other party with a ninety days written notice in advance.

**3.    Parties' general obligation**

3.1    Subject to Clauses 3.2 and 3.3 below, the Manager shall provide the Services efficiently to the best of its ability in accordance with the policies and instructions determined by the Company and with sound ship management practice and to protect and promote the interests of the Company in all matters relating to the provision of Services and to discharge the Services to the requirements of the law of the flag of the Vessels, relevant port states and relevant marine/national authorities, if any.

3.2    The Manager in the performance of all Services shall be entitled to have regard to their overall responsibility in relation to all Vessels as may from time to time entrusted to their management and in particular, but without prejudice to the generality of the foregoing, the Manager shall be entitled to allocate available supplies, manpower and services in such



2



Petitioner_0010958



manner as the prevailing circumstances the Manager in their absolute discretion consider to be fair and reasonable.

3.3    Manager shall have the authority to take decisions and actions as they may from time to time in their absolute discretion consider being necessary to enable them to perform the Basic Services.

3.4    The Manager shall have the right to subcontract any of their obligations under this Agreement without any further written consent from the Company provided always that the Manager shall remain fully liable for the due performance of the obligation under this Agreement in any event.

3.5    The Company shall pay all sums payable under this Agreement due to the Manager punctually and in accordance with the terms of this Agreement.

4.    **Working capital, Management Fees and Extra funds**

4.1    The Company shall pay the Manager the following fees:

    4.1.1    a monthly management fee as mutually agreed for the Basic Services ("Monthly Management Fee");

    4.1.2    a monthly lump sum working capital, in the manner set out in Annex 2 as full and final payment of the Company's obligation on the all expenses and costs to be incurred whilst carrying out the Basic Services ("Monthly Lump Sum Working Capital"); and

    4.1.3    any additional fees for costs, expenses and fees for any Additional Services.

4.2    The Company acknowledges that

    4.2.1    the Monthly Lump Sum Working Capital is derived from the operating budget, which is an estimate of the expenses to be incurred for the year;

    4.2.2    the actual expenses incurred may vary from the operating budget;



3

 4.2.3   the Monthly Lump Sum Working Capital does not include any compensation, surcharges, interest or penalty for delayed payments levied by the supplier due to the delay in payments, brought about due to the Company not providing the Managers the required funds in time.

4.3   The "Monthly Lump Sum Working capital" and "Monthly Management fee" shall be fully payable by the company to the Manager, on a monthly basis, and in advance for the following month.

4.4   The operating budget shall be subject to an annual review by the Parties. The Manager shall present to the Company with an annual operating budget for the following twelve months in the Managers' standard format or such other form as may be mutually agreed in writing. The budget for this period following the date of signing this agreement is set out in Annex 2. Subsequent annual budgets shall be prepared by the Managers and submitted to the Company in each year in respect of the following year. Should any reviews be required before this period due to major market / currency fluctuations, the parties shall mutually discuss and agree in writing.

4.5   The Company shall indicate to Manager their acceptance and approval of the annual operating budget within 30 days of presentation and failing which the Company shall be deemed to have accepted the Manager's budget.

4.6   If deemed necessary and possible, the Manager shall perform Additional Services or incur any expenses or costs, whether for and on behalf of the Company or on its own account, that is not within the scope set out in Annex 1.  The Company shall pay all sums due to the Managers punctually, for expenses or costs incurred for discharge of all additional services carried out as requested by Managers, time to time, including as may be deemed necessary under absolute discretion of Manager. Manager shall request, as non budget expenses for all such additional expenses or costs incurred. Whenever necessary, the Manager may request for these funds in advance.

4.7   The Manager shall send a fund request for the "Working capital" (Monthly Lump Sum Working Capital plus Monthly Management Fee) to the Company every 24th of the month. This fund request must also separately include any non budgeted costs already incurred by Managers or the non budget costs likely to be incurred in the near future.



4



4.8    Where the Company terminates any Vessel/s from this Agreement, the Company shall also pay equivalent to 1 month of the Monthly Management Fee per vessel/s, as compensation for all expenses and costs incurred or to be incurred; and loss and damages suffered by the Manager as a result. The Company shall also pay all sums due under this clause to the Manager, including sums due Additional Services provided up to the date of the termination.

5.    **The Company's obligations**

5.1    The Company acknowledges that the Monthly Lump Sum Working Capital does not include any compensation, surcharges, interest or penalty payments levied by the suppliers due to the delay in payments or late payment as a result of the Company's failure to provide the Manager with the required funds in time. In the event where supplier levies any amount for compensation, surcharges, interest or penalty payments as a result, the Company hereby expressly authorizes the Manager to settle all such sums from any sums held by them on behalf of Company and undertakes to reimburse the Manager of the same. The Company further acknowledges that if payments to suppliers are regularly made late or if suppliers are not satisfied with Company's credit rating, suppliers may refuse to supply at the prices and on the terms negotiated.

5.2    In event of any late payment to the Manager, the Company shall pay, in addition of the amount due, interest at 6% per annum on the amount due, calculated from the due date to actual payment.

5.3    The Company shall ensure that throughout the period of this agreement:

    5.3.1    at the Company's expenses, all the Vessels are insured for not less than her sound market value or entered for her full gross tonnage, as the case may be for

        (a)    usual hull and machinery marine risks (crew negligence) and excess liabilities;

        (b)    protection and indemnity risks (including pollution risks and Crew Insurances); and



5





(c)    war risks (including protection and indemnity and crew risks) in accordance with the best practice of prudent owners of vessels of similar types, with first class insurance companies, underwriters or associations

(Collectively the "Owners' Insurances");

5.3.2    all premiums and calls on the Owner's Insurances are paid promptly by their due dates;

5.3.3    the Owners' Insurances name the Manager, and subject to the underwriter's agreement, any third party designated by the Manager as joint assured, with full cover, with the Owner's obtaining cover in respect of each of the Owner's Insurances on terms such that neither the Manager nor any such third party shall be under any liability in respect of any premiums or calls arising in connection with the Owners' Insurances; and

5.3.4    written evidence is provided, to the reasonable satisfaction of the Manager, of their compliance with their obligation under this clause within a reasonable time of the commencement of the Agreement, and of each renewal date and, if specifically request, of each payment date of the Owner's Insurances.

**6.    Income Collected and Expenses Paid on Behalf of Owners**

6.1    All moneys collected by the Manager under the terms of this Agreement (other than the Monthly Lump sum Working Capital, Monthly Management Fees and other moneys payable by the Company to the Manager) and any interest thereon shall be held to the credit of the Company in a separate bank account.

6.2    All expenses incurred by the Manager under the terms of this Agreement on behalf of the Company (excluding expenses set out in Annex 2) may be debited against the Company in the account referred to under sub-clause 6.1 but shall in any event remain payable by the Company to the Manager on demand.

**7.    Responsibilities**

 6





7.1     Neither the Company nor the Manager shall be under any liability for any failure to perform any of their obligations hereunder by reason of any cause whatsoever of any nature or kind beyond their reasonable control.

7.2     Without prejudice to clause 7.1, the Manager shall be under no liability whatsoever to the Company for any loss of profit, loss of use of Vessel or any other loss, damage, delay or expense of whatsoever nature, whether direct or indirect, arising out of or in connection with detention of or delay to the Vessels and howsoever arising in the course of performance of the Management Services unless same is proved to have resulted solely from the gross negligence or willful act or omission of Manager or his employee or sub-contractor employed by him in connection with the vessel. The Manager's total cumulative liability for each incident or series of incidents giving rise to a claim or claims shall never exceed a total sum equivalent to US$60,000/-per Vessel.

7.3     Except to the extent and solely for the amount therein set out that the Manager would be liable under clause 7.2, the Company hereby undertakes to keep the Manager and their employees, agents and sub-contractors indemnified and to hold them harmless against all actions, proceedings, claims, demands or liabilities whatsoever or howsoever arising which may be brought against them or incurred or suffered by them arising out of or in connection with the performance of the Agreement, and against and in respect of all costs, losses, damages and expenses (including legal costs and expenses on a full indemnity basis) which the Manager may suffer or incur (either directly or indirectly) in the course of the performance of this Agreement.

7.4     It is hereby expressly agreed that no employee or agent of the Manager (including every sub-contractor from time to time employed by the Manager) shall in any circumstances whatsoever be under any liability whatsoever to the Company for any loss, damage or delay of whatsoever kind arising or resulting directly or indirectly from any act, neglect or default on his part while acting the course of or in connection with his employment and, without prejudice to the generality of the foregoing provisions in this Clause 7, every exemption, limitation, condition and liberty herein contained and every right, exemption from liability, defense and immunity of whatsoever nature applicable to the Manager or to which the Manager is entitled hereunder shall also be available and shall extend to protect every such employee or agent of the Manager acting as aforesaid and for the purpose of all the foregoing provisions of this Clause 8 the Manager is or shall be deemed to be acting as agent or trustee on behalf of and for the benefit of all persons who are or might be their



7





servants or agents from time to time (including sub-contractors as aforesaid) and all such persons shall to this extent be or be deemed to be parties to this Agreement.

8. **Notices**

8.1 Any notices required to be served hereunder shall be in writing, and may be served by sending the same by email or facsimile address (as the case may be) of the party to be served.
graceoceanship@gmail.com
mail@synergymarine.sg

9. **Governing Law and Arbitration**

9.1 This agreement shall be governed and construed solely in accordance with the Singapore laws.

9.2 Any violation of the terms of this agreement shall be intimated in writing by the aggrieved party to the defaulting party. In such case, the defaulting party shall have a time of 30 days to rectify such violation. In case of failure on the defaulting party to rectify the violation within the stipulated period of 30 days or such other extended time as may be allowed by the aggrieved party, the defaulting party shall be liable for such penalties as may be mutually agreed. All disputes and / or controversy related to the matters arising from this Agreement shall, to the extent possible, be resolved by consultation with both parties striving to reach an amicable settlement.

10. **Entire Agreement**

This Agreement including the Annexes constitutes the entire agreement between the Parties and supersedes all previous, representation and agreements whether in writing or orally. This agreement and any related agreements or documents whether stated in this agreement or shall be in English Language.

11. **No Partnership**

This Agreement does not create a joint venture, partnership or association between the Parties and neither Party shall have the right or power to obligate or bind the other to any obligation whatsoever except to the extent expressly agreed in writing by each Party hereto.



8



**12.    Variation Of Agreement**

No variation whether oral or otherwise in the terms of the Agreement shall apply thereto unless otherwise agreed between the Parties in writing and communicated to the addresses provided for notification.

**13.    Addendums to the Agreement**

The Vessels covered under this agreement is set out in Appendix 1 attached thereto. This Appendix forms part of the agreement and may be amended from time to time to include or remove any vessel. All amendments shall be duly executed by both parties and shall form part of this agreement after such execution unless otherwise stated in such amendment.



9



Annex 1:

**Basic Services**

**Crew Employment and Management:-**

The Manager shall provide suitably qualified crew for the vessel as required by the company in which shall include the following functions only:-

(i)   selecting and engaging the vessel's crew / marine personnel, including payroll arrangements, pension administration and insurances for the crew.;

(ii)  ensuring that the applicable requirements of the law of the flag of the vessel are satisfied in respect of manning levels, rank, qualification and certification of the crew / marine personnel and employment regulations.

(iii) ensuring that all the members of the crew / marine personnel have passed a medical examination with a qualified doctor certifying that they are fit for the duties for which they are engaged and are in procession of valid medical certificates issued in accordance with appropriate flag state requirements. In absence of applicable flag state requirements the medical certificates shall be dated not more than three months prior to the respective crew members leaving their country of domicile.

(iv)  ensuring that the crew / marine personnel shall have a reasonable command of English language of a sufficient standard to enable them to perform their duties safely;

(v)   arranging transportation of the crew, including repatriation for regular crew engagements and disengagements (medical repatriations and any unforeseen / other non routine repatriations to be arranged as additional services);

(vi)  on board training of crew; arranging Crew training in accordance with the Managers' policies but always in compliance with STCW, records of such training being maintained in the Manager's standard format.

(vii) shall arrange for the supply of provisions & victualling for the vessels assigned.

(viii) operating the Managers' Drug and Alcohol Policy;



10



Petitioner_0010966



(ix) supervising the efficiency of the Crew and using the Manager's standard crew appraisal system (written or electronic) and administration of all other Crew matters such as planning for the manning of the Vessel;

(x) conducting union negotiations and making agreed payments to unions; enter into Collective Bargaining Agreement with the National Unions / ITF on behalf of the ship owners as required / as applicable.

(xi) shall provide the service of delivering funds requested by the crew employed by company, whether recruited by it or not, as and when so instructed by Company as per the process mutually agreed upon between the two parties.

**Crew Claims \*\*** (at actual costs not included in vessel's Lump sum working capital / Operating budget);

The Manager will prepare and process all Crew Insurance claims.
The final claim will be passed to the Company for presentation to Company's P & I Club unless the Company requests the Manager to present directly to the Company P&I Club.

**Technical Services:-**

The Manager shall:-

(i) make available competent personnel, as may be required by Company, to supervise the maintenance and co-ordinate daily operations with shipboard management team and general efficiency of the vessel;

(ii) conduct inspections on vessels condition, compliance with procedures, safety, security, quality and environment.

(iii) With prior notice to the company as is practicable, visits to the Vessel by superintendents (other than cargo superintendents) or other staff of the Managers for up to 10 days in any calendar year (or pro rata for part of a calendar year) for vessels under 15 years of age and 20 days in any calendar year for vessels over 15 years of age.

 11





(iv) assist Company in making arrangements and supervision of dry docking, repairs, alterations and the upkeep of the vessel to the standards required by Company or the respective owners of the vessels, provided that Manager shall be entitled to incur the necessary expenditure to ensure that the vessel will comply with the law of the flag of the vessel and of the places where the vessel trades and sails, and all requirements and recommendations of the classification society;

(v) either directly or through agents, arrange for the supply of necessary victualling, stores, spares, provisions, lubricating oils and usual services for the Vessel, to enable routine maintenance of the vessel & her equipments. To enable the Managers to arrange such supplies on the most advantageous terms, the Managers shall be entitled to join with other parties in making arrangements for bulk purchase.

(vi) arrange for scheduled statutory class annual & machinery surveys; intermediate, specials and docking surveys;

(vii) develop, implement and maintain Safety Management System (SMS) in accordance with the ISM Code.

(viii) at soonest report to the Company any trouble which may affect the seaworthiness of the vessel, or may cause stoppage / delay of the vessel, or may cause any claim to the Vessel/Company.

Purchasing:-

The Manager shall:-

(i) either directly or through agents, arrange for the supply of necessary victualling, stores, spares, provisions, lubricating oils and usual services for the Vessel, to enable routine maintenance of the vessel & her equipments. To enable the Managers to arrange such supplies on the most advantageous terms, the Managers shall be entitled to join with other parties in making arrangements for bulk purchase.
(ii) best endeavour to economize all the expenses for management as much as possible.

Accounting Services:-

The Manager shall-



12





(i)   maintain the records of all costs and expenditure incurred hereunder as well as data necessary or proper for the settlement of accounts between the parties;

(ii)  establish an accounting system for the Vessel and supply regular reports in accordance therewith in the Managers' standard format or such other form as may be mutually agreed in writing with the Company.

(iii) present to the Company annually a budget (Monthly operating budget plus the Management fee) for the following twelve months in the Managers' standard format or such other form as may be mutually agreed in writing. The budget for the period following the date is as mutually agreed and the Monthly Management Fee set out in Annex 2. Subsequent annual budgets shall be prepared by the Managers and submitted to the Company in each year in respect of the following year, or if required earlier under the provisions of clause 4.5

**Operations & Miscellaneous:-**

As required by the Owners, the Managers shall, as agents for the Owners, provide the following functions:-

(i)   monitoring voyage instructions and liaising as appropriate with the Owners;

(ii)  appointment of agents (at actual costs not included in vessel's Lump sum working capital / Operating budget);

(iii) arrangement of surveying of cargoes. (at actual costs not included in vessel's Lump sum working capital / Operating budget);

(iv)  arrangement of vetting, pre-vetting, and other 3rd party inspections. (at actual costs not included in vessel's Lump sum working capital / Operating budget);

**Commercial:-**

The Manager will provide the aforementioned services to Company and shall ensure that the data and other details should reach the office of Company as given herein or any such other places outside Singapore, as Company may require. The information and services may be given personally, or by facsimile, e-mail, courier, telephone, telexes etc.



13





The services which are required to be rendered by Manager personally may be rendered at the office of the Company or on any ship outside Singapore, by sending personnel from Singapore, or Philippines and for by sending information / data by way of correspondence, from the Manager's office in Singapore to Company in its office at 1, Kim Seng Promenade, #12-01, Great World City East Tower, Singapore — 237994, or at any other places by any of the modes specified in the preceding paragraph.



14





Annex 2:

The Company shall pay the Manager a Monthly Lump Sum Working Capital as mutually agreed and the Monthly Management Fee as listed below in Table 1 on a monthly basis in advance.

Table 1:

| Sn | Vessel Name | Monthly Management Fee (US Dollars) |
|---|---|---|
| 1 | APL FLORIDA | 10,000 |
| 2 | APL CALIFORNIA | 10,000 |
| 3 | APL SPAIN | 10,000 |
| 4 | APL IRELAND | 10,000 |
| 5 | MOL PRESENCE | 10,000 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

Excluded costs and expenses shall include (but not limited to) the following:-

(i)     repairs, refurbishment or modifications, including those not covered by the guarantee of the shipbuilder or by the insurance covering the vessels, resulting from maritime accidents, collisions, other accidental damage or unforeseen events.

(ii)    any improvement, upgrade or modification to ships structure and original ships fittings or replaced and installation of vessel equipments, aboard any vessel.

(iii)   any improvement, upgrade or modification to, structural changes with respect to installation of new equipments aboard any vessel that results from a change in, an introduction of a new or, a change in interpretation of, applicable laws, at the recommendation of the classifications society or law of the flag of the vessel or otherwise.

(iv)   any increase in administrative costs and expense, crew employment expenses or vessel operating expenses resulting from the introduction of a new, or a change in interpretation of applicable laws, or resulting from early termination of charter of any vessel.

(v)    any increase in administrative costs and expenses, crew employment expenses or vessel operating expenses resulting from the any improvement, upgrade or modification needs on the vessel.

(vi)   any increase in administrative costs and expenses, crew employment expenses or vessel operating expenses resulting from change in trading pattern. Such a situation will result in a budget review by the managers and fresh approval and agreement of the Monthly operating budgets.

15





(vii)   taxes, dues and fines imposed on the vessels due to operation of the vessels.

(viii)  With prior notice to the Company, visits to the Vessel by superintendents or other staff of the Managers for up to 10 days in any calendar year (or pro rata for part of a calendar year) for vessels under 15 years of age and 20 days in any calendar year for vessels over 15 years of age. (No fee applicable, however, expenses and costs to be charged at actuals).

(ix)    Managers shall be entitled to receive additional remuneration for time, including travel time (charged at US$ [200] per man per) for any time of over the number of days per year (as specified above) that the personnel of managers will spend for attendance on the vessels in connection with the vessel inspections, repairs, dry-docking, pre-vetting and vetting of the vessels by any charterers, or any attendance to the vessels in connection with inspection of the vessel by any third party. In addition owners shall pay any reasonable travel and accommodation expenses of the manager's personnel incurred in connection with such additional time spent for all attendances.

(x)     all dry docking & repair related non routine costs, including spares, stores, paints, agency and other services for docking & repairs.

(xi)    all occasional class surveys.

(xii)   appointment of agents, agency disbursements for vessel & owner's matters.

(xiii)  arrangement of surveying of cargoes.

(xiv)   arrangement of vetting, pre-vetting, and other 3rd party inspections.

(xv)    machinery breakdown and related services, spares and stores, consultancy costs.

(xvi)   arrangement of periodic analysis of the bunker fuel.

(xvii)  passenger carriage.

(xviii) cargo hold, cargo tank cleaning by ship staff / or by shore labour - or such allowances / bonus.

(xix)   fresh water supply and launch hire.

(xx)    any costs, liabilities, expenses similar to those set out in clauses (i) through (xix) above that were not reasonably contemplated by Managers as being encompassed by or a component of the operating budget, or as part of "basic services" at the time of determining the same.

 16



Petitioner_0010972



IN WITNESS WHEREOF the parties hereto have hereunto set and subscribed their respective hands the day and year first herein above written.

SIGNED AND DELIVERED
by the within named Lamma Island Limited
By its Director Mr. Anthony Heng
In the presence of _____


SIGNED AND DELIVERED
by the within named Synergy Marine Pte Ltd
By its Director Mr. Rohit Banta
In the presence of _____

17

Appendix 1:

List of Vessels:

| Sn | Vessel Name |
|----|-------------|
| 1  | MOL Presence |
|    |             |
|    |             |

16

Petitioner_0010974



Addendum 2 to Appendix 1 [page 18] of the Agreement between Grace Ocean Pte Ltd and Synergy Marine Pte Ltd
dated 01st day of September, 2010.

List of Vessels [as of date 09.01.2012]:

| Sn | Vessel Name |
|----|-------------|
| 1  | MOL Presence |
| 2  | OOCL Kaohsiung |
| 3  | Canada Express |
|    |             |
|    |             |

18 (b)

1st Jan 2014

**Addendum 4 to Annex 2 [page 15 and 16] of the Agreement between Grace Ocean Pte Ltd and Synergy Marine Pte Ltd dated 1st September, 2010.**

The Company shall pay the Manager a Monthly Lump Sum Working Capital as mutually agreed and the Monthly Management Fee as listed below in Table 1 on a monthly basis in advance.

Table 1:

| Sn | Vessel Name | Monthly Management Fee (US Dollars) |
|----|-------------|-------------------------------------|
| 1 | MOL PRESENCE | 10,000 |
| 2 | OOCL KAOHSIUNG | 10,000 |
| 3 | OOCL ITALY | 10,000 |
| 4 | OOCL KUALA LUMPUR | 10,000 |
| 5 | OOCL DUBAI | 10,000 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

15 (d)

Petitioner_0010976

Dated: 31st July, 2013

## ADDENDUM NO.2

### To

### SHIP MANAGEMENT AGREEMENT
### DATED 1st SEP 2010

### FOR

### M/V "MOL PRESENCE / OOCL DUBAI / OOCL KUALA LUMPUR / OOCL ITALY/ OOCL KAOHSIUNG"

With reference to the captioned Ship Management Agreement concluded between **Grace Ocean Pte Ltd. (as the Owners)** and **Synergy Marine Pte Ltd (as the Managers)**, it is this day mutually agreed that:

1. The Ship Management Agreement is in force and to be effected consecutive one (1) year from the date of **August 1, 2013** and/or until written notice to be given each other party in accordance with the terms and conditions of the Agreement.

All other terms and conditions and also exceptions on the Standard Ship Management Agreement remain unchanged and in full force.

Addendum No. 1 being made, mutually signed and possessed by both parties.

The Owners:

Grace Ocean Pte Ltd

The Managers:

SYNERGY MARINE PTE LTD