**UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
NORTHERN DIVISION**

| | |
|---|---|
| In the Matter of the Petition<br><br>of<br><br>GRACE OCEAN PRIVATE LIMITED, as Owner of the M/V DALI,<br><br>And<br><br>SYNERGY MARINE PTE LTD, as Manager of the M/V DALI,<br><br>for Exoneration from or Limitation of Liability | Docket No. JKB 24-cv-941<br><br>*IN ADMIRALTY* |

**REPLY MEMORANDUM IN SUPPORT OF
CLAIMANTS' MOTION FOR SUMMARY JUDGMENT
TO DISMISS SYNERGY MARINE'S PETITION FOR LIMITATION
<u>DUE TO ITS LACK OF STANDING</u>**

MAY IT PLEASE THE COURT:

Petitioners argue there are facts in dispute that preclude summary judgment. But a careful comparison of Claimants' Memorandum (ECF 605-1) and Petitioners' Opposition (ECF 616) reveals that the number of actually-disputed facts are few, and none of them are sufficiently material to foreclose summary judgment.

Instead, the facts that are admittedly undisputed demonstrate that Synergy does not qualify as an "owner pro hac vice," and that Claimants' Motion for Summary Judgment (ECF 605) must be granted. Moreover, because the facts are undisputed, they pose a judicial (legal) question this Court should decide now.[1]

> There is serious question whether the [Limitation] Act retains vitality within the sphere in which it has traditionally applied; that is, of course, a matter for the legislature, not the courts. ***Whether to extend the Limitation Act to a class of cases to which it has never applied is, however, a judicial question***[.]

*Univ. of Texas Med. Branch at Galveston v. U. S.*, 557 F.2d 438, 454 (5th Cir. 1977) (emphasis added).

---

[1] Petitioners' Opposition argues this Motion ought to be denied or deferred for "equitable" reasons so that the concursus can be maintained. (ECF 616, at 8-9, and 20.) First, the equities actually favor the Claimants. After all, Synergy is the party seeking to avoid its just debts by invoking a statute that was never intended to protect a company in its position. Second, Petitioners ignore the standard for summary judgment, which mandates a ruling when the relevant facts are undisputed. And third, Petitioners forget this Court expected to entertain and rule on this Motion: "[T]he Court does expect to entertain and resolve a Rule 12 motion and/or a Rule 56 motion to dismiss the Petition as to Synergy Marine Pte Ltd., as Manager of the M/V Dali." (ECF 438, at 6.)

### I. The undisputed facts compel summary judgment because Synergy lacks the key attributes of an owner pro hac vice.

Despite its lengthy discussion of case law and carefully-drafted, post-hoc Declarations, Petitioners' Opposition largely misses the point. Claimants have already acknowledged that *some* vessel managers will qualify as owners pro hac vice under the Limitation Act. And Claimants have likewise acknowledged most of the facts that Synergy trumpets in its briefing.

The basis of this Motion is that Synergy is nonetheless missing key attributes of ownership – all of which are admitted by Synergy – that would be necessary for it to qualify as an owner pro hac vice. In other words, this Court need not parse the accuracy of Synergy's self-promotional description of its role. This Court should grant summary judgment based on the undisputed facts demonstrating how Synergy *differs* from other managers who were granted standing under the Limitation Act.

### A. Undisputed Fact #1: Synergy made no investment in the DALI and bears no financial risk due to Grace Ocean's indemnity.

Petitioners simply fail to engage on this centerpiece of Claimants' legal argument. Repeatedly, Petitioners cite authority for the proposition that status under the Limitation Act turns on the possibility of being subjected to a shipowner's liability. (*E.g.*, ECF 616, pp. 10-11, 18, 19, 29.)[2] Yet the unrefuted evidence shows

---

[2] *E.g.*, with emphases added: *Leco Corp. v. Grams,* 1992 WL 158875, at *3 (6th Cir. 1992) ("Most courts have settled on the notion that an owner, for purposes of the Limitation Act, is

that Synergy's situation does not fit those facts. The Ship Management Agreement between Grace Ocean and Synergy provides that the former will defend and indemnify the latter, and Petitioners' corporate testimony confirmed that Grace Ocean is indemnifying Synergy in this case such that it has no independent exposure to claims arising from the allision. (*See* ECF 605-1, at 12-13.) Even as Petitioners contend that the "correct question is whether the manager is . . . ***taking on potential liability akin to what an owner would have***" (ECF 616, at 35 (emphasis added)), they do not challenge the evidence establishing that *this* manager is relieved from any such potential liability.

This undisputed fact, by itself, distinguishes Synergy's situation from other cases.³ That is not surprising given the intent of the Limitation Act. As this Court

---

one who has the type of relationship to the vessel that **could subject the person to liability as a shipowner**."); *Dick v. U.S.,* 671 F.2d 724, 727 (2d Cir. 1982) ("As a general rule, **one who is subjected to a shipowner's liability** because of his exercise of his dominion over a vessel should be able to limit his liability to that of an owner."); *Matter of Seacor Marine, LLC,* No. 11-108, 2011 WL 13579651, at *4 (E.D. Tex. Nov. 2, 2011) ("'The rule that has emerged . . . appears to be that, **if the petitioner may be held liable** because of his ownership or control of the vessel, he can maintain a petition to limit his liability.'").

³ Synergy pulls excerpted contract language from the PACER record of *In re M/V Seaboard Spirit*, 2014 WL 3673323 (S.D. Fla. July 23, 2014), to suggest that the vessel owner in that case (which was a seemingly-related corporate entity) promised to indemnify the manager. (ECF 616, at 18, n. 18.) But the effect and import of indemnification form no part of the *Seaboard* court's analysis, presumably because neither party argued the issue. Rather, the decision there turned on traditional factors, such as "(a) manning the vessel; victualing and insuring the crew, (b) providing and supervising maintenance and repairs to the vessel, (c) arranging for the supply to the vessel of various parts and services, and (d) maintaining appropriate and adequate financial records." *Id.* at *2 (cleaned up). As far as Claimants are aware, this Court would be the first to consider whether admitted and ongoing indemnification affects a manager's eligibility for limitation.

-3-

noted, "Congress's purpose in enacting the Act 'was to encourage shipbuilding and to induce the investment of money in [the maritime] industry by'" providing a means by which innocent vessel owners could shield their financial exposure to the value of their investment. *Matter of Grace Ocean Private Ltd.*, 765 F. Supp. 3d 461, 466 (D. Md. 2025).

Tellingly, Petitioners' Opposition never justifies Synergy's quest for standing by suggesting its eligibility would be consistent with the goals of the legislation. That's because Synergy indisputably lacks the attributes that motivated the enactment of the statute: (1) it has made no financial investment in the DALI and, (2) thanks to Grace Ocean's indemnity, it faces no financial risk from the vessel's operations. Said differently, Synergy does not need access to the Limitation Act to shield its investment or its exposure; it has obtained equivalent (even superior) protection by means of its contractual arrangement with Grace Ocean.[4]

These facts also foreclose Synergy's ability to advocate for a broad interpretation of the Limitation Act. Petitioners' Opposition notes the Supreme Court's 1929 observation that the word "owner" should be interpreted in a "liberal way." (ECF 616, at 10, citing *Flink v. Paladini*, 279 U.S. 59, 63 (1929).) But the

---

[4] Indemnity is superior to limited liability under the Limitation Act because the latter still permits recovery to the value of the vessel and pending freight (46 U.S.C. § 30523(a)), which here is said to be about $43 million (ECF 1, at ¶20).

Supreme Court actually held that the word "owner" should be interpreted "in a broad and popular sense *in order not to defeat the manifest intent* [of the limitation statute]." *Id*. (emphasis added).[5]  Since extending the benefits of the Limitation Act to Synergy would be inconsistent with Congress's intent, Synergy cannot justify a liberal interpretation of the statute for its benefit.

Given Synergy's tacit concession, extending eligibility to Synergy would needlessly expand the scope of the Act without promoting Congress's objectives. Such a result is particularly unwarranted for a statute that has already been criticized as "hopelessly anachronistic." *Cf. Univ. of Texas Med. Branch at Galveston*, 557 F.2d at 441.[6]  The financial arrangement between the DALI's manager and its owner is an independent reason to grant Claimants' Motion and deny Synergy's Petition.

### B. <u>Undisputed Fact #2</u>: The DALI's crew are employees of Grace Ocean, not Synergy.

Petitioners admit that "Grace Ocean is the contractual employer of the crew" and that "Grace Ocean paid the crew."[7]  This factor has proven dispositive in some

---

[5] *See also In re Barracuda Tanker Corp.*, 281 F. Supp. 228, 232 (S.D.N.Y. 1968 ("the courts have always construed the term 'owner" in Sect. 183 very broadly *in order to effectuate the congressional inten*t") (emphasis added).

[6] Courts have declined judicial expansion of the Limitation Act when doing so would shift losses to the government and its taxpayers. *Univ. of Texas Med. Branch at Galveston v. United States*, 557 F.2d 438, 455 (5th Cir. 1977) (declining to subject the federal government's recovery of wreck removal expenses to the Limitation Act when that would "shift the losses caused by their negligence to the United States and, ultimately, its taxpayers.").

[7] ECF 616-5, at ¶ 13; ECF 616, at 17.

cases, and is heavily weighted in others. For example, in *In re David & Colleen, Inc.*, when the vessel operator sought ownership status but disclaimed a bareboat charter, the court ruled: "In this case, Mr. LeBoeuf has admitted that [the owner], not [the operator], **employed the vessel's crew. Accordingly, the Court finds that [the operator] is not entitled to limitation of liability under the Act**[.]" No. 04-1176, 2006 WL 2092445, at *2 (S.D. Tex. July 26, 2006), *aff'd*, 234 Fed. Appx. 211 (5th Cir. 2007) (emphasis added). And in *Archer Daniels Midland Co. v. M/T AMERICAN LIBERTY*, No. 19-10525, 2021 WL 1951217, at *4 (E.D. La. May 14, 2021), a vessel manager "survive[d] summary judgment" by establishing "that it has exclusive control over the [vessel], as it employs all members of the crew …."

Since Synergy did not employ the DALI's crew, its briefing highlights its relationship to the crew in other ways, focusing predominantly on its role in their recruitment and training. (ECF 616, at 17-18.) But as to the recruitment point, Synergy does not perform that function; an affiliate does.[8] And as to the suggestion of a relationship between Synergy and the crew, Synergy's deposition testimony has emphasized the independence of these Grace Ocean employees: "**In our jargon, the master, the chief engineer, they are the ship managers on board.** . . . We do

---

[8] *See* Synergy's Response to Claimants' Amended Interrogatories, at Int. 20 ("Synergy Maritime Recruitment Services Pvt Ltd (India) . . . provides candidates to fill positions on Synergy-managed vessels"). Excerpts attached as Ex. A.

help out the master, we do help out with whatever, you know, regulatory things he needs of assistance.  **We do not manage them or manage his work per se.  We do not do that**."[9]  So, the portrait that Petitioners paint in their brief is not realistic.

The line Synergy is trying to walk is razor thin.  It claims to operate and control the vessel (ECF 616, at 14-17).  Yet it does not employ the crew who run the vessel on a day-to-day basis, and it does not even manage them.  In fact, Petitioners' Opposition notes that "the Master of the Vessel always is in control of the Vessel," (ECF 616, at 19).  A company cannot legitimately claim owner pro hac vice status where it neither employs the persons who are in control of the vessel nor manages their work.

### C. Additional Undisputed Facts.

Petitioners seek to discount the legal significance of other key facts, but they do not dispute the facts themselves.  The admitted facts include: (i) Synergy does not insure the DALI (ECF 616, at 33); (ii) Synergy works as Grace Ocean's agent (ECF 616, at 34), and (iii) Synergy incurs no expenses associated with the DALI's management (ECF 616-6, at ¶21).  Each of these facts has been among the determining factors in prior cases or have been drawn from the statute itself.  *See,*

---

[9]  Ex. B, 235:9-10, and 235:25-236:3 (emphasis added) (Testimony of Synergy's Marine Superintendent Captain Melroy D'Souza).  *See also* Ex. C, 162:13-16 ("I'm not the one who's onboard to tell the master, do this, tell the chief engineer to do this.") (Testimony of Synergy's Managing Director, Captain Ajith Kumar).

*e.g., Matter of Petition of United States,* 259 F.2d 608, 609 (3d Cir. 1958) (vessel "operator" was permitted to seek limitation in part because it employed the crew and procured insurance for the vessel); *Matter of Oil Spill by Amoco Cadiz Off Coast of France on March 16, 1978,* 954 F.2d 1279, 1303 (7th Cir. 1992) (manager denied the right to seek limitation because it was "an agent of [the owner], and not the owner itself"); and 46 U.S.C. § 30501(2) (defining an owner under the Limitation Act as a "charterer that mans, supplies, and navigates a vessel *at the charterer's own expense or by the charterer's own procurement*") (emphasis added).

    In sum, Synergy invites the Court into uncharted waters by seeking limitation while conceding that it operates solely as Grace Ocean's agent, has not invested in the DALI, does not bear a shipowner's risk of liability, does not employ the vessel's crew, does not manage that crew, and does not incur any costs of vessel operation (including for insurance).  To quote the words of Justice Black, "[j]udicial expansion of the Limited Liability Act at this date seems especially inappropriate." *Maryland Cas. Co. v. Cushing*, 347 U.S. 409, 437 (1954) (Black, J., dissenting).  This Court should adopt Justice Black's cautionary note and find Synergy ineligible for the Limitation Act given the undisputed set of facts that exist here.

## II. The Court may grant summary judgment by crediting proper evidence over Petitioners' evolving narrative.

If the Court thinks it necessary to evaluate whether Synergy's management role actually exerts sufficient dominion and control over the DALI to survive summary judgment, then it should prioritize Petitioners' testimony rather than their briefing and supporting Declarations.[10]

For example, Petitioners offer a Declaration from Captain Ajith Kumar, the Managing Director of Synergy. His Declaration focuses on tasks that Synergy performed for the DALI to the exclusion of Grace Ocean.[11] But in numerous passages, Capt. Kumar uses the word "manage" or a variant to describe Synergy's role vis-à-vis the vessel: *see* ECF 616-6, at ¶2 (Grace Ocean "contracted with Synergy for Synergy *to manage* the M/V Dali"), at ¶5 (Synergy Marine provides "technical *management* services"), at ¶6 (Synergy Marine is the "ISM *Manager* of

---

[10] Claimants have attached excerpts from depositions of Synergy's management witnesses to respond to Petitioners' new declarations from Oliver Espino and Ajith Kumar as well as Petitioners' related arguments. This evidence is not considered new since "it is submitted in direct response to proof adduced in opposition to a motion.'" *Unite Here Health v. Gilbert*, 2015 WL 5766511, at *7 (D. Nev. Sept. 30, 2015). Moreover, the Court has discretion to review evidence submitted with a Reply. *Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 226 (2nd Cir. 2000). Plus, this evidence presents no surprise to Petitioners since all of it is testimony from Synergy's own employees.

[11] *See, e.g.*, ECF 616-6, at ¶11 ("Grace Ocean does not have access to the PMS"), ¶12 ("Grace Ocean does not have access to ShipPalm"), ¶13 ("Grace Ocean does not conduct its own vessel inspections"), ¶14 ("Synergy, and not Grace Ocean, tracks the need for spare parts and maintenance"), ¶15 ("Synergy, and not Grace Ocean, is responsible for maintenance and repairs"), and ¶17 ("Synergy, and not Grace Ocean, is entirely responsible for … third-party inspections").

the Vessel"), at ¶7 (to "assist in the *management* of the Vessel, Synergy Marine relies on proprietary and licensed software"), and at ¶8 ("[w]hen seafarers enter into a contract to sail on a Synergy-*managed* vessel . . .") (emphasis added).

To understand what Capt. Kumar meant by the word "manage," his Declaration should be contrasted with his sworn deposition testimony.[12] During his individual deposition, Capt. Kumar – who also served as Synergy's corporate representative in a second deposition – testified that "**[w]e assist the vessels,**" "**we don't practically manage the vessel.**" Ex. C, 160:5, and 162:12-13 (emphasis added). And in reference to the Grace Ocean employees, he said "**[w]e work as support to them**." Ex. C, 159:4-7 (emphasis added). Capt. Kumar stood by those characterizations when specifically pressed on the point:

> Q. You said that the ship management team provides assistance to vessels in the DOC. Did I get that right?
>
> **A. Correct.**
>
> Q. Really what the ship management team does is manage the vessels in its DOC, correct?
>
> **A. We assist the vessels in our DOC.**
>
> . . .
>
> Q. And the ship management team, as its name suggests and as your manuals state clearly --
>
> **A. Yes.**

---

[12] Affidavits (or declarations) submitted in opposition to a motion for summary judgment that contradict prior deposition testimony do not create an issue of fact. *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984); *United States v. Blythe*, 658 F. Supp. 3d 272, 275 (D. Md. 2023) (Bredar, J.) (same).

-10-

> Q. -- manages the vessel? That's what it says, right?
>
> **A. Yeah. Manages the vessel means how we manage the vessel. From sitting at the office, we give all the necessary supports to the vessel, <span style="color:red">and we don't practically manage the vessel</span>. I'm not the one who's onboard to tell the master, do this, tell the chief engineer to do this.**

Ex. C, 159:23-160:6, and 162:3-16.

Capt. Kumar was not the only management-level employee to describe Synergy's role in similar fashion. Time and again, Synergy's shoreside personnel parroted this party line by describing the company's role as something more like a "helper" than a manager.

### Marine Superintendent Captain Melroy D'Souza

> Q. But you are a ship manager; correct?
>
> MR. BELKNAP: Objection.
>
> **THE WITNESS: No, sir, I'm -- sorry. <span style="color:red">I'm not a ship manager, definitely not</span>.**
>
> BY MR. REISMAN:
>
> Q. Well, what are you?
>
> **A. <span style="color:red">We assist the vessel. We do not manage the vessel</span>. In our jargon, the master, the chief engineer, they are the ship managers on board.**[13]
>
> . . .
>
> **A. . . . but, sir, you are implying I am a manager. <span style="color:red">I'm definitely not a ship manager. I mean, we do not manage the vessel</span>. We do help out the master, we**

---

[13] Of course, Petitioners have acknowledged that the master and chief engineer – the so-called "ship managers on board" – are not Synergy employees.

-11-

> do help out with whatever, you know, regulatory things he needs of assistance. We do not manage them or manage his work per se. We do not do that.
>
> Q. That's your position with respect to your job as a marine superintendent --
>
> **A. Yes.**
>
> Q. -- is that you're not managing the ship.
>
> **A. No, definitely not, sir.**

Ex. B, 235:2-10, and 235:22-236:8.

### Marine Manager and DPA, Captain Bellam Ravi Sekhar

> Q. . . . you don't agree that the shoreside management team manages the vessels?
>
> **A. Correct, sir.**
>
> Q. That's your testimony?
>
> **A. Correct.**
>
> Q. So the Ship Management Team doesn't manage the vessels. Is that your testimony?
>
> **A. Yes, sir.**
>
> MR. BENNETT: Just note my objection. You can answer.
>
> **THE WITNESS: They assist the vessel.**

Ex. D, 209:6-17.

### Marine Superintendent Captain Navdeep Singh Bhalla

> Q. I'm not sure I understand your answer. It's – I'm not trying to be smart, but it seems like a pretty straightforward answer. Was that a vessel you managed or not?
>
> **A. I managed that vessel, sir.**
>
> Q. You did --

> A. **Not managed, assisted that vessel, sir.**
>
> Q. Oh, okay. You assisted the management of that vessel; is that right?
>
> A. **I assisted the vessel, sir.**
>
> Q. Okay. What vessel was that?
>
> A. **Dali.**

Ex. E, 316:12-23.

In fact, one of the Synergy managers testified that the DALI's owner (Grace Ocean) is the actual manager of the vessel.

### Assistant Technical Manager Jayesh Panayanthatta

> A. **During that time of the incident, I was managing Cezanne, Maersk Saltoro -- I was assisting Cezanne, Maersk Saltoro and Yeah, there was one Maersk Acadia, and I was involved in taking out a few small container vessels.**
>
> Q. I saw when you answered my question you started to say "manage" and then you corrected yourself to say "assist." Why did you do that?
>
> A. **I am assisting basically.**
>
> Q. You don't think yourself -- you don't consider yourself a manager?
>
> A. **No.**
>
> …
>
> Q. It doesn't mean that you're the manager. So, tell me who do you think is the manager.
>
> A. **It's the owners.**
>
> Q. Who?
>
> A. **It's -- we are just assisting the vessel for owners.**
>
> Q. For the owner?

>      **A. Yes.**

Ex. F, 43:9-21, and 44:21-45:3.

Obviously, Synergy's description of its role varies with the circumstances. In deposition, in a transparent attempt to distance Synergy from responsibility for its management of the DALI, all its shore-based employees – including Capt. Kumar – uniformly disclaimed a management role altogether, insisting they only "assist" the vessel. Yet now, facing a motion that seeks to preclude it from taking advantage of a statute designed to protect "owners," Synergy's briefing embraces its management role, boasting of "a significant degree of autonomy." (ECF 616, at 17.)

Regardless of what Synergy means by the word "manage," it is clear from the testimony of its witnesses that the word does not encompass supervision of the DALI's crew. That fact in itself demonstrates that Synergy's managerial role was not "autonomous." *Cf. In re Complaint of Chesapeake Shipping, Inc.,* 803 F. Supp. 872, 874 (S.D.N.Y. 1992). Rather, the undisputed evidence paints a picture of a company that carefully attempts to limit both its responsibility (by distancing itself from the crew) and its liability (by insisting on indemnity for third-party claims based on the crew's conduct). Those facts do not fit the definition of a vessel "owner" nor of an "owner pro hac vice."

## III. Conclusion

Resolution of Claimants' motion turns on whether the Court will extend the definition of an owner pro hac vice in the Limitation Act to a self-proclaimed "assistant" that lacks a shipowner's financial exposure to liability and does not even employ the crew it "assists." Allowing Synergy to seek limitation on these undisputed facts is unwarranted and inconsistent with the intent of Congress. Claimants' Motion should be granted.

Respectfully submitted this 14th day of October 2025,

> Margaret Fonshell Ward (04586)
> DOWNS WARD BENDER HERZOG
> & KINTIGH, P.A.
> 1350 McCormick Road
> Executive Plaza 3, Suite 400
> Hunt Valley, Maryland 21031
> mward@downs-ward.com
> T: (410) 584-2800
>
> */s/ R. Keith Jarrett*
> R. Keith Jarrett, T.A. (La. Bar # 16984)*
> David L. Reisman, T.A.*
> Raymond T. Waid*
> Elizabeth B. McIntosh*
> Jessie E. Shifalo*
> Elizabeth A. Strunk*
> LISKOW & LEWIS
> 701 Poydras Street, Suite 5000
> New Orleans, Louisiana 70139-5099
> T: (504) 581-7979
> dreisman@liskow.com
> rkjarrett@liskow.com

rwaid@liskow.com
ebmcintosh@liskow.com
jshifalo@liskow.com
eastrunk@liskow.com

Scott S. Partridge*
PARTRIDGE LLC
231 Glendale Drive
Metairie, Louisiana 70001
scott@partridgellc.com
T: (314) 952-4132

William J. Jackson*
Maria F. Pimienta*
KELLEY DRYE & WARREN LLP
515 Post Oak Blvd, Suite 900
Houston, Texas 77027
bjackson@kelleydrye.com
mpimienta@kelleydrye.com
T: (713) 355-5000

Philip D. Robben*
Julia Schuurman*
KELLEY DRYE & WARREN LLP
3 World Trade Center
175 Greenwich Street
New York, New York 10007
probben@kelleydrye.com
jschuurman@kelleydrye.com
T: (212) 808-7800

Andrew W. Homer*
KELLEY DRYE & WARREN LLP
888 Prospect Street, Suite 200
La Jolla, California 92037
ahomer@kelleydrye.com
T: (858) 795-0426

*/s/ Melissa E. Byroade*
Melissa E. Byroade (31335)

KELLEY DRYE & WARREN LLP
Washington Harbour, Suite 400
3050 K Street, NW
Washington, DC 20007
mbyroade@kelleydrye.com
T: (202) 342-8400

Mark Lanier*
The Lanier Law Firm
10940 W. Sam Houston Pkwy N
Suite 100
Houston, TX 77064
mark.lanier@lanierlawfirm.com
T: (713) 659-5200

*Admitted *Pro hac vice*
***Attorneys for State of Maryland***


Daniel O. Rose
Kreindler & Kreindler LLP
485 Lexington Avenue
Ste 28th Floor
New York, NY 10017
drose@kreindler.com
Telephone: (212) 973-3414
***Lead Counsel for Personal Injury and Wrongful Death Claimants***


Robert W. Phelan
Cozen O Connor
3 WTC, 175 Greenwich Street
55th Floor
New York, NY 10007
rphelan@cozen.com
Telephone: (212) 908-1274
Facsimile: (866) 850-7490
***Lead Counsel for Property Damage Claimants***

-17-

Adam J. Levitt
DiCello Levitt Gutzler LLC
Ten North Dearborn Street
Ste Sixth Floor
Chicago, IL 60602
alevitt@dicellolevitt.com
Telephone: (312) 214-7900
***Lead Counsel for Local Government Claimants***


Todd D. Lochner
Lochner Law Firm, P.C.
7076 Bembe Beach Rd; Suite 201
Mailbox 6
Annapolis, MD 21403
tlochner@lochnerlawfirm.com
Telephone: (443) 716-4400
***Lead Counsel for Private Economic Loss Claimants***

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 14th day of October 2025, a copy of the foregoing pleading was served via the court's CM/ECF system on all counsel of record.

*/s/ Melissa E. Byroade*

Melissa E. Byroade