## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
## NORTHERN DIVISION

**In the Matter of the Petition of**

**GRACE OCEAN PRIVATE LIMITED, as
Owner of the M/V Dali,**

**and**

**SYNERGY MARINE PTE LTD, as
Manager of the M/V DALI,
for Exoneration from or Limitation of Liability.**

**Docket No. JKB 24-CV-941**

*IN ADMIRALTY*

### MOTION FOR LEAVE TO LATE-FILE ANSWER AND CLAIM FOR
### CLAIMANT/RESPONDENT, UNITED SOURCE ONE, INC.

Claimant United Source One, Inc. ("US1"), by its attorneys, moves this Court for leave to file a late answer and claim in this admiralty proceeding for the following reasons.

### SUMMARY OF ARGUMENT

US1, like many businesses, suffered a substantial loss when the M/V Dali, carrying US1's cargo, catastrophically impacted the Francis Scott Key Bridge while attempting to leave the Baltimore harbor. US1, however, did not receive notice of the date by which it was required to make a claim in this proceeding; instead, it acted in good faith to seek coverage from its insurer, that did not advise US1 of this proceeding or a claims bar date, and then ultimately denied coverage of US1's claims.

As a result, US1 did not, and could not have, submitted a timely claim. Accordingly, for the cause shown herein, US1 respectfully requests this Court exercise the wide discretion afforded to it under Supplemental Admiralty Rule F(4), to allow US1 to submit a late claim so that it may participate in this proceeding alongside other similarly situated cargo claimants.

## FACTS

1.      US1 is a Maryland corporation with its principal office in Belcamp, Maryland. US1 is a leader in export distribution services of quality foods to the Middle East and around the globe.

2.      When the M/V Dali allided with the Key Bridge on March 26, 2024, it carried among other things, two shipping containers holding US1's dry food products and one shipping container containing US1's frozen beef products (the contents of the 3 shipping containers are collectively referred to as the "US1 Cargo").

3.      The value of the US1 Cargo at the time of the allision was $503,400.63.

4.      On April 1, 2024, this Court signed a Restraining Order and Order for Issuance of Notice that Claims be Filed (ECF. No. 8) (the "Restraining Order"). The Restraining Order directed Grace Ocean Private Limited and Synergy Marine PTE LTD ("Petitioners") to give notice to all persons asserting claims with respect to their Petition for Exoneration from or Limitation of Liability ("Petition") and admonishing all persons asserting claims to file their respective claims with the Clerk of this Court on or before September 24, 2024.

5.      US1 did not receive notice of the Restraining Order from Petitioners and the claim deadline therein before that deadline had passed. See the declaration of US1's chief financial officer, Rich Harrell, attached as **Exhibit 1** and incorporated herein by reference.

6.      At the time of the allision, US1 was the insured under a Marine Cargo Policy (the "Policy") issued by Tokio Marine America Insurance Company ("Tokio").

7.      On or about April 1, 2024, US1 promptly notified Tokio of its claim under the policy with respect to the US1 Cargo ("US1 Claim").

8.      Tokio responded by purporting to undertake an investigation of the US1 Claim. Tokio did not, however, notify US1, its insured, of the Restraining Order or the claims deadline.

9.      US1 believed and acted in good faith under the assumption that Tokio would fairly and appropriately protect and compensate its insured. In its decades of international exports, US1 had never faced a maritime loss of this scope and complexity.

10.     Tokio's alleged investigation of the US1 claim continued until December 6, 2024, when Tokio denied coverage of the US1 Claim.

11.     During Tokio's alleged investigation, the M/V Dali and its cargo, including the US1 Cargo, were transported to Norfolk, Virginia. US1 was unable to take possession of the US1 Cargo or deliver it to its customers because of the passage of time while all cargo was detained, and the deteriorated conditions on the damaged vessel substantially compromised the quality and thus value of the food products that were the US1 Cargo. Despite this, US1 was able to partially mitigate its damages with respect to a portion of the US1 Cargo by, among other things, selling certain portions thereof at a discount and otherwise providing incentives at its own expense to potential buyers of the same. US1 also incurred expenses in the amount of $19,736.58 in connection with recovering the US1 Cargo from Norfolk, VA so that it could be potentially sold at a discount. As a result, the remaining loss to US1 in connection with the US1 claim is approximately $370,363.00.

12.     While Tokio's purported investigation of the US1 Claim was pending, and despite that Tokio did not notify US1 of the Restraining Order or this Court's claims deadlines, a group of insurers and insureds called the "Cargo Claimants" submitted their Answer and Counterclaims on November 22, 2024 (ECF 449). This filing included claimants insured by the Tokio family of companies but excluded the US1 Cargo Claim. Tokio did not advise US1 that its other insureds' claims had been filed but not US1's claims.

13.     Tokio provided an initial declination letter to US1 on December 5, 2024. Following the initial declination, US1 retained counsel to 1) engage with Tokio to grant coverage and 2)

engage with the Cargo Claimants' counsel to request that the US1 Claim be included with those claims. US1 reasonably believed these actions would afford it relief without incurring undue expense or compounding this litigation.

14.    Unfortunately, while negotiations with Tokio continued into 2025, US1 ultimately was unable to get Tokio to provide meaningful coverage of the US1 Claim.[1] US1 understands that its claim will be included among the Cargo Claimants' earlier-filed claims if the Court permits US1's late-filed claim.

15.    US1, relied in good faith on its reasonable beliefs that Tokio either would provide coverage or would include the US1 Claim with its other insured's claim as a Cargo Claimant. As described in Mr. Harrell's declaration, **Exhibit 1**, US1 was not notified of the claim bar date and therefore did not know it must file its own independent claim until after this Court's deadlines for the same had passed.

16.    The US1 claim arises from identical facts and circumstances – the M/V Dali's allision with the Key Bridge and subsequent developments – as the claims of the Cargo Claimants.

17.    No other claimant or the Petitioner will suffer prejudice by the relief requested herein.

18.    The proposed pleading reflecting US1's claim is attached as **<u>Exhibit 2</u>** and incorporated herein by reference.

---

[1] Tokio acknowledged "Trade Disruption Coverage" in the amount of $25,000.00, which was paid to US1 in the summer of 2025. However, this coverage excluded the much larger portion of US1's loss that is the subject of this motion.

## DISCUSSION

### A.  Governing Law

Rule 6 of the Federal Rules of Civil Procedure ("FRCP") generally governs the enlargement of time in civil actions. Pursuant to FRCP 6(b)(1)(B), the Court may, for good cause, extend a deadline after its expiration "if the party failed to act because of excusable neglect."[2] Admiralty courts, however, apply a less demanding standard. "'For cause shown, the court may enlarge the time within which claims may be filed.' Supplemental Admiralty Rule F(4). Furthermore, 'the trial court has wide discretion in determining whether to permit the filing of late claims under the Rule.'" *In re Columbia Leasing L.L.C.*, 981 F. Supp. 2d 490, 495 (E.D. Va. 2013).

**US1 is entitled to Relief under Rule F(4)**    Under Supplemental Rule F(4), the "court can grant an extension whenever an examination of all the relevant facts shows that it will serve the ends of justice. Specifically, a showing that no party will be prejudiced by permitting an extension, even with a weak showing of excusable neglect, is sufficient." *In re World Tradeways Shipping, Ltd.*, 1966 WL 146845, at *1 (S.D.N.Y. Nov. 21, 1966). Indeed, "late claimants in admiralty proceedings

---

[2] US1 likely would prevail even under the more demanding standard provided by FRCP 6, which the

> Supreme Court has explained that, in deciding whether neglect is "excusable," a court should consider four factors:
>
> > [1] the danger of prejudice to the debtor, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith.
>
> *Pioneer Investment*, 507 U.S. at 395, 113 S.Ct. 1489 (applying the Federal Rules of Bankruptcy Procedure but drawing on cases interpreting the Federal Rules of Civil Procedure).

*In re MI Windows & Doors, Inc., Prods. Liab. Litig.*, 860 F.3d 218, 226 (4th Cir. 2017).

need not show 'good cause.'" *Alter Barge Line, Inc. v. Consol. Grain & Barge Co.*, 272 F.3d 396, 397 (7th Cir. 2001). "When a claimant shows cause, courts must freely grant permission to file late claims so long as the limitation proceeding is ongoing and the late claim will not prejudice other parties." *Id.* (cleaned up).

US1 has more than established cause for relief here. First, the delay and prejudice to the other parties is either nonexistent or minimal. While this litigation has progressed significantly since its inception, US1 is not situated differently than any of the other Cargo Claimants on a factual basis. Thus, the relevant factual issues have been developed in US1's absence no differently than they had if US1 had filed a timely claim. And, while US1's losses are substantial for a company of its size, particularly given it has not been able to obtain relief from its insurer, its claims are relatively small in comparison to the total volume of claims as well as the ultimate potential global recovery. The inclusion of the US1 Claim would not meaningfully dilute the potential recovery of any other claimant. And, as one court in the Fourth Circuit explained, in the absence of prejudice, a late claim that would otherwise satisfy the applicable statute of limitations should be allowed:

> In light of the absence of prejudice, the fact that the claim is now sought to be filed well within the statutory period for the limitation of any action, the conditions herein imposed and the realization that the trial on liability consumed approximately nine days with considerable expense incident thereto, it appears proper to permit the filing of a belated claim for property damage only.

*Petition of Vermillion Towing Corp.*, 227 F. Supp. 933, 934 (E.D. Va. 1964). US1's proposed claim falls well within the otherwise applicable statute of limitations and thus in the absence of prejudice, the Court should apply the Vermillion Towing Corp. reasoning and allow the claim. Further, "the trial judge has discretion to permit the filing of later claims in an admiralty proceeding, at least as long as the fund has not been entirely distributed or a final decree entered." *Petition of United*

*States*, 172 F.2d 355, 355 (2d Cir. 1949). Here, no final decree has been entered and no distributions have occurred.

### B.  US1 is Entitled to Relief Under FRCP 6.

While Rule 6 applies a higher standard than applicable here, case law construing that rule shows that US1 meets that more demanding standard as well. "A finding of excusable neglect under Rule 6(b)(2) requires both a demonstration of good faith by the parties seeking the enlargement and also it must appear that there was a reasonable basis for not complying within the specified period." *Mars Steel Corp. v. Cont'l Illinois Nat. Bank & Tr. Co. of Chicago*, 120 F.R.D. 51, 52 (N.D. Ill. 1988). In *Mars Steel*, the district court granted the movants an extension based on excusable neglect because:

> …it is clear that [Movants] **did not know they had to act by a certain date because of their failure to receive the settlement notice** at their current addresses. Movants allege that they were only aware that they were indeed within the current class on November 4, 1986. **Movants had been generally aware of this lawsuit and another lawsuit in state court over the same issue, but because they had been in ongoing negotiations with Continental over their loans**, they did not know whether or not they were members of this class, nor did they realize that Continental would assert that movants were members of the class and thus bound by any judgment of settlement. **This confusion was compounded by Continental's failure to send the settlement notice to their current addresses.**

*Id*. (emphases added). While this is an admiralty proceeding, not a class action, US1's position is factually similar to the movant in the *Mars Steel* case. US1 did not receive timely notice of this Court's deadlines and those deadlines passed while it was pursuing coverage negotiations in good faith with Tokio, whose family of companies were parties herein and were aware of the deadlines, but did not advise US1. As a result, the court "concluded that movants have demonstrated their request is in good faith, and that they had a reasonable basis for not complying with the opt-out period." *Id*. at 53.

Here, US1 acted in good faith and had a reasonable basis for not complying with the claims deadline (of which US1 was not aware) because US1 was engaging in good faith with Tokio, and awaiting Tokio's decision, until the claims deadline passed without US1's knowledge. This satisfies Supplemental Rule F(4) as well as the more stringent standard under FRCP 6(b)(1)(b). A party engaged in negotiations to resolve its claims without litigation can be afforded an enlargement of time after those negations fail. *See, e.g., Jetcraft Corp. v. Banpais*, S.A. De C.V., 166 F.R.D. 483, 486 (D. Kan. 1996) ("This court finds circumstances here which justify accepting a late pleading. There is evidence Aero and Tijerina mistakenly thought the dispute would be resolved through negotiations and were making good faith efforts to secure deregistration."). Likewise, US1 was not strategically failing to file timely, which would indicate a lack of good faith. *See In re Four Seasons Sec. L. Litig.*, 493 F.2d 1288, 1290 (10th Cir. 1974) ("The facts support a finding of good faith on the part of the Bank. There is no indication that the tardiness was part of a strategy designed to gain a tactical advantage.").

### D.    The Court Should Exercise its Discretion to Allow US1's Claim.

Given all the circumstances, the Court should determine that the US1 Claim should be accepted due to excusable neglect and lack of prejudice. In addition, "Admiralty jurisdiction and maritime law are firmly grounded in principles of equity." *Smith v. Seaport Marine, Inc.*, 981 F. Supp. 2d 1188, 1202 (S.D. Ala. 2013), *aff'd sub nom. Jurich v. Compass Marine, Inc.*, 764 F.3d 1302 (11th Cir. 2014). The equitable result here is to allow the US1 Claim because US1, through no fault of its own, was unaware of this Court's deadlines until after they passed and because US1, in good faith, attempted to secure its carrier's agreement to extend coverage to the losses described in **Exhibit 2**. Tokio declined coverage and failed to advise US1 of the looming deadlines, causing a prejudice to US1 that far outweighs any fault on US1's part.

**CONCLUSION**

Given the foregoing, US1 respectfully asks the Court to permit US1 to file a late claim in this admiralty proceeding so that it may be similarly situated to those claimants who received timely notice of and met the deadlines herein.

Wherefore, Claimant United Source One, Inc. respectfully requests that the Court enter an Order:

1. Granting this Motion;

2. Treating as timely the late-filed pleading of US1 as reflected on Exhibit 2; and

3. Granting such other relief as is just and proper in at law, in equity, and in admiralty.

Dated: November 5, 2025        Respectfully submitted,

                                       /s/     William N. Sinclair

William N. Sinclair, Fed Bar No. 28833
Pierce C. Murphy, Fed Bar No. 30030
Silverman|Thompson|Slutkin|White LLC
400 East Pratt St., Suite 900
Baltimore, MD 21201
bsinclair@silvermanthompson.com
pmurphy@silvermanthompson.com
(410) 385-2225 (p)
(410) 547-2432 (f)

Counsel for United Source One, Inc.

9