UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| In the Matter of the Petition<br><br>of<br><br>GRACE OCEAN PRIVATE LIMITED, as Owner of the M/V DALI,<br><br>and<br><br>SYNERGY MARINE PTE LTD, as Manager of the M/V DALI,<br><br>for Exoneration from or Limitation of Liability. | Docket No. JKB 24-cv-941<br><br>*IN ADMIRALTY* |

**PETITIONERS' OPPOSITION TO UNITED SOURCE ONE, INC.'S
MOTION FOR LEAVE TO LATE-FILE ANSWER AND CLAIM**

Petitioners Grace Ocean Private Limited and Synergy Marine Pte Ltd ("Petitioners"), through undersigned counsel BLANK ROME LLP and DUANE MORRIS LLP, submit this Opposition to United Source One, Inc.'s ("US1") "Motion for Leave to Late-File Answer and Claim" (ECF No. 635) ("Motion" or "Motion for Leave").

**PRELIMINARY STATEMENT**

This Court set a claim filing deadline of September 24, 2024 in this limitation of liability action—six (6) months after the allision of the M/V DALI (the "Vessel") with the Francis Scott Key Bridge (the "Bridge")—which has and continues to receive extensive local, national, and international media coverage. Nearly 50 claims were timely filed prior to this date, including claims by the State of Maryland and certain of its agencies that owned/operated the Bridge, as well as personal injury and wrongful death claims related to the eight individuals working on the Bridge

at the time of the allision. The filing deadline was extended upon request for certain cargo interests to November 22, 2024. Petitioners did not object to this extension, largely because it occurred as fact discovery was recently underway. In granting this limited extension, on November 6, 2024, the Court noted:

> **In no event shall any late filed cargo claim be accepted after November 22, 2024.**

ECF No. 436 ¶ 7 (emphasis added).

On November 4, 2025—almost 14 months after the claim filing deadline, with fact discovery concluded, highly complex expert discovery underway, and trial of Phase I less than seven (7) months away—US1 filed its Motion seeking leave to late-file an answer and claim as to alleged damage to its cargo on the Vessel. US1 admits that it submitted a claim to its insurance carrier, Tokio Marine, within days of the allision (nearly 20 months ago). Yet US1—which is based in Maryland, where notice was published—alleges it somehow did not know about the September 24, 2024 claim filing deadline in this globally publicized case. US1 further alleges that Tokio Marine failed to advise it about any deadlines, failed to file a claim on behalf of US1, and ultimately denied US1's claim in December 2024 (11 months ago).

As set forth below, US1's Motion should be denied for at least three (3) separate and independent reasons. First and most obvious, this Court—which is very focused on moving this complex case forward in an efficient and timely manner—made abundantly clear that no cargo claims would be accepted after November 22, 2024. Second, US1's untimely claim would prejudice the existing parties. And third, US1's claim is time barred.

## PROCEDURAL BACKGROUND

On April 1, 2024, Petitioners filed a Complaint seeking exoneration from and/or limitation of liability before this Court pursuant to the Shipowners' Limitation of Liability Act of 1851, 46

U.S.C. §§ 30501-30512 (the "Limitation Action") relating to the highly publicized March 26, 2024 allision of the Vessel with the Bridge (the "Casualty"). Prior to the Casualty, the Vessel was bound from Baltimore to Colombo, Sri Lanka, with an ultimate destination of Yantian, China. *See* ECF No. 1 ¶ 7 ("On March 26, 2024, the Vessel commenced a voyage from Baltimore, Maryland, bound for Colombo, Sri Lanka, with an ultimate destination of Yantian, China."). Such transits typically take less than 60 days. *See* Affidavit of Ajithkumar P, attached hereto as **Exhibit A**, ¶ 5. Thus, any cargo on the Vessel in Baltimore would have been delivered to the Vessel's planned destination ports by no later than approximately June 2024. *Id.* ¶ 6.

The same day the Limitation Action was filed, this Court issued a Restraining Order (ECF No. 8) and Notice to Claimants (ECF No. 9), requiring that all claims against Petitioners be filed no later than September 24, 2024. The deadline was "set . . . out a considerable distance, at the suggestion of the Petitioners . . . so that there was ample notice." Transcript of Motions Hearing held on 10/01/2024 at 3:6–8, relevant excerpts of which are attached hereto as **Exhibit B**; *see also* ECF No. 402 (Notice of Filing of Official Transcript). The Court further ordered that Petitioners notify "all persons asserting claims" and "provide the required notice by publication in the Baltimore Sun, the Daily Record, and the Washington Post once in each week for four (4) successive weeks . . . ." ECF No. 8 ¶ 2. On September 24, 2024, Petitioners certified that they published the required notice in the above newspapers on June 28, July 5, July 12, and July 19. *See* ECF No. 195. Thus, the claim filing deadline was published in three different publications in US1's geographical area for four (4) consecutive weeks. In Maryland, where US1 is domiciled, media coverage related to the Casualty has been particularly prevalent.

One day before the September 24, 2024 deadline, a group of cargo interests ("Category 1 and 2 Claimants")—including other cargo interests insured by the Tokio Marine family of

3

companies—filed a motion for extension of time to file their claims. ECF No. 144; *see also* ECF No. 449-4 (identifying Tokio Marine as insurer for cargo claimants). Petitioners did not oppose their motion, but, to the contrary, actively worked with the Category 1 and 2 Claimants to reasonably extend the applicable deadlines.[1] *See* ECF No. 391 (Stipulation Extending Time for Certain Cargo Interests to File Claims).

On October 1, 2024, the Court held a hearing on the Category 1 and 2 Claimants' motion for extension. *See, e.g.,* Ex. 2; ECF No. 402. During that hearing, this Court recognized the exact danger raised by US1's Motion:

> I don't want to be in a situation where we pull together all of the variables, and the parties that are scattered across the world and their lawyers and so forth and come to an understanding about how things are going to proceed, only to be in a situation that we've got this other interest or group of interests out there that says, wait; a month, two months, three months later that says time out. We weren't even there, we didn't know about any of this, we're lagging behind and so forth. That's what we can't have in a case of this breadth, magnitude, and complexity otherwise, we will drown.

*See* Ex. B, Tr. at 16:17–17:1.

To address these concerns, Petitioners and the attorneys representing the Category 1 and 2 Claimants executed and filed a Stipulation, wherein the parties agreed to extended deadlines of October 9, 2024 (Category 1) and November 22, 2024 (Category 2). *See* ECF No. 391. Thereafter, this Court ordered:

> To the extent any other owner, insurer or other interested party in cargo [on the Vessel] . . . may have filed or seek to file a late claim in this Limitation Action, leave to do so shall only be granted **upon good cause shown** . . . . **In no event shall any late filed cargo claim be accepted after November 22, 2024.**"

ECF No. 436 ¶ 7 (emphasis added).

---

[1] Petitioners similarly did not oppose a motion for leave to file a late claim that was submitted by another claimant two days after the September 24 deadline. *See* ECF Nos. 311 & 327.

## US1'S ALLEGATIONS

In its Motion, US1 states that it is a Maryland company that is a "leader in export distribution services of quality foods." ECF No. 635 ¶ 1. It alleges the Vessel carried its goods in three (3) shipping containers. *Id.* ¶ 2. All cargo that had been aboard the Vessel upon departure from Baltimore was removed from the Vessel in Baltimore and Norfolk, Virginia; the last of this cargo was offloaded in Norfolk in the summer of 2024. *See* Ex. A ¶ 7. Because the goods were offloaded in Baltimore and Norfolk, the containers were not delivered to their scheduled ports. Thus, this is a case of non-delivery[2] of US1's cargo. While US1 admits that it submitted a claim to its insurance carrier, Tokio Marine, within days of the allision (nearly 20 months ago), it alleges that it somehow did not know about the well-publicized September 24 deadline. *See* ECF No. 635 ¶¶ 7, 12, 15. Moreover, US1 alleges that Tokio Marine notified US1 that its insurance claim was denied on December 5, 2024, almost a year ago. *Id.* ¶ 13.

US1's Motion fails to identify key parties as to this carriage, including the shipper and consignee. It also fails to identify the container numbers, or information as to any bills of lading under which the cargo was shipped.

## ARGUMENT

**I.    The Motion should be denied because this Court expressly ordered that "[i]n no event shall any cargo claim be accepted after November 22, 2024."**

US1's attempt to file an extremely late claim should not be permitted because such filing is in blatant contradiction to this Court's express orders regarding the claim deadline. In fact, this precise issue was raised in a prior hearing, after which this Court ordered that "[i]n no event shall

---

[2] Courts generally treat non-delivery and mis-delivery the same for purposes of the Carriage of Goods by Sea Act. *See, e.g., Hellyer v. Nippon Yesen Kaisya*, 130 F. Supp. 209, 211, 1955 AMC 1258 (S.D.N.Y. 1955) (finding that neither non-delivery nor mis-delivery abrogate the time limitation terms of the contract of carriage). For consistency, this Opposition will use the term "non-delivery."

any cargo claim be accepted after November 22, 2024." ECF No. 436 ¶ 7. US1 should be no exception.

This strict deadline was neither ambiguous nor excessive. Rather, it enforced the "dual purposes of a limitations period," which "are to force parties to litigate claims while the evidence is still fresh, and to grant [a petitioner] relative security and stability by allowing it better to estimate its outstanding legal obligations." *Servicios-Expoarma, C.A. v. Indus. Marine Carriers*, 135 F.3d 984, 989, 1998 AMC 1453 (5th Cir. 1998); *see also id.* at 993 ("Limitation periods exist solely for the benefit of defendants and always will produce harsh results when they operate to bar a claim that is otherwise valid."); Ex. B, Tr. at 31:11–12 ("I have learned, you have to be absolutely strict with respect to these kinds of issues or you'll lose control.").

Given this Court's Order, it would set a bad precedent—particularly in a case that received such extensive media attention—to allow a Maryland corporation, which is based in the geographical area where notice of the deadline was published, to permit the filing of an extremely late claim. *See* Ex. B, Tr. at 30:21–23 ("And so if I set another [deadline] now, it's, you know, in the category of 'I really mean it this time,' and then that starts to erode the credibility of the court."). Moreover, this Court has recognized that, "[w]hen parties fail to adhere to Court-set deadlines, all other parties in the case risk suffering needless delays and costs." ECF No. 327 at 2. Further, the Court warned that it would have "little patience for late filings and will not be favorably inclined to granting future untimely requests for relief absent compelling circumstances." *Id.* Here, US1 does not advance any such compelling reasons.

> II. **The Motion should be denied because the untimely claim would prejudice the existing parties, US1 has failed to provide any reason why its claim was filed so late, and the proceeding is not "undetermined."**

US1 should not be permitted to late file under the equitable considerations for permitting late claims. In evaluating whether a late claim should be permitted, courts consider: (1) whether granting the motion will prejudice the rights of other parties; (2) whether the movant has provided a reason for the late filing; and (3) whether the limitation proceeding is pending and unresolved. *See Tex. Gulf Sulphur Co. v. Blue Stack Towing Co.*, 313 F.2d 359, 362, 1963 AMC 349 (5th Cir. 1963). In this case, balancing the factors dictates that US1's Motion should be denied.

First, US1 should not be permitted to file its extremely late claim because it would be substantially prejudicial to the parties. Since the filing deadline well over a year ago, the parties have engaged in extensive written discovery, exchanged millions of documents, participated in nearly 30 fact depositions in the United States and London, engaged in multi-faceted motions related to numerous legal issues, and conducted detailed vessel inspections. The parties have spent thousands of man-hours preparing this exceptionally complex case for the Phase I trial, which is set to begin in approximately seven (7) months. Fact discovery closed on August 29, 2025, and the parties have turned their attention towards expert discovery. On or about October 13, 2025, Claimants served 20 expert reports that, together, are thousands of pages long; Petitioners' corresponding deadline is December 12, 2025, less than one month away. Permitting this incredibly late claim will divert the parties' attention and resources from dealing with complicated and voluminous expert discovery and preparation for a month-long trial, which is rapidly approaching. *See, e.g.*, *In re McAllister Towing & Transp. Co.*, Civ. No. 12-2505, 2014 U.S. Dist. LEXIS 145888, *10, 2015 AMC 332 (S.D.N.Y. Oct. 10, 2014) (denying motion for late claim where, *inter alia*, the parties would "face the additional legal fees resulting from participating in

the additional discovery"). Because granting the Motion would prejudice the existing parties—which have devoted substantial resources for over a year and a half to developing this litigation—the Motion should be denied.

US1 similarly fails to show good cause[3] as to why it waited so long to file its claim. *See, e.g.*, *In re River City Towing Servs.*, 420 F.3d 385, 388, 2005 AMC 2083 (5th Cir. 2005) (affirming denial of motion for leave to file late claims where claimants "failed to show any reason for the lateness of the additional claims"); *In re The Compl. of Kirby Inland Marine, L.P.*, 365 F. Supp. 2d 777, 782 (M.D. La. 2005) (requiring late claimants to "set forth specific, credible, and sufficient reasons why the claims were sought to be filed late"). Specifically, US1 waited to file until seven (7) months before trial, 11 months after its insurance claim was denied, 14 months after the original claim deadline, and nearly 20 months after it filed a claim with its insurance carrier.

US1 provides two purported bases for its extreme delay. **First**, US1 alleges it "did not receive notice of the Restraining Order from Petitioners." ECF No. 635 ¶ 5. **Second**, US1 argues its insurer's declination of coverage caused "a prejudice to US1 that far outweighs any fault on US1's part." *Id.* at 8. US1 is wrong on both accounts.

First, while "lack of actual notice" is a common reason given for late filing, *see In re Lloyd's Leasing LTD.*, 902 F.2d 368, 371 (5th Cir. 1990), it is clear that where "a monition and publication is made according to the rules and practice in admiralty proceedings, it becomes notice to 'all persons' having any claims, whether they receive actual notice thereof or not." *Dowdell v. U.S. Dist. Ct.*, 139 F. 444, 446 (9th Cir. 1905); *see also Cont'l Ins. Co. v. L&L Marine Transp., Inc.*, 2016 U.S. Dist. LEXIS 203995, at *28 (E.D. La. Dec. 7, 2016) (denying late claim where

---

[3] US1 incorrectly argues that it "need not show good cause" to justify its late filing. This Court specifically ordered that any cargo interest seeking to file a late claim must show good cause and, further, that no such motion would be accepted after November 22, 2024. ECF No. 436 ¶ 7.

claimant "had constructive notice of the limitation action pending in this Court and patently ignored its responsibility to act timely for well over a year"). Here, in accordance with this Court's orders, Petitioners published the required notice in the Baltimore Sun, the Daily Record, and the Washington Post once per week for four (4) successive weeks. *See* ECF No. 195 (Petitioners' Certificate of Publication). As this Court stated, the deadline was "published and advertised and made crystal clear for months." Ex. B, Tr. at 31:3–4.

Constructive notice was particularly appropriate and sufficient in this case because US1 is located in Maryland and had six (6) months following the incident to timely file claims. *See In re Clearsky Shipping Corp.*, Civ. No. 96-4099, 2000 U.S. Dist. LEXIS 17264, *4 (E.D. La. Nov. 21, 2000) ("Common examples of the requisite cause include, *inter alia*, lack of notice, an unusually short monition period, inability to speak the language in which the notice was published, and lack of publication in the attempted claimant's geographical area."). Generally, an interested party that "live[s] in the area where the notice was published" has "no excuse for not timely filing [its] claims." *Lloyd's Leasing*, 902 F.2d at 371 (affirming denial of a motion for permission to file late claim where the would-be claimants spoke "English and live[d] in the area where the notice was published"). Moreover, as this Court recognized, it "set a deadline out a considerable distance, at the suggestion of the Petitioners . . . so that there was ample notice." Ex. B, Tr. at 3:6–8.

As demonstrated by its second "justification" for late filing—that its insurance claim related to the cargo was denied—US1 had abundant notice of the claim deadline. An entity's "own negligent failure to ascertain its legal rights" is insufficient cause for late filing. *In re Overseas Containers Ltd.*, Civ. No. 84-2306, 1985 U.S. Dist. LEXIS 12559, *6 (S.D.N.Y. Dec. 19, 1985). It is thus irrelevant that US1 allegedly failed to recognize its obligation to timely file its claim. Further, even if an insurer's denial of coverage constituted good cause for late filing—which it

9

does not—US1 fails to articulate why it waited an additional 11 months after such denial to file its Motion. *See In re Ridgeway*, Civ. No. 22-00475-LKG, 2024 U.S. Dist. LEXIS 84242, at *13 (D. Md. May 9, 2024) (indicating that, where "more than two years have elapsed since the . . . deadline for filing claims . . . no potential claimant could now show good cause for the Court to enlarge the time for the filing of claims and to allow a late-filed claim at this stage of the case").

Because the notice given by Petitioners was proper and complied with Supplemental Admiralty Rule F, and the Court provided ample time for interested parties to file claims, US1's Motion should be denied under the law, facts, and the clear provisions of Supplemental Rule F. Indeed, courts have denied permission to late file claims where the limitation of liability action was still "pending and undetermined," and where the moving party alleged lack of actual notice. *See, e.g.*, *In re Am. Comm. Lines et al.*, 1985 AMC 1892, 1893, 746 F.2d 1351 (8th Cir. 1984) (affirming denial of motion for late claim despite pending proceedings and lack of actual notice where "there was at least potential prejudice" to other claimant); *Lloyd's Leasing*, 902 F.2d at 371 (affirming denial of motion for late claim where would-be claimants spoke "English and live[d] in the area where the notice was published"); *River City Towing*, 420 F.3d at 388 (affirming denial of motion for late claim where would-be claimant "failed to show any reason for the lateness of the additional claims"); *McAllister Towing*, 2014 U.S. Dist. LEXIS 145888, at *10 (denying motion for late claim despite pending proceedings because of the "delay and expense that would result from granting the motion and the insubstantial reasons for the [would-be claimants'] delay); *Overseas Containers*, 1985 U.S. Dist. LEXIS 12559, at *6 (denying motion for late claim where would-be claimants "own negligent failure to ascertain its legal rights" did not constitute sufficient cause); *Kirby Inland Marine*, 365 F. Supp. 2d at 782 (affirming denial of motion for late claim where "it would set a bad precedent, particularly in a case that was well publicized as this, to allow

10

a person to delay filing a claim until that claimant can 'realize' that the individual has sustained an injury").

Like many of these cases, here, notice of the deadline for filing claims was proper, highly publicized, complied with Supplemental Rule F, and was published in US1's geographic area. Further, the parties would be prejudiced by the late claim, and US1 fails to provide sufficient cause for its tardiness. Considering these factors, this Court should deny US1's Motion.

Moreover, the trial in this matter will begin in June 2026. As discussed in Section III, *infra*, this proceeding is likely determined as to US1 (and any other cargo entities that did not file claims) because such claims are barred by COGSA's one-year statute of limitations. Because the at-issue cargo was not delivered, US1 was required to file its claim by June of 2025.

### III. COGSA's statute of limitations bars non-delivered cargo claims one year after the cargo should have been delivered.

Finally, this Court should deny US1's Motion for the separate and additional reason that the proposed claim is barred by the Carriage of Goods by Sea Act's (COGSA), 46 U.S.C. § 30701, *et seq.*, one-year statute of limitations. US1's proposed claim fails to provide: (1) the identity of the shipping containers for which it claims an interest; (2) any applicable bill(s) of lading; and (3) whether US1 is the shipper or consignee; yet still, there is sufficient information for this Court to determine that US1's proposed claim is time-barred under COGSA.

"Bills of lading for the carriage of 'goods by sea to or from ports of the United States, in foreign trade' are governed by COGSA . . . ." *Alpha Int'l Trading Co. v. Maersk, Inc.*, 141 F. Supp. 2d 580, 582 (W.D.N.C. 2001) (holding that contract, tort, and unfair and deceptive trade practice claims are each barred by COGSA's one-year statute of limitations); *see also id.* at 583 ("[B]ecause COGSA governs during the time after cargo is loaded and before it is removed from the ship . . . COGSA . . . supersedes other laws.") (citation omitted). COGSA applies to this case because the

11

Vessel was carrying goods in foreign trade. *See* ECF No. 1 ¶ 7 ("On March 26, 2024, the Vessel commenced a voyage from Baltimore, Maryland, bound for Colombo, Sri Lanka, with an ultimate destination of Yantian, China."); *see also* Ex. A, Aff. ¶ 4.

In relevant part, COGSA's one-year statute of limitations provision states, "In any event the carrier and the ship shall be discharged from all liability in respect of loss or damage **unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered** . . . ." 46 U.S.C. § 30701 (Note § 3(6)) (emphasis added). As the Court has recognized, federal courts have not established a single definition of "delivery." *See D & H Distrib. Co. v. Crowley Am. Transp., Inc.*, Civ. No. CCB-98-163, 1999 A.M.C. 697, 699–700 (D. Md. Dec. 8, 1998) (discussing cases). Nonetheless, neither non-delivery nor mis-delivery of cargo "abrogate the time limitation terms of" COGSA. *Hellyer v. Nippon Yesen Kaisya*, 130 F. Supp. 209, 211, 1955 AMC 1258 (S.D.N.Y. 1955). In cases of non-delivery, COGSA's statute of limitations begins to run on the date the goods "should have been delivered" to the port of destination.[4] *Ordor v. Hoegh Autoliners*, Civ. No. RWT-10-2015, 2012 U.S. Dist. LEXIS 31794, at *10 (D. Md. Mar. 9, 2012); *see also Rosario v. H&M Int'l Transp. Serv.*, Civ. No. 06-824, 2007 U.S. Dist. LEXIS 50825, *13 (D.N.J. July 12, 2007) (finding that, in case of non-delivery, "the one-year statute of limitations began to run on the date when [cargo owner's] shipment 'should have been delivered'"); *Hapag-Lloyd (Am.), LLC v. Orly Indus.*, Civ. No. 21-3936, 2022 U.S. Dist. LEXIS 181401, *13, 2022 AMC 370 (D.N.J. Oct. 4, 2022) (same); Schoenbaum, 1 Admiralty & Mar. Law § 10:43 (6th

---

[4] While the date the cargo should have been delivered to its intended port of destination dictates the running of the statute of limitations, some courts alternatively consider the date the cargo was offloaded from the vessel. *See, e.g., Ordor*, 2012 U.S. Dist. LEXIS 31794, at *10 (taking note of the date "when the last [cargo] was discharged from the ship"). Here, the "last of [the Vessel's] cargo was offloaded in Norfolk in the summer of 2024." Ex. A, Aff. ¶ 7; *see also* Baltimore Sun article published June 24, 2024, which is attached hereto as **Exhibit C**, noting the DALI arrived in Norfolk on June 24, 2024 and would "unload all of its containers" in Norfolk; *see also* Virginian Pilot article published on Sept. 20, 2024, which is attached hereto as **Exhibit D**, noting the DALI's departure from Norfolk on September 19, 2024.

ed.) ("In the case of nondelivery, the reasonable time when delivery should have occurred is used.").

As noted above, this is a case of non-delivery, as the containers were discharged in Norfolk and never reached their intended destination on the DALI. At the latest, such delivery would have occurred by June 2024. *See* Ex. A, Aff. ¶¶ 4–6. Thus, US1's claim must have been filed by June 2025 to be timely. As US1 did not attempt to file until November 5, 2025, its claim is time-barred.

## CONCLUSION

Based on the foregoing, Petitioners respectfully request that this Court deny United Source One, Inc.'s Motion for Leave to Late-File Answer and Claim and grant such other and further relief the Court deems just and appropriate.

Dated: November 19, 2025

DUANE MORRIS LLP

*/s/ Laurie G. Furshman*
Laurie G. Furshman (Bar No. 29604)
LGFurshman@duanemorris.com
Robert B. Hopkins (Bar No. 06017)
RBHopkins@duanemorris.com
Tristan A. Dietrick (Bar No. 31238)
TDietrick@duanemorris.com
1201 Wills Street, Suite 330
Baltimore, MD 21321
(410) 949-2900

BLANK ROME LLP

Luke M. Reid (Bar No. 31228)
Luke.Reid@blankrome.com
125 High Street, 3rd Floor
Boston, MA 02110
617-415-1200

William R. Bennett, III*
William.Bennett@blankrome.com
Thomas H. Belknap, Jr.*

13

Thomas.Belknap@blankrome.com
Noe S. Hamra
Noe.Hamra@blankrome.com*
Neil P. McMillan
Neil.McMillan@blankrome.com*
1271 Avenue of the Americas
New York, NY 10020
212-885-5000

Kierstan L. Carlson*
Kierstan.Carlson@blankrome.com
Emma C. Jones*
Emma.Jones@blankrome.com
1825 Eye St. NW
Washington, DC 20006
202-420-2200

*Admitted *pro hac vice*

**CERTIFICATE OF SERVICE**

I CERTIFY that on this 19th day of November 2025, the foregoing Opposition to United Source One, Inc.'s Motion for Leave to Late-File Answer and Claim, along with its Exhibits A through D and a proposed order, was filed in the United States District Court for the District of Maryland via the Court's CM/ECF filing system, which will provide notice of this filing to all counsel of record.

*/s/ Laurie G. Furshman*
Laurie G. Furshman (Bar No. 29604)
LGFurshman@duanemorris.com
