IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| **In the Matter of the Petition of GRACE OCEAN PRIVATE LIMITED, *et al.*, for Exoneration from or Limitation of Liability** | * <br> * <br> * <br> * | **Civ. No. 24-0941-JKB** <br><br> *IN ADMIRALTY* |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Pending before the Court are Claimants' Motion for Relief Regarding Confidentiality Designations ("Motion for Relief") (ECF No. 691[1]) and four related Motions to Seal (ECF Nos. 692, 698, 709, and 714). The Motion for Relief will be granted, permitting the Parties to this action to use the eight deposition transcripts at issue in the Motion in further filings and at trial without incurring the burdens of the Protective Order that was previously issued in the case. The related Motions to Seal will be denied.

In addition, per the Court's request (ECF No. 687), the Parties have filed a Status Report containing their respective proposals as to the order of proof to be put on at trial. (ECF No. 693.) Accordingly, the Court will establish a schedule for the presentation of evidence. Claimants will present first; the sixteen (16) trial days available for presentation of evidence will be divided equally between Claimants and Petitioners; and each side will be afforded an opportunity to present both a case-in-chief and a rebuttal.

---

[1] Claimants' Motion for Relief was filed under seal at ECF No. 691, along with an unsealed but redacted version filed at ECF No. 694.

### .I.    Claimants' Motion for Relief Regarding Confidentiality Designations

Claimants'[2] Motion for Relief Regarding Confidentiality Designations (ECF No. 691) seeks to reduce the restrictions that currently govern the Parties' use of eight deposition transcripts from nonparty deponents who invoked the Fifth Amendment privilege against self-incrimination at deposition. The Motion will be granted.

#### a. Background

On May 19, 2025, Claimants filed a Motion to Strike the Confidentiality Designations to the M/V DALI Vessel Employees' Deposition Transcripts. (ECF No. 513 ("Claimants' Motion to Strike").) The depositions at issue in Claimants' Motion to Strike were those of eight DALI crewmembers, none of whom are parties to this action.[3] (Id.) Pursuant to the Protective Order entered in this case (ECF No. 474), counsel for these crewmembers designated nearly all of each of their deposition transcripts as confidential. (ECF No. 513 at 2.) Claimants agreed to treat as confidential the crewmembers' personally identifying information and the video recordings of the depositions, but Claimants argued that the remainder of the transcripts should not be kept confidential and moved the Court to strike those parts of the designations. (Id.)

Chief Magistrate Judge Timothy J. Sullivan, to whom the Court has referred all discovery matters in this action (ECF No. 477), granted Claimants' Motion to Strike on October 14, 2025, striking the confidentiality designations. (ECF No. 624.) However, to preserve the crewmembers' ability to object to his Order pursuant to Federal Rule of Civil Procedure 72, Magistrate Judge Sullivan kept the transcripts sealed pending the Court's resolution of any such objections. (Id.)

---

[2] Four of the six Claimant groups with claims pending in this action are signatories on the Motion for Relief—Personal Injury/Wrongful Death Claimants, Local Government Claimants, Private Economic Loss Claimants, and Cargo Claimants.

[3] As is explained further below, the eight crewmembers at issue in Claimants' Motion to Strike overlap with, but are not the same as, the eight deponents at issue in Claimants' current Motion for Relief.

Five of the eight nonparty deponents—those who invoked their Fifth Amendment privilege against self-incrimination at deposition—did object to Magistrate Judge Sullivan's Order, and on November 17, 2025, the Court reversed the Order as to those five deponents. (ECF Nos. 640, 641.) The Court ruled that "for now," the five objecting crewmembers had shown good cause to maintain their confidentiality designations, as the transcripts were not yet judicial records and the burden of treating them as confidential was not overwhelming. (*Id.* at 1, 7.) Accordingly, the deposition transcripts of these five crewmembers, as well as their asserted basis for the designations, remained confidential and sealed.[4]

The Court made clear, however, that it may revisit this ruling at later stages of this case: "[i]f the burden of treating the contested transcripts as confidential grows substantially, the calculus ... may shift" (*id.* at 7), and "[i]f ... the deposition testimony at issue gains status as a judicial record, the Court will almost certainly weigh the competing interests as Magistrate Judge Sullivan has, and the testimony will see public light" (*id.* at 5).

On March 27, 2026, the Parties filed a Status Report and, as required, provided a brief description of each motion in limine they anticipated filing in the pretrial phase of this case. (ECF No. 678.) Claimants indicated that they may file one or more motions in limine addressed to topics that may be subject to the Protective Order. (*Id.*) At the April 2, 2026, Status Conference, Claimants confirmed that the reasons the Protective Order may be implicated in their motions in limine are the same as those that were at issue in their Motion to Strike—reasons that then remained under seal. The Court indicated at the Status Conference that this may constitute a

---

[4] The five objecting crewmembers whose transcripts were kept confidential by the Court's November 17, 2025 Order were Karthikeyan Deenadayalan, Chandrashekar Sabhapathy, Chaminda Kariyawasam, Ganeshkumar Subramanian, and Nishanth Pitchaiah. (ECF No. 640, 641 at 7.) As to the three deponents who designated their deposition transcripts confidential but did *not* object to Magistrate Judge Sullivan's Order—Charles Vaz, Rohit Singh Bisht, and Stephen Fernando Kwiteen Jayakumar—the Court left Magistrate Judge Sullivan's Order undisturbed. (ECF Nos. 640, 641 at 8.) Accordingly, the confidentiality designations for their testimony were stricken and the transcripts were unsealed. (*Id.*)

meaningful change in the circumstances the Court relied on in its decision to preserve the five objecting crewmembers' confidentiality designations.    Thus, the Court ordered that if the Claimants sought to be relieved from the burdens that are imposed by the Protective Order in future filings or at trial, they would be permitted file a new motion concerning the confidentiality designations of any materials they believe no longer warrant the cover of the Protective Order. (ECF No. 687.)

Claimants have now done so, asking the Court to enter a Stipulated Order (i.e., "stipulated" as between Claimants and Petitioners") concerning eight deposition transcripts—those deemed confidential by the five objecting crewmembers discussed above (*see* note 4 *supra*) and those of another three deponents whose testimony was not at issue in Claimants' previous motion.[5] (ECF No. 691 at 1.) All eight of the witnesses whose deposition testimony is now at issue invoked their Fifth Amendment right against self-incrimination and designated their deposition transcripts confidential on that basis. (*Id.*)

Seven of these eight witnesses have agreed to a Proposed Stipulated Order governing the use of the transcripts. (ECF No. 691-1.) The central provisions of the Proposed Stipulated Order are that "[f]rom this point forward, any Party may use [the] written deposition transcripts in any civil judicial proceeding, provided that addresses, residential locations, phone numbers, and the dates of birth of the witness are excluded or redacted from the submission or reference" (*id.* ¶ 2), that "[a]ny party may play the video of the depositions in any civil judicial or related proceedings (e.g., a mediation) but must otherwise treat the videos as confidential under the operative protective order in this matter" (*id.* ¶ 5), and that "[t]he fact itself that [these witnesses] invoked their Fifth Amendment rights during their deposition[s] shall no longer be deemed confidential" (*id.* ¶ 7).

---

[5] The three witnesses whose depositions were not previously at issue are Kumararaja Kuppuswamy, Antony Goodwin, and Karthik Nair.

One of the eight witnesses now at issue—Karthik Nair—has *not* agreed to the terms of the Proposed Stipulated Order and has filed an Opposition to Striking His Deposition Confidentiality Designations. (ECF No. 707.[6]) Mr. Nair argues that there is ample reason to preserve the confidentiality designations he has asserted over his deposition transcript—namely that disclosure of his having invoked the Fifth Amendment would prejudice his rights in criminal proceedings he may eventually face—and that the Court should therefore order that his transcript continue to be used only as permitted by the Protective Order, "at least until trial, while it remains uncertain whether the case will settle—or perhaps even be stayed . . . ." (*Id.* at 7.)

### b. Analysis

The Court will grant Claimants' Motion for Relief and order that all eight deposition transcripts at issue be treated pursuant to the key terms of the Proposed Stipulated Order. Recognizing and respecting the possible implications for Mr. Nair, the Court finds nevertheless that this ruling is a necessary reflection of the public's substantial right to access information about this case of significant public importance.

Pursuant to the terms of the Protective Order, when a dispute arises as to the appropriateness of a confidentiality designation, "the Designating Party shall have the burden of demonstrating its necessity." (ECF No. 474 at 7.) To meet this burden, the designating party must show, through specific demonstrations of fact rather than broad conclusory allegations, that an identifiable harm would result from disclosure of the designated information. *Waterkeeper All., Inc. v. Alan & Kristen Hudson Farm*, 278 F.R.D. 136, 140 (D. Md. 2011). Further, there is a presumptive right of access to judicial records, which can be rebutted only if "countervailing interests heavily outweigh the public interests in access." *Doe v. Pub. Citizen*, 749 F.3d 246, 266

---

[6] Mr. Nair's Opposition was filed under seal at ECF No. 707, along with an unsealed but redacted version filed at ECF No. 710.

(4th Cir. 2014) (quoting *Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 253 (4th Cir. 1988)).

Finally, "[i]t is the intent of th[e] Protective Order that Information is not 'Confidential' if it . . .

becomes part of the public domain . . . including becoming part of the public record in this Action

through trial or otherwise." (ECF No. 474 at 7.)

Mr. Nair asserts that the identifiable harms that would result from disclosure of his deposition

testimony derive from his invocation, at deposition, of the Fifth Amendment's privilege against

self-incrimination. (ECF No. 707 at 7.) He argues that a federal criminal investigation into the

allision is ongoing and that revealing that he has invoked the Fifth in this case may prejudice his

interests in any resulting criminal trial. (*Id.*) Specifically, Mr. Nair argues that

> Even careful jury selection and instructions cannot always prevent prejudicial
> influences before or even during trial . . . [and] even if our procedures were perfect,
> publicity that the criminal defendant invoked his rights would risk disqualifying jurors
> who might otherwise be qualified, but for the taint of "taking the Fifth." Moreover,
> knowing that the criminal defendant "took the Fifth" in this proceeding is obviously
> very different from the defendant declining to testify at his own trial.

(*Id.* at 8.)

The Court stands by its prior assessment that "the potential harms of disclosure articulated

by the deponent crewmembers are not overwhelming." (ECF Nos. 640, 641 at 4.)

> [A]s Magistrate Judge Sullivan rightly explain[ed], "invocation of the Fifth
> Amendment privilege by a represented individual under criminal investigation is
> routine and entirely unremarkable[,] . . . a predictable consequence of having
> competent legal counsel, not a measure of any wrongdoing." ([ECF No. 624] at 10.)
> Nor does every invocation of the Fifth Amendment carry with it a privacy interest—
> rather, the privilege is routinely invoked in open court without any confidentiality
> attaching.

(ECF Nos. 640, 641 at 4.) The Court concurs with Magistrate Judge Sullivan's assessment that

"[Mr. Nair's] fair trial rights will be rigorously protected [even if his invocation of the Fifth is

disclosed] through established procedural safeguards: voir dire to identify biased jurors, the

possibility of venue change under Fed. R. Crim. P. 21(a), and curative jury instructions." (*Id.* at

6

12.) And even if Mr. Nair's interests are still implicated to some extent, the critical question is whether they suffice to outweigh the public's right of access to information about this case.

> As to the significance of this right, the Court reiterates its previous observation that
>
>> the public's right of access to judicial records must be afforded ample consideration, especially "in this case of significant public interest." [ECF No. 624] at 15. Disclosure of such records can indeed "enhance the public's understanding of an important historical event," (*id.* at 16 (quoting *In re Knight Pub. Co.*, 743 F.2d 231, 235 (4th Cir. 1984))), "promot[e] trustworthiness in the judicial process, and provid[e] the public with a more complete understanding of how the judicial system operates," (*id.* (quoting *Doe v. Public Citizen*, 749 F.3d 246 (4th Cir. 2014))).

(ECF Nos. 640, 641 at 4.) And as this Court explained in *Smith*,

> The underpinning of the public's right to access judicial records is the public's right to 'judge the product of the courts in a given case.' That is, the right to access enables the public to judge the judges. . . . [Thus, the right] naturally encompasses the right to view materials considered by the Court . . . .

*Smith v. Westminster Mgmt., LLC*, No. JKB-17-3282, 2018 WL 572867, at *3 (D. Md. Jan. 26, 2018) (citations omitted).

The dispositive premise in the Court's previous consideration of these issues was that the deposition transcripts at issue had not yet become judicial records—they had not yet played a sufficient role in the adjudicative process for the weighty public right of access to attach. (ECF No. 640, 641 at 5–6.) Because the transcripts had not been "submitted to the Court in support of a substantive argument in the case," the crewmembers' asserted interests, even if minimal, were sufficient to justify their request for confidentiality. (*Id.* at 6.)

But these critical facts have changed. Claimants have now discussed the confidential invocations in a substantive motion in limine in the case, and they preview that they will seek adverse inferences based on the invocation at trial. (ECF No. 696.[7]) Claimants' motion in limine

---

[7] Claimants' Motion in Limine was filed under seal at ECF No. 696, along with an unsealed but redacted version filed at ECF No. 699.

will directly impact the manner in which the merits of the case will be adjudicated, and Court's consideration of the putatively confidential material is no longer merely incidental. *See Hispanic Nat'l Law Enforcement NCR v. Prince George's Cty.*, Civ. No. TDC-18-3821, 2021 WL 488641, at *4 (D. Md. 2021) ("Public access to [proceedings on a motion in limine] serves a useful role to facilitate understanding of the determinations made by the justice system . . . ."). Thus, Mr. Nair's alleged harms must be very weighty indeed to overcome the public's now substantial right of access to the information he seeks to keep confidential. *See Virginia Dept. of State Police v. Washington Post*, 386 F.3d 567, 576 (4th Cir. 2004) ("Regardless of whether the right of access arises from the First Amendment or the common law, it may be abrogated only in unusual circumstances.").

Mr. Nair urges that the issue remains premature. (ECF No. 707 at 6.) He argues that his deposition transcript itself still has not been attached to a substantive motion in the case (even if its contents have been discussed) and that "there is no guarantee that this case will proceed to trial," especially because "[i]n the past two weeks settlements were announced with both Ace American Insurance and the State of Maryland." (*Id.* at 6–7.) According to Mr. Nair, "[p]rocedurally, the proper time to contemplate Mr. Nair's confidentiality designations would be when a motion is filed that discusses the deposition transcript" (*id.* at 6), though he also "asks the Court to maintain the confidentiality of his Fifth Amendment deposition at least until trial" (*id.* at 7).

As indicated above, a substantive motion *has* been filed that discusses Mr. Nair's deposition transcript and his invocation of the Fifth Amendment, even if the transcript itself was not attached. Claimants have moved in limine to prevent Mr. Nair from providing trial testimony on precisely the grounds he seeks to keep confidential. Mr. Nair asserts that Claimants' motion in limine "can be resolved without a public airing of his deposition" (*id.* at n.1), but doing so would

require keeping the briefing on the motion in limine and the Court's resolution thereof under seal. Mr. Nair's concerns do not provide the Court with a sufficient basis for doing so, as they fail to overcome the public's substantial right of access to proceedings on the motion in limine.

Further, the burdens imposed by Mr. Nair's confidentiality designation have grown considerably. Claimants were forced in the Parties' Status Report to describe their anticipated motions in all but the vaguest terms, the Court has been forced to conduct a Status Conference alluding to this issue only opaquely, and the briefing on Claimants' motion in limine (ECF Nos. 696, 713) had to be filed provisionally under seal along with attendant motions to seal. The terms of the Protective Order require the parties to undergo a cumbersome, time- and resource-intensive process for filing putatively confidential materials, and the Court does not intend to impose this process on the Parties in further proceedings on the relatively insubstantial grounds that Mr. Nair identifies.

### c. Conclusion

The Court finds that the key terms of the Proposed Stipulated Order reflect an appropriate recognition of the analysis above. Accordingly, the Court will grant Claimants' Motion for Relief and issue an Order including those provisions (modified slightly for clarity). The Parties will be permitted to use the eight deposition transcripts at issue according to those terms, and the public, in turn, will be able to more robustly "judge the product of the courts" in this important case. Relatedly, the Court will deny the pending motions to seal the current briefing on this issue (ECF Nos. 692, 698, 709, and 714). For the reasons that are discussed above, the Parties cannot establish good cause for keeping these filings (ECF Nos. 691, 696, 707, and 713) under seal.[8]

---

[8] Local Rule 105.11 provides that if a motion to seal is denied, "the party making the filing will be given an opportunity to withdraw the materials." Because the Court has already considered the arguments presented in the proposed sealed briefs, the Court discerns no practical means by which to give effect to this portion of the rule.

## II.    Order of Proof at Trial

At the Court's direction, the Parties[9] filed a Status Report containing their respective proposals as to the order of proof to be put on at trial and the appropriate allocation of trial days. (ECF No. 693.) They report that "the parties agree that Claimants should go first at trial," but that "there is disagreement over allocation of the sixteen available trial days." (*Id.* at 1.) Claimants and Petitioners disagree on two issues: whether Petitioners should be permitted an opportunity to present a "sur-rebuttal," and whether the sixteen available trial days should be allocated equally to the two sides of the case. (*Id.* at 2.) Claimants propose a three-stage trial comprised of:

1. Claimants' case in chief (7 days)
2. Petitioners' case (7 days), and
3. Claimants' rebuttal (2 days).

(*Id.*) Claimants "anticipate a substantial portion of the first two trial days will address the case's factual background, including the actual events of the allision and complex systems within the vessel," which they assert "justifies allocation of an additional two trial days." (*Id.*) By contrast, Petitioners assert that "only an even allocation of trial days would be fair" and propose a four-stage trial comprised of:

1. Claimants' case in chief,
2. Petitioners' case in chief (7 days),
3. Claimants' rebuttal, and
4. Petitioners' sur-rebuttal, if necessary (1 day)—

with Claimants' eight (8) total days to be divided between their case in chief and rebuttal case as Claimants see fit. (*Id.*) The only argument made by either side on the question of a sur-rebuttal is

---

[9] Both of the Petitioners and four of the six Claimant groups with claims pending in this action—Personal Injury/Wrongful Death Claimants, Local Government Claimants, Private Economic Loss Claimants, and Cargo Claimants—are signatories on the Status Report. However, the Cargo Claimants did not reach consensus within their group as to a proposed order of proof and thus the Claimants' proposal does not include them.

Claimants' assertion that "Petitioners' suggestion for a 'sur-rebuttal' is unsupported and inappropriate." (*Id.*)

Trial courts have discretion to "determine generally the order in which parties will adduce proof." *Geder v. United States*, 425 U.S. 80 (1976); *see also Atl. Greyhound Corp. v. Eddins*, 177 F.2d 954 (4th Cir. 1949) ("Direction of the orderly presentation of evidence is in the discretion of the trial court."). Federal Rule of Evidence 611 provides that "[t]he [C]ourt should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment and undue embarrassment."

The Court will accede to the Parties' agreement that Claimants should present their evidence first, regardless of whether the *Oregon* and/or the *Louisiana* Rules generate a presumption of negligence that Petitioners must rebut. The Court is persuaded that "the full import of these presumptions can be presented and briefed by the parties during and after trial" and need not "affect the order or scope of proof." (ECF No. 693 at 2–3.) Still, the Court notes that Petitioners have neglected to state their position on whether the *Oregon* and/or *Louisiana* Rules do indeed apply here. (Claimants, by contrast, assert unambiguously that they do (*id.* at 2).) Without suggesting that the Court will rule on the question pre-trial, the Court will expect the Parties to be prepared at the May 5, 2026, Pre-Trial Conference to state their position on the issue and to preview their primary arguments on it for the benefit of the Court.

In any event, the Parties agree that Petitioners will bear the burden to prove their lack of privity and/or knowledge as to any instances of negligence and/or unseaworthiness that either Claimants have proved or that the Court must presume have occurred. (*Id.* at 3.) Given this, the Court concurs with Petitioners that an equal allocation of trial days, and the possibility of

11

Petitioners' sur-rebuttal, would both be appropriate here.  Indeed, the Court agrees with Petitioners that "to the extent the *Oregon* Rule or the *Louisiana* Rule imposes an additional burden on Petitioners at trial," as Claimants assert it does, "that fact weighs in favor of giving them more time—rather than less . . . ." (*Id.*) Accordingly, the Court will establish the following schedule for the presentation of evidence at trial.

1. Claimants' case in chief (7 days),
2. Petitioners' case in chief (7 days),
3. Claimants' rebuttal (1 day), and
4. Petitioners' sur-rebuttal (1 day).

### III.    Conclusion

For the foregoing reasons, Claimants' Motion for Relief (ECF No. 691 and its redacted version, ECF No. 694) will be granted, the related Motions to Seal (ECF Nos. 692, 698, 709, and 714) will be denied, and the Court will set in the above-described schedule for the presentation of evidence at trial.  Two separate Orders will issue.

DATED this 21 day of April, 2026.

BY THE COURT:

James K. Bredar
United States District Judge

12