IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| In the Matter of the Petition<br><br>of<br><br>GRACE OCEAN PRIVATE LIMITED,<br>as Owner of the M/V DALI,<br><br>and<br><br>SYNERGY MARINE PTE LTD, as Manager<br>of the M/V DALI,<br><br>for Exoneration from or Limitation of Liability | Civil Action No. 1:24-cv-00941- JKB<br><br>**IN ADMIRALTY** |

**CLAIMANTS' REPLY TO PETITIONERS' OPPOSITION TO CLAIMANT'S MOTION _IN LIMINE_ TO EXCLUDE LATE-DISCLOSED FACT WITNESSES**

Claimants, collectively and on behalf of the Private Economic Loss, Local Government, Personal Injury and Wrongful Death groups, by and through their undersigned counsel of record, hereby file their Reply to Petitioner's GRACE OCEAN PRIVATE LIMITED and SYNERGY MARINE PTE LTD. (collectively, "Petitioners") Opposition to Claimants' Motion _in Limine_ (ECF No. 711), and in support thereof state as follows:

**I.     THE COURT SHOULD EXCLUDE RAMADASS VENKATARAO, PUBLIO BELTRAN, AND BATHOLOMEW BURNAM FROM TESTIFYING AT TRIAL AS PETITIONERS FAILED TO TIMELY DISCLOSE THOSE INDIVIDUALS**

Petitioners assert that the Claimants have mischaracterized the Court's August 13, 2025 ruling on Claimants' Motion to Compel (ECF No. 599) (the "Order). More specifically, Petitioners assert that the Court plainly provided leeway for Petitioners to amend their response to the rewritten interrogatory that requested Petitioners to:

Please Identify each and every witness that You will or may call at the trial of this case (other than those expected to be called solely for impeachment), state the

1

> subject matter of the witnesses' relevant knowledge, and state whether the witness will testify at trial or whether the witness may testify at trial.

ECF No. 599, pg. 5. Although this Court recognized that "Petitioners' answers to this interrogatory will be provisional and subject to supplementation under Rule 26(e)," Petitioners' arguments concerning supplementation extend far beyond what the Court's order contemplated. This is because the Court *already* addressed the same argument in its order. Indeed, in opposing Claimants' Motion to Compel (ECF No. 586), the Petitioners asserted that the propounded interrogatory required them to disclose trial witnesses long before the joint proposed pretrial order, and therefore, the request was premature. *See* ECF No. 599, pg. 1. But the Court explained in its Order that this was no ordinary case, and there existed "compelling reasons to deviate from the normal witness disclosure requirements in this case." *Id.* at 3. As further explained by the Court:

> Petitioners have identified nearly 200 witnesses with relevant knowledge. ECF No. 595 at 2 n.2. Most of the witnesses reside abroad, beyond the subpoena power of this Court. ECF No. 586 at 11. While the parties have worked cooperatively to conduct international depositions, doing so has imposed a substantial burden on all participants. Arranging and undertaking international travel for so many attorneys and witnesses is very costly and a logistical nightmare. Understandably, Claimants do not wish to depose every single person with knowledge of discoverable information. The Court views the interrogatory as a reasonable means of narrowing down which witnesses are most important to depose before trial.

*Id.* at 4. In other words, although the rewritten interrogatory did not require Petitioners to state with certainty all of the witnesses that it **would** call at trial, it certainly required Petitioners to disclose all of the witnesses that it **might** call at trial. This was done to permit Claimants to limit the deposition of fact witnesses to only those that **would** and **might** be called to testify.

Here, as further detailed in Claimants' Motion *in Limine* (ECF No. 697), Petitioners failed to timely disclose Ramadass Venkatarao, Publio Beltran, or Batholomew Burnam in response to the Court's rewritten interrogatory, which required the disclosure of the witnesses that Petitioners "will" and "may" call at trial. Again, the reason for the Court's ruling is clear: in light of the

number of individuals with knowledge of the underlying facts, it was not feasible for Claimants to depose everyone who possessed knowledge. Accordingly, a more targeted approach was warranted, and that approach relied on the Petitioners' responses to the rewritten interrogatory and the disclosure of individuals who would testify at trial, as well as individuals who might testify at trial.

Petitioners' opposition attempts to circumvent the Court's order and the basis thereof by hiding behind Rule 26(e), but Rule 26(e) cannot excuse the Petitioners' failure to comply with the Court's Order. This is because the Court already decided in its Order that there were "compelling reasons to deviate from the normal witness disclosure requirements in this case." Additionally, Petitioners argue that Claimants did not elect to depose these witnesses even though they were "well known" to the Claimants. Bluntly, in light of the Order and the basis thereof, it matters not that individuals like Mr. Venkatarao were "well known" to Claimants, as Petitioners argue—so were the two hundred other individuals that this Court referenced in its order. As with those two hundred other known individuals, the focus of the Court's Order was streamlining discovery and reducing the number of depositions by allowing Claimants to focus on the individuals who would or may testify at trial. Had Petitioners disclosed to Claimants in response to the rewritten interrogatory that Ramadass Venkatarao, Publio Beltran, or Batholomew Burnam may be called as witnesses at trial, then Claimants would have deposed them. But Petitioners have only now disclosed these witnesses, and since fact discovery closed long ago, Claimants have lost the opportunity to notice and take their depositions.

With respect to Mr. Ramadass Venkatarao, the lack of identification as a witness who **may** testify at trial until seven months after the close of discovery is particularly problematic given the petitioners assertion that he will "address other topics that would otherwise be covered by other

Synergy witnesses who may not be available for trial." (ECF 711 pg. 7)   The Claimants spent nearly three weeks in London deposing the Synergy witnesses who were appropriately identified, many of whom were shoreside management, and now Petitioners propose to instead bring a witness who Claimants never had the opportunity to depose to sit in substitute for those Synergy witnesses who were deposed, presenting significant risk of prejudice to Claimants.

**THE COURT SHOULD EXCLUDE PUBLIO BELTRAN FROM TESTIFYING AT TRIAL AS THE TOPICS OF HIS TESTIMONY ARE SUITABLE ONLY FOR AN EXPERT, NOT A LAY WITNESS**

With respect to Publio Beltran, Petitioners purport to offer him as a fact witness at trial and argue that, to the extent his testimony crosses the line from lay witness to expert witness, then Claimants can object at trial.  Moreover, Petitioners assert that Mr. Beltran will, as a fact witness, "explain[] the circumstances of TSI's engagement in this matter, explain[] the testing protocol TSI developed for the DALI, describe[e] the qualifications of the individuals who performed the testing, and explain[] the testing procedures followed during testing." ECF No. 711, pg. 5. But these explanations are unquestionably the province of expert testimony cloaked as lay testimony.

As discussed in greater detail in Claimants' Motion *in Limine*, a lay witness may offer opinion testimony provided that it is, among other things, "not based on scientific, technical, or other specialized knowledge within the scope of [FRE] 702." As such, a lay witness, *i.e.*, a "third-party fact witness", is prohibited from offering opinions on matters "which are beyond the realm of common experience and which require the special skill and knowledge of an expert witness." *Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 203 (4th Cir. 2000) (internal citation omitted). Here, explanation of testing protocols and testing procedures that were used in creating the TSI Report—the topics of Mr. Beltran's testimony—clearly fall into the category of

expert opinion as those explanations are based on "scientific, technical, or other specialized knowledge" and outside the province of the average lay person.

Furthermore, it appears from Petitioners' opposition (ECF No. 711) that the purpose of Mr. Beltran's testimony will be to lay the foundation to admit the TSI Report as a business record under FRE 803(6). It stands to reason, then, that if the TSI Report is not admissible as a business record, then Mr. Beltran's testimony has no purpose. But the business-records exception contained at FRE 803(6) does not save the TSI Report. This is because the business-records exception applies only when records are created as part of a regularly conducted business activity and where making such records is a regular practice of that activity. FRE 803(6). Despite a perfunctory statement in their opposition that the TSI Report was prepared in the normal course of the Petitioners' business, it is clear that the TSI Report—prepared following the allision—was prepared in anticipation of litigation. Courts have consistently held that documents prepared in anticipation of litigation lack the indicia of trustworthiness required for admission under FRE 803(6) because they are not generated for the systematic conduct of business operations, but rather, they are generated for the purpose of advancing a party's litigation position. *See, e.g.*, *Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 205 (4th Cir. 2000) (finding error in the admission of a report prepared by a party retained specifically for the subject litigation).

Here, the TSI Report falls squarely within the "prepared in anticipation of litigation" category. The report was prepared at the request of Petitioners after the allision and after extensive repairs to the Dali, and in the shadow of ongoing litigation arising from the Key Bridge collapse. It was not generated as part of routine vessel operations, regulatory compliance, or ordinary maintenance practices as demonstrated by the limited and targeted nature of the testing relating to cabinets and transformers that are at issue in the litigation. Rather, it was a specially commissioned,

litigation-driven investigation intended for purposes of assessing and deploying technical conclusions in this case. That context deprives the report of the trustworthiness necessary to qualify for admission under Rule 803(6) or any other hearsay exception. Accordingly, the TSI Report is inadmissible as a business record, and Mr. Beltran's testimony is therefore irrelevant.

**LOCHNER LAW FIRM, P.C.**

*/s/ Todd D. Lochner*
Todd D. Lochner (25691)
Lochner Law Firm, P.C.
7076 Bembe Beach Rd, Suite 201 Mailbox 6
Annapolis, Maryland 21403
Tel.: 410-716-4400
Fax: 443-716-4405
tlochner@lochnerlawfirm.com

/s/ *Daniel O. Rose*
Daniel O. Rose
Kevin Mahoney
KREINDLER & KREINDLER LLP
485 Lexington Avenue, 28th Floor
New York, New York 10017
drose@kreindler.com
kmahoney@kreindler.com
T: (212) 973-3414
*Lead Counsel for Personal Injury and
 Wrongful Death Claimants*

/s/ *Adam J. Levitt*
Adam J. Levitt
Diandra "Fu" Debrosse
Daniel O. Schwartz
DICELLO LEVITT LLP
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
alevitt@dicellolevitt.com
T: (312) 214-7900
*Lead Counsel for Local Government
 Claimants*

/s/ *Terry L. Goddard, Jr.*
Terry L. Goddard, Jr.
SKEEN & KAUFFMAN LLP
9256 Bendix Road Suite 102
Columbia, Maryland 21045
tgoddard@skaufflaw.com
T: (410) 625-2272
*Lead Counsel for Cargo Claimants*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 27, 2026, I electronically filed the foregoing using the CM/ECF system which will send a notice of electronic filing to those who are on the list to receive e-mail notices for this case, have enrolled in this Court's CM/ECF program, and otherwise consented to receive notice and service via CM/ECF.

*/s/ Todd D. Lochner*
Todd D. Lochner (25691)