IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| In the Matter of the Petition<br><br>of<br><br>GRACE OCEAN PRIVATE LIMITED, as Owner of the M/V DALI,<br><br>and<br><br>SYNERGY MARINE PTE LTD, as Manager of the M/V DALI,<br><br>for Exoneration from or Limitation of Liability | Civ. No. 24-00941-JKB<br><br>*IN ADMIRALTY* |

**CLAIMANTS' REPLY IN SUPPORT OF THEIR MOTION *IN LIMINE* TO EXCLUDE NTSB FINDINGS AND CONCLUSIONS AND ADMIT FACTUAL INVESTIGATION MATERIALS, INCLUDING WITNESS STATEMENTS AND INTERVIEW TRANSCRIPTS OF CREWMEMBERS AND SHORESIDE MANAGERS**

Claimants respectfully submit this reply in further support of their motion *in limine* to regarding materials published and used by the National Transportation Safety Board as part of its investigation of the allision.

I.      **INTRODUCTION**

The NTSB is statutorily charged to conduct a safety investigation to prevent future incidents or accidents -   it is not to assign civil fault.  This limitation action, of course, will necessarily look to assign fault (through a finding of privity and knowledge), something the NTSB never considered.  This demarcation of purpose is critical and is recognized through 49 U.S.C. § 1154(b) which precludes the admissibility *and use* (including by experts) of any opinions, conclusions and/or probable cause determinations by the NTSB in the course of its investigation in this civil proceeding.  *Id.*

1

There appears to be ostensible agreement between Claimants and Petitioners that: *facts* contained in the 168 documents published as part of the NTSB's investigation are not barred from use at trial under 49 U.S.C. § 1154(b) but the Board's *opinions, conclusions and probable cause determinations* are precluded. *See* ECF No. 712 ("Broadly speaking, Petitioners agree that the factual elements of the NTSB's investigation file are admissible at trial in this matter whereas the NTSB's conclusions are not."). However, Petitioners are nevertheless attempting to cast - as fact - certain opinions, interpretations, conclusions derived from the NTSB investigation. *See, e.g.*, Pre-Trial Order, Petitioners' Statement of Facts, at 2 ("After an 18-month long exhaustive and comprehensive investigation, which included the MPA and HHI as parties, the NTSB factual reports do not indicate that the DALI was out of compliance with any code, law, regulation or rule governing her operation or HHI's recommendations at the time of the allision."; ECF No. 711, at 8, *Petitioner's Opposition to the Motion In Limine Regarding Late Identified Witnesses* (demonstrating the unprecedented effort by Petitioners to call the NTSB Investigator-in-Charge to "explain the investigation into the cause of the power loss and the investigation by HHI .. . .").

For this reason, what constitutes a "fact" in a NTSB document versus an "opinion" may require a specific analysis. Certain documents Petitioners have indicated they intend to offer are replete with opinions that must be precluded. The parties intend to meet and confer further in advance of the May 5, 2026 Pre-Trial Conference to attempt to reach agreement on which portions of the NTSB reports the parties intend to offer into evidence to narrow the scope of any needed in limine rulings.

Nevertheless, Claimants still request a ruling *in limine* because Petitioners have repeatedly indicated they will attempt to violate 49 U.S.C. § 1154(b) over the course of the trial.

## II.    **ARGUMENT**

### 1.    **An *in limine* ruling is necessary to curb Petitioners' boundless definition of the term "factual findings."**

Petitioners believe they can simply label inadmissible portions of NTSB documents as "factual findings" and circumvent the prohibition on admissibility and use (including by experts) of the NTSB's opinions. *See supra*, p. 2, Pre-Trial Order, Petitioners' Statement of Facts, at 2.  The Court should put a stop to these attempts now. Such a ruling will guide the parties on the proposed conferral and redaction process over the NTSB materials.

Absent a ruling, the trial will surely devolve into mini-trials on what the NTSB concluded and why. For example, Petitioners have tried to bolster their expert opinions by improperly (and incorrectly) insisting their opinions align with the NTSB's. *See* Attachment 1, Fenton Excerpt ("My opinion on the timeliness of the crew's response to the blackout is supported by the NTSB's findings."); Attachment 2, Rajagopal Report ("The actions that Dali's crew took were in conformance with this, as is also  mentioned in the NTSB meeting and final report of 18 November 2025."); Attachment 3, Dolan Report ("The NTSB concluded that a damper did not close and was the cause of the 19 second delay in the EDG coming online."); Attachment 4, Slootmaker Report Excerpt ("The NTSB supports my belief in this regard."); Attachment 5, Power Report Excerpt, ("Reference  is made to the NTSB Meeting of November 18, 2025, under Executive Summary, where they opine . . . ."); Attachment 6, Baumgartner Report Excerpt ("My conclusions are also consistent with the NTSB's."). Petitioners cannot be permitted to subvert the preclusion of this information by the Safety Act simply by presenting the evidence through an expert.

The Court should put a stop to this improper practice before trial. Consistent with the NTSB's charge to identify what went wrong and try to prevent future transportation disasters – but not to assign fault - 49 U.S.C. § 1154(b) states that "No part of a report of the Board, related to

3

an accident or an investigation of an accident, may be admitted into evidence or used in a civil action…"  The statute has been interpreted to preclude opinions, conclusions and probable cause determinations and only allow objective factual findings of the Board. *See Major v. CSX Transp.*, 278 F. Supp. 2d 597, 603 (D. Md. 2003) ("The regulations adopted pursuant to the Safety Act explicitly prohibit the use of **non-factual portions** of NTSB reports.") (emphasis added).

As appropriately noted by this Court during the April 2, 2026 Status Hearing, the NTSB and its investigation have a different purpose than the aims of the adjudication role of the court system. The conclusions and recommendations of the NTSB are issued for a separate reason – fundamentally centered on preventing future accidents. The preclusion of these final NTSB opinions and conclusions upholds and respects the separate and distinct process between the NTSB's investigation and the Court's adjudication role in this action. See *Credle v. Smith & Smith, Inc.*, 42 F. Supp. 3d 596, 598 ("Such reports are undertaken for the "purpose of taking appropriate measures for promoting safety of life and property at sea, and are not intended to fix civil or criminal responsibility." 46 C.F.R. § 4.07–1(b); *Guest v. Carnival Corp.,* 917 F.Supp.2d 1242, 1244–45 (S.D.Fla.2012).").

In summary, Claimants request an order precluding the NTSB's opinions, conclusions, recommendations, and cause determinations from evidence.

### 2.  Overview of NTSB Materials

The NTSB docket contains 168 entries. These entries include 4 investigative reports and updates. The remaining 164 entries are divided into the following nine categories based upon different groups within the NTSB:

1.    Party Submissions (3 documents)
2.    Operations (14 documents)
3.    Engineering (60 documents)
4.    Witness Interviews and Statements (33 documents)

5.      Bridge Structures (20 documents)
6.      Survival Factors (3 documents)
7.      Voyage Data Recorder and Other Electronic Data (16 documents)
8.      Hazmat (14 documents)
9.      Meteorology (1 document)

Each category, aside from category 1 above (Party Submissions) and category 4 (Witness Interviews and Statements) contains a Group Chair's Factual Report from the Group, as well as various data collected by the group's investigation. The Group Chair's Factual Report summarizes the findings of the group in a factual manner. **In general, Claimants do not object to the use of Factual Reports of the various Group Chair's nor the admission of the underlying data collected by each group**. To the extent that information within the Factual Reports and other NTSB documents have other admissibility challenges, any such objections can be reserved for trial.[1]

Exhibit 1 of Petitioners' Opposition identifies 60 individual documents from the NTSB docket that Petitioners seek to introduce at trial. By way of example, Claimants identify three documents identified by Petitioners in their response to this motion to illustrate their inadmissible contents:

Claimants' instant brief focuses on three NTSB documents:

- **Marine Investigation Report MIR 25-40 (NTSB Docket Entry 1) (Attachment 7)**

- **Marine Investigative Report MIR 25-10 (NTSB Docket Entry 3) (Attachment 8)**

- **Dali – Anchor Study (NTSB Docket Entry 22) (Attachment 9)**

---

[1] A number of NTSB docket items include email correspondence and responsive analysis from certain party and non-party entities and representatives. These items, which sometimes include non-factual and opinion-based information, may be subject to other objections and Claimants reserve their right to bring those objections during trial.

These reports contain precisely the type of information the Safety Act precludes.

### 3.   Objection to Marine Investigation Report MIR 25-40 (Attachment 7)

NTSB Docket Entry 1 is 259 pages and consists of (1) a 2-page abstract which summarizes opinions and recommendations; (2) 11 pages of a table of contents, table of figures, glossary of terms (3), an 11-page Executive Summary; (4) and the body of the report.  The abstract includes 8 bulleted points regarding NTSB's conclusion following its investigation. The Executive Summary includes conclusions, overall safety issues, and recommendations from the NTSB. The abstract and Executive Summary are clearly the type of evidence precluded by the Safety Act and should be precluded in their entirety. *See Travelers Ins. Co. v. Riggs*, 671 F.2d 810, 816 (4th. Cir. 1982)("**[§1154(b)] forbids the use of conclusory section of NTSB reports** and [we] thus hold that the district court properly excluded them.") (emphasis added).

Claimants also seeks exclusion of certain sections of the body of the NTSB Report. While Section 1 - "Factual Information" generally pulls the information from other factual reports and is admissible, Section 1.16, entitled "Vulnerability of Bridges over Navigable Waterways to Strikes from Large Ocean-Going Vessels", which runs from pages 131-139, includes conclusory statements, opinions, and recommendations by the NTSB and should be excluded. Also included in the body of the report is Section 2 - "Analysis", Section 3 – "Conclusions", Section 4 – "Recommendations". These sections encompass non-factual opinion statements which should be excluded under the Safety Act. Lastly, the Board Member Statement and Appendices, are also the exact types of non-factual, opinion-based evidence that is specifically precluded by the Safety Act. These sections should be precluded, as well as the probable cause section.

As identified in Claimants' attached Proposed Order, the following portions of NTSB Docket Entry 1 should be excluded:  Abstract, Table of Contents for Analysis Conclusions and

Recommendations (pp. iii – iv), 1.16 Vulnerability of Bridges Over Navigable Waterways to Strikes from Large Ocean-Going Vessels (pp.131-136), Analysis, Conclusions, Probable Cause Recommendations, Board Member Statement, and Appendices, with the exception of Appendix C, the voyage timeline (pp. 140-257).

4. **Objection to Marine Investigative Report MIR 25-10 (Attachment 8)**

Claimants also seek the exclusion of NTSB Docket Entry 3 – entitled Safeguarding Bridges from Vessel Strikes: Need for Vulnerability Assessment and Risk Reduction Strategies. The report is 26 pages and focuses exclusively on "Risk Reduction Strategies" regarding safeguarding bridges. By its very title, the document includes the NTSB's recommendation and opinion for the apparent need of certain evaluations in order to prevent accidents in the future. As with other analysis and conclusions by the NTSB, this type of opinion and recommendation is not admissible. For those reasons, and because this report is not factual, no aspect of this report should be admitted.

The attached Order reflects Claimants' position that the entire 26 pages of NTSB Docket Entry 3 – Safeguarding Bridges from Vessel Strikes Need for Vulnerability Assessment and Risk Reduction Strategies be excluded at trial.

5. **Objection to the Anchor study (Attachment 9)**

Claimants seek the exclusion of portions of the "Anchor Study" from the NTSB. This study includes discussion of the specification and performance standards of the Dali's anchor system. The "Summary" Section (pp.13-14) of the report, however, includes NTSB conclusions and opinions on the positive effect that deployment of the anchor had on causing the allision. This is squarely a conclusion, beyond mere factual discussion of the capabilities of the anchor and goes to the heart of several causal theories. This summary section is therefore inadmissible under longstanding precedent and should not be admitted at trial.

**6. The Transcripts and Audio Recordings of Crew Members and Shoreside Managers are Admissible**

Claimants and Petitioners agree that NTSB witness interviews are admissible. Petitioners' Opposition notes that that the audio recordings of the interviews may be more reliable because certain transcripts contain transcription errors and gaps largely due to the accents of the individuals being interviewed.

Both parties are in agreement that the transcripts and corresponding audio recordings are generally admissible. Claimants are workings with Petitioners on the best manner to use such evidence at trial, whether by playing of the audio, reading of the transcript, or both as may be required.

## III.    CONCLUSION

For the reasons set forth herein, Claimants respectfully move this Court for an Order excluding the findings and Conclusions of the NTSB reports, including portions of The Marine Investigation Report MIR 25-40 (NTSB Docket Entry 1), the Summary of the Anchor Study (NTSB Docket Entry 22), and the entirety of the Marine Investigative Report MIR 25-10 (NTSB Docket Entry 3), and permitting the use at trial of any underlying factual evidence and investigative materials, including the interview transcripts, related audio, and witness statements of the crewmembers and shoreside managers. A proposed Order has been affixed to this instant Motion *in Limine.*

Respectfully submitted,

/s/ *Daniel O. Rose*
Daniel O. Rose
Kevin Mahoney
KREINDLER & KREINDLER LLP
485 Lexington Avenue, 28th Floor

8

New York, New York 10017
drose@kreindler.com
kmahoney@kreindler.com
T: (212) 973-3414
*Lead Counsel for Personal Injury and*
 *Wrongful Death Claimants*

/s/ *Adam J. Levitt*
Adam J. Levitt
Diandra "Fu" Debrosse
Daniel O. Schwartz
DICELLO LEVITT LLP
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
alevitt@dicellolevitt.com
T: (312) 214-7900
*Lead Counsel for Local Government*
 *Claimants*

/s/ *Todd D. Lochner*
Todd D. Lochner
LOCHNER LAW FIRM, P.C.
7076 Bembe Beach Road; Suite 201 Mailbox 6
Annapolis, Maryland 21403
tlochner@lochnerlawfirm.com
T: (443) 716-4400
*Lead Counsel for Private Economic Loss*
 *Claimants*