**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

| | |
|---|---|
| In the Matter of the Petition<br><br>of<br><br>GRACE OCEAN PRIVATE LIMITED,<br>as Owner of the M/V DALI,<br><br>and<br><br>SYNERGY MARINE PTE LTD, as Manager<br>of the M/V DALI,<br><br>for Exoneration from or Limitation of Liability | Civil Action No. 1:24-cv-00941- JKB<br><br>**IN ADMIRALTY** |

<u>**CLAIMANTS' BRIEFING ADDRESSING THE ADMISSIBILITY OF TSI REPORT AND TESTIMONY OF PUBLIO BELTRAN**</u>

Claimants, collectively and on behalf of the Private Economic Loss, Local Government, Personal Injury and Wrongful Death groups, by and through their undersigned counsel of record, hereby file their Briefing Addressing the Admissibility of TSI Report and Testimony of Publio Beltran (the "Briefing"), and in support thereof state as follows:

## I.    INTRODUCTION

Even though Petitioners knew they were required to disclose facts witnesses such as Beltran by August 19, 2025 they waited 234 days until April 10, 2026 to disclose him.  The predicate for this Briefing can be traced back to Claimants' Motion to Compel (ECF No. 586), and the Court's August 13, 2025 ruling on said motion (ECF No. 599) (the "Order). More specifically, in the Order, and in addressing whether the Court would compel the Petitioners to disclose the fact witnesses it would and may call at trial in answer to an interrogatory the Claimants had propounded, the Court explained that this was no ordinary case, and there existed "compelling

reasons to deviate from the normal witness disclosure requirements in this case." ECF No. 599 at

3. As further explained by the Court:

> Petitioners have identified nearly 200 witnesses with relevant knowledge. ECF No.
> 595 at 2 n.2. Most of the witnesses reside abroad, beyond the subpoena power of
> this Court. ECF No. 586 at 11. While the parties have worked cooperatively to
> conduct international depositions, doing so has imposed a substantial burden on all
> participants. Arranging and undertaking international travel for so many attorneys
> and witnesses is very costly and a logistical nightmare. Understandably, Claimants
> do not wish to depose every single person with knowledge of discoverable
> information. The Court views the interrogatory as a reasonable means of narrowing
> down which witnesses are most important to depose before trial.

*Id.* at 4.

But the parties' discovery dispute did not end with the Order of August 13, 2025. On April

13, 2026, the next business day after Petitioners belatedly disclosed Publio Beltran, Claimants filed

their Consolidated Motion *in Limine* (ECF No. 697) which sought to exclude, *inter alia*, the

testimony of Publio Beltran on the basis that Petitioners had not disclosed him as a witness that

would or may testify at trial. Petitioners opposed the motion *in limine* (ECF No. 711), and

Claimants timely replied (ECF No. 722). Importantly, on May 5, 2026, the Court held a hearing

on the motion *in limine*, whereupon the Court ruled that Petitioners could not call witness,

Ramadass Venkatarao, from testifying at trial on the basis that Petitioners had failed to timely

disclose that individual in accordance with the Order. *See* ECF No. 741. On May 6, 2026, the

Court entered an order (ECF No. 741) confirming its ruling from the May 5, 2026 hearing. But the

most recent order of May 6, 2026 did not fully dispose of this dispute. At the hearing, the Court

specifically requested additional briefing on two topics: (1) whether Publio Beltran should be

permitted to testify at trial; and (2) the admissibility of the TSI Report. Claimants address each

issue *in seriatim*.

## II.    ARGUMENT

2

**A. Publio Beltran should be excluded from testifying as a fact witness because he was not timely disclosed in accordance with the Order, and the topics of his testimony are permissible only for expert witnesses.**

Publio Beltran must be excluded from testifying in this matter. At the outset, Claimants note that Mr. Beltran was not disclosed as an expert witness in accordance with Petitioners' 26(a)(2) disclosure and the deadline this Court set for the same. Petitioners admitted in open court on May 5, 2026, that he was not disclosed as an expert, nor was he disclosed as a fact witness in their initial response to the Order. The Petitioners attempt to circumvent this belated disclosure by cloaking their putative "expert" and asserting that he is no more than a lay witness. This Court's Order—and the Petitioners' violation of the same—firmly shuts the gate on Beltran's testimony.

**i. Petitioners failed to disclose Beltran in accordance with the Order, and therefore, he should be precluded from testifying as a fact witness.**

As more fully explained in ECF Nos. 697 and 722, the Court previously required Petitioners to disclose all fact witnesses that it might call at trial, as well as all those that it would call at trial. The Court's purpose was simple: in light of the number of individuals the Petitioners had identified, and the commensurate need to depose those individuals, the Petitioners were required to list all potential witnesses that could be called so that the Claimants could limit depositions to only those individuals who might be called upon to provide testimony at trial. Indeed, for violating this Order, this Court has already precluded Ramadass Venkatarao from testifying as a fact witness at trial. The Court clearly pronounced on May 5, 2026 that a witness for whom there had been no opportunity for Claimants to depose would not be permitted to testify; there is no basis for the Court to treat Publio Beltran any differently.

**ii. Publio Beltran's testimony is appropriate only for an expert witness, and he is not being offered as an expert witness.**

As the Fourth Circuit succinctly stated: "At bottom, Rule 701 forbids the admission of expert testimony dressed in lay witness clothing." *United States v. Johnson*, 617 F.3d 286, 293

3

(4th Cir. 2010) (cleaned up). To the extent that Petitioners' failure to adhere to the Order does not close the gate on Publio Beltran, he is no lay witness, and he should not be permitted entry through the gate as such.

There is little room to debate Publio Beltran's status as an undisclosed expert witness.. Petitioners assert, if permitted to testify as a fact witness, Publio Beltran will "explain[] the circumstances of TSI's engagement in this matter, explain[] the testing protocol TSI developed for the DALI, describe[e] the qualifications of the individuals who performed the testing, and explain[] the testing procedures followed during testing." ECF No. 711, pg. 5. But these explanations are undoubtedly outside the scope of lay witness testimony. As discussed in greater detail in Claimants' Motion *in Limine* (ECF No. 697), a lay witness may offer opinion testimony provided that it is, among other things, "not based on scientific, technical, or other specialized knowledge within the scope of [F.R.E.] 702." As such, a lay witness, *i.e.*, a "third-party fact witness", is prohibited from offering opinions on matters "which are beyond the realm of common experience and which require the special skill and knowledge of an expert witness." *Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 203 (4th Cir. 2000) (internal citation omitted). Here, explanation of testing protocols and testing procedures that were used in creating the TSI Report— the topics of Mr. Beltran's testimony—clearly fall into the category of expert opinion as those explanations are based on "scientific, technical, or other specialized knowledge."

The Fourth Circuit addressed a similar issue in *Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200 (4th Cir. 2000), wherein it recognized that reversal was a potential consequence of permitting an expert to testify cloaked as a lay witness, even when an instruction is given to limit the scope of testimony. As explained in *Sinkovich*:

> Although the district court indicated it would limit Geary's testimony to that of a lay witness, much of his testimony was in the form of responses to hypothetical or like questions that required specialized knowledge to answer. . . .
>
> . . . . Despite its failure to sustain Sinkovich's objections to Geary's testimony, the district court even recognized that Geary was testifying as to "the application of the art and science of navigation" and that the average citizen could not reach a certain conclusion of Geary upon application of the facts at hand. We hold that the district court erred in admitting Geary's testimony, as mentioned, and like testimony, as lay testimony in this case, even under Rule 701.

*Sinkovich*, 232 F.3d at 203–04. Here, all of the topical areas of Publio Beltran's testimony fall well outside the scope of a lay witness as all require specialized knowledge. There is no other, proper purpose for which Publio Beltran is called to testify. Accordingly, he must be excluded.

**B. The TSI Report is inadmissible because (1) none of the Petitioners' witnesses can lay the requisite foundation to authenticate the TSI Report; (2) the TSI Report constitutes inadmissible hearsay; (3) none of the Petitioners' witnesses can lay the requisite foundation necessary to admit the TSI Report as a business record under F.R.E. 803(6); and (4) even if the Petitioners could lay the requisite foundation necessary to admit the TSI Report as a business record, it is still inadmissible because it was prepared in anticipation of litigation, and therefore, it lacks the required indicia of trustworthiness to be admitted.**

By way of background, and to provide necessary context to this Section II.B., the third blackout that the Dali suffered in Baltimore before she allided with the Key Bridge was caused by a loose wire, Node 381. Petitioners contend the Node 381 was a latent defect as a means of rebutting the presumptions of the *Louisiana* and *Oregon* rules. Conversely, Claimants contend that Node 381 was loose because of a well-known and long-term vibration issue on the Dali, which was unrepaired following settlement of a warranty claim based upon excessive vibration. Further on the topic, Claimants contend that Synergy's home office personnel purchased fraudulent circuit breaker inspection certificates falsely indicating the vessel's electrical system was inspected at its 2020 drydock inspection. Claimants further contend that, had the inspections occurred during drydock, or had the ship used any number of thermal imaging or other inspection methods

following drydock as a matter of usual maintenance, then Node 381 would have been discovered. In contrast to their settled warranty claim, Petitioners deny that there was a vibration problem on the Dali based upon conclusions and data obtained on the Dali **_after the allision_** and following major structural repairs in drydock via consulting **_non-testifying experts_**, Técnicas y Servicios de Ingeniería, S.L. ("TSI"), among which is Publio Beltran.  Mr. Beltran, as part of his employment with TSI, generated a report[1] (the "TSI Report")—a report that Petitioners now seek to introduce in this case as a business record to support their contention that the Dali did not have a vibration issue prior to the allision.

The TSI Report is flatly inadmissible. First, in light of this Court's Order excluding Ramadass Venkatarao, there are no fact witnesses that could authenticate the TSI Report. To the extent that Publio Beltran could authenticate the TSI Report, he should be excluded as per the arguments raised, *infra*. Beyond the barrier of authentication, the TSI Report is also hearsay. Although Petitioners argue—solely—that it falls under the business records exception of F.R.E. 803(6), in light of this Court's exclusion of Ramadass Venkatarao, the Petitioners cannot possibly satisfy the requirement of F.R.E. 803(6), and even if they could, the TSI Report was clearly prepared in anticipation of litigation, and therefore, the business records exception would not apply.

### i.  The TSI Report cannot be authenticated.

The TSI Report purports to be a complete and accurate record of vibration testing allegedly conducted aboard the Dali long after the allision, after major structural repairs, and approximately ten months after the Petitioners filed this action. It includes selected data collected, the conditions

---

[1] The TSI Report is voluminous, and in keeping with the representations made on May 5, 2026 in open court, Claimants rely upon Petitioners to include the report as an exhibit to their briefing pursuant to the Court's direction. Accordingly, Claimants have not included it with this briefing.

6

under which testing occurred, and technical conclusions drawn from that testing, all with particular focus on the electrical cabinets in the Engine Control Room in the vicinity of node 381 and the transformers, whose jury-rigged vibration dampening appears with photographs in a plurality of the claims filed in this case as early as the summer of 2024. As the proponent of the TSI Report, the Petitioners bear the burden of producing evidence "sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a); *see also United States v. Branch*, 970 F.2d 1368, 1370 (4th Cir. 1992) ("Before admitting evidence for consideration by the [fact finder], the district court must determine whether its proponent has offered a satisfactory foundation from which the [fact finder] could reasonably find that the evidence is authentic"); *Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 542 (D. Md. 2007) (authentication requirement ensures that evidence is trustworthy).

Here, Petitioners have not, and cannot, lay a proper foundation to authenticate the TSI Report. They cannot establish that it is a complete and accurate record of the testing allegedly performed, that it reliably reflects the testing conditions, or that it has not been altered, selectively compiled, or shaped for litigation. Indeed, Petitioners gave no advance notice of the testing, did not produce a protocol, did not invite Claimants to observe or participate, did not disclose any TSI representative as a testifying expert capable of authenticating the report, and did not produce all the raw data that was collected. This Court has already precluded Ramadass Venkatarao from testifying in this matter, and therefore, he cannot possibly authenticate the TSI Report. As such, the only[2] individual who could potentially authenticate the TSI Report is Publio Beltran, whom Petitioners assert in ECF No. 711 to be the "founder and CEO" of TSI. But to the extent that this

---

[2] Moreover, although expert witnesses are permitted to rely on otherwise inadmissible documents, that an expert may permissibly rely on those otherwise inadmissible documents does not permit the direct admission of those documents. *See* F.R.E. 703.

Court precludes Mr. Beltran from testifying in this matter for the reasons more fully stated in Section II.A., *supra*, then Petitioners will not be able to authenticate the TSI Report as Mr. Beltran will not be able to provide the foundational testimony necessary to authenticate the same. In other words, absent such testimony, Petitioners cannot satisfy FRE 901's threshold requirement, and the TSI Report must be excluded.  If it is not subject to authentication then the analysis may stop there.

### ii.   The TSI Report constitutes hearsay for which there is no exception.

Even assuming Petitioners could establish the authenticity of the TSI Report, which they cannot, the TSI Report remains inadmissible because it constitutes hearsay for which no exception applies. Authentication is only the second step on the path to admissibility, the first being relevance, and the mere authentication of a relevant document does not render it admissible where the document contains hearsay. *See United States v. Hernandez*, 166 F.3d 335, 1998 WL 841504, at *2 n.2 (4th Cir. 1998). F.R.E. 801 defines hearsay as an out-of-court statement offered to prove the truth of the matter asserted, and F.R.E. 802 provides that hearsay is inadmissible unless permitted by statute or exception. *See also Goode v. United States*, 730 F. Supp. 2d 469, 472 (D. Md. 2010).

Here, the TSI Report plainly constitutes hearsay as it consists of out-of-court statements, analyses, measurements, and conclusions authored by TSI personnel who will not testify at trial, and it is offered for the truth of the matters asserted, namely: (1) that the vibration levels measured aboard the Dali were within certain ranges, (2) and that those findings have technical significance. Petitioners seek to rely on these assertions substantively, not merely for background or context, which places the TSI Report firmly within the definition of hearsay. None of the recognized exceptions to the hearsay rule apply. *See* F.R.E. 803, 804. The only conceivable candidate is the business-records exception set forth in F.R.E. 803(6). Indeed, Petitioners asserted in open court on

8

May 5, 2026, in response to this Court's questions that they rely exclusively on this exception in arguing in favor of admissibility. But this exception does not save the TSI Report. That exception applies **only** where records are created as part of a regularly conducted business activity and where making such records is a regular practice of that activity. F.R.E. 803(6). Courts have consistently held that documents prepared in anticipation of litigation lack the indicia of trustworthiness required for admission under Rule 803(6), because they are not generated for the systematic conduct of business operations but instead for the purpose of advancing a party's litigation position. *See, e.g.*, *Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 205 (4th Cir. 2000) (finding error in the admission of a report prepared by a party retained specifically for the subject litigation).

### 1. Absent testimony from Ramadass Venkatarao, the Petitioners cannot satisfy the threshold requirements of F.R.E. 803(6).

Under F.R.E. 803(6), although hearsay, records of a regularly conducted activity, *e.g.*, a "record of an act, event, condition, opinion, or diagnosis" are not excluded as hearsay if the proponent of the record shows:

> (A) the record was made at or near the time by — or from information transmitted by — someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;
> (D) **all these conditions are shown by the testimony of the custodian or another qualified witness**, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> (E) **the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness**.

F.R.E. 803(6) (emphasis added). At bottom, for the business records exception to apply, the custodian of the record must testify concerning the Rule's threshold requirements. But Petitioners cannot do so where, as here, the Court has already precluded Ramadass Venkatarao from

9

testifying, and the Petitioners have not disclosed any other witnesses who could possibly satisfy the requirements of F.R.E. 803(6)(D). To the extent that the Petitioners argue that Publio Beltran can serve as a custodian, he should also be precluded from testifying at trial as per Claimants' arguments raised more fully in Section II.A., *supra*. Even if Publio Beltran is permitted to testify, he is the CEO and founder of TSI, not the custodian of any of the Petitioners' records.

> **2. Even if the Petitioners could satisfy the threshold requirements of F.R.E. 803(6), the TSI Report is not admissible under the business records exception because it was prepared in anticipation of litigation.**

Assuming, *arguendo*, that the TSI Report can be authenticated despite the lack of foundational testimony from Ramadass Venkatarao, and that Publio Beltran is permitted to testify and could somehow serve as a custodian to meet the requirements of F.R.E. 803(6)(D), the TSI Report is still inadmissible under F.R.E. 803(6)(E). As explained, *supra*, a record does qualify for the business records exception if the opponent shows that "the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." F.R.E. 803(6)(E). As illustrated by the "often-quoted[ed] words of Judge Jerome Frank, in *Hoffman v. Palmer*, 129 F.2d 976, 991 (2d Cir. 1942), . . . such documents prepared specifically for use in litigation are 'dripping with motivations to misrepresent,'" and therefore, are not admissible under the business records exception. *Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 204 (4th Cir. 2000).

Here, the TSI Report is wholly lacking in any indicia of trustworthiness and is "dripping with motivations to misrepresent" because it was prepared in anticipation of this very litigation. Of course, Claimants do not expect Petitioners to concede this point. Indeed, Petitioners have already claimed that the TSI Report was prepared "to ensure that the drydock repairs had been effectively completed and that the [Dali] was able to safely continue trading." ECF No. 711, pg.

10

4. There is no room to debate that the TSI Report was prepared at the request of Petitioners **_after_** the allision, **_after_** extensive repairs to the Dali, and **_after_** it had filed this action. It is therefore beyond the pale to suggest that the TSI Report has nothing to do with this litigation. But to the extent that Petitioners maintain that the TSI Report has another, more innocent purpose,[3] this Court must still exclude the TSI Report.

In the context of whether a document constituted work product that was prepared in anticipation of litigation, the Ninth Circuit held that "dual purpose documents" should be viewed under a "because of" test.[4] *In re Grand Jury Subpoena (Mark Torf/Torf Env't Mgmt.)*, 357 F.3d 900, 907 (9th Cir. 2004). Under that test, whether a document was prepared in anticipation of litigation depends on whether, "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." *Id.* (quoting Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, *8 Federal Practice & Procedure* § 2024 (2d ed. 1994)). Of course, as the Ninth Circuit observed, "[t]he 'because of' standard does not consider whether litigation was a primary or secondary motive behind the creation of a document[,]" and "it considers the totality of the circumstances and affords protection when it can fairly be said that the 'document was created

---

[3] In the case of *Holladay v. Royal Caribbean Cruises, Ltd.*, 334 F.R.D. 628 (S.D. Fla. 2020), the United States District Court for the Southern District of Florida addressed whether a draft expert report requested by Royal Caribbean Cruises Ltd.'s in-house counsel that addressed an on-board attraction and made no mention of litigation qualified as work product, *i.e.*, whether it was prepared in anticipation of litigation. Notably, although the court in *Holladay* determined that the report did not qualify as work product created in anticipation of litigation, it did not adopt any specific test, such as the "because of" test, in reaching that determination. Instead, the court "confine[d] the ruling to the unique facts of this specific fact pattern."

[4] In *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co.*, 967 F.2d 980, 985 (4th Cir. 1992), the Fourth Circuit adopted the "because of" test. The United States Court of Appeals for the District of Columbia in *United States v. Deloitte LLP*, 610 F.3d 129, 137 (D.C. Cir. 2010), citing to *Murray Sheet Metal*, explained that, like the Fourth Circuit, it also applies the "because of" test. Judge Hollander cited to both of these cases in *Millennium Inorganic Chemicals Ltd. v. Nat'l Union Fire Ins. Co.*, No. CIV.A. ELH-09-1893, 2011 WL 1466428, at *3 (D. Md. Apr. 15, 2011), wherein she explained that "[w]ith the exception of the Fifth Circuit, it appears that all of the circuits that have addressed the matter, including the Fourth Circuit, have adopted the 'because of' test" in determining whether a document was prepared in anticipation of litigation.

because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation[.]'" *Id.* at 908 (quoting *United States v. Adlman*, 134 F.3d 1195 (2nd Cir. 1998)). Importantly, therefore, "[t]he circumstances surrounding the document's preparation must also be considered[,]" and "the nature of the document and the factual situation of the particular case are key to a determination of whether work product protection applies. *Id.* (internal quotations omitted). As such, "[w]hen there is a true independent purpose for creating a document," it is more likely that it was prepared in anticipation of litigation, "but when two purposes are profoundly interconnected, the analysis is more complicated." *Id.*

Here, although Petitioners assert that the TSI Report was created "in the ordinary course of Grace Ocean's and Synergy Marine's business to ensure that the drydock repairs had been effectively completed and that the Vessel was able to safely continue trading," ECF No. 711, pg. 4, the TSI Report falls squarely within the "prepared in anticipation of litigation" category of documents that are not worthy of admission as a business record. Instructive here is the Fourth Circuit case of *Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 205 (4th Cir. 2000). In that case, the underwriters argued, *inter alia*, that an investigation report of a non-testifying expert should be admissible as a business record even if it related to the litigation because a third party prepared the report. The Fourth Circuit found that argument "unpersuasive." *Sinkovich*, 232 F.3d at 205. It held: "The report is no more trustworthy because Geary prepared it than if Underwriters had done so. Whether Underwriters compiled the report as part of an internal investigation with in-house employees or whether Underwriters hired an outside investigator to prepare the report, the conclusion remains that the primary motive for initially preparing the report was to prepare for litigation." Likewise, even if Petitioners did not directly prepare the TSI Report, the report was prepared at the request of Petitioners ***after*** the allision, ***after*** extensive repairs to the

Dali, and some ten months ***after*** it had filed this action. In other words, the TSI Report was prepared in the context of ongoing litigation arising from the Key Bridge collapse, with its focus on the very areas described in the pleadings in this case being related to excessive vibration. It was not generated as part of routine vessel operations, regulatory compliance, or ordinary maintenance practices as demonstrated by the targeted nature of the testing relating to electrical cabinets in the engine control room and the transformers that are at issue in the litigation. Rather, it was a one-off, litigation-driven investigation commissioned for the purposes of assessing and deploying technical conclusions in this case. That context pushes the TSI Report squarely into the category of documents prepared in anticipation of litigation and deprives it of the trustworthiness necessary to qualify for admission under F.R.E. 803(6) or any other hearsay exception. Accordingly, the TSI Report is inadmissible and must be excluded.

## III.    CONCLUSION

For the reasons stated more fully, *supra*, the TSI Report is inadmissible, as is the testimony of Publio Beltran, who should be excluded on the basis that the Petitioners failed to disclose Mr. Beltran as a potential witness in accordance with the Court's Orders, and because the topical areas on which he is to testify are only appropriate for an expert witness, and Publio Beltran was not disclosed as an expert witness.

**LOCHNER LAW FIRM, P.C.**

*/s/ Todd D. Lochner*
Todd D. Lochner (25691)
Chase A. Eshelman (29134)
7076 Bembe Beach Rd, Suite 201 Mailbox 6
Annapolis, Maryland 21403
Tel.: 410-716-4400
Fax: 443-716-4405
tlochner@lochnerlawfirm.com
ceshelman@lochnerlawfirm.com

13

/s/ *Daniel O. Rose*
Daniel O. Rose
Kevin Mahoney
KREINDLER & KREINDLER LLP
485 Lexington Avenue, 28th Floor
New York, New York 10017
drose@kreindler.com
kmahoney@kreindler.com
T: (212) 973-3414
*Lead Counsel for Personal Injury and*
 *Wrongful Death Claimants*

/s/ *Adam J. Levitt*
Adam J. Levitt
Diandra "Fu" Debrosse
Daniel O. Schwartz
DICELLO LEVITT LLP
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
alevitt@dicellolevitt.com
T: (312) 214-7900
*Lead Counsel for Local Government*
 *Claimants*

/s/ *Terry L. Goddard, Jr.*
Terry L. Goddard, Jr.
SKEEN & KAUFFMAN LLP
9256 Bendix Road Suite 102
Columbia, Maryland 21045
tgoddard@skaufflaw.com
T: (410) 625-2272
*Lead Counsel for Cargo Claimants*

14

**CERTIFICATE OF SERVICE**

I hereby certify that on May 11, 2026, I electronically filed the foregoing using the CM/ECF system which will send a notice of electronic filing to those who are on the list to receive e-mail notices for this case, have enrolled in this Court's CM/ECF program, and otherwise consented to receive notice and service via CM/ECF.

/s/ Todd D. Lochner
Todd D. Lochner (25691)