**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

| | |
|---|---|
| In the Matter of the Petition<br><br>of<br><br>GRACE OCEAN PRIVATE LIMITED, as Owner of the M/V DALI,<br><br>and<br><br>SYNERGY MARINE PTE LTD, as Manager of the M/V DALI,<br><br>for Exoneration from or Limitation of Liability. | Docket No. JKB 24-cv-941<br><br>*IN ADMIRALTY* |

**PETITIONERS' MOTION TO STAY CIVIL PROCEEDINGS**
**AND INCORPORATED MEMORANDUM IN SUPPORT**

**TABLE OF CONTENTS**

**Page**

Preliminary Statement.................................................................................................... 1

Background ...................................................................................................................... 3

      A.    The Limitation Proceeding ............................................................................. 3

      B.    The Indictment................................................................................................ 3

      C.    The Common Allegations ............................................................................... 3

      D.    Synergy Fact Witnesses ................................................................................. 4

Legal Argument ............................................................................................................. 9

    I.    A Stay of this Matter is Necessary to Avoid Prejudice to Petitioners................................. 9

    A.    The Issues in This Matter Are Identical to Those in the Criminal Case ...................... 10

    B.    The Pending Indictment Against Synergy Warrants a Stay ......................................... 12

    C.    Petitioners Will Suffer Significant Prejudice Absent a Stay........................................ 12

    D.    Claimants Will Not Suffer Undue Prejudice from a Stay ............................................ 14

    E.    Judicial Economy is Served by the Proposed Stay ...................................................... 15

    F.    The Public Interest Will be Furthered by a Stay .......................................................... 16

CONCLUSION................................................................................................................ 16

Petitioners Grace Ocean Private Limited and Synergy Marine Pte Ltd. (collectively "Petitioners") submit this Memorandum of Law in support of their motion to stay the trial scheduled to commence June 1, 2026 in the Limitation Proceeding.

**PRELIMINARY STATEMENT**

Less than three weeks before trial is scheduled to commence in this matter, the United States Department of Justice ("DOJ") unsealed criminal charges against Petitioner Synergy Marine Pte Ltd ("Synergy"), a corporate affiliate, and an employee who served as technical superintendent of the M/V DALI (the "Vessel"). The charges arise out of the very same facts and circumstances which form the core of this action. The Indictment – the allegations contained within which are unfounded and strenuously denied – was returned on April 8, 2026, but only unsealed on May 12, 2026, more than two years after the casualty.[1] Indeed, the DOJ's investigation alone has had a significant, detrimental impact on *both* Petitioners, and unsealing the Indictment so close in time to trial continues to negatively impact both Petitioners and the trial in this action.

Synergy is now in an untenable position where it must defend itself here while facing criminal charges. And, Petitioner Grace Ocean Private Limited ("Grace Ocean"), *which has not been charged criminally*, has had its ability to present a defense in this case substantially impacted as well. In particular, Synergy's other employees, having seen one of their colleagues criminally charged in connection with his work done for the Vessel, and after consulting with their own independent counsel, all have confirmed that they will not come to the U.S. to testify.  Indeed, they

---

[1] *See* Indictment, *United States v. Synergy Marine Private Ltd.*, 1:26-cr-00118-JKB (D. Md. Apr. 8, 2026) (the "Indictment").

have expressed serious reservations about even testifying by video, were that an option,[2] though they are still conferring with counsel on this point.

Both the criminal and civil cases stem from the same incident – the Vessel's March 26, 2024 allision with the Francis Scott Key Bridge (the "Casualty"), and turn largely on the same set of disputed facts, namely: the cause of the accident; whether Synergy's operation and management of the Vessel was negligent; and whether Synergy had knowledge of any negligent or unseaworthy conditions on the Vessel. Thus, requiring Synergy to defend itself in concurrent criminal and civil cases would severely prejudice its ability to fully and fairly defend itself in both proceedings, while at the same time waste judicial resources. The now-unsealed Indictment also has had a dramatic chilling effect on fact witnesses, which impacts both Petitioners' and Claimants' ability to present their case at trial.

Accordingly, Petitioners respectfully request that the Court grant a stay of the trial in this matter until the resolution of the criminal case against Synergy.[3] Alternatively, they request the Court grant a stay of at least 90 days to allow Petitioners to evaluate whether they can obtain immunity or some other protection for any of Synergy's employee fact witnesses, such that they would agree to travel to the United States to attend trial. For the reasons discussed below, a stay is warranted, because: (1) the issues in this matter are nearly identical to those in the related criminal investigation; (2) Synergy has been indicted; (3) Petitioners will be severely prejudiced if a stay is

---

[2] Prior to the Indictment, Petitioners proposed to the Claimants that they would agree to make Synergy's fact witnesses available by live video in Claimants' case-in-chief if Claimants would consent to Petitioners' introducing such testimony by live video as part of Petitioners' case; Claimants objected to this proposal.

[3] During such stay, Petitioners would propose the Court agree to entertain a motion for summary judgment in respect of the private and public economic loss claims, which Petitioners contend are barred under *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927). After settlements of several of the other claims in this matter, including by the State of Maryland, its subrogated Insurer Ace, the United States (civil), and one of the death claimants, these economic loss claims now make up a significant percentage of the remaining claims.

not entered; (4) Claimants will not suffer prejudice from a stay; (5) judicial economy will be served by a stay; and (6) the public interest will be furthered by a stay.

**BACKGROUND**

### A.   The Limitation Proceeding

On April 1, 2024, pursuant to the Shipowners Limitation of Liability Act of 1851, 46 U.S.C. §§ 30501, *et seq.* ("Limitation Act"), Petitioners filed a Complaint seeking exoneration from and/or limitation of liability arising from the Casualty before this Court (the "Limitation Proceeding"). Trial in the first phase of the Limitation Proceeding is set to commence on June 1, 2026, wherein the Court will determine whether Petitioners are entitled to exoneration and/or limitation of their liability. Together with claimants in the Limitation Proceeding ("Claimants"), Petitioners have been working diligently to prepare for trial.

### B.   The Indictment

On April 8, 2026, a Grand Jury returned the eighteen-count Indictment charging Synergy and Synergy Maritime Pte Ltd ("Synergy Maritime") with conspiracy to defraud the United States, to violate the Ports & Waterways Safety Act (the "PWSA"), and to make false statement to the government; violations of the PWSA, the Clean Water Act and the Refuse Act; Seaman's Manslaughter; obstruction; and false statements. The Indictment also charged Synergy Maritime employee Radhakrishnan Karthik Nair ("Nair") with conspiracy; violations of the Ports & Waterways Safety Act; Seaman's Manslaughter; obstruction; and false statements. *Id.*

### C.   The Common Allegations

This case and the criminal prosecution both rest on the same underlying events – the Vessel's allision with the Key Bridge on March 26, 2024, and the cause of the allision. Both the Indictment and Claimants' allegations in the Limitation Proceeding focus on the conduct of Synergy and its operation and oversight of the Vessel. The Indictment seeks to hold Synergy

3

criminally liable, while Claimants seek to establish that Synergy and Grace Ocean are at fault and are not entitled to limit liability under the Limitation Act, a determination of which depends on whether the allision was caused by the negligence or unseaworthiness of the Vessel and whether Synergy had knowledge of the negligent acts or unseaworthy conditions which caused the incident. Both, however, are premised on the same alleged facts, which Synergy disputes and intends to vigorously defend. For instance both the Indictment and Claimants allege that the use of the flushing pump to supply fuel to generators 3 and 4 was improper (Indictment at 35-36; ECF 732-1 at 3, 5-6, 10, 12), issues of both inadequate safety measures and a failure to follow the same (Indictment at 35-36; ECF 732-1 at 6-7, 13), reporting failures in connection with the in-port blackouts on March 25 (Indictment at 19-20; ECF 732-1 at 2-4, 6), and false inspection reports. (Indictment at 31-33; ECF 732-1 at 14-15.)

Both the Indictment and the Claimants make common allegations, the validity of which will turn on the proof of the manner and method of Synergy's oversight and management of the Vessel. Consequently, a determination as to Synergy's civil liability in the instant Limitation Proceeding requires an examination of the same facts that serve as the predicate for the criminal case against Synergy, Synergy Maritime, and Nair.

### D.      **Synergy Fact Witnesses**

Petitioners submit the declaration of Anand Sashidharan ("Sashidharan Declaration") in support of this Motion, which further explains the present situation of the Synergy fact witnesses that Petitioners expected to call as of the date of the Indictment.

In advance of the trial and pursuant to the orders of this Court and the Local Rules, both Petitioners and Claimants submitted witness lists to the Court of witnesses they expect to call at trial and witnesses they may call at trial. ECF 723-3 and 723-4. The fact witnesses identified by the Parties who were current or former crew of the Vessel are as follows:

4

| Fact Witnesses Vessel Crew | | | | |
|---|---|---|---|---|
| Witness Name | Role | Designated as Petitioner Witness? | Designated as Claimant Witness? | Location |
| Chandrashekar Sabhapathy* | Master | Yes (may call) | Yes | Baltimore |
| Stephen Kwinteen Jayakumar | Chief Officer | Yes | Yes | Baltimore |
| Bisht Rohit Singh | Second Officer | Yes | Yes | Baltimore |
| Alan Babu | Second / Third Officer | Yes | Yes | Overseas |
| Charles Vaz | Bosun | Yes (may call) | Yes | Baltimore |
| Madathilparambil Chandrasekharan Shiju | Able Bodied Seaman | Yes (may call) | Yes | Overseas |
| Karthikeyan Deenadayalan* | Chief Engineer | Yes (may call) | Yes | Baltimore |
| Kumararja Kuppuswamy* | Second Engineer | Yes (may call) | Yes | Baltimore |
| Antony Goodwin* | Third Engineer | Yes (may call) | Yes | Baltimore |
| Nishath Pitchaiah | Fourth Engineer | Yes (may call) | Yes | Baltimore |
| Chaminda Kariyawasam* | Electrician | Yes (may call) | Yes | Baltimore |
| Subramanian Ganeshkumar* | Oiler | Yes (may call) | Yes | Overseas |
| Aviral Manihal | Trainee Marine Engineer | No | Yes | Overseas |
| Dhurai Balaji** | Former Chief Engineer | No | Yes | Overseas |

*Witnesses asserted their Fifth Amendment rights during their depositions in this Limitation Proceeding.

**Witness did not appear for deposition at the advice of separate counsel.

All of the above individuals, with the exception of Chaminda Kariyawasam, are Indian citizens with Indian passports. Mr. Kariyawasam is a citizen of Sri Lanka and holds a Sri Lanka passport. The crew members are all employed by Petitioner Grace Ocean, but hired through Petitioner Synergy's related manning agency and trained and overseen by Synergy. None of the

identified individuals is an officer, director, or managing agent of either Petitioner. Six of the Vessel's former crew invoked the Fifth Amendment during their deposition. A seventh former crew member, Mr. Balaji, did not appear for deposition at the advice of his separate counsel. Three crew members – Mr. Jayakumar, Mr. Singh, and Mr. Vaz – have been in the United States in Baltimore pursuant to a Security Agreement since June 2024, while two former crew members – Mr. Babu and Mr. Shiju – were subject to the Security Agreement but have returned home or are sailing and are not located in the United States.[4]

The fact witnesses identified by the Parties who are present or former employees of Synergy or one of its affiliates are as follows:

| Fact Witnesses Synergy Shoreside Employees | | | | |
|---|---|---|---|---|
| Witness Name | Role | Designated as Petitioner Witness? | Designated as Claimant Witness? | Location |
| Capt. Ajith Kumar | Managing Director** | Yes | Yes | Singapore |
| Ravi Sekhar | Synergy Marine Manager and Designated Person Ashore | Yes (may call) | Yes | Chennai |
| Rajesh Inigo | QHSE Manager | Yes | Yes | Chennai |
| Balaji Vanmeekesan | Fleet Manager | Yes | Yes | Singapore |
| Melroy D'Souza | Marine Superintendent | Yes | Yes | Chennai |
| Navdeep Singh Bhalla | Backup Marine Superintendent | No | Yes | No longer employed by Synergy |
| Radhakrishnan Karthik Nair* | Technical Superintendent | Yes (may call) | Yes | Chennai |
| Jayesh Panayanthatta | Technical Superintendent | No | Yes | Chennai |

---

[4] These five crew members are represented by individual counsel and Synergy is not authorized to accept subpoenas for testimony on their behalf.

| Fact Witnesses Synergy Shoreside Employees | | | | |
|---|---|---|---|---|
| Witness Name | Role | Designated as Petitioner Witness? | Designated as Claimant Witness? | Location |
| Sivakumar Angaryan | Backup Technical Superintendent | No | Yes | Chennai |
| Vishal Prabhu | QHSE Superintendent | No | Yes | No longer employed by Synergy |
| Ranjan Sham Shetty | Fleet Manager | Yes | Yes | Chennai |

*Witness asserted their Fifth Amendment rights during his deposition in this Limitation Proceeding.

**Although his title is Managing Director, Kumar is not on the Board of Directors.

All of the above individuals are Indian citizens with Indian passports and are either based in Chennai or Singapore. Two witnesses, Navdeep Singh Bhalla and Vishal Prabhu, are overseas, but are no longer employed by Synergy. With the exception of Capt. Ajith Kumar, none of the identified individuals is an officer, director, or managing agent of Synergy. Rather, they are all low-to-mid-level employees who provide varying levels of assistance depending on their qualifications and experience. For instance, technical superintendents are typically responsible for assisting about five ships; marine superintendents are assigned about ten ships; and the Fleet Manager, Marine Manager, and QHSE manager are assigned between 45-60 vessels, all out of a global fleet of approximately 650 vessels within the Synergy Group. (Sashidharan Decl. ¶ 5). Capt. Kumar is a Managing Director of Synergy, although for clarity he is not on the Board of Directors of Synergy. Kumar sat for depositions both in his capacity as Managing Director and as Synergy's corporate designee, pursuant to F.R.C.P. 30(b)(6). (Sashidharan Decl. ¶ 6).

Following the Indictment, and after they consulted with their own independent legal counsel, all of the Synergy shoreside employees informed Synergy's General Counsel that they refuse to travel to the United States to attend the trial in this instant action. (Sashidharan Decl. ¶

7). The main reason for this is that they are concerned they would be detained by the DOJ as material witnesses and/or face personal jeopardy in connection with the ongoing criminal investigation concerning the Casualty, thus, at a minimum, preventing them from being able to return home for a very long time. (Sashidharan Decl. ¶ 8). All of these witnesses are well-aware that one of their colleagues was named in the Indictment and charged with criminal violations of United States law in connection with his work assisting the crew and owner with the Vessel's operations. (Sashidharan Decl. ¶ 8). In this respect, they are also all well-aware that several of the Vessel's crew members have been stuck – unjustifiably – in Baltimore for over two years. (Sashidharan Decl. ¶ 8).

There is no present prospect for the crew members being permitted to return home to their families, unless one of three conditions set forth the in Security Agreement is met: (1) all related cases are declined (not applicable in light of the Indictment); (2) depositions are taken in accordance with Rule 15 of the Federal Rules of Criminal Procedure after indictments or information have been returned and the United States advises the witness's presence is no longer necessary; or (3) judgment has been entered and sentencing is complete on all related cases.  And even option 2 will require time and consultation with DOJ. (Sashidharan Decl. ¶ 9). For the Synergy employees in India and Singapore, being detained in the United States would negatively affect their well-being, as they would be away from their homes and families for a significant period of time. (Sashidharan Decl. ¶ 10). Such detention, if it occurred, also would be of significant detriment to Synergy, as these employees would not be able to perform many of their usual duties. (Sashidharan Decl. ¶ 11). Under Indian and Singaporean law, Synergy cannot force these employees to travel to the United States to testify at trial in a foreign litigation. (Sashidharan Decl. ¶ 15).

Even if this Court were to permit the witnesses to testify remotely, after consulting with counsel, the individuals all have expressed serious reservations about testifying by video, though they are still conferring with counsel on this point. (Sashidharan Decl. ¶ 12).

## LEGAL ARGUMENT

### I. A STAY OF THIS MATTER IS NECESSARY TO AVOID PREJUDICE TO PETITIONERS

This Court has the inherent authority to stay civil proceedings when the interests of justice so require. *United States v. Kordel*, 397 U.S. 1, 12 n. 27 (1970). As the Supreme Court explained in *Landis v. North American Co.*, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." 299 U.S. 248, 254 (1936). In exercising that authority, a court must "weigh competing interests and maintain an even balance." *Id.*; *see also Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983) ("[P]arty seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative."). "A stay of a civil case where there are pending criminal proceedings is not constitutionally required, however, it may be warranted in certain circumstances." *Walsh Secs, Inc. v. Cristo Property Mgmt, Ltd.*, 7 F. Supp 2d 523, 527 (D.N.J. 1998).

While the Fourth Circuit has not adopted a particular test, courts in the circuit have previously relied upon the five-factor test established by the Ninth Circuit: (1) the interest of the non-movant in proceeding expeditiously and the potential prejudice of a delay; (2) the burden which any particular aspect of the proceedings may impose on the movant; (3) the Court's interest in efficient case management; (4) the interests of non-parties; and (5) the interest of the public in the pending civil and criminal litigation. *Scott v. Winters*, 2:22-cv-00419, 2023 WL 113741, at *2 (S.D. W. Va. Jan. 5, 2023) (*citing Keatings v. OTS*, 45 F.3d 322, 325 (9th Cir. 1995)); *see also*

9

*Infotek Corp. v. Preston*, CCB-18-1386, 2021 WL 4521330, at \*2 (D. Md. Oct. 4, 2021) (describing the same factors and noting "[d]espite the inconsistent application by courts . . . however, the extent to which they may differ is immaterial here because they follow essentially the same approach of balancing competing interests to determine whether the movant's interest in a stay is outweighed by the prejudice faced by the non-moving party."); *In re Mid-Atl. Toyota Antitrust Litig.*, 92 F.R.D. 358, 359 (D. Md. 1981). Courts also consider, as especially important factors, the degree of overlap between the civil and criminal matters and the status of the criminal case, including whether an indictment has been returned. *Infotek*, 2021 WL4521330, at \*2; *Doe v. City of Gauley Bridge*, No. 2:21-CV-00491, 2022 WL 16554698, at \*2 (S.D. W. Va. Oct. 31, 2022) (Johnston, C.J.); *see also Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 379-80 (4th Cir. 2013) (explaining that "[s]tays generally are not granted before an indictment has issued."). Those considerations strongly favor a stay here.

Here, the overlap between the two proceedings is substantial: Synergy has already been indicted, Petitioners face concrete and immediate prejudice if this case proceeds now, Claimants may suffer some delay but may also benefit from development of the record in the criminal matter, and a temporary stay will conserve judicial resources while protecting the integrity of the related criminal case. Where a defendant under indictment must simultaneously defend a civil action arising from the same facts, the case for a stay is at its strongest. *SEC v. Dresser Indus., Inc.,* 628 F.2d 1368, 1375-76 (D.C. Cir. 1980). On balance, the requested stay is warranted.

A.    **The Issues in This Matter Are Identical to Those in the Criminal Case**

The similarity of the issues underlying the civil and criminal actions is considered the most important threshold issue in determining whether or not to grant a stay. *Walsh Sec. Inc. v. Cristo Property Mgmt, Ltd.*, 7 F. Supp. 2d, 523, 527 (D.N.J. 1998) (*citing* Milton Pollack, Parallel Civil and Criminal Proceedings (1989), *available at* 129 F.R.D. 201); *see also State v. Kobrin,*

111 N.J. 307, 314 (1988); *SEC v. HealthSouth Corp.*, 261 F.Supp.2d 1298, 1326 (N.D. Ala. 2003). "The strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter." *SEC v. Dresser Indus., Inc.,* 628 F.2d 1368, 1375-76 (D.C. Cir. 1980). This is the precise situation in which Synergy has been placed.

There is a common nucleus of operative facts in both this Limitation Proceeding and the criminal matter. The defendants in the criminal case include Petitioner Synergy and an affiliate – Synergy Maritime – as well as a Synergy Maritime employee who was contracted to work on Synergy vessels, including the Vessel. And as discussed above, the factual allegations which serve as the predicate for the criminal case and the instant case are identical. *See supra* at 4-5. Both proceedings arise from the March 26, 2024 Casualty and center on the same facts: the cause of the Vessel's loss of power; the operation and management of the Vessel's electrical and fuel systems; alleged failures in training, procedures, and safety compliance; and whether Petitioners had knowledge of any allegedly negligent or unseaworthy conditions.

The Indictment and Claimants' allegations both rely upon the same underlying conduct, including the use of the flushing pump to supply fuel to the generators, blackout events preceding the incident, and alleged deficiencies in safety practices and reporting obligations. The criminal and civil matters also overlap with respect to causation, particularly regarding whether the Vessel's use of the flushing pump to supply fuel to No. 3 and No. 4 generators contributed to the Casualty.

Given the substantial overlap between the issues and evidence that will be involved in defending both proceedings, this factor weighs in favor of the issuance of a stay. *Walsh Sec. Inc. v. Cristo Property Mgmt, Ltd.*, 7 F. Supp. 2d, 523, 527 (D.N.J. 1998) (finding this factor met where the civil and criminal cases arose out of the same real estate transactions); *Trustees of the Plumbers*

11

*& Pipefitters Nat'l Pension Fund v. Transworld Mech.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995) (finding substantial overlap where the civil and criminal cases arose out of alleged failures to contribute to union pensions funds in violation of collective bargaining agreements).

Moreover, the risk of prejudice to Petitioner Synergy is particularly acute because under well-established law, Synergy does not have a Fifth Amendment privilege against self-incrimination. *Wilson v. United States*, 221 U.S. 361, 381-85 (1911). In both this Limitation Proceeding and the criminal matter, Synergy's alleged liability – to the extent there is any – is based on the conduct of its employees and agents.

### B.    The Pending Indictment Against Synergy Warrants a Stay

Synergy, one of its affiliates, and an employee of that affiliate have been indicted. In determining whether to grant a stay, a court also must consider the status of the related criminal proceedings, which can have a substantial effect on the balancing of the equities. "The strongest case for a stay . . . in [a] civil case occurs during a criminal prosecution after an indictment is returned." *Walsh Sec. Inc. v. Cristo Property Mgmt, Ltd.*, 7 F. Supp. 2d, 523, 527 (D.N.J. 1998) (*quoting* MILTON POLLACK, PARALLEL CIVIL AND CRIMINAL PROCEEDINGS (1989), *available at* 129 F.R.D. 201) As explained by the Fourth Circuit, "[s]tays generally are not granted before an indictment has issued." *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 379-80 (4th Cir. 2013); *see also Trustees of the Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech.*, 886 F. Supp. 1134, (S.D.N.Y. 1995) (noting that stays are generally not granted before an indictment is issued). Accordingly, the fact that Synergy has been indicted, together with an affiliate and employee, weighs in favor of granting a stay.

### C.    Petitioners Will Suffer Significant Prejudice Absent a Stay

Petitioners would endure a significant burden if a stay is not issued and the instant case is allowed to proceed. As set forth in more detail above and in the declaration of Anand Sashidharan,

in addition to numerous crew members who have asserted their Fifth Amendment right not to testify in this matter, all of the Synergy fact witnesses – many of whom are central to Petitioners' defense – have confirmed that they will not come to the U.S. to testify and have expressed serious reservations about testifying by video. Synergy cannot "force" these people to come to the U.S. to testify – particularly where to do so would put them at risk of significant personal jeopardy. And it is no answer to say that Petitioners can rely upon these witnesses' deposition testimony at trial, because that would deprive Petitioners the ability to present any direct testimony from their witnesses, constraining Petitioners to the scope of questioning by Claimants during the depositions.

Courts have recognized that the unavailability of key witnesses or absence of evidence places such a burden on the parties that merits a stay or continuance. *See*, *e.g.*, *Young v. Miami-Dade Cnty*, 217 F. Supp. 3d 1353 (S.D. Fla. 2016) (granting a stay where the defendant was unable to access key evidence, including witness statements and testimony, until the close of a criminal investigation and as a result had a "near-complete inability to defend itself" in the civil action); *Padda v. Superior Court*, 25 Cal. App. 5th 25 (Cal. Ct. App. 2018) (finding the trial court abused its discretion in denying a motion for continuance where an expert witness was unavailable for trial due to medical reasons and party contended their defense would be rendered ineffective without the testimony of same) (applying California law). In deciding whether to grant a stay, courts have also found a justification in the interest of protecting a party from being forced to reveal its litigation and defense strategy to the government in a criminal matter. *See Louis Vuitton Malletier*, 676 F.3d 83, 97 n.11 (2d Cir. 2012) (noting that one of the "possible justifications" for a stay is "to 'prevent the exposure of the criminal defense strategy to the prosecution.'") (*quoting Creative Consumer Concepts*, 563 F.3d 1070, 1080 (10th Cir. 2009)); *Alcala v. Texas Webb Cnty*,

625 F. Supp. 2d 391, 397 (S.D. Tex. 2009) (noting that "a stay may be justified in order to prevent … exposing the defense's theory to the prosecution in advance of trial, or otherwise prejudicing the criminal case.").

As a result, absent a stay, Petitioners will be deprived of essential live fact witnesses at trial,[5] their ability to present a defense on liability in the Limitation Proceeding will be severely impaired, and Synergy faces the risk of revealing litigation and defense strategy to the government in the criminal matter. This is not a speculative burden – but rather a concrete and significant impairment of Petitioners' ability to mount a meaningful and effective defense.

### D.     Claimants Will Not Suffer Undue Prejudice from a Stay

By contrast, Claimants will not suffer prejudice from a temporary stay.

In evaluating the prejudice to a plaintiff if a stay is issued pending the resolution of a related criminal case, courts have routinely held that mere delay in pursuing a civil suit is insufficient to overcome a motion for a stay. *Tucker v. New York Police Dep't*, No. 08-cv-2156, 2010 WL 703189, at *7 (D.N.J. Feb. 23, 2010), *aff'd in part*, 408 Fed. App'x 513 (3d Cir. 2010). "The mere fact that additional time will pass . . . does not alone establish prejudice . . .." *Id.*  Rather, a plaintiff must demonstrate harm other than delaying a civil proceeding. *See In re Derivative Litig.*, No. 06-cv-02964, 2007 WL 1101276, at *2 (E.D. Pa. Apr. 11, 2007) (noting that to establish prejudice, "plaintiff[s] should demonstrate a unique injury," to justify denying a stay on this basis).

---

[5] While F.R.C.P. 32 permits the use of deposition testimony at trial if a witness is unavailable, the determination of whether to admit the deposition testimonies is at the discretion of this Court. The Court *may* admit the deposition testimonies of the witnesses, but is not required to do so. As explained by Judge Learned Hand: "The deposition has always been, and still is, treated as a substitute, a second-best, not to be used when the original is at hand." *Napier v. Bossard,* 102 F.2d 467, 469 (2d Cir. 1939). "[B]ecause of the judicial preference for personal testimony in court, courts will apply a "balancing test" to determine the admissibility of deposition testimony. *In re Air Crash Disaster at Stapleton Intern. Airport, Denver, Colo. on Nov. 15 1987*, 720 F. Supp. 1493, 1502 (D. Colo. 1989). *See also* Petitioners' Brief in Opposition to Claimants' Motion for Admission of Certain Expert Witness Testimony via Video Deposition at Trial, ECF 752, at 2-5.

14

Claimants cannot articulate any such specific injury in this case. Claimants will retain all legal rights and their ability to pursue their claims against Petitioners once the criminal matter is resolved. The passage of time will not deprive them of their claims. Indeed, as noted above, the time could be productively used to allow Petitioners to bring their motion for summary judgment against the public and private economic loss claimants on the basis that those claims are barred as a matter of law by controlling Supreme Court authority under *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927).

Moreover, staying the Limitation Proceeding pending the resolution of the criminal trial would serve both Claimants and Petitioners. The very same witnesses that Claimants have identified as trial witnesses include the same fact witnesses who are now refusing to appear and testify at trial. *Supra* at 5-7.

Because Claimants will suffer no unique harm that mitigates against the issuance of a stay, the instant motion should be granted.

E.       **Judicial Economy is Served by the Proposed Stay**

The Court has an interest in resolving individual cases efficiently. To require the instant case to proceed while the criminal case is still pending would be a waste of judicial resources. Indeed, it is more efficient to proceed first with the criminal prosecution, thereby ensuring that key fact witnesses would be available for the civil trial. Forcing Synergy to defend itself on two fronts would create a distraction, clog the Court's docket, divert scarce judicial resources, and would be unnecessary if the instant case were stayed.

"[S]taying the civil action preserves judicial resources and streamlines some of the complexities of the civil litigation." *See In re Adelphia Commc'ns Sec. Litig*, No. 02-1781, 2003 WL 22358819, at *5 (E.D. Pa. May 13, 2003). Moreover, depending upon the resolution of the

15

related criminal investigation, a stay might allow for many, if not most, of the factual issues in this case to be resolved more expeditiously.

### F.      The Public Interest Will be Furthered by a Stay

The public interest is not harmed by staying the civil action. The Indictment alleges that Synergy and its codefendants perpetuated a conspiracy to defraud the United States government and engaged in conduct that resulted in the destruction of the Key Bridge and closure of the Port of Baltimore. *See* Indictment. The proposed stay enables the government to protect its paramount public interest in the enforcement of federal criminal laws and the resolution of federal criminal charges, while also protecting Synergy's right to vigorously defend itself against these charges. *See Reyes v. Freebery*, No. Civ.A.02–1283–KAJ, 2004 WL 1737683, at *6 (D. Del. July 30, 2004) (holding "[t]he public's interest in the integrity of the criminal case is entitled to precedence over the civil litigant."); *Trustees of the Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech.*, 886 F. Supp. 1134, 1140 (S.D.N.Y. 1995) ("Because of the overlapping issues in the criminal and civil cases, the criminal prosecution will serve to advance the public interests at stake here.").  In short, any public interest served by conducting a civil case will be more than adequately served by the impending criminal actions. *See Adelphia*, 2003 WL 22358819at *6. Under the circumstances, the public is not harmed by the issuance of a stay.

### CONCLUSION

For the foregoing reasons, Petitioners respectfully request that the Court grant its motion to stay the trial in this matter pending resolution of the related criminal proceeding, or, alternatively, grant a stay of at least 90 days to allow Petitioners to evaluate whether they can obtain immunity or other protection for Synergy's fact witnesses such that they would agree to testify in this matter.  Alternatively, Petitioners seek such other and further relief as may be just and equitable.

Dated: May 18, 2026

DUANE MORRIS LLP

*/s/ Laurie G. Furshman*
Laurie G. Furshman (Bar No. 29604)
Lgfurshman@duanemorris.com
Robert B. Hopkins (Bar No. 06017)
Rbhopkins@duanemorris.com
Tristan A. Dietrick (Bar No. 31238)
tdietrick@duanemorris.com
1201 Wills Street, Suite 330
Baltimore, MD 21321
(410) 949-2900

BLANK ROME LLP

Luke M. Reid (Bar No. 31228)
Luke.Reid@blankrome.com
125 High Street, 3rd Floor
Boston, MA 02110
617-415-1200

William R. Bennett, III*
William.Bennett@blankrome.com
Thomas H. Belknap, Jr.*
Thomas.Belknap@blankrome.com
Noe S. Hamra
Noe.Hamra@blankrome.com*
Neil P. McMillan
Neil.McMillan@blankrome.com*
1271 Avenue of the Americas
New York, NY 10020
212-885-5000

Kierstan L. Carlson*
Kierstan.Carlson@blankrome.com
Emma C. Jones*
Emma.Jones@blankrome.com
1825 Eye St. NW
Washington, DC 20006
202-420-2200
*Admitted *pro hac vice*

17

## <u>CERTIFICATE OF SERVICE</u>

I CERTIFY that on this 18th day of May 2026, the Petitioners' Motion to Stay Civil Proceedings and Incorporated Memorandum in Support, along with the Sashidharan Declaration and a proposed order, was filed in the United States District Court for the District of Maryland via the Court's CM/ECF filing system, which will provide notice of this filing to all counsel of record.

<u>/s/ *Laurie G. Furshman*</u>
Laurie G. Furshman (Bar No. 29604)
LGFurshman@duanemorris.com
