# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
## NORTHERN DIVISION

| | |
|---|---|
| In the Matter of the Petition<br><br>of<br><br>GRACE OCEAN PRIVATE LIMITED, as<br>Owner of the M/V DALI,<br><br>and<br><br>SYNERGY MARINE PTE LTD, as Manager<br>of the M/V DALI,<br><br>for Exoneration from or Limitation of Liability | Civ. No. 24-00941-JKB<br><br>*IN ADMIRALTY* |

## CLAIMANTS' OPPOSITION TO
## PETITIONERS' MOTION TO STAY CIVIL PROCEEDINGS

The undersigned Claimants respectfully submit this opposition to Petitioners' motion to stay the trial in this Limitation action, scheduled to start on June 1, 2026—twelve days from today (ECF 755).

## INTRODUCTION

More than two years after the Petitioners destroyed the Key Bridge, devastated the State of Maryland and the City of Baltimore, and killed six men, the Petitioners now seek to stay the very action that they initiated. Petitioners' last-minute request should be denied. From the moment that the M/V Dali destroyed the Key Bridge, it has been apparent that a federal indictment was a near certainty. The allision was among the most significant maritime casualties in recent American history, and, while disappointing and disingenuous—albeit unsurprising—Synergy's employees invoked their Fifth Amendment rights against self-incrimination. Karthik Nair also invoked that right and is currently under indictment, as are Synergy Marine Private Ltd. And Synergy Maritime

Private Ltd. Unlike the men on the vessel, the Synergy entities cannot invoke Fifth Amendment protections.

Discovery relating to the limitation action has been completed and the parties are ready for trial. Petitioners' requested stay would delay justice, create extraordinary prejudice for all claimants, and would be utterly inequitable. Despite not being required to seek the protections of the Limitation of Liability Act, Petitioners decided to file this action before this Court, despite appreciating the risk of criminal prosecution. If Petitioners no longer wish to seek to limitation of their liability, they are free to dismiss their petition, and Claimants can commence their cases in the courts of their choosing. Instead, Petitioners, subverting the intent of the Limitation of Liability Act seek to use the unsealing of the indictments as an opportunity to convert the Limitation shield into a sword.  They do this by not only attempting to delay justice for Claimants by upending the impending trial, but also with their opportunistic demand to pursue summary judgment motions on economic loss issues—issues that this Court has affirmatively placed outside the scope of this limitation proceeding—if their stay demand is granted.

Moreover, Petitioners' demanded stay would undermine significant judicial economies on the eve of trial. Significantly, Petitioners have not and cannot present "clear and convincing circumstances" establishing that the benefits of a stay outweigh the extreme prejudice such a stay would impose on Claimants. *Williford v. Armstrong World Indus., Inc*., 715 F.2d 124, 127 (4th Cir. 1983). While Claimants assert that a stay is unwarranted, given the law and the circumstances of this matter, in the event that the Court determines that a stay is appropriate, Claimants request they be allowed to seek summary judgment as to the topics of the first phase of this litigation as articulated in this Court's order at ECF 438.

The first phase of the limitation action is ready for trial and should move forward.

## ARGUMENT

**I.    Legal Standard**

A party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). The law is clear that the "Constitution does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings." *Keating v. Off. of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995). The Fourth Circuit has further explained there is "'power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants[.]'" *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 379 (4th Cir. 2013) (quoting *Landis*, 299 U.S. at 254)). That is so even post-indictment, as courts have routinely allowed civil cases to proceed through judgment during the pendency of a criminal indictment. *See, e.g.*, *Louis Vuitton Malletier S.A. v. LY USA, Inc.,* 676 F.3d 83 (2d Cir. 2012). Simply put, an indictment is not a self-executing stay of a civil proceeding.

Importantly, "[b]efore issuing a stay, a court must be satisfied that a pressing need exists, and that that need outweighs any possible harm to the interests of the non-moving party." *Mike's Train House, Inc. v. Broadway Ltd. Imports, LLC*, 2011 WL 836673, *1 (D. Md. Mar. 3, 2011) (Bredar, J.) (citing *In re Sacramento Mun. Utility Dist.*, 395 F. App'x 684, 687-88 (Fed.Cir.2010). That is because "nothing requires a court to stay litigation." *Id. See also e.g. Dynport Vaccine Co. LLC v. Lonza Biologics, Inc.*, Civ. No. JKB-14-2921, 2015 WL 5768707, at *2 (D. Md. Jan. 10, 2015) (denying a stay when the movant "has failed to show it will be subjected to hardship if a stay is not issued," and explaining that imposing "an indeterminate stay ... will surely prejudice [the nonmovant's] efforts to achieve prompt resolution of the instant case"); *see also Louis Vuitton Malletier S.A.,* 676 F.3d at 98 ("[a] stay of [a] civil case to permit conclusion of a related criminal

prosecution has been characterized as **an extraordinary remedy**.") (emphasis added) (citation and quotation omitted).

In considering whether to stay civil proceedings, district courts within the Fourth Circuit apply a balancing test. The courts generally consider a five-factor balancing test after determining as a "threshold" matter, *United States v. Rudy's Performance Parts, Inc.*, 647 F. Supp. 3d 408, 414 (M.D.N.C. 2022), that the civil and criminal cases overlap. Those factors, derived from *Keating v. OTS,* 45 F.3d 322, 324 (9th Cir.1995), are: (1) the interest of the [claimants] in proceeding expeditiously with [the] litigation or any particular aspect of it, and the potential prejudice to [claimants] of a delay, (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation. *Ashworth v. Albers Med., Inc.*, 229 F.R.D. 527, 530 (S.D.W. Va. 2005) (collecting cases that have employed the *Keating* factors). *See also Infotek Corp. v. Preston*, 2021 WL 4521330, at *2 (D. Md. Oct. 4, 2021) (citing *In re Royal Ahold N.V. Secs. & ERISA Litig.*, 220 F.R.D. 246, 253 (D. Md. 2004)). Courts are also mindful of the length of potential delay and whether the purpose of the stay will actually affect the present action. *See e.g. Common Cause v. Rucho*, No. 1:16-CV-1026, 2017 WL 3981300 (M.D.N.C. Sept. 8, 2017) ("It makes little sense to delay consideration of this case for possibly a year or more, waiting for a decision that may not ultimately affect it."). Courts have also evaluated the "status of the cases" and the "good faith of the litigants (or the absence of it)." *Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 78 (1st Cir. 2004).

These factors "can do no more than act as a rough guide for the district court as it exercises its discretion," *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 99 (2d Cir. 2012), such

that a stay must be based on the district court's determination "on the particular facts before it and the extent to which such a stay would work a hardship, inequity, or injustice to a party, the public, or the court." *Id*.

Finally, "[b]ecause of the frequency with which civil and regulatory laws overlap with criminal laws, American jurisprudence contemplates the possibility of simultaneous or virtually simultaneous parallel proceedings, and the Constitution does not mandate the stay of civil proceedings in the face of criminal proceedings." *Ashworth v. Albers Med., Inc.*, 229 F.R.D. 527, 530 (S.D.W. Va. 2005).

In sum, a stay of a civil case pending a criminal proceeding is an extraordinary remedy, and Petitioners have failed to establish the extraordinary requirements that make a stay appropriate in this matter.

## II.    Any Balancing Test Counsels Against A Stay

### 1. Claimants Will Suffer Significant Prejudice From A Stay

It has been more than two years since the Key Bridge disaster. The indictment against Grace Ocean was returned on April 8, 2026. The criminal proceeding has just commenced, and if this Court grants Petitioners' demanded stay in light of the unsealed indictments will indefinitely delay justice for Claimants.  Indeed, one of the indicted defendants—Karthik Nair—is currently in Chennai, India, and may face a lengthy extradition process, compounding likely delay. In the meantime, Claimants—who include the City of Baltimore—are in limbo, potentially for many years, before civil liability can even be determined.  As the Court succinctly put it in another matter, "injecting an indefinite delay into this proceeding could present prejudicial difficulties." *Taccino v. Act 1st Fed. Credit Union*, 2021 WL 3572935 (D. Md. Aug. 12, 2021) (Bredar, J.) (to the non-moving party). *See also Avalonbay Communities, Inc. v. San Jose Water Conservation*

*Corp.*, No. CIV A 07-306, 2007 WL 2481291, at \*2 (E.D. Va. Aug. 27, 2007), *aff'd*, 325 F. App'x 217 (4th Cir. 2009) ("Plaintiff will be prejudiced by the undeterminable time length of any criminal prosecution because this makes it more likely that: (1) documents will be misplaced, (2) memories will fade and (3) Defendants will have fewer monetary resources available for Plaintiff to collect on any financial judgment"). Petitioners do not identify any concrete endpoint for the requested stay. The criminal case has only just begun, involves foreign witnesses and overseas defendants, and could continue for years through pretrial proceedings, trial, sentencing, and appeals.

### 2.  Petitioners Do Not Face Substantial Hardship

Importantly, a "party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983). That is a burden that Petitioners cannot meet.

First, Petitioners chose to assert this limitation action, understanding the risks inherent in that decision. Most cases involving parallel criminal and civil proceedings involve a defendant haled involuntarily into both forums. This case is fundamentally different. Petitioners voluntarily invoked the protections of the Limitation Act and chose this forum as the exclusive mechanism for adjudicating claims arising from the allision. *See generally* 46 U.S.C. § 30511(a) ("The owner of a vessel ***may*** bring a civil action in a district court of the United States for limitation of liability…") (emphasis added). Having elected to centralize all claims before this Court while fully aware that a criminal investigation was ongoing and likely to result in charges, Petitioners cannot now invoke the foreseeable consequences of that investigation as a basis to halt the very proceeding that they initiated.  Indeed, this Court should be particularly reluctant to stay this civil

6

proceedings where Petitioners voluntarily initiated the litigation and now seek to delay adjudication based on parallel criminal exposure arising from the same underlying conduct.

Second, Petitioners argue that because the issues underlying the civil and criminal action are "substantial," the civil case must be deferred. However, similarity in underlying facts do not warrant a stay. The court may consider whether denying a stay could: "(1) undermine a party's Fifth Amendment privilege against self-incrimination; (2) expose the basis of a party's criminal defense in advance of trial; or (3) otherwise prejudice the criminal or civil case." *Hicks v. City of New York*, 268 F. Supp. 2d 238, 242 (E.D.N.Y. 2003) (citation omitted). Not one of those factors exists here.

**Fifth Amendment Privilege.** Among the "strongest" bases for deferring civil proceedings is where the proceedings would "undermine the party's Fifth Amendment privilege against self-incrimination." *Sec. & Exch. Comm'n v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375-76 (D.C. Cir. 1980).[1] Three persons or entities are currently under indictment—Karthik Nair, who is not currently within the Court's subpoena power, and who in any event has already invoked his Fifth Amendment rights, and two Synergy entities (together, "Synergy"), which, as corporate entities, lack the Fifth Amendment privilege.

Petitioner Synergy argues that it will nevertheless be prejudiced because, though it lacks a Fifth Amendment privilege against self-incrimination, it faces liability "based on the conduct of its employees and agents," implying that a stay is necessary to prevent the testimony of those

---

[1] At least one jurist, writing out of court, opined that the "greatest risk posed by parallel [civil and criminal proceedings]…is that parallel proceedings may place significant burdens upon the Fifth Amendment privilege against self-incrimination." *Louis Vuitton*, 676 F.3d at 97 (citing Alvin Hellerstein & Gary Naftalis, *Private Civil Actions and Concurrent or Subsequent Regulatory or Criminal Proceedings,* SG046 ALI–ABA 903, 905 (2001)).

7

employees. But this argument is unavailing, as all of the witnesses who have chosen to invoke the Fifth Amendment privilege have already done so, and Synergy, although it has no Fifth Amendment rights, has already testified through its Rule 30(b)(6) witnesses.

Further, fact discovery closed on August 29, 2025. Several of the fact witnesses cited by Petitioners invoked their Fifth Amendment privilege, and those who did testify did so with full knowledge the Department of Justic was conducting an investigation. A party who chooses to testify in a civil case, in spite of the risk that a prosecutor later might seek to use his statements against him in a criminal prosecution involving the same subject matter, cannot complain about the subsequent denial of a stay. *See Louis Vuitton Malletier S.A.,* 676 F.3d at 98 ("[I]f civil defendants do not elect to assert their Fifth Amendment privilege, and instead fully cooperate with discovery, their testimony in their defense in the civil action is likely to constitute admissions of criminal conduct in their criminal prosecution." (internal quotation marks omitted)); *Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 78–79 (1st Cir. 2004) ("By failing to invoke his Fifth Amendment privilege, he likely waived the privilege with respect to the subject matter of his deposition testimony for the duration of the proceeding in which that testimony was given"). *See also generally* Milton Pollack, *Parallel Civil and Criminal Proceedings,* 129 F.R.D. 201, 205–06 (1989) (explaining how a party's participation in civil proceedings may affect his position in parallel criminal proceedings). Petitioners have not identified any material aspect of the evidentiary presentation that changed as a result of the public unsealing of the indictment.

**Trial Strategy**. Petitioners argue "Synergy faces the risk of revealing litigation and defense strategy to the government in the criminal matter." Motion at 13. But this argument defies reasons. There is no danger that Synergy's trial strategy will be exposed by virtue of allowing the Limitation Action to proceed to trial. The parties filed their Pretrial Order on May 11, 2026 (ECF No. 746),

meaning Petitioners' strategy has been made plain on the public docket. Representatives from Synergy have even spoken to the press about their legal strategy here.[2]

**Prejudice.** Finally, Petitioners cannot credibly argue that either the Limitation Action or the criminal cases will be meaningfully prejudiced.

Respecting the criminal case, Petitioners articulate nothing beyond rank speculation indicating that the criminal proceeding, instituted weeks ago, will be prejudiced if this action proceeds to trial on June 1.

Respecting the civil case, Petitioners offer perilously little *actual* prejudice. Petitioners claim some witnesses will be rendered "unavailable." But that is not true, as Petitioners' witnesses already testified by deposition, can testify if needed by video, or—as in the case of many of the important fact witnesses in this matter—have *already* invoked their Fifth Amendment rights. Those silent witnesses are not rendered more silent by dint of the unsealed indictment. Indeed, several witnesses had already invoked the Fifth Amendment during deposition testimony before the indictment was unsealed. In other words, Petitioners' situation is far afield from those described in the cases they cite, as, unlike in those cases, Petitioners are not suddenly rendered with a "near complete inability to defend" themselves. *See Young v. Miami-Dade Cnty*, 217 F. Supp. 3d 1353 (S.D. Fla. 2016) (stay granted where nearly all relevant evidence, including state defendant's investigative file, could not be accessed due to criminal investigation); *Padda v. Superior Ct.*, 25 Cal. App. 5th 25, 27, 235 Cal. Rptr. 3d 379, 380 (2018) (key expert suddenly rendered unavailable, and due to illness had been unable to sit for deposition, so "there was no

---

[2] Ironically, Petitioners cite a footnote in *Louis Vuitton* in support of this "trial strategy" argument. Of course, in *Louis Vuitton* the Second Circuit unequivocally affirmed the district court's decision to allow the parallel civil and criminal cases, despite the indictment having been issued during the civil proceeding, and despite recognizing this purported trial strategy argument.

deposition testimony that could have been used at trial in place of his live expert testimony."). Synergy has no shortage of testimony—fact or expert—it can attempt to leverage at trial.

In sum, nothing material changed on May 12, 2026, except the public unsealing of charges that Petitioners unquestionably knew were under active investigation long before trial preparation concluded. Fact discovery closed in August 2025; expert discovery, dispositive motion practice, and final trial preparation all proceeded against the backdrop of a known federal criminal investigation.

### 3.  **The Requested Stay Contravenes Judicial Economy**

The Court has broad discretion "to balance the various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket." *Maryland v. Universal Elections, Inc*., 729 F.3d 370, 375 (4th Cir. 2013) (citation omitted). Petitioners' limitation action, brought by Petitioners, has been pending for over two years. Indeed, the very purpose of a limitation action is its economy, as each of the claimants is compelled into a single forum. Judicial economy is promoted when matters can be dispensed with efficiently, by, for example, simplifying factual or legal issues. Staying the matter on the eve of trial is the *opposite* of judicially economic.

Petitioners claim that the resolution of the related criminal investigation may resolve many, if not most, of the factual issues in this case "more expeditiously." Petitioners, however,  fail to elaborate how a criminal case, in its infancy, with an indictment initiated one month ago, will dispose of factual issues more efficiently than a trial set in twelve days from now. Petitioners next claim the Court's granting a stay of even 90 days will allow them to seek immunity to potentially have their proposed fact witnesses return to the U.S. to testify at trial. But Petitioners' ability to achieve this result is, of course, unknown, and Petitioners provide no evidence that would suggest

10

that 90 days would provide any meaningful help. *See e.g. Taccino v. Act 1st Fed. Credit Union*, No. CV JKB-21-0840, 2021 WL 3572935 (D. Md. Aug. 12, 2021) (Bredar, J.) (Denying a stay where the court noted the movant "provide[d] no evidence from which to conclude that a ninety-day hiatus in the case at this stage would simplify any factual or legal issues in a manner that promotes judicial economy.") (citation omitted).

The Court has repeatedly asserted that it is prepared to preside over an efficient bench trial commencing on June 1, 2026, with all evidence already developed before it. That trial should not be delayed. *See Microfinancial, Inc. v. Premier Holidays Int'l, Inc.,* 385 F.3d 72, 79 (1st Cir. 20047) (Affirming denial of motion to stay parallel civil case, since "[a]t the time the motion was made, this case was on the brink of trial. It had been pending for over three years, and the court had an interest in moving it along, especially since the defendants were, in effect, asking to stay proceedings for an indefinite (and potentially protracted) period.")

4. **Public Interest Weighs Heavily in Favor of Denying the Stay**

The public interest favors the swift resolution of this litigation. It has been two years, and the people of Baltimore, the victim's families, and everyone else who has been harmed by this maritime disaster need to see the case move forward. There is no countervailing interest in delay. *See also* Fed. R. Civ. P. 1 ("These rules…should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

III.   **If The Court Is Inclined To Stay This Case, It Should Consider Whether Phase One Limitation Issues May Be Decided On Summary Judgment**

Petitioners alternatively propose using any stay period to litigate the damages/*Robins Dry Dock* issues that the Court expressly excluded from Phase I. Motion at 15. That request is inconsistent with the Court's prior case management rulings.

11

As the Court itself made clear in CMO No. 3 (Dkt. 438) (Nov. 7, 2024), however, the phase of the trial set to conclude in June was "Phase 1," and would be "confine[d to] determinations … necessary to resolving whether Petitioners are entitled to exoneration from or limitation of liability." *Id*. at 1. In response to Petitioners' then-articulated desire to adjudicate certain damages issues (including at least the *Robins Dry Dock* issue), the Court noted that "taking a narrower role in this first stage better comports with the 'limited purpose' of the Limitation of Liability Act." *Id*., citing *Wheeler v. Marine Navig. Sulphur Carriers, Inc.*, 764 F.2d 1008, 1011 (4th Cir. 1985). As a result of the Court's order, damages discovery—including discovery relating to the property that various claimants view was directly harmed by the allision—was somewhat curtailed. The Court made clear that it "anticipates reopening discovery after the conclusion of Phase 1," such that "[n]o party will be deemed to have waived discovery rights if they choose to refrain from certain lines of discovery," including discovery "as to damages or other issues more focused on individual claims." *Id*. at 4.

The Court addressed the wrongful nature of the Petitioners' posture squarely in CMO 3, where the Court provides:

For the same reasons, dispositive motions addressed to particular claims have no utility in Phase 1. The Court expects to deny without prejudice any such motions brought by Petitioners. Of course, the Court would expect to resolve any such motions early in a subsequent phase of this litigation. Although the Court may have jurisdiction to resolve these questions during the first phase, a more prudent way of navigating the "tension [that] exists between the saving to suitors clause and the Limitation Act," *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 448 (2001), is to resolve the limitation question first, and only then turn to the merits of individual claims, to the extent any remain in this forum. *See generally In re Skanska USA Civ. Se. Inc.*, Civ. No. LAC-20-5980, 2021 WL 4955040, at *9 (N.D. Fla. July 28, 2021) ("[W]hile the court recognizes [Petitioner's] interest in obtaining a determination as to whether the bridge claimants have a cognizable claim for any damage award that might be forthcoming, that interest is outweighed, as a matter of sequencing, by [the purposes of the Limitation Act and the Saving-to-Suitors Clause].").

Petitioners ignore the clear language of this Court's order, and any efforts to seek a judicial determination as it relates to damages issues are outside the scope of this proceeding and directly disregards this Court's clear directive. In short, Petitioners should not be allowed to weaponize their own indictment to provide opportunity to target any Claimant on a record that, by judicial order, was undeveloped.

However, *if* the Court is ultimately inclined to issue an order staying this matter—whether for 90 days or for some longer period—Claimants respectfully aver that such stay be used to provide the Court opportunity to consider whether summary judgment or other trial issues relating exclusively to Phase One of the limitation action can presently be adjudicated. Indeed, the Court sits as the trier of fact, the factual record is fully developed, and there are narrow legal issues to resolve, such as privity and knowledge. In such circumstances, resolution on motions for summary judgment may be particularly appropriate. *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756,

13

761 (4th Cir. 2021) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) (A court may grant summary judgment if a movant demonstrates that "there is no genuine issue of material fact.").

Here the dispositive issues are: (1) where it is claimed that a violation contributed to the vessel hitting a stationary object, can Petitioners meet their burden to show that the violation could not have possibly caused or contributed to the allision; and/or (2) whether Petitioners can meet their burden to prove that they lacked privity and knowledge of their negligence, unseaworthiness or fault, including as imputed to them through the Master, *see infra,* 46 U.S.C. § 30524(e), that resulted in the allision.

If the Court can, as a matter if law, find that Petitioners cannot prove they were not within privity and knowledge, summary judgment is required and the limitation should be dissolved. It is Petitioners' burden to prove that they lacked privity and knowledge of the negligence or the unseaworthiness of the vessel. "[T]he developed case law permits an attack on a shipowner's claim for limitation prior to determination of liability because if the shipowner is not entitled to limitation, the saving to suitors clause, 28 U.S.C. § 1333, entitles the claimants to resolve the issue of liability in state court with the benefit of a jury. *See, In re Arntz*, 380 F. Supp. 2d 1156, 1158 (C.D. Cal. 2005). An admiralty court may decide privity or knowledge before ruling on causation and liability, "where it is otherwise impossible under any set of circumstances for the vessel owner to demonstrate the absence of privity or knowledge." *Suzuki of Orange Park, Inc.*, 86 F.3d at 1064 (discussing *Fecht v. Makowski*, 406 F.2d 721 (5th Cir. 1969)); *See Fecht*, 406 F.2d at 723 ("Where no grant of limitation is possible, the basis for granting exoneration vanishes. In such a case, a boat owner should not be treated more favorably than an automobile driver. The latter is not entitled to force a damage claimant to a trial without a jury. Neither should the former.").

## IV.    CONCLUSION

Petitioners' eleventh-hour request to stay this matter should be denied. Petitioners have failed to carry their burden of showing that any harm they may suffer if trial proceeds outweighs the substantial prejudice a stay would impose on Claimants. Moreover, a stay would prejudice Claimants, and would undermine, rather than advance, judicial economy, and the public interest weighs heavily against delaying resolution of this matter.

For all the foregoing reasons, Petitioners' request to stay this matter twelve days before trial must be denied.

Respectfully submitted this 20th day of May 2026.

Respectfully submitted,

/s/ *Adam J. Levitt*
Adam J. Levitt
Diandra "Fu" Debrosse
Daniel R. Schwartz
**DICELLO LEVITT LLP**
10 North Dearborn Street, 6th Floor
Chicago, Illinois 60602
alevitt@dicellolevitt.com
fu@dicellolevitt.com
dschwartz@dicellolevitt.com
Tel:  312-214-7900

*Lead Counsel for Local*
*Government Claimants*

/s/ *Todd D. Lochner*
Todd D. Lochner
**LOCHNER LAW FIRM, P.C.**
7076 Bembe Beach Road
Suite 201, Mailbox 6
Annapolis, Maryland 21403
tlochner@lochnerlawfirm.com
Tel:  443-716-4400

*Lead Counsel for Private*
*Economic Loss Claimants*

15

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of May 2026, a copy of the foregoing response memorandum was served via the court's CM/ECF system on all counsel of record.

/s/ *Adam J. Levitt*
Adam J. Levitt
**DICELLO LEVITT LLP**
10 North Dearborn Street, 6th Floor
Chicago, Illinois 60602
alevitt@dicellolevitt.com
Tel: 312-214-7900

***Lead Counsel for Local Government Claimants***

16