**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

| | |
|---|---|
| In the Matter of the Petition<br><br>of<br><br>GRACE OCEAN PRIVATE LIMITED, as Owner of the M/V DALI,<br><br>and<br><br>SYNERGY MARINE PTE LTD, as Manager of the M/V DALI,<br><br>for Exoneration from or Limitation of Liability | Civ. No. 24-00941-JKB<br><br>*IN ADMIRALTY* |

**THE PERSONAL INJURY AND WRONGFUL DEATH CLAIMANTS' OPPOSITION TO PETITIONERS' MOTION TO STAY CIVIL PROCEEDINGS AND MOTION FOR LEAVE TO FILE SUMMARY JUDGMENT MOTION ON THE ISSUE OF THE <u>NEGLIGENCE OF CAPTAIN CHANDRASHEKAR SABHAPATHY</u>**

The Personal Injury and Wrongful Death Claimants ("Claimants") respectfully submit this opposition to Petitioners' motion to stay. (ECF 755). If the Court grants Petitioners' request, the Personal Injury and Wrongful Death Claimants respectfully request leave to file a motion for summary judgment on the negligence of Captain Chandrashekar Sabhapathy.

**I.      <u>PETITIONERS' REQUEST FOR A STAY MUST BE DENIED</u>**

Petitioners fail to demonstrate "clear and convincing circumstances" that outweigh the substantial prejudice Claimants would suffer if the matter were stayed less than two weeks before trial. *Williford v. Armstrong World Indus., Inc*., 715 F.2d 124, 127 (4th Cir. 1983). A stay would undermine, rather than promote, judicial economy, and the public interest weighs heavily against staying this matter.

Before staying a case, the court will balance several factors, including the burden on the movant should the stay not be granted, the burden on the nonmovant, public interest, judicial

1

economy, and the overlap and status of the criminal matter. *Infotek Corp. v. Preston*, 2021 WL 4521330, at *2 (D. Md. Oct. 4, 2021).

In conducting its prejudice inquiry, the Court may consider whether denying a stay could undermine a party's Fifth Amendment privilege, expose a party's criminal defense in advance of trial, or otherwise prejudice either case. *Hicks v. City of New York*, 268 F. Supp. 2d 238, 242 (E.D.N.Y. 2003). First, Petitioners cannot demonstrate their Fifth Amendment right has been undermined: Corporations have no such right. And several Synergy employees have already invoked the Fifth Amendment during their depositions. Those who did not did so with full knowledge of the pending DOJ investigation. Next, contrary to Petitioners' claims, there is no danger that Synergy's trial strategy will be exposed by virtue of allowing the Limitation Action to proceed to trial. The parties filed their Pretrial Order on May 11, 2026 (ECF No. 746), and that can be no danger of exposing what has already been made public. Finally, this proceeding was initiated *by the Petitioners* and for their benefit.

Claimants stand to suffer immense prejudice if a stay is granted: this is not an early-stage case; the matter was filed over two years ago; and trial is two weeks away.  The indictment against Grace Ocean was returned on April 8, 2026. By all accounts the criminal case is just beginning, and there is no end date to which Claimants can hope to have the Limitation Act trial reinstituted. Synergy's employee, Karthik Nair, who has been individually charged with several counts of the indictment, is currently located in Chennai, India, and would have to be extradited back to the U.S., which will take years. For these reasons, an indefinite stay is principally unjust and favors denial of Petitioners' motion. *See e.g. Taccino v. Act 1st Fed. Credit Union*, 2021 WL 3572935 (D. Md. Aug. 12, 2021) (Bredar, J.) (Noting "injecting an indefinite delay into this proceeding could present prejudicial difficulties" to the non-moving party).

There is also practical prejudice inherent in postponing a fully prepared trial, including added costs, uncertainty, and witness schedules, weighing heavily towards denying the stay. *See e.g. Mike's Train House, Inc.*, 2011 WL 836673 at *2 (Bredar, J.) (Finding "the parties' expenditure of time and resources and the immediate proximity of the Markman hearing" weighed against granting the stay and denied the motion.).[1] Even Petitioners' 90-day request to stay the matter for them to seek immunity to potentially have their proposed fact witnesses return to the U.S. to testify at trial—a result Petitioners cannot promise to achieve—is untenable and arbitrary, and must be denied. *See e.g. Taccino v. Act 1st Fed. Credit Union*, No. CV JKB-21-0840, 2021 WL 3572935 (D. Md. Aug. 12, 2021) (Bredar, J.) (Denying a stay where the court noted the movant "provide[d] no evidence from which to conclude that a ninety-day hiatus in the case at this stage would simplify any factual or legal issues in a manner that promotes judicial economy.").

Finally, granting a stay would undercut judicial economy and infringe upon the public interest. While Petitioners claim the resolution of the related criminal investigation may resolve many, if not most of the factual issues in this case "more expeditiously," they are hard pressed to show a criminal case in its infancy, with an indictment initiated one month ago, will dispose of factual issues more efficiently than a trial set in two weeks. It has been over two years. The public, and the wrongful death families and personal injury claimants deserve to have this limitation stage of the matter concluded so that they can proceed on the next phase of their cases.

---

[1] There is a further prejudice consideration regarding the March 26, 2027, statute of limitations for Claimants to bring their claims in a courtof their choice as permitted by the saving-to-suitors clause. Staying the case until conclusion of the parallel criminal will impede Claimants' ability to file in state court, unless the injunction is lifted. *See e.g. In re Oceanic Steam Navigation Co.*, 204 F. 260 (2d Cir. 1913) (modifying the injunction to allow commencement of suit to prevent the running of the statute of limitations on claimants' wrongful death actions during the pendency of multiple-claim, inadequate-fund limitation proceedings,).

II.   **MOTION FOR LEAVE TO FILE SUMMARY JUDGMENT MOTION ON THE ISSUE OF THE NEGLIGENCE OF CAPTAIN CHANDRASHEKAR SABHAPATHY**

Petitioners argue that their proposed stay could be "productively used" to allow them to bring their motion for summary judgment against the public and private economic loss claimants on the basis that those claims are barred under *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927). (ECF No. 755, at 15). Claimants take no position on the *Robins Dry Dock* issue. But if the Court is inclined to grant a stay to consider dispositive motions, Claimants believe that the Master's negligence can be conclusively determined by way of summary judgment.

As the Court knows, the Personal Injury and Wrongful Death Claimants have a lower burden at trial by virtue of the Limitation of Liability Act's "imputation" clause. 46 U.S.C. § 30524(e). That clause provides that, "In a claim for personal injury or death, the privity or knowledge of the master or the owner's superintendent or managing agent, at or before the beginning of each voyage, is imputed to the owner." *Id.* Consequently, if an act or omission of the Master "at or before the beginning" of the voyage caused or contributed to the allision, Petitioners cannot possibly prevail on limitation. *See, e.g.*, *In re Lasala*, 2021 WL 2002503, at *5 (E.D. La. May 19, 2021) ("[T]he Court has found that Lasala engaged in negligent acts that, at least in part, caused the accident.  Such acts were within his privity and knowledge.  Lasala therefore is not entitled to limitation or exoneration.").[2]

Numerous undisputed facts show that the Master's negligent acts or omission "at or before" the beginning of the voyage caused or contributed to the allision. For one, the Captain failed to

---

[2] Claimants assert the voyage was "at" its beginning at the time it allided with the Key Bridge in the Patapsco River with two local pilots still aboard. *See, e.g.*, ECF No. 92, § 7 ("Claimants admit that the *Dali* was at the beginning of its voyage to Sri Lanka from Baltimore on March 26, 2024, when the incident occurred.").

restart the main engine when it shut down after the first power loss (restarting the engine requires moving a lever a few inches). But the most glaring act of negligence is his indefensible decision to depart Baltimore. When still at the dock at Seagirt Terminal, the *Dali* suffered a blackout because two of its auxiliary engines were receiving fuel from a flushing pump.[3] This same condition caused the second underway blackout on March 26. Petitioners' own experts conceded use of the flushing pump as a in this matter is improper.

> Q:  [W]as the use of the flushing pump as a primary source of fuel for diesel generators 3 and 4 improper?
>
> A:  Yes.

(Attachment 1, Deposition of Petitioners' Expert Rajkrish Kumaran, 29:23 to 23:2).

Like the use of the flushing pump, the impropriety of Captain Sabhapathy's departure decision is not disputed. That is because Synergy's Corporate Representative, Ajith Kumar, testified that the Master had an obligation to fully investigate the March 25 blackouts *before* departing, something the Captain never did.[4]

> Q:  [I]f there was a blackout before departure, the master must investigate the cause of that blackout before departing. Does Synergy agree with that?
>
> A:  I agree with that.

(Attachment 2, Synergy 30(b)(6) Deposition, 393:24 to 394:4). Indeed, Mr. Kumar testified that the *vessel would not have been permitted to depart* Baltimore, if an investigation revealed that a dockside blackout was caused by use of a flushing pump.

> Q:  If it was determined on March 25th or early March 26th that the blackout on the 25th was caused by a diesel generator running on a flushing pump, the vessel would not have been able to depart before that issue was remedied. Agree?

---

[3] The causes of each of the four blackouts on March 25 and March 26 are not disputed.

[4] As the Court knows, the Master invoked the Fifth Amendment at his deposition.

A:      Definitely if we would have known that, we would not allow the vessel to depart.

Q:      Synergy definitely agrees with that?

A:      That is correct.

(*Id.* at 398:1-13).

Finally, in his individual capacity, Mr. Kumar also testified the March 25 blackouts should have been immediately reported to Synergy Shoreside Management.

Q:      You would agree that the ship management team should have known right away that the *Dali* had sustained one or two blackouts on March 25th, correct?

A:      That is correct.

(Attachment 3, Kumar Deposition I, 131:11-15). Second

Without dispute, both the *Dali*'s Electrician and the Chief Engineer knew that the second blackout on March 25 was caused by the use of a flushing pump: they told the NTSB this days after the allision. (*See* Attachment 4, Chief Engineer NTSB Interview, at 57; Attachment 5, Electrician NTSB Interview, at 14-15). The Master knew, or should have known, the same and reported it. He never did. Claimants' case is very simple. If the Master had investigated and reported the dockside blackouts properly, Synergy, by its own admission, would have not permitted the *Dali* to depart. And if the *Dali* had never departed, Claimants' loved ones would still be alive today.

This is just one sliver of the overwhelming evidence in the record supporting a finding that the Master was negligent as a matter of law. Under the extensive record in this case, Petitioners cannot possibly prevail at trial. Claimants are confident the Court will agree.[5] If the Court stays

---

[5] Claimants also note summary judgment practice may advance resolution of this dispute.

6

the trial of this case, Claimants respectfully request a summary judgment briefing schedule on the negligence of the Master.[6]

### III.   **<u>CONCLUSION</u>**

Petitioners' eleventh-hour request to stay this matter just two weeks before trial should be denied. Petitioners have failed to carry their burden of showing that any harm they may suffer by the proceedings they initiated outweigh the substantial prejudice a stay would impose on Claimants. Moreover, a stay would undermine, rather than advance, judicial economy, and the public interest weighs heavily against delaying resolution of this matter. For the foregoing reasons, if the Court grants Petitioners' request for a limited stay in this matter, Claimants respectfully request leave to file a motion for summary judgment on the negligence of *Dali* Captain Chandrashekhar Sabhapathy.

Respectfully submitted this 20th day of May 2026.

Respectfully submitted,

/s/ *Daniel O. Rose*
Daniel O. Rose
Kevin Mahoney
Taylor Sandella
KREINDLER & KREINDLER LLP
485 Lexington Avenue, 28th Floor
New York, New York 10017
drose@kreindler.com
kmahoney@kreindler.com
tsandella@kreindler.com
T: (212) 973-3414
*Lead Counsel for Personal Injury and Wrongful Death Claimants*

---

[6] The Court could, alternatively, hold an abbreviated trial on the issue of the Captain's negligence.

8