IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

<table>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>In the Matter of the Petition of GRACE</td><td>*</td><td>Civ. No. 24-0941-JKB</td></tr>
<tr><td>OCEAN PRIVATE LIMITED, <em>et al.</em>, for</td><td>*</td><td></td></tr>
<tr><td>Exoneration from or Limitation of</td><td></td><td><em>IN ADMIRALTY</em></td></tr>
<tr><td>Liability</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
</table>

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## ORDER

On May 20, 2026, the Parties appeared before the Court for a continuation of the Pretrial Conference. For the reasons stated in open court and those stated below, it is hereby ORDERED:

1.      Petitioners' Motion to Stay Civil Proceedings (ECF No. 755) is DENIED. The Phase 1 trial of this civil case will commence on June 1, 2026, as previously scheduled.

2.      Claimants' Briefing Addressing the Admissibility of TSI Report and Testimony of Publio Beltran (ECF No. 743), which the Court construes as a motion in limine (*see* ECF Nos. 697, 741), is GRANTED. The Court finds that the TSI Report (ECF No. 742-5) is hearsay and that Petitioners have not met their burden to establish that the Report is nonetheless admissible as a business record under Federal Rule of Evidence 803(6). Therefore, the TSI Report will not be admitted at trial. Further, because the only stated subject matter of Mr. Beltran's intended testimony is the TSI Report, the Court finds that Mr. Beltran will not be permitted to testify at trial.

Claimants contend, and Petitioners do not dispute, that Petitioners seek to introduce the TSI report "to support their contention that the Dali did not have a vibration issue prior to the allision." (ECF No. 743 at 6; ECF No. 742.) The Parties therefore agree that the TSI Report is hearsay—an out-of-court statement offered to prove the truth of the matter asserted—pursuant to Fed. R. Evid. 801(c). Petitioners argue for the applicability of only one hearsay exception that would allow for

the admission of the report, namely Fed. R. Evid. 803(6), which permits the admission of hearsay statements which are "records of a regularly conducted activity"—often called "business records." (ECF No. 742 at 3.)

The business records exception permits the admission of hearsay which is "[a] record of an act, event, condition, opinion, or diagnosis" if, *inter alia*, it "was kept in the course of a regularly conducted activity of a business, . . . making the record was a regular practice of that activity, . . . and the opponent does not show that the source of information of the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6). The rationale for the business records exception is that such records can be presumed reliable because they are created in the course of routine business activity, where accuracy is incentivized. *Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 204–05 (4th Cir. 2000); *United States v. Harper*, 118 F.4th 1288 (10th Cir. 2024). Documents that are prepared in anticipation of litigation do not qualify as business records admissible under Rule 803(6) because they are "dripping with motivations to misrepresent" and therefore lack the indicia of reliability that business records otherwise have. *Sinkovich*, 232 F.3d at 205.

Claimants argue that the TSI Report does not qualify for admission as a business record because it was prepared in anticipation of litigation. (ECF No. 743 at 12–13.) To decide whether a document was prepared in anticipation of litigation, the Fourth Circuit (among others) applies a "because of" test—the question is whether, in light of the nature of the document and the factual situation in a particular case, the document can be fairly said to have been prepared or obtained *because of* the prospect of litigation. *Nat'l Union Fire Ins. Co. of Pittsburgh v. Murray Sheet Metal Co.*, 967 F.2d 980, 985 (4th Cir. 1992) (analyzing whether documents were prepared in anticipation of litigation for purposes of analyzing whether they were discoverable or protected work product).

The burden of proof falls on Petitioners, as the proponents of the evidence, to establish that the TSI Report is a business record and was not prepared because of the prospect of litigation. *See* Fed. R. Evid. 803(6)(D); Fed. R. Evid. 803 advisory committee's note (providing that the proponent of the evidence must first "establish[] the stated requirements of the exception—regular business with regularly kept record, source with personal knowledge, record made timely, and foundation testimony or certification"—before the burden shifts to the opponent to show lack of trustworthiness).

Petitioners argue that the report was commissioned "as a fitness-for-service and safety compliance document, the type of assessment that responsible vessel operators routinely obtain to evaluate whether a vessel remains safe to operate following a structural event." (ECF No. 742 at 4.) Petitioners contend that "[t]he purpose of the testing was to determine whether there were any areas aboard the vessel where there were vibration issues that might need to be rectified," that "many of the areas tested are not related to the events of [the allision]," and that "TSI was not informed about any issues relating to this litigation." (*Id.* at 2.) They assert that TSI was "retained not by counsel but by the vessel's owners and managers" and that TSI's "professional obligation was to render an accurate technical assessment of the vessel's condition." (*Id.*) Petitioners support these assertions with two declarations—from Ajith Kumar, the Managing Director of Synergy Marine (ECF No. 742-1), and Publio Beltran Palomo, the Chief Executive Officer of TSI (ECF No. 742-2)—and three further documents—TSI's Quotation for the project, which includes a "scope of work" (ECF No. 742-3), Synergy's Purchase Order for the project (ECF No. 742-4), and the TSI Report itself (ECF No. 742-5).

Claimants, by contrast, argue that the following circumstances indicate that the TSI Report *was* prepared in anticipation of litigation: "the report was prepared at the request of Petitioners

3

*after* the allision, *after* extensive repairs to the Dali, and some ten months *after* it had filed this action, . . . [and the report has a] targeted nature . . . relating to electrical cabinets in the engine control room and the transformers that are at issue in the litigation." (ECF No. 743 at 12–13.) Claimants also argued at the May 20, 2026, Pretrial Conference that Mr. Kumar's declaration further supports their position, as he states: "Following the allision, Synergy Marine decided to carry out an analysis of vibrations on DALI to understand the issues that had arisen *during the course of the investigation into the cause of the loss of power*." (ECF No. 742-1 ¶ 2 (emphasis added).)

The Court finds that Petitioners have not met their burden to establish that the TSI Report is a business record, not prepared in anticipation of litigation. In particular, Petitioners have not established that the TSI report "was kept in the course of a regularly conducted activity of a business" or that "making the record was a regular practice of that activity." Fed. R. Evid. 803. To the contrary, Claimants have successfully identified circumstances surrounding the preparation of the TSI Report that are sufficient to indicate a lack of trustworthiness. The Court acknowledges that some of the evidence on this issue is ambiguous—Mr. Kumar's statement, for example, that the report aimed to analyze "issues that had arisen during the course of the investigation into the cause of the loss of power" can be understood to assert that the Report was written because of the allision or because of the litigation-related-investigation after the allision. The Court is ultimately most persuaded, though, by its assessment that the majority, perhaps the vast majority, of the contents of the report appear to relate to *exactly* those issues that are at stake in this case. The Court acknowledges Petitioners' argument at the Pretrial Conference that not every record that was created after the allision which happens to be somewhat relevant to the litigation was necessarily created in anticipation of litigation, and as a general matter, the Court agrees. But here, where the

4

subject matter of the report so closely tracks the issues in play, and where the timing and overall circumstances surrounding the preparation of the report raise the specter that it may be "dripping with motivations to misrepresent," Petitioners needed to do more to persuade the Court that the Report is sufficiently reliable for admission as a business record. Petitioners could, for example, have done far more to support their assertion that "many of the areas tested are not related to the events of [the allision]" with illustration and argument. (ECF No. 742 at 2.) But without more, the Court will exclude the Report. Petitioners have not persuaded the Court that the TSI Report meets the requirements set forth in Rule 803(6)(A)–(D), and Claimants have succeeded in demonstrating that the "method or *circumstances of preparation* indicate a lack of trustworthiness." Fed. R. Evid. 803(6) (emphasis supplied). This ruling will not, of course, prevent Petitioners from presenting *other* evidence in support of their theory on the vibration issues that may or may not have existed before the allision.

In light of the above, testimony from Mr. Beltran will be excluded as well. Petitioners describe the anticipated scope of Mr. Beltran's testimony as follows: Mr. Beltran will rebut Claimants' criticisms of the TSI Report by "explaining the circumstances of TSI's engagement in this matter, explaining the testing protocol TSI developed for the DALI, describing the qualifications of the individuals who performed the testing, and explaining the testing procedures followed during testing." (ECF No. 711 at 4.) Because the TSI Report is inadmissible hearsay and will be excluded as such, the Court finds that Petitioners have no stated need for Mr. Beltran's testimony, and he will be excluded as a witness for that reason.

3.       Claimants' Motion in Limine for the Admission of Certain Expert Witness Testimony Via Video Deposition at Trial (ECF No. 744) is GRANTED. The Court finds that Claimants may introduce deposition testimony from six experts—John Nadeau, Jeremy Ayling,

Gary Rawlings, Lionel Fernandes, Harrison Cassidy, and Eric Winkel—if it is otherwise admissible, despite the experts having originally been designated by parties who have since settled their claims in this matter (the State of Maryland and ACE American Insurance Company).

Fed. R. Civ. P. 32(a) permits a party to use deposition testimony from an unavailable witness against a party who was present or represented at the taking of the deposition if the testimony would be admissible if given live. The Fourth Circuit has held that "no distinction is made in [Rule 32] with respect to the purpose for which the deposition was taken. . . . It is irrelevant to the issue that one party or the other initiated the deposition, that it was initiated only for discovery purposes, or that it was taken before discovery was completed." *Tatman v. Collins*, 938 F.2d 509, 511 (4th Cir. 1991); *see also Hauser v. Powell*, Civ. No. 17-3844-JMC, 2022 WL 4280578 at * 1 ("Rule 32(a) does not distinguish between expert and other depositions, or whether the purpose of the deposition was for discovery or for use of [sic] trial.").

In light of this authority, the Court rejects Petitioners' argument that the Court "should take into account the relative unfairness of allowing Claimants to put in deposition transcripts where Petitioners cannot conduct trial cross examination, bearing in mind that the record has developed since these experts were deposed and additional lines of questioning could have been pursued that were not necessarily apparent at the time of their depositions." (ECF No. 752 at 11.)

The Court is also unpersuaded by Petitioners' argument that these experts' deposition testimony should be precluded because it is cumulative of testimony that Claimants' own experts *could* give. (*Id.* at 2.) Certainly, the Court intends to faithfully apply Fed. R. Evid. 403's balancing of the probative value of evidence against its potential for wasting time or being needlessly cumulative, and the Court will not indulge the Claimants in playing video deposition testimony that substantially overlaps with testimony their own experts have given live. But if Claimants

6

present these experts' deposition testimony consistent with that admonition, the fact of their having disclosed in discovery alternative experts who *could have* provided testimony on the same topics will not prevent them from choosing one expert or mode of presentation rather than the other.

Petitioners are correct that courts have sometimes prohibited a party from introducing from another party's expert witness at trial—live or by deposition testimony—for various reasons. But where courts rely on the bare fact that the expert was designated by an opposing party, the concern is generally that it would be prejudicial to bring the testimony in because a jury may draw negative inferences from the fact that the opposing party initially designated but then later withdrew the witness. *See, e.g., Ferguson v. Michael Foods, Inc.*, 189 F.R.D. 408, 409 (D. Minn. 1999); *Rubel v. Eli Lilly & Co.*, 160 F.R.D. 458, 461 (S.D.N.Y. 1995). This concern is plainly not pressing here, as the case will proceed as a bench trial.

Petitioners' most persuasive argument is that "settling parties are entitled to place restrictions on the use of [their] experts' testimony." (ECF No. 752 at 2.) Petitioners cite a District of Colorado case excluding an adverse party's expert witness where the adverse party had entered into a settlement that contemplated that the expert would "have no further role in [the] litigation." *Giles v. The Inflatable Store, Inc.*, Civ. No. 07-00401, 2009 WL 801729, at *6 (D. Colo. Mar. 24, 2009). Petitioners argue that there are policy reasons not to upset the expectations of settling parties in this respect—in particular, the admission of this kind of testimony could discourage settlement, against public policy. *See FMC Corp. v. Vendo Co.*, 196 F. Supp. 2d 1023, 1048 (E.D. Cal. 2002). Petitioners also note that the parties who originally designated the experts at issue here are not merely *distinct* from those seeking to utilize the experts' testimony, they are *adverse*—"the Injury/Death Claimants and the Economic Loss Claimants have all asserted claims against the State of Maryland . . . ." (ECF No. 752 at 2.)

7

However, as an initial matter, the intentions and expectations of the settling parties are not particularly clear here. Claimants characterize them as follows: "The State . . . will not voluntarily permit its experts to testify live." (ECF No. 744 at 1.) Petitioners themselves characterize their settlement agreement(s) with the State/Ace as including a "bar to testifying at trial." (ECF No. 752 at 2.) Claimants' request to introduce these experts' deposition testimony—rather than calling the experts live—does not on its face contravene these limits. But further, the Court gives great weight to the fundamental principle that the public—and the Court, in its truth-seeking capacity— is entitled to "every man's evidence." *Trammel v. United States*, 445 U.S. 40, 50 (1980) (acknowledging a "fundamental principle that the public has a right to every man's evidence"). Just as this principle requires the strict construction of testimonial exclusion rules and privileges (*id.*), so too it informs the Court's exercise of discretion over the introduction of this evidence— only upon a showing that the discouragement of settlement here would "transcend[] the normally predominant principle of utilizing all rational means for ascertaining truth" would the Court categorically exclude the testimony at issue. The Court is not persuaded that the public policy reasons are as strong here as Petitioners suggest, and thus, the Court will not preclude introduction of this evidence.

DATED this 21 day of May, 2026.

BY THE COURT:

James K. Bredar
United States District Judge