**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

| | |
|---|---|
| In the Matter of the Petition<br><br>of<br><br>GRACE OCEAN PRIVATE LIMITED, as Owner of the M/V DALI,<br><br>and<br><br>SYNERGY MARINE PTE LTD, as Manager of the M/V DALI,<br><br>for Exoneration from or Limitation of Liability. | Docket No. JKB 24-cv-941<br><br>*IN ADMIRALTY* |

**PETITIONERS' SECOND MOTION TO STAY CIVIL PROCEEDINGS**
**AND INCORPORATED MEMORANDUM IN SUPPORT**

Petitioners Grace Ocean Private Limited and Synergy Marine Pte Ltd. (collectively "Petitioners") submit this Memorandum of Law in support of their second motion to stay the trial scheduled to commence June 1, 2026 in the Limitation Proceeding. Petitioners incorporate by reference the arguments put forth in their May 18, 2026 motion to stay the trial, ECF No. 755, but they respectfully submit that the circumstances of the case are now materially different from when they made their first motion, which was denied by this Court. ECF No. 775. Petitioners have conferred with counsel for the Private Economic Loss and Public Entity Claimants who have advised that they agree the trial should be stayed pending resolution of the criminal proceedings. They oppose Petitioners' request to litigate issues related to *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927) during the pendency of the criminal proceedings. Counsel have advised

that they will be submitting a brief addressing this latter point in advance of the start of trial on Monday.

## PRELIMINARY STATEMENT

As of May 29, 2026, only eleven claims remain of the approximately 54 that were initially filed. All others have been settled or voluntarily dismissed. Most notably, all of the personal injury and wrongful death claims have now been settled, as well as claims for property damage or loss.[1] This fact substantially alters the balance of equities on the question whether to require Petitioners to proceed with trial while a criminal action against Synergy remains pending. As the Court will recall, in denying Petitioners' first request for a stay, the overriding factor weighing against the motion was the fact that the death claimants would have their day in Court substantially delayed. Here, that is no longer a factor because those claims have now been settled, and the remaining claimants actually would prefer a stay to allow the criminal claims to proceed first.

The remaining claimants in this case consist of Public Entity Claimants the Mayor and City Council of Baltimore ("City of Baltimore") (ECF No. 142)[2] and Baltimore County (ECF No. 171); Private Economic Damages claimants Underwood Energy Inc. (ECF No. 78); a purported class[3]

---

[1] One cargo claim, ECF No. 206, has not settled. This is a *pro se* claim, and the claimant has not responded to Petitioners' communications despite multiple attempts to contact this party. Petitioners intend to move in due course to dismiss this claim for failure to prosecute.

[2] Petitioners acknowledge that the City of Baltimore's claim also alleges damage to a water pipe that was located in the vicinity of the bridge. Petitioners' motion would not pertain to that aspect of the City's claim, but only with respect to economic losses stemming from the loss of the bridge, as to which they have alleged no proprietary interest. Petitioners note that a stay of trial would allow the parties to conduct discovery on the City's allegations of damage to the water pipe which may facilitate a settlement of that element of their claim.

[3] The law is clear that class actions are not permitted in a limitation proceeding. *Lloyd's Leasing Ltd. v. Bates*, 902 F.2d 368, 370 (5th Cir. 1990) ( "a class action may not be instituted in a limitation proceeding.") *See, e.g., Gabarick v. Laurin Mar. (America), Inc.*, 2009 U.S. Dist. LEXIS 27180, at *27 (E.D. La. Jan. 12, 2009) ("In light of this clear precedent, the class action allegations instituted within these consolidated limitation proceedings are stricken"); *Schaeffer v. Tsakos Shipping & Trading S.A.*, 2006 U.S. Dist. LEXIS 25304, at *3 (E.D. Pa. May 2, 2006) ("Defendants also are correct that Plaintiffs' claims cannot be pursued as a class action"); *Slaven v. BP America, Inc.*, 190 F.R.D. 649, 654 (C.D. Ca. 2000) ("*Lloyd's Leasing* is the leading case and the only appellate decision on point. This Court was unable to locate a single case – reported or not – that disagreed with the holding of Lloyd's Leasing*"); Com. of Puerto Rico v. The M/V Emily S*, 158 F.R.D. 9, 16 (D.P.R. 1994) ("The law is clear that class proceedings are incompatible with the procedures of the Limitation of Liability Act . . . and Rule F"); *Complaint of Great Lakes Dredge*

consisting of R.E. West, Inc., E. Marine Motor Yacht Sales Pty Ltd., Captain Logistics LLC, American Publishing LLC, B&R Construction Services, Inc., International Trade Solutions, Inc., Penn Manufacturing Industries, LLC, PMI Eng. Exports Private Ltd., and PMI Global Technologies Pvt. Ltd. ("R.E. West Class," ECF No. 222); Consol Energy Inc. (ECF No. 395); Star Bulk (Singapore) Pte. Ltd. (ECF No. 188); American Sugar Refining, Inc. and Florida Sugar & Molasses Exchange, Inc. (ECF No. 189); a purported class[4] consisting of Gerald Barney, Thomas Crawley, Ryan Hale, Tulani Hasan, Donny Jackson, Alonzo Key, Charles Peacock, and Douglas Ramos ("Barney Class," ECF No. 239); Assignees and Subrogees of Ports America Chesapeake, LLC (ECF No. 241); and Mukesh Desai on behalf of R.M. Metals (ECF No. 344).[5]

Petitioners have contended since October 22, 2024, when the parties' joint status report was filed (ECF No. 406), that these claims should be dismissed as a matter of law because they are clearly precluded by the rule established by *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927) and progeny, which bars recovery for economic loss resulting from physical damage to property in which the claimant possessed no proprietary interest. *See* ECF No. 406 at 14-15. It is Petitioners' position that that such a motion is now ripe for adjudication and should be briefed to the Court while the stay is pending.

"Without question, the *Robins Dry Dock* principle is alive and well in the Fourth Circuit." *Yarmouth Sea Prods. Ltd. v. Scully*, 131 F.3d 389, 398 (4th Cir. 1997). See also *Complaint of Marine Nav. Sulphur Carriers, Inc.*, 507 F. Supp. 205 (E.D. Va. 1980) ("A person who suffers only

---

*& Dock Co.*, 1996 U.S. Dist. LEXIS 5553, at *20 (N.D. Ill. Apr. 25, 1996) ("we believe the factors set forth by the Fifth Circuit are sound). ECF Nos. 222 and 239, therefore, are improper.

[4] The Barney Class action at least acknowledges *Lloyd's Leasing*, but states that claimants "believe it is not controlling in this case for various reasons." ECF No. 239 n. 1.

[5] During the pendency of this case, this claim has been characterized as a cargo claim; however, the claim does not involved the carriage of cargo aboard DALI but rather alleged economic loss resulting from the inability to ship cargo aboard other vessels as a result of the incident.

an indirect economic loss based on business expectations may not recover damages against a tortfeasor who prevents passage on a shipping lane or on a land road."), *aff'd* 638 F.2d 700 (4th Cir. 1981). Accordingly, because the Economic Loss Claimants did not allege a proprietary interest in the Key Bridge, their economic loss claims associated with its loss and destruction must all be dismissed as a matter of law.

Accordingly, Petitioners respectfully request that the Court grant a stay of the trial in this matter pending resolution of the criminal action. In the meantime, the Court should set a briefing schedule to allow the parties to address the application of the *Robins Dry Dock* rule to the remaining claims. For the reasons discussed below, a stay is warranted, because: (1) the equities have shifted since Petitioners' motion of May 18 and there is no prejudice to the remaining Claimants if a stay is granted; (2) Petitioners will suffer hardship and prejudice if this case is not stayed; and (3) judicial economy weighs strongly in favor of granting a stay to permit briefing on the application of *Robins Dry Dock*, which is dispositive of the remaining claims in this case.

## LEGAL ARGUMENT

"When considering a motion to stay, the court takes into consideration economy of time and effort for the court, counsel and litigants and weighs competing interests to maintain an even balance." *U.S. ex rel. Tusco, Inc. v. Clark Constr. Grp.*, 235 F. Supp.3d 745, 755 (D. Md. 2016) (internal citations and quotation marks omitted). Courts must consider (1) the potential prejudice to the non-moving party if the Court grants the Motion; (2) the hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that the proposed stay would save. *Int'l Refugee Assistance Project v. Trump*, 323 F. Supp. 3d 726, 731 (D. Md. 2018). As the Supreme Court explained in *Landis v. North American Co.*, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." 299 U.S. 248, 254 (1936); *see*

*also McElmurry v. Alex C. Fergusson, Inc.*, No. WWD-04-389, 2006 U.S. Dist. LEXIS 45650, 2006 WL 1875404, at *1 (M.D.N.C. Jul. 5, 2006) ("Trial courts have broad discretion in deciding whether to grant or deny a motion to continue/postpone trial."). In exercising that authority, a court must "weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254; *see also Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983) ("[P]arty seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative."). Given the significant savings in judicial resources, as well as the lack of prejudice to the remaining Claimants and the fact that Petitioners' motion is not opposed,[6] the Court should grant Petitioners' request to stay the trial.

## I.    THE EQUITIES IN THIS MATTER HAVE CHANGED – THE REMAINING CLAIMANTS WILL SUFFER NO PREJUDICE

Since its May 18 Motion to Stay, Petitioners have settled numerous claims in this matter, most notably all personal injury and death claims, cargo claims, and property damage claims. The only remaining claims are claims for economic loss damages that are clearly precluded under well-established Supreme Court precedent. *See* ECF No. 406 at 14-15. The remaining Claimants do not oppose this Motion insofar as it relates to a request for a stay of trial, and there can be no argument that they will suffer any hardship if a stay is granted. None of the remaining Claimants are individuals or family members of those who were injured or killed during the collapse of the Key Bridge.

---

[6] As noted above, Petitioners have conferred with counsel for the remaining Claimants in this action, who have indicated that they do not oppose—and may even join in—Petitioners' motion for a stay. Moreover, the Government has previously indicated it supports of staying the civil limitation action pending the resolution of the criminal matter. Tr. of May 20, 2026 Pretrial Conference at 26:2-3 (ECF No. 766).

**II.    THE CIRCUMSTANCES HAVE CHANGED – PETITIONERS WILL SUFFER HARDSHIP**

Petitioners will suffer substantial and concrete prejudice if a stay is denied and this case proceeds to trial. As set forth in Petitioners' May 18 motion, absent a stay, Petitioners will be deprived of essential live fact witnesses, severely impairing their ability to present a defense on liability in the Limitation Proceeding. At the same time, Synergy faces the real risk of exposing litigation strategy to the government in the parallel criminal matter. This is not a speculative concern, but a direct and significant impairment of Petitioners' ability to mount a meaningful defense.

Since the May 18 motion and May 20 hearing, that prejudice has crystallized: Petitioners have been advised that key Synergy fact witnesses will not testify in the Limitation Action in light of the pending criminal indictment—even by live video.

Absent a stay, Petitioners would be required to proceed to trial on liability without critical witnesses, even though the only remaining claims turn on a threshold legal issue that may be dispositive. Under these circumstances, a trial on liability would be premature, as it may ultimately prove unnecessary if the Court concludes that the remaining claims are barred as a matter of controlling Supreme Court authority. Proceeding in this sequence would require Petitioners to reveal litigation strategy, incur substantial trial costs, and risk adverse rulings while operating at a severe disadvantage and in the context of a pending parallel criminal proceeding.

Forcing the parties to proceed through a full trial where dispositive motion practice could resolve all remaining claims would be inefficient and prejudicial, and weighs strongly in favor of a stay.

III.   ***ROBINS DRY DOCK*** **CLEARLY PRECLUDES ALL OF THE REMAINING CLAIMS – AND PROMOTES JUDICIAL EFFICIENCY**

    **a.  Claimants Do Not Plausibly Allege a Proprietary Interest in the Damaged Bridge**

Three factors determine whether a party who is not the title owner nevertheless has the requisite proprietary interest to support a claim: (1) actual possession or control, (2) responsibility for repair and (3) responsibility for maintenance. *Texas Eastern Trans. v. McMoran Offshore Explor.,* 877 F.2d 1214, 1225 (5th Cir.), *cert. denied,* 493 U.S. 937 (1989). See also *McLean Contracting Co. v. Waterman S.S. Corp.*, 131 F. Supp. 2d 817, 821 (E.D. Va. 2001) (same premise, citing *Texas Eastern* at 1225), aff'd sub nom. *McLean Contracting Co. v. Waterman Steamship Corp.*, 277 F.3d 477 (4th Cir. 2002). Courts have found that a party must show that it has "control over the property tantamount to full ownership." *Naviera Maersk Espana, S.A. v. Cho-Me Towing, Inc.*, 782 F. Supp. 317, 320 (E.D. La. 1992). None of the remaining claimants can make such a showing.

    **b.  Resolution of the *Robins Dry Dock* Issue Is Dispositive of the Remaining Claims and Furthers Judicial Economy**

The question of whether *Robins Dry Dock* bars recovery on the remaining claims should be dispositive and can resolve this action without the time and expense of trial. Petitioners recognize that this case presents unusual circumstances and have diligently prepared for the June 1 trial date set by the Court. However, on the eve of trial, only claimants asserting purely economic losses remain—claims that, under well-established maritime law and binding Supreme Court precedent, are not legally cognizable.

Under these circumstances, proceeding with a four-week trial—at tremendous cost to Petitioners and the Claimants—would be inefficient and ultimately unnecessary if, at a later phase of this matter, the Court reaches the same conclusion that it could reach after considering a *Robins*

*Dry Dock* motion. The Court should instead resolve the threshold legal issue of whether the remaining Claimants are entitled, as a matter of law, to assert their claims before expending further judicial and party resources.

Courts have recognized that stays are warranted to allow for resolution of dispositive motions where a decision on those motions could resolve the entire action. *See Balt. Gas and Elec. Co. v. Rand Constr. Co.*, No. 24-1467-RDB, 2024 U.S. Dist. LEXIS 178159, 2024 WL 4349641, at *3-4 (D. Md. Sept. 30, 2024) (staying discovery until resolution of a pending motion for judgment on the pleadings); *Yongo v. Nationwide Affinity Ins. Co. of Am.*, No. 5:07-CV-94-D, 2008 U.S. Dist. LEXIS 14684, 2008 WL 516744, at *2 (E.D.N.C. Feb. 25, 2008) (Where a party seeks to stay discovery pending resolution of a dispositive motion, "[f]actors favoring issuance of a stay include the potential for the dispositive motion to terminate all the claims in the case or all the claims against particular defendants . . . ."). "[W]hile it is true that not every dispositive motion justifies a stay, a motion that may resolve the entire action favors a stay on the basis of judicial economy." *MJ Enter. Holdings, Inc. v. Spiffy Franchising, LLC*, No. 1:24-cv-3194-RDB, 2025 U.S. Dist. LEXIS 43294, at *6 (D. Md. Mar. 10, 2025) (internal citations omitted). "And, in assessing whether judicial economy would be served by a stay, courts consider whether it expects a stay to "simplify[] or complicat[e] of issues, proof, and questions of law."" *United States v. UnitedHealth Grp. Inc.*, No. JKB-24-3267, 2025 U.S. Dist. LEXIS 66400, at *7 (D. Md. Apr. 7, 2025) (Bredar, J.) (*citing Int'l Refugee Assistance Project*, 323 F. Supp. 3d at 731.

At the October 29, 2024 Status Conference (ECF No. 435), the Court asked counsel for the R.E. West Class claimants to explain his position with respect to *Robins Dry Dock*, and the following exchanges ensued:

> THE COURT: Maritime law is not very charitable to
> pure economic loss claims.

8

MR. LOCHNER: I recognize that.

* * *

MR LOCHNER: … However, should we get to *Robins*, or cases, specifically even the claimants chosen and agreed to represent are designed for an appellate process and specifically to get the report on the topic.

THE COURT:  So the Dali is going to be the vessel by which we rewrite maritime law in this country, is that it?"

MR. LOCHNER:  That is the hope, the plan.

ECF No. 435 at 49:17-19; 50:25-51:2.

Claimants should not be permitted to waste this Court's resources in a far-fetched attempt to outrun settled Supreme Court precedent. If Claimants' main goal is to obtain appellate review on *Robins Drydock*, then that issue should be teed up now, before the parties waste enormous resources conducting a month-long trial on liability issues that are likely moot.

## CONCLUSION

For the foregoing reasons, Petitioners respectfully request that the Court grant its motion to stay the trial in this matter pending resolution of the criminal proceedings and to permit Petitioners to file a motion for judgment on the pleadings/summary judgment regarding the application of *Robins Dry Dock*. Petitioners respectfully submit the Court should grant them such other and further relief as may be just and equitable.

Dated: May 30, 2026                    DUANE MORRIS LLP

*/s/ Laurie G. Furshman*
Laurie G. Furshman (Bar No. 29604)
Lgfurshman@duanemorris.com
Robert B. Hopkins (Bar No. 06017)
Rbhopkins@duanemorris.com
Tristan A. Dietrick (Bar No. 31238)

9

tdietrick@duanemorris.com
1201 Wills Street, Suite 330
Baltimore, MD 21321
(410) 949-2900


BLANK ROME LLP

Luke M. Reid (Bar No. 31228)
Luke.Reid@blankrome.com
125 High Street, 3rd Floor
Boston, MA 02110
617-415-1200

William R. Bennett, III*
William.Bennett@blankrome.com
Thomas H. Belknap, Jr.*
Thomas.Belknap@blankrome.com
Noe S. Hamra
Noe.Hamra@blankrome.com*
Neil P. McMillan
Neil.McMillan@blankrome.com*
1271 Avenue of the Americas
New York, NY 10020
212-885-5000

Kierstan L. Carlson*
Kierstan.Carlson@blankrome.com
Emma C. Jones*
Emma.Jones@blankrome.com
1825 Eye St. NW
Washington, DC 20006
202-420-2200
*Admitted *pro hac vice*

10

## **CERTIFICATE OF SERVICE**

I CERTIFY that on this 30th day of May 2026, the foregoing Second Motion to Stay Civil Proceedings and incorporated Memorandum in Support, along with a proposed order, was filed in the United States District Court for the District of Maryland via the Court's CM/ECF filing system, which will provide notice of this filing to all counsel of record.

/s/ *Laurie G. Furshman*
Laurie G. Furshman (Bar No. 29604)
LGFurshman@duanemorris.com

11