# EXHIBIT 8

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

| | |
|---|---|
| In the Matter of the Petition<br><br>of<br><br>GRACE OCEAN PRIVATE LIMITED, as Owner of the M/V DALI,<br><br>and<br><br>SYNERGY MARINE PTE LTD, as Manager of the M/V DALI,<br><br>for Exoneration from or Limitation of Liability, | Docket No. JKB 24-cv-941<br><br>*IN ADMIRALTY* |

**EXHIBIT 8**

**EVIDENCE RELEVANT UNDER**
**FEDERAL RULE OF CIVIL PROCEDURE 56**

The following facts and documents are among the evidence that would be presented to this Court if Petitioners' Motion for Judgment on the Pleadings is converted to a Motion for Summary Judgment.

**FRAUDULENT CIRCUIT BREAKER CERTIFICATES**

Synergy Technical Superintendent Nair managed the *Dali*'s 2020 drydock inspections. During those inspections, the *Dali's* vacuum circuit breakers and air circuit breakers required inspection and testing. Grace Ocean directed that the work not be performed. Rather than have the circuit breakers tested, Synergy asked contractors to issue test reports without performing the actual testing. Mr. Nair was involved with these discussions and Synergy was ultimately

1

successful in obtaining the false certificates, which were submitted to the vessel's classification society. Had the required inspection and testing been performed, the loose wire that caused the first blackout on March 26 would have been identified and corrected.

### Factual Citations Related to Fraudulent Circuit Breaker Certificates

1.      Petitioners stated in their Complaint against HHI that "… the wire at connection point 1 of the node 381, [was an] … unreasonably dangerous and in [a] defective condition…." *See* Exhibit 8.A, ECF 2:25-cv-04374-KNS, in Case *Grace Ocean Private Limited v. Hyundai Heavy Industries Co.*, ¶ 55.

2.      The signal wiring at node 381 became "loose in normal operation, resulting in the power outage that led to the allision." *See* Exhibit 8.A, ECF 2:25-cv-04374-KNS, in Case of *Grace Ocean Private Limited v. Hyundai Heavy Industries Co.*, ¶ 56.

3.      On Tuesday February 25, 2020, in an email correspondence from Karthik Nair to Dali's Master, Nair wrote; "Please check and revert with the present condition of the Hyundai MSB, GSP, VCB, and ACB for your good vessel. Owners do not intend to carry out servicing of the same but can supply essential spares if required." *See* Exhibit 8.B (Depo. Ex. 99).

4.      On March 28, 2020, the conversation continues and Nair again asks if it is fine to "just give certificate ok or not?" Nair then goes onto say "If possible discuss with yard if they can just provide with a certificate (no need to do actual test) of test carried out to submit to class. You can just check and negotiate for some 100 USD for the certificate. Please try and convince yard." "No what I meant was not to do actual test of acb[1] Context makes it clear that Nair, whether via confusion or mere inattention, sometimes uses ACB and VCB interchangeably.  only

---

[1] Context makes it clear that Nair, whether via confusion or mere inattention, sometimes uses ACB and VCB interchangeably or as a collective description.

issue the certificate for class purpose."; "Maybe yard can ask that outside company to issue certificate for a minimal cost??" *See* Exhibit 8.C at pp. 23, 26, and 28 (Depo. Ex. 129).

5.      On March 28, 2020, in email Nair asks the yard to "Please note the cost of USD 1000 for ACB testing is high.  Please check and recert the cost for issuing, just the certificate for class purposes." *See* Exhibit 8.D (Depo. Ex. 130).

6.      On April 8, 2020, Nair sent to Michael Qiao ("Qiao") an email saying; "… you have already agreed to provide us the certificate without the service. If you had a problem with providing the certificate you should have informed us in the first itself. Our vessel is about to depart in the next two day.… Kindly please try to understand our situation and provide us the certificate. We don't want this to affect our relationship with your company." *See* Exhibit 8.E (Depo. Ex .131).

7.      Qiao then sent another email correspondence to Nair which states; "You should know that issue the certificate without actual test is base on the trust, it is a risk if the ACBs have issue in the future." *See* Exhibit 8.F (Depo. Ex .133).

8.      In an email correspondence between Mr. Nair and Mr. Gong Jiafu ("Jiafu"), Jaifu sends to Nair "Shipyard could not issue the certificate for class purpose due to this certificate should be issued by professional company after carefully checking with our QC/QA department." *See* Ex. 8.D. (Depo. Ex. 130).

9.      On April 12, 2020; the Dali was given certified inspection reports for the V.C.B from Ocean Link Marine Automation Co., LTD., for inspections which did not occur and which bear the exact same equipment serial number for each certificate. *See* Exhibit 8.G (Depo. Ex. 128).

10.    On August 21, 2021 Nair emailed the Dali Master with the rest of the Synergy management team in CC  via the VGDALI email, that "in drydock the ACB & VCB were not overhauled and only certificate was issued for the same." *See* Exhibit 8.H. (Depo. Ex. 134).

11.    If HHI had inspected, maintained, or overhauled the Dali's VCB's, inspection would have included checking the connections of all wires including Node 381 and inspection procedures for all transformers include checking all internal and intra wires. See Exhibit 8.I. (Deposition of Paik (Hyundai Heavy Industries Company Limited), (manufacturer of the M/V Dali) pp. 102).

## FLUSHING PUMP USE

The *Dali* suffered a second blackout on March 25 when the online DG, DG3, ran out of fuel because it was operating *improperly* on a flushing pump. In 2020, the dedicated fuel pumps for DGs 3 and 4, which were designed to automatically restart upon power restoration, had been taken out of service. Instead, DGs 3 and 4 had been reconfigured to receive their fuel from a flushing pump that required a manual restart upon restoration of electrical power to continue operating. On March 26th the cause of the final blackout on the *Dali* was identical to the second blackout at the pier the day before. Just as twelve hours prior, none of the crewmembers manually started the flushing pump after the power loss. Just like on March 25, DGs 3 and 4 became starved of fuel and tripped offline thereby causing the final blackout before the allision.

### Facts Related to Flushing Pump Use

1.    SOLAS Regulation II-1/41.5.1.1 states that "[w]here the main source of electrical power is necessary for the propulsion and the steering of the ship, the system shall be so arranged that the electrical supply to equipment necessary for propulsion and the steering and to ensure safety of the ship will be maintained or immediately restored in the case of loos of any one of

generators in service." Because the regulation requires that the main source of electrical power be immediately restored in the event of a blackout, use of the flushing pump as a does not satisfy ClassNK standards as it does not comply with those requirements. *See* Exhibit 8.J (Deposition of Yukihisa Shibata (ClassNK Representative) pp. 18-20).

2.    The flushing pump on the M/V Dali was a maintenance pump, designed to flush the fuel lines and generator engines of existing fuel prior to change in fuel type or maintenance work on engines. The flushing pump was not designed to automatically restart following a power loss and did not have a standby pump. Unlike the fuel supply and booster pumps, the flushing pump could not be restarted from the engine control room. *See* Exhibit 3 to the PEL Claimants' Opposition.

3.    The M/V Dali's use of the flushing pump as a primary fuel supply system for generators 3 and 4 would not approved by CLASS or the flag state, Singapore. *See* Exhibit 8.J at pp. 47,49; *see also* Ex. 3.

4.    Two of M/V Dali's sister ships; the M/V Maersk Saltoro and the M/V Cezanne were also found to be using their Vessel's flushing pumps as the dedicated fuel supply system for their generators 3 and 4. *See* Ex. 3; Exhibit 8.K (Depo. Ex. 212 email re Cezanne usage of flushing pumps); Exhibit 8.L (Depo. Ex. 214 re Saltoro).

5.    The Chief Engineer of the M/V Dali, Karthikeyan Deenadayalan ("KD"), stated that he saw that the flushing pump was being used as the continuous fuel supply source for generators 3 and 4. Unlike the sister vessels, KD found that the Generator Engine Fuel Oil System was in such a state of disrepair that it could not be readily operated. *See* Ex. 3.

6.    The flushing pump had been used to run generators 3 and 4 prior to the arrival of KD, with this method being used at least as early as September of 2023. *See* Exhibit 8.M (Deposition of Dhurai Balaji (Previous Engineer of Dali) pp. 11, 37-38).

7.    The flushing pump is not an ideal pump to supply fuel to the generators as there is no redundancy and no auto-start. *See* Exhibit 8.N (Deposition of Balaji Vanmeekesan (Fleet Manager) pp. 147).

8.    If the Technical Superintendent is performing inspection and following guidance notes, then they would have to physically inspect the meters and gauges for the auxiliary engine fuel oil supply and booster pumps. If one was looking at the gauges and flushing pump it would be apparent that the flushing pump was running and not the booster pump. *See* Exhibit 8.O (Deposition of Jayesh Panayanthatta Thekkeveetil (Technical Superintendent) pp. 235-36); Exhibit 8.P (Depo. Ex. 190 pg.46); Exhibit 8.Q (Depo. Ex. 232).

9.    The Second blackout of the M/V Dali was caused due to there being no fuel available to generators 3 and 4 due to the use of the flushing pump which did not have an automatic restart feature so it did not restart after the first outage. See Exhibit 8.R Deposition of Captain Kumar (Managing Director) pp. 91-92, 236); Exhibit 8.S (Deposition of Balaji Vanmeekesan (Fleet Manager) pg.104); Exhibit 8.T (Deposition of Rajesh Inigo Kolappan (QHSE Manager) pg. 202).

**LOCHNER LAW FIRM, P.C.**

*/s/ Todd D. Lochner*
Todd D. Lochner (25691)
7076 Bembe Beach Road
Suite 201, Mailbox 6
Annapolis, Maryland 21403
(T): 410-716-4400
tlochner@lochnerlawfirm.com