**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

| | |
|---|---|
| In the Matter of the Petition<br><br>of<br><br>GRACE OCEAN PTE LTD., as Owner of the M/V DALI,<br><br>and<br><br>SYNERGY MARINE PTE LTD, as Manager of the M/V DALI,<br><br>for Exoneration from or Limitation of Liability. | Docket No. JKB 24-cv-941<br><br>*IN ADMIRALTY* |

**PETITIONERS' REPLY TO PRIVATE ECONOMIC LOSS**
**CLAIMANTS' OPPOSITION TO MOTION FOR**
**<u>JUDGMENT ON THE PLEADINGS</u>**

**TABLE OF CONTENTS**

| | | Page |
|---|---|---|

ARGUMENT AND AUTHORITY ..................................................................................... 1

1.    The Saving to Suitors Clause does not preclude this Court from ruling on the merits of the remaining claims................................................................................ 1

2.    The case law confirms this Court's authority. ........................................................ 3

3.    This Court has the authority to reconsider its prior rulings. ................................... 3

4.    The Saving to Suitors Clause does not protect legally-deficient claims................. 4

5.    The Private Economic Loss Claims fail under Maryland law on Economic Loss and Public Nuisance...................................................................................... 4

    a.    PEL Claimants' economic loss claims would fail under Maryland law..... 5

    b.    PEL Claimants' public nuisance claims would fail under Maryland law... 6

6.    PEL Claimants vastly overstate the "well-established" purported exceptions. ...... 6

    a.    The purported "Privity Exception" is not applicable................................. 7

    b.    PEL Claimants wholly failed to address Petitioners' arguments regarding "intentional" acts....................................................................... 10

7.    PEL Claimants are not entitled to avail themselves of the Environmental Statutes. ................................................................................................................ 10

    a.    Claimants cannot avail themselves of CERCLA. .................................... 10

    b.    Claimant Star Bulk is not entitled to relief under the Oil Pollution Act of 1990........................................................................................................ 11

8.    PEL Claimants should not be permitted to amend their Claims........................... 12

9.    Class Actions are not permitted in a Limitation Action. ...................................... 14

CONCLUSION................................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Ace Am. Ins. Co. v. Grand Banks Yachts, Ltd.*,
2008 AMC 2846 (D. Md. 2008) ........................................................................................5

*Amoco Transp. Co. v. S/S Mason Lykes*,
768 F.2d 659 (1985).........................................................................................................8

*Artesian Water Co. v. Gov't of New Castle County*,
851 F.2d 643 (3rd Cir. 1988) ..........................................................................................11

*Ascon Props., Inc. v. Mobil Oil Co.*,
866 F.2d 1149 (9th Cir. 1989) .........................................................................................10

*Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*,
155 A.3d 445 (Md. 2017) ..................................................................................................5

*Chi. Title Ins. Co. v. Allfirst Bank*,
905 A.2d 366 (Md. 2006) ..................................................................................................5

*Com. of Puerto Rico v. The M/V Emily S*,
158 F.R.D. 9 (D.P.R. 1994) ............................................................................................14

*Critical Sys., LLC v. Addison HVAC, LLC*,
No. 24-CV-01003-LKG, 2025 WL 590435 (D. Md. Feb. 21, 2025).........................................5

*Express Scripts, Inc. v. Anne Arundel Cnty.*,
353 A.3d 1084 (Md. 2026) ................................................................................................6

*Exxon Corp. v. Hunt*,
475 U.S. 355 (1986).......................................................................................................11

*Gatlin Oil Co. v. United States*,
169 F.3d 207 (4th Cir. 1999) ..........................................................................................11

*Great Lakes Dredge & Dock Co. v. City of Chicago*,
No. 92 C 6754, 1996 WL 210081 (N.D. Ill. Apr. 26, 1996).......................................................14

*Humphreys v. Hal Antillen, N.V.*,
Nos. 93–3799, 93–3714, 1994 WL 682811 (E.D. La. Jan. 31, 1994) ...................................14

*In re Complaint of Marine Navigation Sulphur Carriers, Inc.*,
507 F. Supp. 205 (E.D. Va. 1980), *aff'd sub nom. Marine Nav. Sulphur
Carriers, Inc. v. Lone Star Indus., Inc.*, 638 F.2d 700 (4th Cir. 1981) .....................................9

*In re Deepwater Horizon*,
    745 F.3d 157 (5th Cir. 2014) ...........................................................................................13

*In re Ingram Barge Co.*,
    Civ. No. 05-4419, 2006 WL 5377855 (E.D. La. 2006) .............................................14

*In re Muer*,
    146 F.3d 410 (6th Cir. 1998) ............................................................................................3

*In re Oil Spill by the Oil Rig DEEPWATER HORIZON in the Gulf of Mexico, on Apr. 20, 2010*,
    835 F. Supp. 2d 175 (E.D. La. 2011) .............................................................................13

*In re Sause Bros. Ocean Towing*,
    No. CIV. 89-609-RE, 1992 WL 220674 (D. Or. Feb. 25, 1992) ...............................14

*In re Taira Lynn Marine Ltd. No. 5, LLC*,
    444 F.3d 371 (5th Cir. 2006) .....................................................................................11, 12

*In re: River City Towing Servs., Inc.*,
    204 F.R.D. 94 (E.D. La. 2001)....................................................................................14, 15

*Lewis v. Lewis & Clark Marine, Inc.*,
    531 U.S. 438 (2001)............................................................................................................4

*Lloyd's Leasing Ltd. v. Bates*,
    902 F.2d 368 (5th Cir. 1990) ......................................................................................14, 15

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)................................................................................................................4

*Nexen Petroleum U.S.A., Inc. v. Sea Mar Div. of Pool Well Servs. Co.*,
    497 F. Supp. 2d 787 (E.D. La. 2007). ECF No. 873....................................................8

*Nissan Motor Corp. v. Md. Shipbuilding & Drydock Co.*,
    544 F. Supp. 1104 (D. Md. 1982) ....................................................................................6

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999)..........................................................................................................15

*Petition of Cleveland Tankers, Inc.*,
    791 F. Supp. 669 (E.D. Mich. 1992)...............................................................................13

*Reliance Ins. Co. v. Carver Boat Corp.*,
    1997 AMC 2522 (D. Md. 1997) ........................................................................................5

*Slaven v. BP America, Inc*,
    190 F.R.D. 649 (C.D. Cal. 2000) ....................................................................................14

iii

*State of Maryland, Dep't of Natural Resources v. Amerada Hess Corp.*,
    350 F. Supp. 1060, 1068 (D. Md. 1972) ....................................................................6

*United States v. Aramony*,
    166 F.3d 655 (4th Cir. 1999) .................................................................................3

*Van Schaeffer v. Tsakos Shipping and Trading, S.A. and Frescati Shipping Co.,*
    *Ltd.*,
    Civ. Action No. 05-4486, 2006 WL 1192939 (E.D. Pa. May 2, 2006) ....................................14

*Venore Transp. Co. v. M/V Struma*,
    583 F.2d 708 (4th Cir. 1978) .............................................................................7, 8, 9

**Statutes**

28 U.S.C.
    § 1333(1)............................................................................................................4

33 U.S.C.
    §§ 2701 *et seq.* ..................................................................................................11
    § 2702(a) ...........................................................................................................11
    § 2702(b)...........................................................................................................11
    § 2702(b)(2)(E) ..................................................................................................11

42 U.S.C.
    § 9601(25)..........................................................................................................10
    §§ 9601-9675 ................................................................................................10, 11
    § 9659(a) ...........................................................................................................11

46 U.S.C.
    §§ 30501–30512.................................................................................................14

**Other Authorities**

Law of the Case—Trial Courts, 18B Fed. Prac. & Proc. Juris. § 4478.1 § 4478.1
    (3d ed.) ............................................................................................................3

3 Benedict on Admiralty § 17 (2026) ...........................................................................14

Fed. R. Civ. P. 54..................................................................................................4

18 James Wm. Moore et al., Moore's Federal Practice § 134.21 (3d ed. 2026).............................3

Petitioners Grace Ocean Private Limited and Synergy Marine Pte Ltd. (collectively "Petitioners") submit this Memorandum of Law in Reply to Private Economic Loss Claimants' (collectively "PEL Claimants" or "Claimants") Opposition to Petitioners' Motion for Judgment on the Pleadings.[1] ECF No. 873. This brief incorporates by reference Petitioners' Replies to the Oppositions filed by the Mayor and City Council of Baltimore's ("City of Baltimore") (ECF No. 876), Baltimore County (ECF No. 872), and R.M. Metals (ECF No. 874) (collectively "Claimants"), which are filed contemporaneously with this Reply.

**<u>ARGUMENT AND AUTHORITY</u>**

**1.      The Saving to Suitors Clause does not preclude this Court from ruling on the merits of the remaining claims.**

As discussed in Petitioners' Reply to the City of Baltimore's Opposition, at the June 1, 2026 hearing, the Court asked counsel for the City if the Saving to Suitors Clause bars this Court from ruling on the application of *Robins Dry Dock* to the remaining claims:

> **THE COURT:** There's nothing in save to suitors itself or in the case law interpreting it that requires this Court to defer the *Robins* issues to -- whatever, subsequent proceedings before this Court or other courts after an injunction is dissolved.
>
> **MR. GOODMAN:** It is a matter of discretion for Your Honor, and we would brief at the appropriate time how we feel that discretion should be exercised under the circumstances. …

(June 1, 2026 Tr. at 27:8-23). Counsel for the PEL Claimants likewise never contested this Court's authority. Mr. Lochner's argument was confined to *how* the Court should exercise its discretion, urging deferral until the criminal proceedings concluded, not whether the authority exists. He

---

[1] With respect to PEL Claimants' arguments related to conversion to Summary Judgment (ECF No. 873 at 34), Petitioners consider the record and the pleadings are clear with respect to the PEL Claims that there is no valid basis by which any of the PEL Claimants are entitled to recover and thus, the suggestion that Petitioners' motion be converted to one for summary judgment need not be considered in the context of the PEL claims.

1

framed the issue as one of preference, stating that "under a savings to suitors analysis, this is the type of thing that certainly claimants would prefer be handled with the rest of the issues." (June 1, 2026 Tr. 35:13-15). The Court's ruling memorialized the point without distinguishing between claimant groups:

> With only *Robins*-related claims left, the Court is convinced that now is the time for the Court and the parties to face the *Robins* issue.
>
> The claimants also invoke the savings to suitors principle and argue that "damages issues should be reserved for courts of claimants' choosing following the limitations proceeding." But claimants' current filings do not show that there is any prohibition on the Court's, **this Court's**, considering *Robins* before a limitations trial is complete; and in argument this morning **counsel for the city conceded that deciding *Robins* issues at this point in a limitation and exoneration proceeding is entirely within the Court's discretion**.
>
> Should there be claims remaining after litigation of the *Robins* issues, then, of course, the Court will proceed to a trial in this limitation action with respect to the remaining claims; however, proceeding to trial where motions practice may resolve nearly all of the remaining claims -- or actually, may resolve all of them -- is an inefficient use of court and, therefore, public resources.
>
> The Court grants petitioners' motion for a stay. It does so not in consideration of the pending criminal case naming one of the petitioners but rather because proceeding to a five-week bench trial when petitioners have a colorable argument that the remaining claims cannot proceed would be an inefficient use of resources. First things first. Let's make sure that these claims are legally viable before we hear the facts in a lengthy trial.

June 1, 2026 Hearing Tr. 46:4-22 (emphasis added). Nothing in Claimants' opposition briefs has established any prohibition on the Court's ability to, in its broad discretion, consider *Robins* at this stage, before a trial on the question of limitation is complete.[2]

---

[2] PEL Claimants argue, without support, that "[t]he Court's discretion to manage this proceeding does not extend to deciding the merits of claims within a Limitation proceeding, which would constitute legal error for the reasons set forth below." ECF No. 873 at 7. None of the reasons suggested at pages 7-11 of their brief actually support the argument that the Court does not have discretion to decide the merits of claims that were filed in the instant action.

2

**2.      The case law confirms this Court's authority.**

None of the cases PEL Claimants offer in support of their Saving to Suitors argument supports their position that such clause "bars the merits ruling" Petitioners' Motion seeks. ECF No. 873 at 6. Cases relied on by both the City and PEL Claimants are addressed in more detail in Petitioners' Reply to the City's Opposition.

PEL Claimants also cite to *In re Muer*, 146 F.3d 410 (6th Cir. 1998), where there was only one claimant and the court noted that, "[i]n the situation of a single claimant, the district court must lift the stay and the state court action is permitted to continue until a judgment is rendered." *Id.* at 418. Here, Claimants are not arguing that there is one claimant and thus the case should be remanded to state court; rather, they argue that the merits of their claims would be better suited for state court. PEL Claimants' claims do not meet either of the exceptions discussed in *Muer*, and it is clear that the Court has the power to rule on the merits of a claim.

**3.      This Court has the authority to reconsider its prior rulings.**

Claimants also offer, without any support, that Case Management Order ("CMO") No. 3 is "arguably" the "law of the case" and cannot be overridden. ECF No. 873 at 6 n.3.[3] However, the law is clear that "a trial court could not operate justly if it lacked power to reconsider its own rulings as an action progresses toward judgment." *See* § 4478.1 Law of the Case—Trial Courts, 18B Fed. Prac. & Proc. Juris. § 4478.1 (3d ed.). The law of the case "is not a limit on a court's power to revisit an issue if the court feels such review is necessary." *See* 18 Moore's Federal Practice - Civil § 134.21. As the Supreme Court has stated "every order short of a final decree is

---

[3] Claimants also mischaracterize the law they rely on. The three factors cited in *Aramony* are only applicable where an appellate court has established the law of the case. *United States v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999) ("Under the law of the case doctrine, as a practical matter, once the 'decision of an **appellate court** establishes the law of the case, it must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal . . ..'") (emphasis added). Here, where there has been no appellate review, the Court is well within its power to change course from a prior order where circumstances have changed.

subject to reopening at the discretion of the district judge." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983); *see also* Fed. R. Civ. P. 54 ("any order or other decision… may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.").

**4.      The Saving to Suitors Clause does not protect legally-deficient claims.**

The Saving to Suitors Clause preserves only remedies "to which [suitors] are otherwise entitled." 28 U.S.C. § 1333(1). It was "designed to protect remedies available at common law," not to create substantive rights where none exist. *See Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 454 (2001). If the PEL Claimants' claims are barred by *Robins Dry Dock*, there is no "remedy" to preserve and no forum-selection right at stake. A claimant with no legally cognizable claim cannot invoke the clause to prevent a federal court from saying so.

Petitioners' motion does not seek to deprive any Claimant of a jury trial on cognizable claims; it seeks dismissal of claims that are not cognizable in *any* forum. As established above, this Court retains broad discretion to manage the proceeding, and the procedural landscape has shifted decisively since CMO No. 3: all that remains are purely economic loss claims. To require this Court to expend substantial resources litigating legally deficient claims, solely to permit their ultimate dismissal in a different forum, would be an absurd result.

**5.      The Private Economic Loss Claims fail under Maryland law on Economic Loss and Public Nuisance.**

PEL Claimants contend that *Robins* "does not preempt state law claims—" which, according to them, includes "Maryland's rules on economic loss and public nuisance." *See* ECF No. 873 at 11-14 (setting forth the general preemption analysis under Fourth Circuit precedent and citing only to case law outside of Maryland/Fourth Circuit they claim support their contention). In a footnote, Claimants also vaguely reference two judicially-created exceptions to the economic

4

loss rule in Maryland which, again, according to Claimants, "may lack a direct equivalent in federal common law and could apply in this case." *See* ECF No. 873 at 14, n.5. Tellingly, Claimants do not contend these two narrow judicially created exceptions in Maryland referenced apply to their claims, let alone provide any meaningful analysis of these limited exceptions or even their potential application in this case.

> **a.      PEL Claimants' economic loss claims would fail under Maryland law.**

Maryland state common law generally bars negligence claims that allege only economic loss. *See, e.g., Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 155 A.3d 445, 453, 457 (Md. 2017). While Maryland courts have established certain narrow exceptions to the economic loss rule, none of them could even arguably apply to the Claimants here for several separate and independent reasons. For example, Maryland's "intimate nexus" judicially-created exception requires contractual "privity or its equivalent" between the parties, and Maryland courts have refused to apply this exception absent sufficient and compelling "linking conduct . . . to show the defendant knew or should have known of the plaintiff's reliance." *See id.; see also Chi. Title Ins. Co. v. Allfirst Bank*, 905 A.2d 366, 380 n.20 (Md. 2006). As explained further in section 6(a), *infra*, there was no privity of contract between Petitioners and Claimants.

Maryland tort law also recognizes a judicially created "public safety" exception to the economic loss rule, however this exception has been applied exclusively (or predominantly) in products liability cases and, even then, only in very limited circumstances. But Maryland federal courts have refused to apply the "public safety" or "risk of harm" exception in admiralty cases. *Reliance Ins. Co. v. Carver Boat Corp.*, 1997 AMC 2522, 2525 (D. Md. 1997) (holding that "the need for uniformity in maritime products liability law prohibits this Court from applying Maryland's 'risk of harm' rule in this admiralty action"); *Ace Am. Ins. Co. v. Grand Banks Yachts, Ltd.*, 2008 AMC 2846, 2852 (D. Md. 2008) (same); *see also Critical Sys., LLC v. Addison HVAC,*

*LLC*, No. 24-CV-01003-LKG, 2025 WL 590435, at *5 (D. Md. Feb. 21, 2025) (holding that "the economic loss rule generally bars recovery in tort for losses arising out of the damage to the person or property of a third party").

       **b.**       **PEL Claimants' public nuisance claims would fail under Maryland law.**

A Maryland federal district court similarly rejected Claimants' suggestion here that Maryland state law on public nuisance "could apply" in an admiralty case. *See Nissan Motor Corp. v. Md. Shipbuilding & Drydock Co.*, 544 F. Supp. 1104, 1112 (D. Md. 1982) ("Maryland law of . . . nuisance should not be applied in [admiralty] case[s] because to do so would undermine the uniformity and simplicity of the maritime law."); *cf. State of Maryland, Dep't of Natural Resources v. Amerada Hess Corp.*, 350 F. Supp. 1060, 1068 (D. Md. 1972) (oil spill from a vessel in Baltimore Harbor did not constitute a public nuisance because "one act does not create a nuisance, and . . . a nuisance necessarily involves the idea of continuance"). The only case cited by Claimants as to Maryland nuisance law generally is *Express Scripts, Inc. v. Anne Arundel Cnty.*, 353 A.3d 1084, 1112 (Md. 2026). But, in that case, the court explained at length, in dicta, that "there is nothing in our case law that reflects this Court's adoption of an expansive tort of public nuisance . . . ." *Id.* at 1134.

**6.**       **PEL Claimants vastly overstate the "well-established" purported exceptions.**

The PEL Claimants have mined the *Robins* caselaw and extracted from dicta alleged "numerous and capacious exceptions" that they purport are "well-recognized" and "well-established," despite limited use and application of same. *See* ECF No. 873 at 14, 15, 19. Contrary to PEL Claimants' assertion, Petitioners do not "urge this Court to treat *Robins* as an absolute and categorical bar to any claim for economic loss unaccompanied by physical injury to the claimant's own property…." ECF No. 873 at 14. Rather, Petitioners have explained, in detail, how courts have addressed the narrow and infrequently-applied exceptions to the general preclusion on

6

recovery of purely economic loss damages in light of *Robins Dry Dock* and the vast catalogue of caselaw that follows it and explained, in detail, how PEL Claimants fail to meet any of those exceptions. *See* ECF No. 856-1 at 11-16.

### a.    The purported "Privity Exception" is not applicable.

What PEL Claimants refer to as the "privity exception"[4] is addressed in Petitioners' Memorandum of Law as an exception sometimes applied in the context of vessel collisions that is not applicable here. ECF No. 856-1 at n.12. As explained in *Venore Transp. Co. v. M/V Struma*, 583 F.2d 708, 710 (4th Cir. 1978), "[i]t is only in a highly technical sense that the time charterer may be said not to be in possession of the vessel. . . . Its interest in the vessel is sufficient to give it standing to claim damages, measured by charter hire paid when the owner has no claim for loss of use because its receipts of charter hire have been interrupted." Put differently, "[u]nless the offending vessel is required to pay for the loss of use of the [vessel] in this case, however, it would never be required to pay at all. The owner lost no charter hire. It could not claim a loss it had not suffered, and it did not do so." *Id*. at 710. Here, the (fictional) equivalent would be to permit some recovery by PEL Claimants if they leased the Key Bridge, paid for its maintenance, insurance, and taxes, and then if the actual bridge owner did not bring its own claim because the PEL Claimants were still paying it rent. Clearly, we are a far cry from that analogy. Furthermore, the *Venore* court also expressly limits the type of damages the time charterer is entitled to:

> We do not intend, however, to suggest that the time charterer is entitled to lost profits. That kind of claim is foreclosed by *Robins Dry Dock*. The traditional item of recoverable damage is the owner's claim for loss of use. When the vessel is under a time charter, the starting point for the measurement of those damages is lost charter hire. Our only holding is that when there has been no suspension in the payment of charter hire during the period when the vessel is out of service, the time

---

[4] Petitioners could not locate a single usage of the term "privity exception" in any cases discussing the application of the *Robins Dry Dock* rule to economic loss damages.

charterer who has paid the charter hire is entitled to recover what the owner would have been entitled to recover had those payments been suspended.

*Id.* at 711. So, even where this "exception" (which is not applicable here) permits *some* recovery, any such recovery is limited, on the basis of the *Robins Dry Dock* rule, to those damages equivalent to loss of use damages.

The other cases PEL Claimants rely on in support of this argument are distinguishable. ECF No. 873 at 20. In *Amoco Transp. Co. v. S/S Mason Lykes*, 768 F.2d 659, 661 (1985), cargo interests brought a claim against vessel owners after a collision led to a voyage being abandoned. The Fifth Circuit overruled the district court's decision that cargo interests could not recover freight losses:

The effect of a freight earned clause is similar to the effect of a clause providing that charter hire continues to run while a vessel is disabled; it contractually shifts the risk of economic loss, which would normally fall upon the property owner, to a third party. That third party is entitled to recover those losses. The risk of double recovery from the tortfeasor is not extant.

*Id.* at 668. In explaining the decision, the Fifth Circuit reiterated "[t]here is no danger of an unlimited round of recoveries. The cargo owners make no attempt to recover for remote contractual losses or real or speculative lost profits." *Id.* at 669.

Claimants also mischaracterize the decision in *Nexen Petroleum U.S.A., Inc. v. Sea Mar Div. of Pool Well Servs. Co.*, 497 F. Supp. 2d 787 (E.D. La. 2007). ECF No. 873 at 20. In *Nexen* the District Court ruled that the defendant was not entitled to summary judgment but did not, as the Claimants state, "permit recovery" of daily hire charges; the Court merely found Plaintiff had raised an issue of fact on the issue. *Id.* at 796. Even so, the Court granted defendant's summary judgment motion as to overhead costs which the court ruled were equivalent to lost profits that did not "stem from the vessel owner's rights, and under *Robins Dry Dock* and *Testbank* they cannot be said to be proximately caused by the allision." *See id.* at 795. Thus, the applicable ruling from

8

that case is that of the overhead cost and lost profit analysis, and not the contractual exception to *Robins* based on charter hire.

Even if such "exception" were available outside of a collision context, which is denied, the purported contractual relationships identified by PEL Claimants are so attenuated that they cannot logically be applied to warrant application of an exception to the *Robins* rule here. As further explained in *In re Complaint of Marine Nav. Sulphur Carriers, Inc.*, "[t]he time charterer in the *Venore* situation, unlike the claimants in the present case, was considered to have a sufficient possessory interest in the vessel that was damaged to permit a limited recovery." *See* 507 F. Supp. 205, 210 (E.D. Va. 1980), *aff'd sub nom. Marine Nav. Sulphur Carriers, Inc. v. Lone Star Indus., Inc.*, 638 F.2d 700 (4th Cir. 1981). The same applies to this case. PAC has no possessory interest in the vessel. Additionally, PEL Claimants' Exhibit 5 is a standard form contract of adhesion, not a contract signed between Petitioners and PAC. Even if it were a valid contract, the provisions Claimants point to relate to damage to the berths or Terminal equipment, of which there was none, and to oil spills, which did not occur in this case.

PEL Claimants' contention that the *Venore* exception applies to the Longshoremen is even more attenuated. First, the purported "Longshoremen Class" in this case is comprised of individuals, not the International Longshoremen's Association Local unions, which had the alleged contractual relationships with Steamship Trade Association of Baltimore, Inc. Moreover, and even if the Longshoremen's terms were integrated and there was a signed contract, *Robins Dry Dock* still blocks these claims and no exception applies.[5]

---

[5] PEL Claimants' request for discovery regarding this alleged contract must be denied. ECF No. 873-7.

**b.      PEL Claimants wholly failed to address Petitioners' arguments regarding "intentional" acts.[6]**

PEL Claimants insist that "*Robins* and its progeny do not bar recovery of economic loss for claims of intentional and even reckless acts," (ECF No. 873 at 16), but ignore Petitioners' arguments at pages 11-16 of their Memorandum of Law (ECF No. 856-1) that clearly explain why, even in the face of a narrow exception that has been discussed by some courts, such exception would apply only if the DALI was intentionally driven into the bridge, of which there is no evidence. Moreover, PEL Claimants have no explanation for the fact that *none of the cases they cite in support of their argument* have actually applied the purported exception to claims for purely economic losses.

**7.      PEL Claimants are not entitled to avail themselves of the Environmental Statutes.**

**a.      Claimants[7] cannot avail themselves of CERCLA.**

As noted in Petitioners' Memorandum of Law (and not addressed in Claimants' Opposition), the R.E. West Class failed to allege, and cannot establish, **any** "response costs"[8] as required by the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). *See Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1154 (9th Cir. 1989) (a plaintiff must allege at least one type of "response cost" cognizable under CERCLA to state a

---

[6] PEL Claimants also do not acknowledge that only four of their claims allege intentional conduct, and present their arguments as on behalf of all PEL Claimants. As noted in ECF No. 856-1 note 7, while Petitioners deny that any "intentional conduct exception" exists or that one should apply here, if the Court is inclined to entertain the existence of such exception, it should not consider such exception with respect to ECF Nos. 78, 142, 171, 188, 189 and 344. For the reasons discussed in Section 6 herein, those claimants are not entitled to amend their pleadings to now assert new causes of action.

[7] Again, PEL Claimants fail to note that only the R.E. West Class, ECF No. 222, alleged a claim under CERCLA (which is telling in and of itself). Thus, while Petitioners deny that any CERCLA remedy is available, if the Court is inclined to consider this path toward recovery, it should not consider the application of CERCLA with respect to any other claims.

[8] **Response** has been defined to mean "remove, removal, remedy, and remedial action" and all "enforcement activities related thereto." *See* 42 U.S.C. § 9601(25).

*prima facie* case.") Courts have also consistently held that private causes of action under CERCLA are **limited to response costs**. *See, e.g.*, *In re Taira Lynn Marine Ltd. No. 5, LLC*, 444 F.3d 371, 381 (5th Cir. 2006); *Exxon Corp. v. Hunt*, 475 U.S. 355, 359-60 (1986); *Artesian Water Co. v. Gov't of New Castle County*, 851 F.2d 643, 648 (3rd Cir. 1988).[9]

> **b.** **Claimant Star Bulk is not entitled to relief under the Oil Pollution Act of 1990.**

Ignoring Petitioners' pre-emptive argument against the right of recovery under the Oil Pollution Act of 1990 ("OPA 90"), Claimants cite to zero authority for their bold assertion that Star Bulk "alleges recoverable OPA damages" because its vessel "was prevented from entering Baltimore Harbor due to the closure of the Fort McHenry Channel." ECF No. 873 at 28.

OPA's general liability provision, Section 2702(a), provides, in relevant part that a responsible party for a vessel from which oil is discharged or poses a substantial threat of discharge is liable for removal costs and damages "that ***result from such incident***." 33 U.S.C. §2702(a) (emphasis added). Section 2702(b) lists six categories of damages, the only *potentially* relevant category which is (E), "Profits and earning capacity," which is defined as:

> Damages equal to the loss of profits or impairment of earning capacity ***due to*** the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by any claimant.

33 U.S.C. §2702(b)(2)(E) (emphasis added). Reading §2702(a) and §2702(b)(2)(E) together, Star Bulk must establish that any loss of profits or impairment of earning capacity were "due to" the injury, destruction, or loss of property that "resulted from" the discharge or threatened discharge of oil from the M/V DALI, which it cannot do. *See Gatlin Oil Co. v. United States*, 169 F.3d 207, 211 (4th Cir. 1999) ("We hold that the removal costs and damages specified in section 2702(b) are

---

[9] Even if response costs *had* been alleged by Claimants, Claimants have also failed to comply with CERCLA's notice requirement for filing a citizen's enforcement action. *See* CERCLA § 310(a), 42 U.S.C. § 9659(a).

those that result from a discharge of oil or from a substantial threat of a discharge of oil into navigable waters or the adjacent shoreline.").

Star Bulk's purported damages arise out of its vessel's inability to enter the harbor because the channel was closed, not because of any property or natural resource damage "resulting from" discharge or threatened discharge of oil from the Vessel. The *Taira Lynn* court also squarely addressed this argument, holding that because claimants had failed to raise a genuine issue of fact as to whether their economic losses resulted from property damage caused by the gas discharge, they could not recover under OPA. 444 F.3d at 383.

**8.    PEL Claimants should not be permitted to amend their Claims.**

On May 1, 2026, a month before the scheduled trial date, Petitioners sought to amend one sentence of their Petition for Limitation of or Exoneration from Liability in advance of trial. ECF No. 733. Claimants opposed. ECF No. 731. The Court denied Petitioners' motion (ECF No. 741) stating, in relevant part:

> Amendment at this late date would therefore be prejudicial to Claimants, and Petitioners have not provided any reason why an earlier amendment was impractical, let alone impossible. Indeed, insofar as Petitioners argue Claimants were on notice, through discovery, of the basic facts they know intend to assert, so too Petitioners were obviously on notice thereof and only they could have anticipated that they intend to assert these facts as pertinent to the legal issue of when the relevant voyage began.

ECF No. 741 at 4. The Court also stated, at the May 5, 2026 Pretrial Conference:

> I mean, if you're six, seven months into this case and you realize this creates imputation problems for us, discovery is still ongoing, there's every opportunity for every other party to react in an appropriate and efficient way to our changing course somewhat on this issue, I'm going to move the court for this modification. That's one thing.

> And it's another thing to raise the issue a few weeks before the trial is scheduled to begin long after discovery has ended. **You've picked your course. You've picked the path that you're going to follow in the case from a legal standpoint. And**

12

**why wouldn't others, in seeing how you define the case, reasonably rely on that?**

May 5, 2026 Tr. at 18:1-13 (emphasis added).

This same analysis should apply to Claimants' requests to amend their claims. This matter was stayed on the very day trial was scheduled to begin, and Petitioners' motion is for judgment on the pleadings was "locked in" by the Pretrial Order. It would be grossly unfair to allow the Claimants to amend their claims at this late stage to remedy defects that should have been apparent from the outset of these proceedings.

PEL Claimants make much of the "exigent circumstances" in which they were forced to file a claim, asserting that they were "required to file their Rule F(5) claims in the immediate aftermath of a catastrophic, still-unfolding maritime disaster, before the full extent of their losses could be assessed and investigated." ECF No. 873 at 33. In making this argument, however, they conveniently omit that, while Petitioners filed their Petition six days after the allision, Claimants were given *six months* in which to file their claims. ECF Nos. 2-3, 8. And PEL Claimants filed their claims between August 28, 2024 and September 24, 2024 (with some amended claims filed thereafter). Moreover, Claimants have been well-aware of Petitioners' intent to file a motion to dismiss their claims pursuant to *Robins Dry Dock* since at least the first hearing in this case. *See* ECF 856-1 at n.17. If Claimants wanted to amend their claims, they had ample time to do so.

Numerous other courts applying the general maritime law have dismissed purely economic loss claims on the pleadings alone. *See, e.g.*, *In re Oil Spill by the Oil Rig DEEPWATER HORIZON in the Gulf of Mexico, on Apr. 20, 2010*, 835 F. Supp. 2d 175, 183 (E.D. La. 2011), *aff'd sub nom. In re Deepwater Horizon*, 745 F.3d 157 (5th Cir. 2014) (finding the complaint for economic loss claims did not allege any proprietary interest, only economic losses, granting a motion to dismiss); *Petition of Cleveland Tankers, Inc.*, 791 F. Supp. 669, 679 (E.D. Mich. 1992) (ruling that the bright

line test under general maritime law serves to bar economic loss claims because they have not alleged physical injury to a proprietary interest and therefore dismissing such claims). Petitioners have established that, on the pleadings alone, Claimants have not alleged physical injury to a proprietary interest.[10] Thus, their request to amend should be denied.

**9.        Class Actions are not permitted in a Limitation Action.**

The law is well-settled that class actions are incompatible with limitation proceedings. *See* ECF No. 856-1 at 20-21; *See* 3 Benedict on Admiralty § 17 (2026).[11] While Claimants argue that Petitioners' reliance "almost entirely" on *Lloyd's Leasing Ltd. v. Bates*, 902 F.2d 368 (5th Cir. 1990), somehow lessens the import of that case, in fact, numerous other courts have followed and affirmed the holding in *Lloyd's Leasing*.[12] Claimants also assert, with no authority, that *Lloyd's Leasing* "does not control here," and that Claimants' purported classes "are the precise types of

---

[10] Surprisingly, PEL Claimants note in a footnote that their brief "does not address, nor does it need to, Petitioners' argument that PEL Claimants lack a proprietary interest in the Key Bridge." ECF No. 873 at 15 n.6. However, notwithstanding their contention that Petitioners' supporting declaration is "misleading" because it includes only partial excerpts of their responses to interrogatories (ECF No. 873-1 at 15), as stated in Petitioners' Belknap declaration, no PEL Claimant has plausibly alleged a proprietary interest in the Key Bridge or other damaged property.

[11] "The courts that have addressed the issue in limitation cases have focused on the basic incompatibility of the class action device with the purposes of the Limitation Act and Rule F, which call for all claims to be brought forward within the limitation action."

[12] *See, e.g.*, *In re Sause Bros. Ocean Towing*, No. CIV. 89-609-RE, 1992 WL 220674, at *2 (D. Or. Feb. 25, 1992) ("The incompatibility of Rule 23 flexibility concepts with the rules governing limitation proceedings is precisely why class actions are not appropriate in limitation proceedings."); *In re Ingram Barge Co.*, Civ. No. 05-4419, 2006 WL 5377855, at *1 (E.D. La. 2006) (striking class action pursuant to *Lloyds' Leasing*); *In re: River City Towing Servs., Inc.*, 204 F.R.D. 94, 97 (E.D. La. 2001) (same); *Humphreys v. Hal Antillen, N.V.*, Nos. 93–3799, 93–3714, 1994 WL 682811, at *3 (E.D. La. Jan. 31, 1994) (dismissing class action complaint filed after limitation proceeding); *Van Schaeffer v. Tsakos Shipping and Trading, S.A. and Frescati Shipping Co., Ltd.*, Civ. Action No. 05-4486, 2006 WL 1192939, at *2 (E.D. Pa. May 2, 2006) (citing *Lloyd's Leasing* and stating that "Defendants also are correct that Plaintiffs' claims cannot be pursued as a class action."); *Slaven v. BP America, Inc*, 190 F.R.D. 649, 653-54 (C.D. Cal. 2000) ("*Lloyd's Leasing* is the leading case and the only appellate decision on point. This Court was unable to locate a single case-reported or not-that disagreed with the holding of *Lloyd's Leasing*. This Court presumes, therefore, that the rule of *Lloyd's Leasing* would be adopted by the Ninth Circuit."); *Great Lakes Dredge & Dock Co. v. City of Chicago*, No. 92 C 6754, 1996 WL 210081, at *7 (N.D. Ill. Apr. 26, 1996) (granting petitioners' motion for judgment on the pleadings and dismissing claimants' class claims based on the factors set forth in *Lloyd's Leasing*); *Com. of Puerto Rico v. The M/V Emily S,* 158 F.R.D. 9, 16 (D.P.R. 1994) ("[T]he law is clear that class proceedings are incompatible with the procedures of the Limitation of Liability Act ... and Rule F").

representative action that courts have recognized as compatible with limitation proceedings." ECF No. 873 at 29. But Claimants cite to *no cases* that discuss the compatibility of representative class actions with a limitation proceeding, or even a single case that permits a class action in a limitation proceeding.

Claimants' argument that the Supreme Court's *Ortiz* decision[13] (which is not a limitation case) changes the analysis was addressed head-on by the court in *River City Towing Servs*. There, the district court considered nearly the same arguments PEL Claimants make here in light of *Lloyd's Leasing* and *Ortiz*, and concluded that class actions are, in fact, incompatible with limitation proceedings. *See River City Towing Servs*., 204 F.R.D. at 95-97 ("Claimants' arguments as to why the Fifth Circuit's holding in *Lloyd's Leasing* is not controlling in this matter ignore the third, and most basic, reason the Court in that case concluded that class actions and limitation proceedings are incompatible—that 'the entire thrust of Supplemental Rule F is that each claimant must appear individually....'") (citing *Lloyd's Leasing*, 902 F.2d at 370)).

## CONCLUSION

For the reasons set forth herein, and in Petitioners' Memorandum of Law in Support of their Motion for Judgment on the Pleadings, the Court should grant Petitioners' motion and dismiss the Private Economic Loss claims as a matter of law and should grant Petitioners such further relief as may be appropriate.

Dated: July 20, 2026

DUANE MORRIS LLP

*/s/ Laurie G. Furshman*
Laurie G. Furshman (Bar No. 29604)
Lgfurshman@duanemorris.com
Robert B. Hopkins (Bar No. 06017)

---

[13] *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999).

15

Rbhopkins@duanemorris.com
Tristan A. Dietrick (Bar No. 31238)
tdietrick@duanemorris.com
1201 Wills Street, Suite 330
Baltimore, MD 21321
(410) 949-2900
BLANK ROME LLP

Luke M. Reid (Bar No. 31228)
Luke.Reid@blankrome.com
125 High Street, 3rd Floor
Boston, MA 02110
617-415-1200

William R. Bennett, III*
William.Bennett@blankrome.com
Thomas H. Belknap, Jr.*
Thomas.Belknap@blankrome.com
Noe S. Hamra
Noe.Hamra@blankrome.com*
Neil P. McMillan
Neil.McMillan@blankrome.com*
1271 Avenue of the Americas
New York, NY 10020
212-885-5000

Kierstan L. Carlson*
Kierstan.Carlson@blankrome.com
Emma C. Jones*
Emma.Jones@blankrome.com
1825 Eye St. NW
Washington, DC 20006
202-420-2200
*Admitted *pro hac vice*

16

## CERTIFICATE OF SERVICE

I CERTIFY that on this 20th day of July 2026, the foregoing Reply to Private Economic Loss Claimants' Opposition to Motion for Judgment on the Pleadings was filed in the United States District Court for the District of Maryland via the Court's CM/ECF filing system, which will provide notice of this filing to all counsel of record.


/s/ *Laurie G. Furshman*
Laurie G. Furshman (Bar No. 29604)
LGFurshman@duanemorris.com