**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

| | |
|---|---|
| In the Matter of the Petition<br><br>of<br><br>GRACE OCEAN PTE LTD., as Owner of the M/V DALI,<br><br>and<br><br>SYNERGY MARINE PTE LTD, as Manager of the M/V DALI,<br><br>for Exoneration from or Limitation of Liability. | Docket No. JKB 24-cv-941<br><br>*IN ADMIRALTY* |

**PETITIONERS' REPLY TO THE MAYOR AND CITY COUNCIL OF BALTIMORE'S**
<u>**OPPOSITION TO MOTION FOR  JUDGMENT ON THE PLEADINGS**</u>

**TABLE OF CONTENTS**

Page

ARGUMENT AND AUTHORITY ................................................................................................ 1

1.    Petitioners' Motion Should be Converted to One for Summary Judgment with respect to the City's 72" Water Main, but claims for other city-owned property should be dismissed ..................................................................................... 1

    a.    The Water Main ............................................................................................ 1

    b.    The Other Property ....................................................................................... 2

2.    Adjudicating the City's damages is well within the Court's authority .................. 4

3.    The case law confirms this Court's authority ........................................................ 5

4.    This Court has the authority to reconsider its prior rulings .................................. 8

5.    The role of the Key Bridge in the City's Transportation System is irrelevant to the *Robins* Analysis ................................................................................................... 8

6.    "Pragmatic considerations" do not overrule *Robins* ............................................ 9

7.    The Baltimore ordinance is irrelevant .................................................................... 9

8.    The "Intentional Act Exception" is not applicable ............................................... 15

CONCLUSION ......................................................................................................................... 15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Assanah-Carroll v. Law Offices of Edward J. Maher, P.C.*,
  480 Md. 394 (2022) ....................................................................................................13

*Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*,
  451 Md. 600 (2017) ....................................................................................................13

*Ballard Shipping Co. v. Beach Shellfish*,
  32 F.3d 623 (1st Cir. 1994) ......................................................................................3, 14

*Matter of Bruce Oakley, Inc.*,
  No. CV-19-184-RAW-JAR, 2025 WL 1090964 (E.D. Okla. Mar. 3, 2025)............................8

*Catalyst Old River Hydroelectric Ltd. Partnership v. Ingram Barge Co.*,
  639 F.3d 207 (5th Cir. 2011) .......................................................................................8

*Communist Party of the United States v. Subversive Activities Control Bd.*,
  367 U.S. 1 (1961).......................................................................................................14

*Consol. Aluminum Corp. v. C.F. Bean Corp.*,
  772 F.2d 1217 (5th Cir. 1985) ......................................................................................8

*Consol. Aluminum Corp. v. C.F. Bean Corp.*,
  833 F.2d 65 (5th Cir. 1987) .................................................................................3, 4, 9

*Fecht v. Makowski*,
  406 F.2d 721 (5th Cir. 1969) .......................................................................................7

*In re Great Lakes Dredge & Dock Co. LLC*,
  624 F.3d 201 (5th Cir. 2010) .......................................................................................3

*Gunpowder Horse Stables, Inc. v. State Farm Auto. Insurance Co.*,
  108 Md. App. 612 (1996) ...........................................................................................13

*Harris v. Reston Hosp. Ctr., LLC*,
  523 F. App'x 938 (4th Cir. 2013) ...............................................................................11

*Lake Tankers Corp. v. Henn*,
  354 U.S. 147 (1957)....................................................................................................5

*Lewis v. Lewis & Clark Marine, Inc.*,
  531 U.S. 438 (2001)..............................................................................................5, 6, 8

1

*In re Lockheed Martin Corp.*
    503 F.3d 351 (4th Cir. 2007) ...................................................................................7

*In re Lyon Shipyard, Inc.*,
    91 F. Supp. 3d 832 (E.D. Va. 2015) ........................................................................8

*Samosky v. United Parcel Serv.*,
    944 F. Supp. 2d 479 (S.D.W. Va. 2013) .................................................................11

*Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*,
    455 F. Supp. 2d 399 (D. Md. 2006) ......................................................................11

*In re Signal Int'l LLC*,
    579 F.3d 478 (5th Cir. 2009) ...................................................................................3

*In re Skanska USA Civ. Se. Inc.*,
    No. 3:20CV5980/LAC/HTC, 2021 WL 4955040 (N.D. Fla. Jul. 28, 2021)
    *aff'd* 75 F.4th 1290 (11th Cir. 2023) ......................................................................6

*Skanska USA Civ. Se. Inc. v. Bagelheads, Inc.*,
    75 F.4th 1290 (11th Cir. 2023) ...............................................................................6

*State of Md. Dep't of Nat. Res. v. Kellum*,
    51 F.3d 1220 (4th Cir. 1995) .................................................................................10

*In re Taira Lynn Marine Ltd. No. 5*,
    444 F.3d 371 (5th Cir. 2006) ...................................................................................9

*United States v. Brown*,
    381 U.S. 437 (1965).................................................................................................14

*Valley Line Co. v. Ryan*,
    771 F.2d 366 (8th Cir. 1985) ...................................................................................7

*Venore Transp. Co. v. M/V Struma*,
    583 F.2d 708 (4th Cir. 1978) ...................................................................................9

*Wheeler v. Marine Navigation Sulphur Carriers, Inc.*,
    764 F.2d 1008 (4th Cir. 1985) .................................................................................7

*Yarmouth Sea Products Ltd. v. Scully*,
    131 F.3d 389 (4th Cir. 1997) ...................................................................................9

**Statutes**

Baltimore City Code Art. 10, Subt. 10.............................................................................9

Maryland Constitution and Express Powers Act ...........................................................13

R.I. Gen. Laws §§ 46-12.3-1, 46-12.3-2 .................................................................................14, 15

**Other Authorities**

Fed. R. Civ. P. 7(a) .................................................................................................................10

U.S. Const. amend. XIV .........................................................................................................15

U.S. Const. art. I, § 10, cl. 1....................................................................................................13

Petitioners Grace Ocean Private Limited and Synergy Marine Pte Ltd. (collectively "Petitioners") submit this Memorandum of Law in Reply to Claimants the Mayor and City Council of Baltimore's ("City of Baltimore" or "City") Corrected Opposition to Petitioners' Motion for Judgment on the Pleadings. ECF No. 876. This brief incorporates by reference Petitioners' Replies to Oppositions by the Private Economic Loss Claimants ("PEL Claimants") (ECF No. 873), Baltimore County (ECF No. 872), and R.M. Metals (ECF No. 874) (collectively "Claimants") which are filed contemporaneously with this Reply.

## ARGUMENT AND AUTHORITY

1. **Petitioners' Motion Should be Converted to One for Summary Judgment with respect to the City's 72" Water Main, but claims for other city-owned property should be dismissed.**

   a. *The Water Main*

   As discussed in Petitioners' Memorandum of Law and Belknap Declaration thereto, while the City's claim alleged that the DALI's anchor caused "significant damage" to one or more pipes, it now alleges such damage was to only one pipe (the "Water Main").

   But the Wolfe Affidavit submitted in support of the City's Opposition does not *actually* assert that the Vessel caused damage to the Water Main. Rather, it explains that the Water Main was "taken offline" only as a precautionary measure and that, since then, the City has maintained an appropriate water level and pressure within the pipe. Wolfe Aff. ¶¶ 10-12. Wolfe explains that "velocity waves" remain an issue and that the City is working with its partners to address "limiting velocity wave impacts" while pile driving for the new bridge foundation. Wolfe Aff. ¶¶ 12-13. Wolfe further states that an electromagnetic inspection revealed "significant damage to the pipe," but he does not contend that the DALI *caused* any of the observed damage. This is likely because he knows there is no evidence to support such an allegation; it is far more likely that the 52-year old Water Main sustained damage over the course of its life before the Key Bridge collapsed, and

1

that such damage was simply not identified until the electromagnetic survey was conducted.

Similarly, the Webb Affidavit states that thousands of pounds of structural steel collapsed "in the vicinity of" the Water Main. Webb Aff. ¶ 13. Like Wolfe, Webb notes that the pipe was "taken out of service" after the allision but does not assert that the DALI made contact with or otherwise caused the pipe to become inoperable or otherwise damaged. Webb Aff. ¶ 14. Webb speculates only that the allision, structural collapse, and subsequent refloating of the DALI "**likely** introduced new damage mechanisms" and "materially increased structural risk" to the system. Webb Aff. ¶ 16.

Neither affidavit offered by the City concerning the allegedly damaged pipe establishes that the Water Main was not in a damaged condition *prior to* the Casualty or that the DALI or its anchor *made contact with* the Water Main or otherwise *caused* the damage. At best, the affidavits suggest the Casualty *may have contributed to* an increased load/pressure on the 52-year-old Water Main that *may have* compromised its integrity. Notably, neither affidavit includes the electromagnetic survey report as an exhibit, despite implying it supports their argument. This is likely because the electromagnetic survey, which was produced to Petitioners, *documented corrosion across the entire length of the Water Main* ("widespread corrosion" and "hydrogen embrittlement," both degradation mechanisms associated with aging infrastructure, not an acute event like the Casualty).

Petitioners consider that the Court can evaluate the City's claim and the affidavits submitted in support of its Opposition and still conclude that the City is not entitled to recovery. In the alternative, however, Petitioners consider that limited discovery may be warranted *solely* with respect to the alleged damage to the City's Water Main.

**b.  *The Other Property***

The City's alleged damages related to its "Transportation Infrastructure" are simply too

2

remote and attenuated to meet the foreseeability requirement for recoverable tort damages under the general maritime law, irrespective of the *Robins Dry Dock* rule. *See, e.g.*, *Ballard Shipping Co. v. Beach Shellfish*, 32 F.3d 623, 630 (1st Cir. 1994) (citing *Petitions of Kinsman Transit Co.*, 388 F.2d 821 (2d Cir. 1968) for proposition of "rejecting *Robins* but excluding economic losses suffered by the owner of a vessel prevented from unloading its cargo above a bridge that collapsed as a result of defendant's negligence as too remote to permit recovery.").

"In the context of maritime torts, . . . harm [is] a foreseeable consequence of an act or omission 'if harm of a general sort to persons of a general class might have been anticipated by a reasonably thoughtful person, as a probable result of the act or omission, considering the interplay of natural forces and likely human intervention.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 211 (5th Cir. 2010) (quoting *Consol. Aluminum Corp. v. C.F. Bean Corp.*, 833 F.2d 65, 68 (5th Cir. 1987)). A party's duty in maritime torts "may be owed only with respect to the interest that is foreseeably jeopardized by the negligent conduct, and not to other interests even of the same plaintiff which may in fact happen to be injured." *Consol. Aluminum*, 833 F.2d at 67 (quotation omitted). Foreseeability attaches to "the 'natural and probable' risks that a reasonable person would likely take into account in guiding her practical conduct." *In re Signal Int'l LLC*, 579 F.3d 478, 491-92 (5th Cir. 2009).

In *Consolidated Aluminum*, a dredge negligently ruptured a natural gas pipeline, causing the natural gas provider to close the nearest valves to stem the flow of escaping gas. That disruption of the gas supply resulted in economic losses when the plaintiff's manufacturing facilities were unable to operate as they previously had. The Fifth Circuit denied recovery for these economic damages incurred "at [the plaintiff's] aluminum reduction plant several miles away" because:

> The harm was not of a general sort expected to follow from the failure to dredge carefully in proximity to a gas pipeline. Injury to property and persons from the

escaping gas, or from a fire which might have ensued, would be examples of consequences that would be foreseeable. ... But the damage arising from the loss of natural gas supply, in turn causing the shut down of electric turbines, in turn causing a loss of electric power vital to the aluminum reduction process, with the ultimate result being substantial damage to equipment and product-in-process, goes beyond the pale of general harm which reasonably might have been anticipated by negligent dredgers

*Consol. Aluminum*, 833 F.2d at 68.

Here, repair or replacement of damage to the bridge and personal injuries of those located on the bridge at the time of the impact are reasonably foreseeable consequences resulting from an allision between a vessel with a bridge. Those are "of a general sort expected to follow" such an incident. On the other hand, minuscule but cumulative ongoing stress to a network of hundreds of miles of road caused by shifting traffic patterns, resulting in the need for more frequent road maintenance in the months and years following the impact are not the "general sort" of anticipated damages one would expect from a bridge allision.[1] Nor are "loss of tax revenue" or "increased administrative costs" related to usually provided municipal services.

The City's claimed damages were not reasonably foreseeable and therefore cannot be recovered even if the City could avoid *Robins'* requirement for direct physical harm to property involved in the underlying Casualty (which, for the reasons discussed *infra* in Section 7, it cannot).

**2.  Adjudicating the City's damages is well within the Court's authority.**

At the June 1, 2026 hearing and after the parties' briefing where *all parties agreed to stay the trial*, the Court asked counsel for the City of Baltimore if the Saving to Suitors Clause bars this Court from ruling on the application of *Robins Dry Dock* to the remaining claims:

**THE COURT:** You don't have any case law that says that a court, sitting as I am sitting in this case, doesn't have the authority or the discretion to resolve Robins-type issues in its presiding in a limitation and exoneration action?

---

[1] Petitioners incorporate by reference their arguments contained in their contemporaneously-filed Reply to Baltimore County's Opposition, going to the similar arguments that the Bridge forms an integral part of the area's overall transportation network.

**MR. GOODMAN:** It is a matter of discretion for Your Honor.

**THE COURT:** Right. We're crystal clear on that. We don't have any disagreement with that point.

**MR. GOODMAN:** It is going to be a matter of Your Honor's discretion to take that up while the case is in front of you. There's, of course, law to suggest --

**THE COURT:** There's nothing in save to suitors itself or in the case law interpreting it that requires this Court to defer the *Robins* issues to -- whatever, subsequent proceedings before this Court or other courts after an injunction is dissolved.

**MR. GOODMAN:** It is a matter of discretion for Your Honor, and we would brief at the appropriate time how we feel that discretion should be exercised under the circumstances. …

(June 1, 2026 Tr. at 27:8-23).[2]

Nothing in Claimants' opposition briefs establishes any prohibition on the Court's ability to exercise its broad discretion to consider *Robins* at this stage, before a trial on the question of limitation is complete.

**3. The case law confirms this Court's authority.**

None of the cases the City offers in support of its Saving to Suitors argument supports its position that such clause "bars the merits ruling" Petitioners' Motion seeks. ECF No. 873 at 6. Claimants rely on *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438 (2001), but that case does not support their argument. Rather, *Lewis* sets out a simple rule: a district court has discretion to lift the limitation injunction and allow claimants to proceed in state court *only* where the vessel owner's limitation rights are "adequately protected," *i.e.* where there is a single claimant who has entered sufficient stipulations, or where total claims do not exceed the limitation fund.[3] *Id.* at 451-52. Where those conditions are absent, "where for example a group of claimants cannot agree on

---

[2] The relevant excerpt from the Court's June 1, 2026 Ruling is set forth in full in Petitioners' Reply to PEL Claimants' Opposition.

[3] *Lake Tankers Corp. v. Henn*, 354 U.S. 147 (1957) also is not persuasive here. In *Lake Tankers*, the claims were determined to be less than the value of the limitation fund and therefore the Supreme Court ruled the claim could be brought in state court. *Id.* at 152.

appropriate stipulations or there is uncertainty concerning the adequacy of the fund or the number of claims, the court may proceed to adjudicate the merits, deciding the issues of liability and limitation." *Id.* at 454 (citing cases).

In *Skanska USA Civ. Se. Inc. v. Bagelheads, Inc.*, 75 F.4th 1290 (11th Cir. 2023), the district court conducted a full trial on the limitation question, found that Skanska was negligent and had privity or knowledge, denied limitation, and *then* dismissed the proceeding so claimants could pursue remedies elsewhere. *Id.* at 1298. The Eleventh Circuit affirmed because "[o]nce the district court decided that Skanska was not entitled to limitation, it correctly dismissed the case so that the claimants could pursue remedies in whichever forums that they chose." *Id.* at 1308-09. Critically, *Skanska* does **not** hold that the limitation court lacked authority to decide the *Robins Dry Dock* motion before it. To the contrary, the district court in *Skanska* merely exercised its discretion to defer ruling on the motion; it did not hold that it was prohibited from ruling. Additionally, the district court found it had "the general discretion to determine the most efficient manner in which it resolves the pending matters." *In re Skanska USA Civ. Se. Inc.*, No. 3:20CV5980/LAC/HTC, 2021 WL 4955040, at *9 (N.D. Fla. Jul. 28, 2021) *aff'd* 75 F.4th 1290 (11th Cir. 2023). Moreover, the Eleventh Circuit confirmed the *Lewis* principle: where limitation rights cannot be protected with outside lawsuits proceeding, "the limitation court may adjudicate the merits of the entire controversy—which means deciding both liability and limitation." *Skanska*, 75 F. 4th at 1306 (citing *Lewis*, 531 U.S. at 454).[4]

---

[4] *Skanska* is further distinguishable on the facts. When the district court deferred the *Robins* motion, physical damage claims were still pending alongside economic loss claims, meaning the limitation proceeding would continue regardless of the *Robins* ruling; the efficiency rationale for deferral was that resolving *Robins* first would have been "prospective" and unnecessary. Here, by contrast, *all* physical damage, wrongful death, and cargo claims have settled or been dismissed, and only purely economic loss claims remain (with the *potential* exception of the City's water main claim). The *Skanska* court's efficiency calculus is thus inverted: ruling on *Robins* now has the potential to resolve the *entire* proceeding, rather than addressing a subset of claims while others proceed to trial regardless.

The City cites to *In re Lockheed Martin Corp.* for the proposition that federal jurisdiction over limitation of liability does not trump plaintiff's rights under state law. *See* ECF No. 876 at 19. However, although that case was decided under admiralty law, *Lockheed* is not a limitation of liability case. 503 F.3d 351 (4th Cir. 2007). In *Lockheed*, the parties disputed insurance coverage for damage that occurred at sea. *Id.* at 353. A limitation of liability action is procedurally distinct from an ordinary admiralty claim and therefore *Lockheed* is inapplicable.

The City relies on *Fecht v. Makowski*, 406 F.2d 721 (5th Cir. 1969), for the proposition that when limitation is denied, claimants are "entitled to have the injunction against other actions dissolved." That holding is unremarkable, and entirely consistent with Petitioners' position. Petitioners do not seek to prevent Claimants from pursuing cognizable claims in other forums after limitation is resolved. Petitioners seek a ruling here that the remaining claims are not cognizable under the governing legal framework in *any* forum.

Likewise, *Wheeler v. Marine Navigation Sulphur Carriers, Inc.*, 764 F.2d 1008 (4th Cir. 1985), confirmed the "limited purpose" of the Limitation Act but did so in the context of holding that once limitation is denied, there is no reason to "deprive [the claimants] of their choice of forum or of their statutory right to jury trials." Again, that holding presupposes *legally cognizable claims* that can be pursued in those forums. A ruling that claims are barred by *Robins Dry Dock* does not "deprive" Claimants of anything; it determines they never had what they claim.

In *Valley Line Co. v. Ryan*, 771 F.2d 366 (8th Cir. 1985), the Eighth Circuit reversed a district court that calculated *ultimate damages* after determining limitation, *i.e.* the court went beyond limitation and into the damages phase without affording the claimant his rights. *Valley Line* does not hold that a limitation court cannot decide threshold legal questions about the existence of claims during a multi-claimant limitation proceeding. There, the court overstepped

**after** claimants had entered stipulations narrowing the federal court's role to the limitation issue alone. Here, no such stipulations exist, and the *Lewis* framework requires, rather than prohibits, federal adjudication.

Cases from within the Fourth Circuit confirm Petitioners' position. *In re Lyon Shipyard, Inc.*, 91 F. Supp. 3d 832 (E.D. Va. 2015) applied the *Lewis* framework and denied a claimant's motion to lift the injunction precisely because one co-claimant had not entered stipulations, even where it appeared "highly unlikely" that the co-claimant's claim would exceed the fund. There, the court noted that "'multiple claims against the shipowner necessitate federal court adjudication.'" *Id.* at 840 (quoting *Complaint of McCarthy Bros. Co./Clark Bridge*, 83 F.3d 821 (7th Cir. 1996)).

**4. This Court has the authority to reconsider its prior rulings.**

Petitioners incorporate by reference their arguments in Sections 3 and 4 of their Reply to PEL Claimants' Opposition.

**5. The role of the Key Bridge in the City's Transportation System is irrelevant to the *Robins* Analysis.**

Petitioners incorporate by reference their argument in Section 3 of their Reply to Baltimore County's Opposition. As Petitioners explained in their other filing, in those cases where recovery was allowed based on an injury to a component of a larger whole, the plaintiff generally had ownership interests in all components. *See, e.g.*, *Catalyst Old River Hydroelectric Ltd. Partnership v. Ingram Barge Co.*, 639 F.3d 207 (5th Cir. 2011) (hydroelectric plant owner also owned the private intake channel blocked by drifting barge); *Matter of Bruce Oakley, Inc.*, No. CV-19-184-RAW-JAR, 2025 WL 1090964 (E.D. Okla. Mar. 3, 2025) (U.S. government owned both dam struck by alliding barge, and hydroelectric facility that temporarily reduced generation due to the allision). In the City's cited case of *Consol. Aluminum Corp. v. C.F. Bean Corp.*, 772 F.2d 1217

(5th Cir. 1985), a dredge struck a Texaco-owned pipeline, but the resulting loss of gas in the pipeline essentially acted as an impact shockwave, *directly* causing near-immediate *physical* damage to the equipment of a powerplant fed by the pipeline.[5] The City's transportation network theory lacks this immediate, direct, and physical connection to the Key Bridge allision.

### 6.   "Pragmatic considerations" do not overrule *Robins.*

As further set out in Petitioners' other filings,[6] the result in *Venore Transp. Co. v. M/V Struma*, 583 F.2d 708 (4th Cir. 1978) was based on facts drastically different from those here. The *Venore* time charterer could recover damages that the damaged vessel owner could have otherwise recovered had the time charterer not continued to pay hire to the owner, and the court stressed the actual control by the time charterer over the vessel's operations when permitting recovery. And the result in *Yarmouth Sea Products Ltd. v. Scully*, 131 F.3d 389 (4th Cir. 1997) was built on the already-recognized special treatment afforded to commercial fishermen, allowing recovery for lost catch profits where the fishermen were engaged in a joint venture with the vessel owner and were likewise responsible for carrying out the vessel's planned operations.

### 7.   The Baltimore ordinance is irrelevant.

In the City's response, it points to Baltimore City Code Art. 10, Subt. 10 (the "Ordinance") as granting it the right to recover on its economic losses "without limitation," and accuses Petitioners of "entirely ignor[ing] the Baltimore ordinance in their Motion." ECF 876 at 30. The City is wrong on all points.

First, Petitioners did not "ignore" anything. While the City now pointedly and specifically

---

[5] See discussion of *Consol. Aluminum* in *In re Taira Lynn Marine Ltd. No. 5*, 444 F.3d 371, 380 (5th Cir. 2006). And again, because the damages sustained by the aluminum plant owner was not foreseeable result of dredging operations, no recovery was ultimately permitted. *Consol. Aluminum Corp.*, 833 F.2d at 68.

[6] In particular, Section 1 of Petitioners' Reply to Baltimore County's Opposition and Section 6 of Petitioners' Reply to PEL Claimants' Opposition.

9

cites the Ordinance as providing the legal basis for the recovery of all its claimed losses, this is the first such time that the City has done so in its pleadings. The City's original Claim at ECF 17 has no reference to the Ordinance, nor does the City's Amended Claim at ECF 142. Petitioners' motion for judgment <u>on the pleadings</u> was based on just that—*i.e.*, the claims asserted in the various Claimants' respective live pleadings.[7] Having failed to assert the existence and application of the Ordinance in its Claim, the City cannot now spring this new legal theory of recovery on Petitioners at the eleventh hour, in response to a motion tendered at the Court's direct instruction.[8]

This action has now been pending for more than two years. As the Claimants (including the City) argued when opposing Petitioners' request for leave to amend only one sentence in their Petition, "the deadline for amending pleadings (June 2, 2025) has long past…" ECF No. 731 at 5. When denying Petitioners leave to amend, the Court observed:

> Amendment at this late date would therefore be prejudicial to Claimants, and Petitioners have not provided any reason why an earlier amendment was impractical, let alone impossible. Indeed, insofar as Petitioners argue Claimants were on notice, through discovery, of the basic facts they now intend to assert, so too Petitioners were obviously on notice thereof and <u>only they could have anticipated that they intend to assert these facts as pertinent</u>….

ECF No. 741 at 4 (emphasis added).

Similarly, at the May 5, 2026 Pretrial Conference, this Court stated:

> [I]t's another thing to raise the issue a few weeks before the trial is scheduled to begin long after discovery has ended. <u>You've picked your course. You've picked the path that you're going to follow in the case from a legal standpoint. And why wouldn't others, in seeing how you define the case, reasonably rely on that?</u>

---

[7] See Fed. R. Civ. P. 7(a), defining "pleadings" as consisting of complaints, claims, and the answers thereto.

[8] Much of the City's argument in discussing the Baltimore Ordinance focuses on its claim that the Ordinance should not be preempted by the general maritime law. While Petitioners do not concede that the Ordinance and its strict-liability regime should not be preempted under the general maritime law or Fourth Circuit precedent (*see, e.g.*, *State of Md. Dep't of Nat. Res. v. Kellum*, 51 F.3d 1220, 1226 (4th Cir. 1995) (striking down natural resource code provision imposing strict liability for damages following vessel grounding), Petitioners need not devote more of its limited pages to preemption, given the City's forfeiture of the ability to (timely) assert the Ordinance as a basis for recovery and the law's clear constitutional deficiencies.

May 5, 2026 Tr. at 18:1-13 (emphasis added).

Thus, this Court has previously recognized and applied the usual factors considered when determining if a late amendment might be permitted and concluded that the case was well past the point where amendment would be appropriate. Changing the factual and/or legal landscape long after the pleading and discovery deadline is near *per se* prejudicial. That is even more true now, months after the Court first denied leave to amend.

But that is exactly what the City seeks to do via its opposition and first-ever invocation of the Ordinance. The Fourth Circuit has held that "asserting a new legal theory for the first time in opposing summary judgment ***amount[s] to constructive amendment of the amended complaint and thus unfairly prejudice[s] the defendant***." *Harris v. Reston Hosp. Ctr., LLC*, 523 F. App'x 938, 946 (4th Cir. 2013) (emphasis added).[9] This Court must deny the City's attempt to constructively amend its Claim and assert a new cause of action brought under the Ordinance.

The City made a notable admission in its opposition – namely that "the Ordinance was passed <u>after</u> the allision and given retroactive application." ECF No. 876 at 32. Thus, it is no surprise that the Ordinance was not part of the City's original claim, filed on April 22, 2024. It would have been impossible to assert a claim under that provision because it had not yet been drafted or adopted. But the timing of the Ordinance's passage is illuminating—it was first introduced for consideration by the City Council on July 22, 2024, and then was passed and adopted by the Council on August 26, 2024.[10] Accordingly, the City had every opportunity to timely and formally raise the Ordinance as a legal basis for recovery against Petitioners via

---

[9] See also *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 455 F. Supp. 2d 399, 436 (D. Md. 2006) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."); *Samosky v. United Parcel Serv.*, 944 F. Supp. 2d 479, 505 (S.D.W. Va. 2013) ("It is well-settled that a plaintiff may not expand its claims to assert new theories in response to summary judgment or on appeal.").

[10] See Baltimore City Council Bill 24-0559 at:
https://codes.baltimorecity.gov/us/md/cities/baltimore/ordinances/2024/24-367.

inclusion in the City's Amended Claim (ECF No. 142) filed on September 23, 2024. Or the City could have moved for leave to further amend its Claim any time thereafter. But it failed to do so. The City was not diligent in timely asserting the Ordinance claim, nor can it show good cause for failing to have timely sought leave to amend its Claim. It has effectively forfeited the issue by waiting until now to specifically press its Ordinance theory of liability. Under Fourth Circuit precedent, this Court may not now consider the City's new legal theory for recovery.

Even if the Ordinance could properly be considered by the Court, it could have no application to the matter at hand, as the Ordinance is patently unconstitutional. In this regard, it is worth examining the Ordinance's relevant text:

**§ 10-1. Scope of subtitle.**

Except as otherwise provided herein, the provisions of this subtitle shall apply solely to claims which may arise or have arisen as a result of the allision between a ship, the M/V Dali, and the Francis Scott Key Bridge on March 26, 2024.

\*       \*       \*

**§ 10-3. Economic loss.**

(a) Recovery.

(1) In general.

In a cause of action arising out of the allision between a ship, the M/V Dali, and the Francis Scott Key Bridge on March 26, 2024, the City of Baltimore shall be entitled to recover for economic loss including, without limitation, the following, if the following were caused by any violation of any permit, rule, regulation, or order to which the owner or operator of the M/V Dali or the owner or operator's agents were subject, or caused by the negligence of the owner or operator of the M/V Dali or the owner or operator's agents:

(i) loss of income; (ii) loss of means of producing income; (iii) loss of an economic benefit; (iv) loss of tax revenue; (v) loss caused by damage to the natural resources of the City of Baltimore; (vi) the costs of response, containment, removal, or remedial action incurred by the City of Baltimore; (vii) loss due to administrative expenditures for the incremental costs of providing the functions or services that are incurred by the City of Baltimore; and (viii) the costs of projects or activities that are delayed or lost because of the efforts of the City of Baltimore.

(2) Claims and defenses.

In any action brought to recover such economic loss, it is not necessary to prove that the loss was sustained as a result of physical injury to a person or damage to the City of Baltimore's property, nor is it a defense to claim that the defendant owed no special duty to the City of Baltimore or that the loss was the result of governmental action taken in response to the violation of any permit, rule, regulation, or order by defendant or negligence of defendant.

On its face, the Ordinance is nothing more than a constitutionally-impermissible bill of attainder,[11] akin to a laser-guided missile in its singular focus on Petitioners. The Ordinance does not attempt to set forth some broadly-stated public policy whereby any catastrophic accident impacting the City's overall transportation system might give rise to recovery. Instead, it applies "solely" to claims arising out of the DALI's allision with the Key Bridge. § 10-1. It identifies a distinct class of persons targeted—*i.e.*, "the owner or operator of the M/V Dali." § 10-3(a)(1). It purports to make Petitioners strictly liable to the City of Baltimore for all manner of economic claims the City might assert. The Ordinance, for all practical purposes, acts as a punitive fine imposed on Petitioners by the City, in an unknown amount to be determined at the City's discretion. [12]

---

[11] *See* U.S. Constitution, Article I, Section 10, clause 1: "No State shall ... pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, or grant any Title of Nobility."

[12] In addition to violating the U.S. Constitution, the Baltimore ordinance is invalid because its issuance exceeds the scope of authority delegated to home rule counties under the Maryland Constitution and Express Powers Act. A municipal ordinance is valid only if it is both a local law under Article XI-A of the Constitution and is authorized by the General Assembly. Maryland law is clear that <u>municipalities cannot create or expand a judicial cause of action or remedy</u> unless so empowered by the Maryland General Assembly. See *Assanah-Carroll v. Law Offices of Edward J. Maher, P.C.*, 480 Md. 394, 421–27 (2022) (the General Assembly "has not conferred upon the City the authority to adopt a local law that alters the remedies provided under ... a state statute."); *Gunpowder Horse Stables, Inc. v. State Farm Auto. Insurance Co.*, 108 Md. App. 612, 632 (1996) ("[I]n Maryland, 'the creation of new causes of action in the courts has traditionally been done either by the General Assembly or by this Court under its authority to the modify the common law of this State.'"). Under Maryland law, the "economic loss doctrine represents a judicial refusal to extend tort liability to negligence that causes purely economic harm in the absence of privity, physical injury, or risk of physical injury." *Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 451 Md. 600, 611 (2017). Where a plaintiff's loss is purely economic (like the City's), a tort duty exists only if the plaintiff can prove an "intimate nexus" – an inquiry focusing on "linking conduct—enough to show the defendant knew or should have known" of the plaintiff's reliance. *Id*. at 615, 620. (This is much akin to admiralty's foreseeability requirement). The Ordinance (specifically, § 10-3(a)(2)) improperly seeks to expand the remedies available under Maryland state tort law and Maryland's economic loss doctrine. It thus exceeds the City's legislative power and is void.

The Supreme Court explained the Bill of Attainder Clause's origin as follows: "The best available evidence . . . indicates that the [] Clause was intended not as a narrow, technical . . . prohibition, but rather as an implementation of the separation of powers, a general safeguard against legislative exercise of the judicial function, or more simply—trial by legislature." *United States v. Brown*, 381 U.S. 437, 442 (1965). Legislative bodies must accomplish their objectives by "rules of general applicability" and "**cannot specify the people** upon whom the sanction it prescribes is to be levied." *Id*. at 461 (emphasis added). "The singling out of an individual for legislatively prescribed punishment constitutes an attainder whether the individual is called by name or described in terms of conduct" which effectively designates particular persons. *Communist Party of the United States v. Subversive Activities Control Bd*., 367 U.S. 1, 86 (1961).

Here, by so clearly and punitively targeting Petitioners and only Petitioners, the City has given away the game. Indeed, the City's leading case drives the point home. Specifically, the City identified *Ballard Shipping Co. v. Beach Shellfish*, 32 F.3d 623 (1st Cir. 1994) as a case where economic losses like those the City now seeks were allowed.[13] The statute at issue in *Ballard* was Rhode Island's Environmental Injury Compensation Act, R.I. Gen. Laws § 46–12.3, *et seq*., which was enacted in 1990, in part, as a direct response to the 1989 oil spill involving Ballard Shipping's ship. See *Ballard*, 32 F.3d at 627 n. 2. But Rhode Island's law, in contrast to the Baltimore Ordinance, did not contain language specifically targeting only Ballard Shipping. Instead, the Rhode Island legislature structured their law as one of general applicability, intended to address

---

[13] The City further relies upon *Ballard* as approving of retroactive application for statutes similar to its Ordinance. But in *Ballard*, the vessel owner had, for the purpose of its motion for dismissal of certain claims only, conceded that the Rhode Island statute could apply retroactively. The district court (and by extension, the First Circuit) therefore did "not address this issue of the retroactive application…" *Complaint of Ballard Shipping Co*., 810 F. Supp. 359, 365 n. 4 (D.R.I. 1993). Here, Petitioners do not concede that retroactive application of the Ordinance would be permissible.

all potential maritime casualties relating to pollution, and applicable to "any seagoing vessel . . . entering the waters or waterways" of Rhode Island. *See* §§ 46-12.3-1, 46-12.3-2.

For much the same reasons, the Ordinance violates the Equal Protection Clause of the Fourteenth Amendment by singling Petitioners out for treatment on an "unequal" basis. *See* U.S. Const. Amend. XIV (providing that no State shall "deny to any person within its jurisdiction the equal protection of the laws"). Again, the Ordinance is not one of general applicability, but rather exists solely to permit the City to assert and recover on its economic loss claims for the specific incident of the Casualty, with strict liability under the Ordinance falling solely on Petitioners. Petitioners are not being treated on equal footing as other vessel owners / operators, because the Ordinance is crafted in such a way that no other marine operators would ever fall within the scope of the law. And to the extent that the City passed this Ordinance without first providing Petitioners (*i.e.*, the targets of the municipal ordinance) formal notice of same, or affording Petitioners the opportunity to challenge passage of the proposed law, it appears that the City's actions also deprived Petitioners of due process.

Finally, for the reasons set forth above, the Ordinance cannot be applied to justify recovery for the City's claims for increased usage of their other roadways (described as "vehicular overflow") and resulting "wear-and-tear" to the City's roads in the weeks, months and, now, years since the Key Bridge allision.

**8. The "Intentional Act Exception" is not applicable.**

Petitioners incorporate by reference their argument in their Reply to R.M. Metals's Opposition.

<u>**CONCLUSION**</u>

For the reasons set forth herein, and in Petitioners' Memorandum of Law in Support of their Motion for Judgment on the Pleadings, the Court should grant Petitioners' motion, and should grant Petitioners such further relief as may be appropriate.

15

Dated: July 20, 2026

DUANE MORRIS LLP

*/s/ Laurie G. Furshman*

Laurie G. Furshman (Bar No. 29604)
Lgfurshman@duanemorris.com
Robert B. Hopkins (Bar No. 06017)
Rbhopkins@duanemorris.com
Tristan A. Dietrick (Bar No. 31238)
tdietrick@duanemorris.com
1201 Wills Street, Suite 330
Baltimore, MD 21321
(410) 949-2900
BLANK ROME LLP

Luke M. Reid (Bar No. 31228)
Luke.Reid@blankrome.com
125 High Street, 3rd Floor
Boston, MA 02110
617-415-1200

William R. Bennett, III*
William.Bennett@blankrome.com
Thomas H. Belknap, Jr.*
Thomas.Belknap@blankrome.com
Noe S. Hamra
Noe.Hamra@blankrome.com*
Neil P. McMillan
Neil.McMillan@blankrome.com*
1271 Avenue of the Americas
New York, NY 10020
212-885-5000

Kierstan L. Carlson*
Kierstan.Carlson@blankrome.com
Emma C. Jones*
Emma.Jones@blankrome.com
1825 Eye St. NW
Washington, DC 20006
202-420-2200
*Admitted *pro hac vice*

16

## <u>CERTIFICATE OF SERVICE</u>

I CERTIFY that on this 20th day of July 2026, the foregoing Reply to the Mayor and City Council of Baltimore's Opposition to Motion for Judgment on the Pleadings was filed in the United States District Court for the District of Maryland via the Court's CM/ECF filing system, which will provide notice of this filing to all counsel of record.

*/s/ Laurie G. Furshman*
Laurie G. Furshman (Bar No. 29604)
LGFurshman@duanemorris.com
