**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

| | |
|---|---|
| In the Matter of the Petition<br><br>of<br><br>GRACE OCEAN PRIVATE LIMITED, as Owner of the M/V DALI,<br><br>and<br><br>SYNERGY MARINE PTE LTD, as Manager of the M/V DALI,<br><br>for Exoneration from or Limitation of Liability | Civ. No. 24-00941-JKB<br><br>*IN ADMIRALTY* |

**THE MAYOR AND CITY COUNCIL**
**OF BALTIMORE'S SURREPLY IN FURTHER OPPOSITION**
**TO PETITIONERS' MOTION FOR JUDGMENT ON THE PLEADINGS[1]**

**Dated:**  August 3, 2026

---

[1] As articulated in the City's Response in Opposition to Defendant's Motion for Judgment on the Pleadings, the City is a proper party to this litigation by virtue of the indisputable property damage it sustained. Under the Saving to Suitors Clause, 28 U.S.C. § 1333, this Court should therefore decline to undertake further analysis of the City's damages claims, including any adjudication of the merits of the Ordinance. While preserving that argument, the City submits this brief in direct response to the Court's July 28, 2026 Order.

Baltimore enacted a local law, Baltimore City Code Art. 10, Subt. 10 (the "Ordinance") pursuant to the explicitly granted "Police Power" contained in Article II of the Baltimore City Charter. The Ordinance does not conflict with any law passed by the Baltimore General Assembly and thus represents a valid exercise of Baltimore's explicit authority under the Maryland Constitution. Petitioners cite no case to the contrary and cannot otherwise overcome the presumption of the Ordinance's constitutionality. *Tidewater/Havre de Grace, Inc. v. Mayor & City Council of Havre de Grace*, 337 Md. 338, 352 (1995) ("every presumption favoring [a local Ordinance's Constitutional] validity will be indulged").

## I.    <u>Article II Of the City's Charter Authorized It To Pass The Ordinance</u>

Despite arguing that the City has exceeded its delegated authority, Petitioners fail to cite any constitutional language reflecting that delegation or its purported limits. That is unsurprising, since the State's delegation of power to Baltimore City is very broad.

Baltimore City is a "charter home rule jurisdiction" under Article XI-A of the Maryland Constitution. This allows Baltimore City to "achieve a significant degree of political self-determination." *Tyma v. Montgomery Cnty.*, 369 Md. 497, 504 (2002). "As it pertains to Baltimore City, most of the express powers granted by the General Assembly…are contained in Article II of the Baltimore City Charter." *Assanah-Carroll v. L. Offs. of Edward J. Maher, P.C.*, 480 Md. 394, 424 (2022). There, Baltimore is granted the ability to pass any "ordinance as it may deem proper in maintaining the peace, good government, health and welfare of Baltimore City," City Charter, Art. II, § 47, and to "have and exercise within the limits of Baltimore City all the power commonly known as the Police Power to the same extent as the State has or could exercise that power within the limits of Baltimore City," *id*. § 27.

The General Assembly accordingly vested Baltimore with broad authority to legislate

1

concerning municipal welfare, so long as that legislation is within a State's traditional "police power," *i.e.*, "the legislative powers which a state may exercise over its affairs." *Berman v. Parker*, 348 U.S. 26, 31 (1954). The Ordinance, which creates no new cause of action, but clarifies the remedies available *to Baltimore alone* for harms it suffered arising from the Key Bridge disaster, is an exercise of such "police power." Indeed, many states have passed laws similar to the Ordinance to clarify available remedies following maritime disasters. *Cf. Ballard Shipping Co. v. Beach Shellfish*, 32 F.3d 623, 631 (1st Cir. 1994) ("*Robins Dry Dock* remains the rule in this circuit for federal claims; we simply hold that Rhode Island is free to chart a different course."); *see also* Dkt. 875 at 33.

Home Rule is not without limitation. In relevant part, Article XI-A makes clear that if there is a conflict between City Law and a "Public General Law now or hereafter enacted the Public General Law shall control." Md. Const. art. XI-A, § 3. In other words, if the General Assembly passes a law, Baltimore City may not pass one that conflicts with it.

Significantly, however, Petitioners do **not** argue that the Ordinance conflicts with any law passed by the General Assembly—*i.e.*, a "Public General Law…enacted." *Id*. To the extent Petitioners argue that the Express Powers Act (a different statute) carries any force, as they appear to suggest in their Reply (Dkt. 881 at n.12), they are simply mistaken: the Express Powers Act explicitly "does not apply to Baltimore City." Md. Code, Art. 25A, § 10-101. Instead, the much broader Article II of the Baltimore City Charter applies, and Article II authorizes the Ordinance.

## II.     Petitioners' Cited Case Law Does Not Hold Otherwise

Despite this broad legislative remit, Petitioners, without citing the Maryland Constitution or any statutory language apart from the Ordinance itself, argue that the Ordinance exceeds the City's scope of delegated authority. To support that argument, Petitioners cite two cases, *Assanah-*

2

*Carroll v. Law Offices of Edward J. Maher, P.C.*, 480 Md. 394 (2022) and *Gunpowder Horse Stables, Inc. v. State Farm Auto. Ins. Co.*, 108 Md. App. 612 (1996). Neither helps them here.

In *Assanah-Carroll*, the Maryland Court of Appeals considered a Baltimore Ordinance which could have been interpreted as expanding remedies available under the Maryland Debt Collection Act and the Maryland Consumer Protection Act—statutes enacted by the General Assembly.[2] The *Assanah-Carroll* court ruled that: (1) Baltimore City did not, in fact, intend to create a new judicial remedy that could be pursued by filing a private right of action under the MCPA; but (2) if it had so intended, such remedy modification would be "inconsistent with…the plain language," *id.* at 407, of a statute passed by the General Assembly, and so invalid.

*Assanah-Carroll* is of limited applicability here, as it stands for the simple proposition that the City of Baltimore is precluded from passing a law that directly contradicts a law passed by the General Assembly, since in a "case of…conflict between said local law [the ordinance] and [a] Public General Law [the MCPA]…the Public General Law shall control." Md. Const. art. XI-A, § 3. Petitioners identify no such conflicting law enacted by the General Assembly. None exists.

*Gunpowder Horse Stables* is even less relevant. In that case, Baltimore *County* had passed an animal control statute that created a new private right of action to hold animal owners strictly liable for most damages caused by their animals. *Id*. at 616. The Court of Special Appeals found that while the Express Powers Act allows Baltimore County to pass ordinances respecting the conditions and treatment of animals in the County, the Express Powers Act specifically limits County enforcement of ordinances "to civil fines, penalties, and imprisonment." *Id*. at 629. The

---

[2] The ordinance held that a person may not collect "any rental payment" when the owner of the premises lacked a license. Plaintiff argued that the ordinance created a private right of action under the MCPA for disgorgement of rent paid when the landlord lacked a license, "without showing that she suffered any actual injury or damages from [defendant's] lack of licensure." *Id.* at 406. The MCPA limited private rights of action to recovery for *actual injury*. *Id.* at 410.

3

court found that the County's creation of a private right of action about an issue of general applicability went beyond the General Assembly's delegation, and so was not a "local law" at all.

*Gunpowder Horse Stables* is readily distinguishable in at least three ways. *First*, the Express Powers Act—the statute which granted Baltimore *County* its "home rule" power and specifically constrained it from creating the private right of action at issue—does not apply to Baltimore City at all. Baltimore City instead has been delegated "all the power commonly known as the Police Power." City Charter, Art. II, § 27. Tellingly, the *Gunpowder Horse Stables* court explicitly notes that the City of Baltimore had passed a statute identical to the Baltimore County statute it invalidated. The court nevertheless constrained its decision to the County and did not find the Baltimore statute invalid. *Second*, while Petitioners cite *Gunpowder Horse Stables* for the proposition that the "creation of new causes of action…has traditionally been done either by the General Assembly or by the [Court of Appeals] under its authority to the modify [sic] the common law of this State," that proposition is a non-sequitur: the Ordinance at issue here *does not create a new cause of action*. It merely clarifies the remedies available under existing causes of action. Finally, the *Gunpowder Horse Stables* court found that the creation of a new cause of action about a matter of general applicability was not sufficiently "local." But the Ordinance at issue here is as local as an Ordinance can be: it applies solely to unique harms suffered by the City.[3] *Cf. Cole v. Secretary of State*, 249 Md. 425, 435 (1968) ("a law which is confined in its operation to prescribed territorial limits…is a local law" and is "thus readily distinguishable from a general law, which deals with the general public welfare…").

### III.    <u>The Ordinance Does Not Conflict With Maryland Law</u>

Finally, Petitioners cite *Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl,*

---

[3] Unsurprisingly, Petitioners do not argue that the Ordinance is not a "local law."

*LLP*, 451 Md. 600 (2017), a case detailing Maryland's economic loss jurisprudence, to imply the Ordinance is invalid because of a perceived conflict between the Ordinance and Maryland's "economic loss doctrine." There are two significant problems with this argument.

First, the argument is irrelevant, since the limiting language in Article XI-A relates to conflicts between City law and Public General Laws that have been "enacted"; *i.e.*, passed by the General Assembly. An alleged conflict with Maryland's economic loss doctrine is not a conflict with any "enacted" law. A discrete limitation on *Robins Dry Dock* represents an authorized exercise of the police power delegated to the City.

Second, the Ordinance is perfectly consistent with Maryland's economic loss doctrine. Maryland courts, including *Balfour*, are clear that pure economic losses are available where alleged negligence caused "risk of severe physical injury or death." *Balfour*, 451 Md. at 611-12 (collecting cases). While Petitioners cite a so-called "intimate nexus test" to determine whether a duty is owed, that test applies only "where there were no safety concerns and the risk was purely economic." *Id*. at 614. Petitioners not only risked severe injury and death. They caused it.

## IV.    **Certification May Be Appropriate**

While the Constitution's delegation of authority to the City is sufficiently explicit to allow the Court to decide in the City's favor, respectfully, to the extent that the Court is considering striking down the Ordinance, the City suggests the Court should, like the Courts in both *Assanah-Carroll* and *Gunpowder Horse Stables*, instead certify the question of the Ordinance's validity pursuant to Md. Code Ann., Cts. & Jud. Proc. § 12-603.

## **CONCLUSION**

Petitioners' Motion for Judgment on the Pleadings should be denied.

Dated:  August 3, 2026

Respectfully submitted,

/s/ Adam J. Levitt
Adam J. Levitt
Diandra "Fu" Debrosse
Daniel R. Schwartz
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Tel.: 312-214-7900
alevitt@dicellolevitt.com
fu@dicellolevitt.com
dschwartz@dicellolevitt.com

*Lead Counsel for the Local Government Claimants and Counsel for the City of Baltimore*

Jeffrey P. Goodman
Javier Puga
**SALTZ MONGELUZZI BENDESKY P.C.**
1650 Market Street, 52nd Floor
Philadelphia, Pennsylvania 19103
jgoodman@smbb.com
jpuga@smbb.com

*Counsel for the City of Baltimore*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this third day of August, 2026, a copy of the foregoing sur-reply brief was served via the court's CM/ECF system on all counsel of record.

/s/ *Adam J. Levitt*
Adam J. Levitt